FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE
FOR THE DISTRICT OF MASSACHUSETTS

2004 MAY 26  P 2: 12

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH,<br><br>Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br><br>Defendant. | CIVIL ACTION<br>NO. 04-10825 (RWZ) |

## MEMORANDUM OF LAW IN SUPPORT OF BABCOCK POWER, INC.'S MOTION TO DISMISS THE COMPLAINT

Plaintiff's complaint should be dismissed because it seeks relief on behalf of entities that that are not before this Court, thus preventing this Court from being able to completely adjudicate the instant dispute. The absence of these parties will also prejudice the rights of those same absent parties. Moreover, the complaint should be dismissed under the first filed rule, as defendant Babcock Power, Inc. ("Babcock Power") has brought claims against plaintiff Babcock Borsig Power GmbH ("BBP") -- and all necessary parties affiliated with BBP -- in an action which was filed nearly six months ago in the Business Litigation Session of the Massachusetts Superior Court, captioned Babcock Power, Inc. v. Babcock Borsig Power GmbH, et. al., No. 03-5334-BLS (Mass. Super. Ct.) ("Initial Action") (attached to the Affidavit of Steven J. Comen in Support of Babcock Power Inc.'s Motion to Dismiss the Complaint ("Comen Aff."), at Tab A). Thus, this Court should dismiss this action under Fed. R. Civ. P. 12(b)(7) and the inherent power of this Court for failure to join indispensable parties and under the first-filed rule.

## Background[1]

On or about November 29, 2002, Hudson Investment Group, Inc. (n/k/a Babcock Power) purchased from BBP its U.S. based businesses for the power generation, environmental and services markets. (Compl. ¶12.) BBP is a subsidiary of Babcock Borsig AG ("BBX"). (Compl. ¶1.) As Babcock Power alleges in its Initial Action, it paid millions of dollars for all of the Germans' American operations that were involved in boiler, environmental, heat exchanger and power plant services designed for and used in fossil-fired, nuclear powered, and waste-to-energy power plants ("Environmental, Service and Heat Exchanger Businesses"). (Initial Action Compl. ¶1.)

At the time BBP and Babcock Power entered into their agreement for the sale of BBP assets, the parties also entered into the non-competition agreement ("Agreement") that is at issue in this action and the Initial Action. (Compl. ¶13.) There is no question that the non-competition agreement applies to BBP and its subsidiaries, including BBX; BBP's own complaint admits this fact. (Compl. ¶¶2, 14, 16.) The Agreement, which BBP attached to its complaint, prevents BBP and any of its "direct or indirect Subsidiaries, Affiliates or successors or assigns" from engaging in the Environmental, Service and Heat Exchanger Business in the Unitized States and Canada for a period of three years from November 29, 2002. (Agreement at 1, Sec. 1(b).) Although vigorously disputed by BBP, the Agreement by its very terms "shall be binding upon and inure to the benefit of [BBP and its related entities, including BBX] and [Babcock Power] and *their* respective, successors (including, without limitation, by sale or transfer of all or substantially all assets, merger or consolidation) . . ." (Agreement at Sec. 4(k).)

---

[1] For purposes of this motion to dismiss under Fed. R. Civ. P. 12(b)(7), the facts are those pleaded in the complaint and as set forth in the Non-Competition Agreement dated November 29, 2002, attached to the complaint. Additionally, for purposes of Babcock Power's motion to dismiss under the first filed rule, the facts are as set forth in the attached affidavit of Steven J. Comen.

(Emphasis added.) The Agreement also "supercedes all prior oral or written agreements and understandings relating the subject matter hereof." (Id. at Sec. 4(h).)

The Agreement not only covers BBX, but as the complaint itself amply demonstrates, it was negotiated by representatives of BBX. (Compl. ¶¶15, 18, 20.) In fact, the scope of the agreement was dictated by what was "critically important" to the parent company, BBX. (Compl. ¶14.)

