UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 JUN -8 P 4:12
U.S. DISTRICT COURT
DISTRICT OF MASS.

BABCOCK BORSIG POWER GmbH, )
   Plaintiff, )
)
)
v. )   C.A. No. 04 CV 10825-RWZ
)
BABCOCK POWER, INC., )
   Defendant. )
)
)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

On April 26, 2004, Plaintiff Babcock Borsig Power GmbH ("Babcock" or "Plaintiff"), pursuant to this Court's Diversity Jurisdiction, filed its Complaint for Declaratory Judgment and monetary damages under M.G.L. c. 93A (hereinafter the "Federal Complaint") against the lone defendant Babcock Power, Inc. ("BPI" or "Defendant").[1] The focus of the Federal Complaint is the damage that Babcock has suffered as a result of BPI's interference with the sale of certain assets to a company known as Babcock Hitachi K.K. ("Hitachi"), an entity unrelated to either of the parties. The Federal Complaint seeks relief only on behalf of Babcock, based upon the terms of a contract between it and BPI. Babcock served the Federal Complaint on BPI on May 20, 2004.

In response, BPI has filed a Motion to Dismiss the Federal Complaint under Rules 12(b)(1) and (7), contending that (i) that Babcock failed to join a necessary and indispensable *plaintiff* to the case pursuant to Fed. R. Civ. P. 19, and (ii) BPI previously filed what it labels as a "first filed action" in the Superior Court of the Commonwealth of Massachusetts (hereinafter the

---

[1] A copy of the Federal Complaint is attached hereto as Exhibit 1, and the Return of Service is attached as Exhibit 2.

"State Complaint"). As set forth in detail below, neither basis has any merit whatsoever. More specifically, Babcock is the sole party to the underlying contract; it has neither need nor obligation to include as a plaintiff its ultimate corporate parent, whether or not the parent may be a direct or indirect beneficiary of the litigation. Moreover, the allegedly indispensable party – Babcock Borsig AG ("BBX") – is not "subject to service of process" in the United States, as required by Rule 19, as there is no basis for this Court's exercise of personal jurisdiction over BBX.

As to the "first filed lawsuit", not only do the two cases involve different parties and different underlying factual events, but it is disingenuous for BPI to assert that its State Complaint – first filed in May, 2003 and twice dismissed voluntarily since without ever being served on any of the five named defendants – requires this Court to defer to the Superior Court to resolve the distinct facts that underlie the Federal Complaint. Moreover, Babcock respectfully submits that deferring to the State Complaint would merely cause an unnecessary delay, since Babcock would simply remove the State Complaint to the Federal District Court on diversity grounds, and the parties would be in exactly the same position that they occupy today.

**Procedural Background**

On May 14, 2003, BPI filed a lawsuit in the Massachusetts Superior Court (the "State Complaint") against *five* named parties, in addition to "John Does 1-5", alleging purported claims arising out of the sale of certain assets by Babcock to the named defendants Balcke-Durr GmbH ("Balcke-Durr") and SPX Corporation ("SPX"), neither of which is related to any of the parties in the Federal Complaint. More than a year later, the State Complaint still has *not* been

2

served on *any* defendant, and indeed has twice been dismissed voluntarily because of the lack of service.[2]

The original State Complaint filed by Babcock specifically alleged that because Balcke-Durr and SPX failed to abide by a non-competition agreement executed by and between Babcock and BPI, Babcock had breached its contract with BPI, and the latter had sustained economic damages as a result. The Complaint also asserted claims against Balcke-Durr and SPX for interference with contractual relations (Counts V and VI), as well as M.G. L. c. 93A (Count VII) against all parties. After nearly three months, that complaint (never having been served) was dismissed and substituted with a second complaint, filed on August 14, 2003. This complaint too was not served and, therefore, dismissed in or about November, 2003, at which time BPI filed a third complaint. This latter (and still un-served) complaint substantially replicates the alleged facts and claims previously asserted, but also seeks additional economic damages arising out of the purported failure of Babcock to pay over $1.7 million of workers' compensation premiums specifically related to the SPX transaction. As noted, to this date, no service of process has been made on any defendant.

Now, more than a year later, and not having done *anything* to serve or prosecute its State Complaint, BPI seeks dismissal of the Federal Complaint, which was filed and served on the defendant BPI in a matter of weeks. Seemingly to buttress its arguments, BPI informs this Court that it has "voluntarily dismissed" from the State Complaint Balcke-Durr and SPX, a rather transparent action at this late date. Indeed, given the argument made here by BPI that Babcock has failed to include an "indispensable necessary party" *plaintiff*, an assertion (as addressed

---

[2] A copy of the first, second, and third State Complaints filed by Babcock Power Inc. are attached hereto as Exhibits 3, 4 and 5.

