UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 18  P 4: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

BABCOCK BORSIG POWER GmbH, )
)
Plaintiff, )
)
v. )  CIVIL ACTION
)  NO. 04-10825 (RWZ)
BABCOCK POWER, INC., )
)
Defendant. )
)

## REPLY IN SUPPORT OF BABCOCK POWER, INC.'S MOTION TO DISMISS THE COMPLAINT

In its opposition to defendant Babcock Power, Inc.'s ("Babcock Power") motion to dismiss the complaint ("Opposition" or "Opp."), plaintiff Babcock Borsig Power GmbH ("BBP") has provided no basis whatsoever for this Court to deny Babcock Power's motion, or at a minimum require the joinder of necessary but absent parties. BBP does not dispute that the central question raised in its own Complaint involves the nature of the obligations imposed on entities <u>other</u> than BBP by the November 29, 2002 non-competition agreement between BBP and its subsidiaries, affiliates, successors and assigns on the one hand, and Babcock Power on the other hand. (Compl. ¶2.) Because this action principally seeks a declaratory judgment impacting entities not before this Court, the Court must either dismiss the case or require proper joinder.

Moreover, the Court should dismiss this case under the first filed rule. Contrary to BBP's assertions, Babcock Power has not engaged in improper gamesmanship that would render the first filed principle inapplicable; indeed, Babcock Power has been completely transparent in its actions, notifying BBP and its related corporate entities of the state litigation at every step. The

arguments raised by Babcock in support of this motion to dismiss also make clear that it is not attempting to "game" the system. Rather than shopping between a state or federal forum, Babcock is simply taking the position that if this action is to be maintained in this Court, the Court must require BBP to join the necessary parties as plaintiffs so that all integrally related disputes can be resolved efficiently in a single action. Without such joinder the Court should dismiss BBP's Complaint in favor of the first filed action and Babcock will then proceed to serve the other German entities pursuant to the Hague Convention in the state action.

## I. THE PARENT COMPANY, BABCOCK BORSIG AG, IS A NECESSARY PARTY THAT MUST BE JOINED TO AVOID DISMISSAL UNDER RULE 12(b)(7)

As argued in Babcock Power's opening memorandum, dismissal is warranted due to BBP's failure to join Babcock Borsig AG ("BBX"), its parent, and Dr. Helmut Schmitz, the bankruptcy custodian who approved the German conglomerate's sale of assets to Babcock Power. BBP's cases do not alter this conclusion. For example, in Pujol v. Shearson Am. Express, Inc., 877 F.2d 132 (1st Cir. 1989), the court was confronted with the question as to whether a subsidiary, as a joint tortfeasor, was a necessary party in a tort action brought against the parent corporation. The First Circuit held it was not. But the court, per then-judge Breyer, expressly noted that the analysis in contract actions is different, citing Acton Co., Inc. v. Bachman Foods, Inc., 668 F.2d 76 (1st Cir. 1982) (Rule 19 treats "joint tortfeasors differently in this respect than, say, persons jointly liable under a contract"). In contract actions, the Pujol court noted, not only are the parties to the contract required to be joined, but also all other parties "having a substantial interest in" the contract must be joined to avoid dismissal. 877 F.2d at 137, citing Acton, 668 F.2d 81-82.[1] Accord In Re Rio Piedras Explosion Litigation, 179 F.R.D. 59,

---

[1] BBP's claims are premised on contractual obligations, even though there is no express breach of contract claim. The penultimate count, Count 1, seeks a declaration with respect to the obligations under the non-

63 (D.P.R. 1998) (differentiating between actions sounding in tort from those implicating contractual rights).

It is undisputed that BBX and Dr. Schmitz have a substantial interest in the interpretation of the non-competition agreement. Thus, this action is clearly distinguishable from BBP's final case, Remington Arms Co. v. Liberty Mutual Ins., 748 F. Supp 1057 (D.Del 1990), a case from outside of this Circuit that contained no allegation that the obligations of the parent would be affected by the outcome of the litigation involving the subsidiary.

Indeed, the fact situation alleged by BBP is more analogous to another case from outside of this circuit, Onyx Waste Services, Inc. v. Mogan, 203 F. Supp. 2d 777 (E.D. Mich. 2002). In Onyx, defendant had signed a non-compete agreement with his former employer, plaintiff Onyx Waste Services, Inc. ("Onyx"), a Wisconsin corporation. 203 F. Supp. 2d at 779. The opening paragraph of the agreement defined Onyx as "Onyx and all of its subsidiaries, divisions or affiliates." Id. at 782. The Onyx court interpreted this contractual language to include a non-party subsidiary of Onyx, a Michigan corporation. Because the non-party Michigan corporation had a significant stake in the litigation by virtue of the disputed contract and its actions vis-à-vis the defendant, it was deemed a necessary and indispensable party, the absence of which required dismissal. Id. at 789.