As Babcock Power alleges in its complaint in the Initial Action, after the Agreement was entered into, Babcock Power learned that contrary to the Agreement BBP had, in fact, violated the Agreement by allowing another of its affiliates, BBP Service Ratingen GmbH f/k/a Balcke-Dürr Service GmbH ("BBP Service Ratingen"), to sell operations that would compete in the United States and/or Canada with Babcock Power's newly purchased Environmental, Service and Heat Exchanger Businesses. (Initial Action Compl. ¶¶45, 51.) This sale was made without attempting to bind the purchaser, Balcke-Dürr GmbH, to the terms of the Agreement. (Id. at ¶47.) Upon being made aware of this fact, on January 10, 2003, BBX board member and General Counsel Dr. Georg-Peter Kränzlin agreed that Balcke-Dürr GmbH was contractually prohibited from offering in the United States Environmental, Service and Heat Exchanger Businesses. (Id. at ¶¶56, 57.)

Babcock Power further alleged in its Initial Action that, notwithstanding Dr. Kränzlin's concurrence that the Agreement's scope covered the assets BBX sold to Balcke-Dürr GmbH, Balcke-Dürr GmbH's parent corporation did not agree that it was bound in any way under the Agreement. (Initial Action Compl. ¶58.) Thus, Babcock Power was compelled to file a precursor to the Initial Action against BBX, BBP, Balcke-Dürr GmbH and others on May 14, 2003. (Id. at ¶59.) The May 14, 2003 complaint was never served, although BBP's counsel was

provided with a courtesy copy shortly after it was filed. (Comen Aff. at ¶8.) In response to this filing, BBX's counsel later provided to Babcock Power an amendment, dated May 28, 2003, purporting to be between the BBX affiliate, BBP Service Ratingen, and Balcke-Dürr GmbH, addressing the effect of the Agreement on Balcke-Dürr GmbH. (Initial Action Complaint ¶60.) However, Babcock Power has alleged that the amendment did not fully fulfill BBX's obligations under the Agreement, as it has failed to bind Balcke-Dürr GmbH's parent or subsequent acquirors of the assets formerly owned by BBX's affiliates. (Id. at ¶¶61-63.)

Babcock Power thus could not abandon its action against BBP, BBX and their related entities. On November 10, 2003, Babcock Power commenced the Initial Action against BBP, BBX, Dr. Helmut Schmidtz (the Custodian under German bankruptcy law of BBP and BBX),[2] John Does 1-5 (senior BBX officials), Balcke-Dürr GmbH and its parent, SPX Corporation by filing a complaint in Massachusetts Superior Court for Suffolk County. The Initial Action was thereafter accepted into the Business Litigation Session. After filing the Initial Action, Babcock Power's attorneys alerted counsel for BBP of the existence of the Initial Action. (Comen Aff. at ¶6.) Babcock Power has since voluntarily dismissed Balcke-Dürr GmbH and SPX Corp. Pending the intention of Babcock Power to amicably resolve the dispute out-of-court, and in an attempt to avoid the costs and burdens of complying with the requirements of the Hague Convention, Babcock Power has not served the complaint in the Initial Action, although it has secured two extensions of time for service of process.

---

[2] BBX and other related entities filed for bankruptcy protection under German law on July 4, 2002. (Compl. ¶11.) Because all of the actions at issue in the Complaint and the Initial Action occurred after the bankruptcy filing, counsel is aware of no bar imposed by American or German bankruptcy law to the litigation of the issues raised in the Complaint and the Initial Action. Indeed, by filing the instant action on May 19, 2004, Babcock Power is itself indicating that lack of any such protection, or its waiver thereof.

Notwithstanding its knowledge of the Initial Action, BBP filed the instant action on April 26, 2004. The action commenced in this Court is based on the terms of the Agreement, just as the Initial Action. Like the Initial Action, the action pending before this Court focuses on the actions of the ultimate parent, BBX. Each of the parties to the instant action is also a party to the Initial Action. The complaint in this second filed action alleges that BBX attempted to sell another of its subsidiaries, the so-called rescue company, Babcock Borsig Power Systems GmbH, to Babcock Hitachi K.K. ("Hitachi'), with such sale impacted by the Agreement. (Compl. ¶¶15, 22, 24, 32-34.) The complaint further alleges that BBX and other of its subsidiaries are in negotiations to sell additional operations to Mitsui Babcock ("Mitsui"), and BBX is concerned about the impact the Agreement may have on that sale. (Id. at ¶¶35-38.) The complaint seeks damages and injunctive relief, for alleged breaches of the covenant of good faith and fair dealing, M.G.L. 93A, and for a declaratory judgment as to the scope of the Agreement and to determine monetary relief.