3

below) without factual or legal basis. By contrast, on the face of the State Complaint, Balcke-Durr and SPX are necessary and indispensable defendant parties.

**Factual Background**

The following facts are set forth in the Federal Complaint.

On July 4, 2002, Babcock's ultimate corporate parent, BBX, filed for bankruptcy in a German court. In connection with BBX's reorganization, several of BBX's subsidiaries, including Babcock, have been liquidating some or all of their assets, and/or sold some or all of their stock. As part of this process, on November 29, 2002, Babcock sold its U.S.-based power-generation, environmental and services business, to Hudson Investment Group, Inc. (which was later renamed Babcock Power, Inc., i.e., "BPI"). At the time of that transaction, Babcock and BPI (but not BBX) executed a Stock Purchase Agreement and a limited, regional, industry-specific Non-Competition Agreement (the "Babcock NCA"), the latter of which is attached to the Federal Complaint as <u>Exhibit A</u>. Because it was critically important to Babcock and BBX that they each retain the ability to sell their remaining business lines, Babcock and BPI extensively negotiated the scope of the proposed non-competition covenant.

During the negotiations, BPI proposed – and Babcock eventually assented to – the inclusion of language extending the Babcock NCA to Babcock's "Affiliates", which is defined in the Stock Purchase Agreement as "…any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person." BPI also proposed extending the Babcock NCA to <u>Babcock's</u> "successors and assigns." Before agreeing that its successor and assigns would be bound, Babcock requested – and received – BPI's confirmation of its understanding and intent that the inclusion of Babcock's

4

"successors and assigns" would in no way constrain Babcock's ability (or the ability of any affiliated entity) to sell its remaining lines of business to large, multinational players who already were operating in the power-generation products and services industry in the "Restricted Territory" of the United States and Canada.

BPI acknowledged and agreed that the Babcock NCA would not apply to any "current competitor" within the Restricted Territory. To emphasize and illustrate the parties' mutual understanding of the scope of the Covenant, representatives of Babcock and BBX, including Ludger Kramer and Dr. Georg-Peter Kraenzlin, discussed hypothetical examples illustrating their mutual intent that the sale of assets to an already existing competitor would not implicate the Babcock NCA and would not require the purchaser to cease its pre-existing operations in the Restricted Territory. BPI representative provided their assurances that the illustrative examples were consistent with the intent of the parties.

Despite these assurances, following the execution of the Babcock NCA, BPI asserted that the NCA requires an unaffiliated entity that has pre-existing, competitive operations in the Restricted Territory to discontinue those operations and cease doing business there merely because one of its affiliates or subsidiaries purchased assets from an entity affiliated with BBX. It did so in the context of a sale by Babcock's parent (BBX) of certain assets of another subsidiary, Babcock Borsig Power Systems GmbH ("Power Systems") to Hitachi. In response to the news of this pending deal, BPI expressed its view that, if Hitachi purchased Power Systems, it would have to cease its pre-existing operations in the power-generation products industry in the United States and Canada. BBX and Hitachi obviously disagreed but were under tremendous pressure to close their deal; in BBX's case, it was at risk of having to liquidate its entire business. BPI, by its counsel, refused to cease its interference, and BBX and Hitachi were

5

forced to pay BPI the sum of $7.5 Million to close their deal without further interference by BPI. BBX's half of this payment (i.e., $3.75 Million) was charged to Babcock, and Babcock, therefore, is the entity that has suffered the damages resulting from BPI's interference.

Still later, during the summer of 2003, BBX and another of its many subsidiaries, Power Service, began active discussions concerning the potential sale of Power Service to Mitsui Babcock ("Mitsui"). Like Hitachi, Mitsui is a large, multi-national corporation that has an established presence in the energy-generation products and services industry in the United States. This time, the entity being sold (i.e., Power Service) is three rungs on the corporate ladder away from Babcock. Despite all this, BPI again took the position that Mitsui, the multinational purchaser, would be bound by the Babcock NCA and, thereby, precluded from continuing its pre-existing operations in the United States and Canada following its purchase of Power Service assets.

In response to BPI's conduct in the Hitachi and Mitsui transactions described above, Babcock filed this action on April 26, 2004. At the time of Babcock's filing, neither it nor its German parent corporation, BBX (or any of the other named defendants, for that matter), had been served with a complaint by BPI, nor has there been any other indication that BPI seriously intended to pursue the Superior Court litigation that it filed more than a year ago. Indeed, as of this date, BPI still has not served a complaint on Babcock, BBX, or any of the other defendants.