Similarly here, the noncompete agreement that BBP attached to its own Complaint defines in the first paragraph "Seller" to include not only BBP, but also "any of its direct or indirect Subsidiaries, Affiliates or successors or assigns." This includes BBX. Following Onyx, BBX is a necessary party that must be joined. In the absence of joinder, this case should be dismissed. See also Harris Trust and Sav. Bank v. Energy Assets Intern. Corp., 124 F.R.D. 115,

---

competition agreement, as BBP acknowledges. (See Opp. at 9). Thus, as argued in Babcock Power's opening memorandum at 6-7, this claim is the very type which requires joinder of affected parties.

117 (E.D. La. 1989) (joinder required where action seeking declaratory judgment failed to name the entities "that will ultimately have to perform" under the applicable contracts) and cases cited at pp. 6-7 of Babcock Power's opening memorandum of law.

BBP also argues in its Opposition that there is no substantial risk of inconsistent obligations if this Court were to proceed without the German parent. (Opp. at 10.) But Onyx held that the absent entity identified in the non-compete agreement could bring a separate action to enforce the very terms at issue in the litigation before that court, thus subjecting the defendant to conflicting obligations should other courts differ in their interpretation of the non-compete agreement. 203 F. Supp. 2d at 786-87. Similarly, this case should be dismissed in the absence of BBX or Dr. Schmitz so as to avoid the possibility that the contracting parties are subject to differing obligations arising from differing interpretations by different courts of the exact same terms of the non-compete agreement.

Moreover, complete relief cannot be granted without BBX because BBP's claims focus on the obligations and conduct of the absent entity, BBX. While BBP argues that its interests are "perfectly aligned" with its parent (Opp. at 9), this fact is irrelevant where the corporate parent cannot be bound by a declaration issued by this Court where it has not appeared in this litigation. Additionally, "equity and good conscience" (Opp. at 8) dictate that BBX be joined where the primary controversy involves the actions taken or proposed to be taken by BBX, not BBP. See also Onxy, 203 F. Supp. 2d at 787-88 (equity and good conscience dictated that the action not proceed in the absence of the Michigan subsidiary).[2]

---

[2] BBP also states in passing, without any analysis, that the German parent is not "subject to service of process" and thus falls outside of Rule 19. (Opp. at 2.) Of course, this position is untenable because the Federal Rules of Civil Procedure specifically contemplate service on foreign entities, under Rule 4(f). Not only are German entities subject to service of process under applicable treaties, but the Advisory Committee's comments to Rule 19 make clear that inability to serve process is no impediment to dismissal under the joinder rules: "When this comprehensive joinder cannot be accomplished -- a situation which may be encountered in Federal courts

-4-

## II. PLAINTIFFS MAY NOT AMEND THEIR COMPLAINT BY THEIR BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS.

Recognizing the substantial deficiencies in their Complaint, the Opposition adds numerous so-called "facts" and unsupported conclusions that are not alleged in the Complaint, or even submitted to this Court under the pains and penalties of perjury. For example, BBP's counsel now argue the "fact" that BBX's payment to Babcock Power was charged to the subsidiary entity, BBP. (See Opp. at 6, 7.) But a plaintiff is not allowed to amend its complaint through its briefing. "A motion to dismiss tests the legal sufficiency of the complaint," not what the plaintiff might hope to prove or what plaintiff thinks the evidence could show, but only the allegations properly alleged in the Complaint. Reisman v. KMPG Peat Marwick, 965 F. Supp. 165, 170 (D. Mass. 1997). Plaintiff is bound by the allegations set forth in its Complaint. The Court must disregard all of the new information in the Opposition that is not in the Complaint because "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." O'Brien v. National Property Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (on a motion to dismiss, the court may not rely on expanded statements in the plaintiffs' opposition brief).

---

because of limitations on service of process, subject matter jurisdiction, and venue -- the case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action." (Emphasis added.) Under the pragmatic analysis suggested by the Advisory Committee, the Court should either require the absent parties to be joined to allow complete relief and avoid the possibility of inconsistent obligations arising from multiple adjudications involving the same contract language, or dismiss the case in its entirety to allow for full litigation involving all stakeholders in the state forum.