## Argument

### I. The Complaint Should be Dismissed Under Fed. R. Civ. P. 12(b)(1) and 12(b)(7) For Failure To Join An Indispensable Party

The Complaint should be dismissed because it does not name as a party BBX or Dr. Helmut Schmitz, the German parties required to provide full relief and end to the disputes arising from the Agreement.

Federal Rule of Civil Procedure 12(b)(7) allows a motion to dismiss for "failure to join a party under Rule 19." Rule 19(a), in turn, requires the joinder of necessary parties, as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that

the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(a) seeks to bring all stakeholders to the table "to avoid piecemeal and duplicative litigation." Acton Co., Inc. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982) ("The Rule furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.") Indeed, in dismissing an action under Fed. R. Civ. P. 12(b)(7), this Court has held that where "the resolution of [an] action will necessarily involve a determination of the rights owned by" an absent party, such party must be present in the "interest in a full and fair adjudication of the issues presented." Whitney, Atwood, Norcross Associates, Inc. v. Architects Collaborative, Inc., 1991 WL 2223, *2 (D.Mass. Jan. 4, 1991) (Zobel, J.) (dismissing complaint for failure to join as an indispensable party one who acquired rights under a contract for architectural design services).

It is clear from the face of the Complaint that, at a minimum, BBX, the ultimate German parent, and Dr. Helmut Schmitz, the bankruptcy custodian for both BBP and BBX, are necessary for complete relief and thus their absence runs afoul of Rule 19(a)(1). The instant action seeks declaratory relief as to the proper scope of the Agreement. But BBP's complaint does not challenge whether BBP and its successors and assigns are bound by the Agreement; rather, it challenges whether *BBX* and *its* successors and assigns are bound. (See, e.g., Compl. ¶2.) The complaint also alleges potential harm from the operation of the Agreement on the prospective sale of German assets to Mitsui. The alleged sale involves, however, not assets of

-6-

BBP, but assets of BBX. (Compl. ¶35.) This is the only harm alleged by BBP arising out of the potential Mitsui transaction. It is *solely* harm to BBX. Complete adjudication of the very questions posed by plaintiff, then, cannot be determined without the involvement, at least, of BBX, and thus the complaint by its very terms requires joinder of BBX and Dr. Schmitz under Fed. R. Civ. P. 19(a)(1). See Whitney, Atwood, Norcross Assoc., 1991 WL 2223, at *1 (judgment for one party would "necessarily impair" the contractual interests of the absent party).

The complaint is also replete with references to the involvement of BBX and its agents in the negotiations with Babcock Power over the terms and scope of the Agreement, as well as the subsequent attempts to sell assets which were allegedly impacted by the Agreement. (Compl. ¶¶14, 15, 18, 20, 22, 24, 32-38.) Such negotiations alone warrant dismissal due to failure to join BBX and its agents, including, at least, Dr. Schmitz. See Acton Co., Inc., 668 F.2d at 78 (dismissing action where non-joined corporate parent "played a substantial role in negotiating" the disputed contracts).

Moreover, this action also should be dismissed under the principles incorporated in Rule 19(a)(2). The complaint alleges losses in the amount of at least seven and a half million dollars. (Compl. ¶¶4, 34, 42.) While the complaint indicates that BBP and Hitachi jointly paid this amount to Babcock Power, the amount is alleged to have arisen from BBX's -- not BBP's -- sale of assets to Hitachi. (Compl. ¶¶22, 24, 34.) Thus, any recovery would inure to BBX. Moreover, any decision rendered in this case will likely impact the ability of BBX and Dr. Schmitz in their efforts to sell all or parts of entities related to BBP, as they would be subject to relitigation of these very issues in a subsequent proceeding. As the First Circuit noted under similar circumstances, in a case involving an absent corporate parent, Acton, that would be

impacted by the resolution of the contractual dispute before the Court involving the absent party's subsidiary:

> [t]o proceed in Acton's absence might impair Acton's interest in the controversy very significantly. Even if Acton would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken Acton's bargaining position for settlement purposes. In either case, to proceed without Acton might "as a practical matter impair or impede" Acton's ability to protect its interest in this matter. Rule 19(a)(2)(i). Acton is therefore a party to be joined to this action unless doing so will deprive the court of subject matter jurisdiction.