## ARGUMENT

### I. The Court Should Deny BPI's Motion because Babcock and BPI Are the Only Parties Necessary to Afford Complete Relief.

The primary argument that BPI advances in support of its Motion to Dismiss is that Babcock "seeks relief on behalf of entities that are not before this Court, thus preventing this Court from being able to completely adjudicate the instant dispute." In so arguing, BPI incorrectly asserts that BBX, rather than Babcock, has suffered monetary damages and that the declaration that Babcock seeks will only benefit BBX.[3]

As asserted in the Federal Complaint, Babcock *itself* has suffered direct economic harm as a result of BPI's conduct. When BBX and Hitachi were coerced into paying BPI $7.5 Million to close their deal, BBX's half of that sum ($3.75 Million) was charged by BBX to Babcock, directly harming the latter.[4] In addition, Babcock continues to suffer harm in the form of

---

[3] The text of Rule 19 ("**Joinder of Persons Needed for Just Adjudication**") is as follows:

   **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue of the action improper, that party shall be dismissed from the action.

   **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in the subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action id dismissed for nonjoinder.

[4] The rationale for that charge was that Babcock, not BBX, is the party to the Babcock NCA with BPI, and it is Babcock, therefore, that owns the right to pursue a claim against BPI for advancing its bad faith interpretation of the Babcock NCA.

7

uncertainty about its ability to sell its other assets to interested buyers without further interference by BPI.

Under Fed. R. Civ. P. 19, a Court is to employ a two-step analysis in determining whether another party must be joined. Remington Arms Company v. Liberty Mutual Insurance Company, 748 F.Supp. 1057 (D. Del 1990). First, the Court must assess whether the absent party is "necessary" in the sense that, in its absence, "(1) complete relief cannot be accorded the present parties, or (2) the disposition of the action would prejudice, as a practical matter, [the absent party's ] ability to protect their own interests, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations." Id. at 1065 (quoting Johnson & Johnson v. Coopervision, Inc., 720 F.Supp. 1116, 1121 (D. Del. 1989)). Next, if the Court answers the above questions in the affirmative, and the joinder of the necessary party would destroy the Court's jurisdiction, the Court must inquire whether "in equity and good conscience the action should either proceed among the parties before it, or should be dismissed." Id.

Federal courts routinely hold that affiliated corporate entities are not necessary and indispensable parties that must be joined where their corporate affiliate has similar interests and is equipped to protect the absent entity's interests in litigation. See, e.g., Remington, 748 F.Supp. at 1066-1067 (holding that absent foreign parent corporation was not necessary or indispensable where subsidiary sought interpretation of contract and its interests were aligned with those of non-party parent); Francisco Pujol v. Shearson American Express, Inc., 877 F.2d 132 (1st Cir. 1989)(reversing lower court's dismissal for failure to join subsidiary where defendant parent corporation had similar interests and ample motives to defend itself in the

8

litigation); In re. Rio Piedras Explosion Litigation, 179 F.R.D. 59 (D. P.R. 1998)(denying motion to dismiss for failure to join subsidiaries).[5]

Applying this basic standard to the instant case, BPI has not satisfied any elements required under Rule 19. BBX and Dr. Schmitz are neither necessary nor indispensable to this litigation, for several independent reasons. First, the Court can afford complete relief without BBX and Dr. Schmitz. Babcock seeks a declaration and damages concerning the Babcock NCA, a contract to which it alone (and not BBX or Schmitz) is a party. More specifically, Babcock seeks a declaration that the Babcock NCA does not apply to entities affiliated with a company that purchases assets from one of Babcock's affiliates. Babcock also seeks monetary damages to compensate it for the $3.75 Million of economic harm that it incurred as a result of BPI's conduct. The Court is fully empowered to award both of these remedies without BBX or Dr. Schmitz, and no other relief is necessary.