### III. THE COURT SHOULD DEFER TO THE FIRST FILED COMPLAINT, WHERE BABCOCK POWER HAS NOT ENGAGED IN ANY "GAMESMANSHIP"

BBP also argues that Babcock Power is not entitled to the protection of the first-filed rule because Babcock Power has engaged in so-called "gamesmanship" by not serving its complaint. (Opp. at 10-11.) This argument is to no avail.

Immediately after filing its first complaint against BBP, its parent, and others on May 14, 2003 in the Business Litigation Session of the Suffolk County Superior Court, Babcock Power notified the American counsel for BBP and its German parent of the filing of the state court action. (See Affidavit of Steven J. Comen in Support of Babcock Power, Inc.'s Motion to Dismiss the Complaint ("Comen Aff.") at ¶8.) Babcock Power also sought from the German's American counsel consent to waive the service requirements imposed by the Hague Convention through voluntary acceptance of service. (See Ex. C to Comen Aff.) Thus, BBP and its German parent have known of the pendency of Babcock Power's litigation since that time.

Because Babcock Power has affirmatively brought to BBP's attention -- and the attention of the German parent and Dr. Schmitz -- the pendency of its litigation, this case is easily distinguishable from the cases cited by BBP in its Opposition. For example, in Storagenetworks, Inc. v. Metromedia Fiber Network Service, Inc., 13 Mass. L. Rptr. 640, 2001 WL 1334881 (Mass. Super. Aug. 13, 2001), the critical factor identified by Judge Fahey in declining to apply the first-filed rule as between two actions pending in separate state courts was that the second filing party "did not know that Metromedia had already filed suit" during the time that the parties were in settlement negotiations. Id. That is most emphatically not the case here, where Babcock Power fully informed BBP and its parent of the filing of Babcock Power's suit in the Business Litigation Session, a disclosure which prompted what proved to be fruitless settlement negotiations. However, Babcock Power's decision to not incur the expense and burden involved

with service under the Hague Convention as to the German entities, required due to their refusal to agree to accept service in the United States, is meaningless in the face of Babcock Power's full disclosure of the litigation.

Nor are the concerns addressed in BBP's other cases relevant here. In Lexington Ins. Co. v. Phoenix, Arizona, 1996 WL 463672 (D. Mass. July 31, 1996), the court declined to follow the first-filed rule as between actions pending in two federal district courts, on the grounds that the first-filed plaintiff was simply seeking a home state jury. Id. at *2. Of course here, the venire will be drawn from Massachusetts residents in either the BLS or this Court, and thus there is no home state advantage. Similarly, Davox Corp. v. Digital Systems Int'l, Inc., 846 F. Supp. 144 (D. Mass. 1993), involves two litigations filed in federal courts on opposite sides of the county, one in the District of Massachusetts and the other in the District of Washington. Moreover, in Davox, the court declined to follow the first-filed rule where the first filing party had lied to its adversary, by promising a response to inquiries but instead filing a preemptive litigation. Id. at 146. Here, by contrast, Babcock Power filed a transparent litigation and did not serve its adversaries not for reasons of surreptitious advantage, but in an attempt to give all interested parties the time to discuss settlement outside of court.[3]

## Conclusion

For the foregoing reasons, and those contained in its memorandum of law in support of its motion to dismiss, defendant Babcock Power, Inc. respectfully requests that the Court require joinder of absent, necessary parties, Babcock Borsig, AG and Dr. Helmut Schmitz, or,

---

[3] Moreover, BBP argues that it would remove the BLS action to federal court in the event that this Court dismisses the instant action, and thus dismissal is not required. (Opposition at 11.) However, whether BBP seeks to remove the BLS action is irrelevant to this Court's determination as to which case should proceed -- the first filed case or the one later in time. BBP cites no case, nor could it, holding that the prospect of removal should cause a federal court hearing the later in time case to not defer under principles of comity to the state court before which the first-filed action is pending and to upset the plaintiff's choice of forum.

alternatively, dismiss the complaint i) for failure to join and indispensable party or ii) in favor of the first filed action pending in the Business Litigation Session of the Massachusetts Superior Court.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), defendant Babcock Power, Inc. respectfully requests oral argument on its motion to dismiss.

Respectfully submitted,

BABCOCK POWER, INC.

By its attorneys,

*/s/ Steven J. Comen*
Steven J. Comen (BBO# 093320)
James O. Fleckner (BBO# 641494)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
617-570-1000

DATED: June 18, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon the attorney of record for plaintiff, Kenneth M. Bello, c/o Bello Black LLP, 535 Boylston Street, Boston MA 02116, by hand, on June 18, 2004.

*/s/ James O. Fleckner*
James O. Fleckner

LIBA/1387425.1