Acton Co., Inc., 668 F.2d at 78-79.

Thus, because joinder of BBX and Dr. Schmitz is required under either Fed. R. Civ. P. 19(a)(1) or 19(a)(2)(i), this action should be dismissed under Fed. R. Civ. P. 12(b)(7) for BBP's failure to name BBX or Dr. Schmitz as indispensable parties.[3]

Moreover, even if the failure to join BBX and Dr. Schmitz is not fatally defective to the claims raised in the Complaint, were this Court to retain jurisdiction over this matter notwithstanding the first-filed rule (discussed below), Babcock Power would raise as counterclaims those claims asserted in the Initial Action. Those counterclaims require the presence of BBX, Dr. Schmidt and John Does 1-5 to be fully adjudicated. It is well settled that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) if an indispensable party to a counterclaim is not named. See Wright & Miller, Federal Practice and Procedure: Civil 2d., §1359, n.7 (citing cases).[4]

---

[3] Because the failure to join an indispensable party precludes a court from having subject matter jurisdiction over a dispute, such an action also may be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. See Thunder Basi Coal Co. v. Tuco, Inc., 156 F.R.D. 665 (D. Wyo. 1995).

[4] In Whitney, Atwood, Norcross Associates, Inc., 1991 WL 2223, *2, this Court, after finding that a necessary party had not been joined, ordered the case dismissed unless the plaintiff did not join the necessary party within 20 days after the order. Such a resolution may be proper here, requiring BBP to join BBX and Dr. Schmitz.

## II. The Complaint Should Also Be Dismissed In Favor Of The First Filed Initial Action

Independently, apart from the fact that the complaint should be dismissed for plaintiff's failure to name as indispensable parties all the German entities and individuals necessary for complete relief, this Court should dismiss in favor of the first filed action.

This Court possesses the inherent power to dismiss this action in favor of the first filed action in state court. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (U.S. 1995) (district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act). "[T]he general rule is that the action first commenced takes precedence unless the just and effective disposition of the dispute requires otherwise." Comtec Information Systems, Inc. v. Monarch Marking Systems, Inc., 962 F. Supp. 15, 18 (D.R.I. 1997). Here, there can be no dispute but that the Initial Action was first filed, having been filed on November 10, 2003, five and a half months before the filing of the complaint in this action on April 26, 2004. Babcock Power has not incurred the expense involved with serving the German entities under the Hague convention, while it believed that counsel for the parties were seeking to schedule a meeting of counsel and representatives of the parties to seek resolution of the dispute.

There can be no reason for deviating from the first filed rule here. In fact, one of the factors in determining whether to deviate from the first filed rule is "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding [and] whether necessary parties have been joined." Wilton, 515 U.S. at 283. Here, as discussed above, BBP's failure to name the ultimate German parent -- the entity whose interests are most damaged in the instant litigation as framed by the complaint, and without whom complete relief cannot be secured -- is fatal to any argument it may have that the first-filed principle does not apply here.

LIBA/1378919.1

## Conclusion

For the foregoing reasons, defendant Babcock Power, Inc. respectfully requests that the Court dismiss the complaint i) for failure to join and indispensable party or, in the alternative, ii) in favor of the first file action pending in the Business Litigation Session of the Massachusetts Superior Court.

Respectfully submitted,

BABCOCK POWER, INC.

By its attorneys,

_____
Steven J. Comen (BBO# 093320)
James O. Fleckner (BBO# 641494)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
617-570-1000

DATED: May 26, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon the attorney of record for plaintiff, Kenneth M. Bello, c/o Bello Black LLP, 535 Boylston Street, Boston MA 02116, by hand, on May 26, 2004.

_____
James O. Fleckner

LIBA/1378919.1