Second, there is nothing in the record reflecting that BBX has claimed an interest in the $3.75 million of economic harm incurred and ascribed to Babcock. Indeed, it is a bit ironic that BPI seemingly is seeking to protect BBX's potential interest in the economic damages at issue in this lawsuit. Moreover, there is nothing in the record to support BPI's apparent argument that BBX's and Dr. Schmitz's interests will be prejudiced in any way if Babcock is the only plaintiff in the case. To the contrary, Babcock's interests, Dr. Schmitz's interests, and BBX's interests are perfectly aligned; they all are interested in a declaration by this Court that they may sell

---

[5] The cases on which BPI relies, Acton v. Bachman Foods, 668 F.2d 76 (1st Cir. 1981) and Whitney, Atwood, Norcross Associates, Inc. v. The Archtects Collaborative, Inc., 1991 U.S. Dist. LEXIS 225 (D. Mass. 1991), are inapposite. In the Acton case, the absent parent corporation was deemed indispensable because it was itself a party to the contract in question, so the outcome of the litigation would be highly persuasive precedent in future litigation between the parent and others. In addition, the parent was entitled to a $250,000 refund if the other party to the contract defaulted, and the parent unconditionally guaranteed all of its subsidiary's obligations under that contract. Similarly, the absent third party in Whitney was deemed indispensable because it had an interest in the copyrights at issue, and resolving the dispute over the ownership of the copyrights could have directly impaired its rights.

9

assets to companies with pre-existing, competitive operations in the Restricted Territory and that such purchasers are not required to cease those existing operations following an acquisition of assets from a Babcock affiliate. Babcock is represented by competent counsel, who will vigorously advance these common interests.

Third, resolution of this case between Babcock and BPI does not put any party – most notably BPI -- at "*substantial risk* of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest". Indeed, to the contrary, by resolving the contractual interpretation issues presented by the Federal Complaint, the Court will minimize the likelihood that there will be future disputes with BPI concerning the sale by either Babcock or its affiliates of their assets to companies with existing, competitive businesses in the Restricted Territory.

### II. The Court Should Deny BPI's Motion because BPI Has Made No Effort to Pursue the Superior Court Litigation, and Babcock Would Remove that Action to the Federal District Court Anyway.

In support of its Motion, BPI also asserts that the Court should dismiss this action because of its "first filed" Superior Court action. As an initial matter, this Court has broad discretion whether to entertain an action filed under the federal Declaratory Judgment statute. The so-called "first filed" rule is not absolute, and courts in this jurisdiction have repeatedly declined to defer to previously filed actions where, as is true here, the entity that filed first did so as a "placeholder" and without any sincere intent to pursue that litigation. See, e.g., Storagenetworks v. Metromedia Fiber Network Service, Inc., 13 Mass. L. Rep. 640 (Middlesex Superior Court, 2001)(declining to defer to first filed New York action where the party that filed first delayed in serving that complaint and did not intend to seriously pursue litigation at the time of its filing, commenting "defendant's procedural gamesmanship must not be rewarded.");

Davox Corporation v. Digital Systems International, Inc., 846 F.Supp. 144 (D. Mass. 1993)(dismissing first filed declaratory judgment action where plaintiff "raced to the courthouse" to have its choice of forum); Lexington Insurance Company v. City of Pheonix, 1996 U.S. Dist. LEXIS 11694 (D. Mass. 1996)(transferring first filed Massachusetts action for consolidation with later filed Arizona action where insurer filed first action as an anticipatory, pre-emptive strike, and it was clear that the first suit was intended only as a "placeholder" for insurer's preferred venue).

By its actions, BPI has shown its lack of any intent to pursue the State Complaint. In the course of more than a year, BPI has not even attempted to serve any of its three complaints on any of the five defendants that it named. Indeed, notwithstanding the fact that BPI seeks a declaratory judgment concerning SPX and its subsidiary Balcke-Durr, BPI dismissed both of those companies voluntarily just two weeks ago.

BPI's conduct suggests an ulterior motive. Either it was concerned about the possibility of Babcock's filing an action in Germany and filed the Superior Court action as a pre-emptive forum "placeholder" or it hoped that, by advancing its strained construction of the Babcock NCA through litigation, it could forestall further transactions involving Babcock's affiliates. Whatever BPI's motives, the Court should not reward BPI's gamesmanship by dismissing the instant action, which Babcock intends to pursue in earnest.

Finally, Babcock respectfully submits that it is unnecessary to defer to the pending Superior Court action because, upon the dismissal of this action, Babcock would immediately remove the Superior Court action to this Court, and the parties would be "right back where they started."

## CONCLUSION

Based on the foregoing, Babcock respectfully submits that the Court should deny BPI's Motion, in its entirety, and award such other relief as it deems just and proper.

Respectfully submitted,

BABCOCK BORSIG POWER GmbH,

By Its Attorneys,

*/s/ JM Black/*

Kenneth M. Bello, BBO # 036630
Josiah M. Black, BBO # 632690
Bello Black LLP
535 Boylston Street, Suite 1102
Boston, Massachusetts 02116
(617) 247-4100

Dated: June 8, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 6/8/04

*/s/ JM Black/*

fax
and

12

BB Doc 01393544.2