UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH, ) | |
| Plaintiff, ) | |
| v. ) | |
| BABCOCK POWER, INC., ) | |
| Defendant, ) | CIVIL ACTION |
| BABCOCK POWER, INC., ) | NO. 04-10825 (RWZ) |
| Third-Party Plaintiff, ) | |
| v. ) | |
| BABCOCK BORSIG, AG, ) | |
| Third-Party Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON PROMISSORY NOTE**

Plaintiff Babcock Borsig Power GmbH ("Babcock") submits this Memorandum in support of its Motion For Partial Summary Judgment on Promissory Note with a face amount of $1,900,000. Babcock is seeking unpaid capital plus interest, costs and attorneys fees as a result of Defendant Babcock Power, Inc.'s ("BPI") default on the note. As shown below, BPI's anticipated set-off defense lacks merit, and Babcock is entitled to immediate and full payment pursuant to the note's terms.

1

## I     Summary of Undisputed Facts

### A.     The Stock Purchase Agreement

On November 13, 2002, Plaintiff Babcock and Hudson Investment Group, Inc., predecessor of Defendant BPI, signed a Stock Purchase Agreement (hereafter, the "Agreement") concerning BPI's purchase of all issued and outstanding shares of Babcock subsidiary BBCC Holding Co., Inc., which had operated certain specified lines of business in the United States and Canada. Initially, two promissory notes to Babcock were contemplated as part of this transaction: a $2,500,000 note under Agreement Section 2.03 for transition consulting services, and a $5,000,000 note (hereinafter "$5 Million Note") under Agreement Section 2.04 for certain non-competition obligations. (Kraenzlin at ¶ 1-4)[1]

The Agreement contained complex provisions on representations and warranties[2], indemnification,[3] and set-off.[4]

In this regard, Article VIII of the Agreement sets forth detailed provisions concerning the terms, conditions and procedures to be used with respect to claims of indemnification arising from representations and warranties made under Article III of the Agreement. Specifically, Section 8.06 of the Agreement specified that set-offs for indemnification could be exercised with respect to the $5 Million Note issued pursuant to Agreement Section 2.04. (Exh. A at Sections 2.04 and 8.06)

### B.     The First Amendment

---

[1] "Kraenzlin" references are to the Affidavit of Dr. Georg-Peter Kraenzlin attached to Plaintiff's Motion for Partial Summary Judgment on Promissory Note; "Exh." references are to the exhibits attached to Dr. Kraenzlin's Affidavit.
[2] See Exh. A at Article III
[3] See Exh. A at Article VIII; Exh. B at Section 4
[4] See Exh. A at Section 8.06; Exh. B at Section 4

2

On November 29, 2002, Babcock and BPI signed the First Amendment to the Stock Purchase Agreement ("First Amendment") (Exh. B). Under Paragraph 1 of the First Amendment, Agreement Section 2.03 was modified to provide that, instead of a promissory note of $2,500,000, BPI would issue a promissory note to Babcock for a principal amount of $1,900,000 (hereafter, "1.9 Million Note") in exchange for a signed Transition Services Agreement. (Exh. B at Section 1).

This $1.9 Million Note is the subject of the instant Motion for Partial Summary Judgment.

Under the First Amendment Section 3, Agreement Section 2.04 also was revised, but continued to provide for the issuance of the $5 Million Note by BPI to Babcock in return for the specified non-competition obligations. (Exh. B at Section 3).

First Amendment Section 4 modified Section 8.06 of the Agreement to allow additional rights of set-off against the $5 Million Note referenced in Agreement Section 2.04. (Exh. B at Section 4).

### C. **BPI Refuses to Make Payment**

On October 15, 2004, Babcock, by counsel, notified BPI, in writing, of its failure to make timely principal and interest payments on the $1.9 Million Dollar Note. (Exh. E).

BPI responded by letter from counsel dated October 19, 2002. In this letter, BPI acknowledged its failure to pay principal and interest in accordance the terms of the $1.9 Million Note. BPI asserted that the failure to pay was the result of setoff "under the Note in the definition of Event of Default section and [Agreement] Schedule 3.06."[5]

---

[5] The Parties' correspondence also involved demands for payment, and claims of setoff concerning the $5 Million Note. The instant Motion For Partial Summary Judgment is brought only on the $1.9 Million Note. Upon completion of discovery, it is anticipated that summary judgment will be sought with respect to the $5 Million Note.

3

(Exh. F). Specifically, BPI claimed that Babcock owed reimbursement for certain insurance payments made on behalf of Babcock-affiliated companies under Agreement Section 8.06.

Consequently, by letter dated November 12, 2004, Babcock's counsel notified BPI that the claim of setoff with respect to the $1.9 Million Note was invalid since setoff was not permitted against the $1.9 Million Note. Accordingly, Babcock informed BPI that it was exercising its option to accelerate payments under the "Event of Default" provision in the $1.9 Million Note. (Exh. E).

BPI has continued to refuse to pay all monies due under $1.9 Million Note. (Kraenzlin at ¶12). BPI has paid Babcock only $4,758.00 of interest and $152,876.00 of principal on the $1.9 Million Note. Pursuant to the terms of the $1.9 Million Note, BPI has been obligated to pay upon Babcock's demand a total of $1,900,000.00 of principal and $59,129.00 of interest, plus costs and attorneys fees. (Kraenzlin at ¶12; Exh. C).

## II. ARGUMENT

### BABCOCK IS ENTITLED TO FULL PAYMENT AND FEES UNDER THE $1.9 MILLION NOTE; BPI'S SETOFF DEFENSE LACKS MERIT.

A.  **Applicable Principles**

Summary judgment is appropriate when the pleadings, discovery on file and affidavits, if any, show "there are no genuine issues of material facts and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.Pro 56(c). The Court must "view the entire record in the light most hospitable" to the non-moving party, including all reasonable inferences in his favor." Gribbs–Ryan v. Smith, 904 F. 2d 112, 115 (1st Cir 1990). However, "establishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise". Cadle v. Hayes, 116F.3d 957 (1997).

"Conclusory allegations, improbable inferences, and unsupported speculations" will not suffice. Candle, citing Medina-Munoz v. R.J. Raynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990). "If like evidence is adduced in opposition to the motion for Summary Judgment is merely colorable or is not significantly probative, summary judgment should be granted. Anderson v. Liberty Lobbly, Inc 477 U.S. 242, 249-50, 91 L. Ed. 202, 106 S.Ct 2505 (1986).

Under Massachusetts General Laws ch. 106, Sec. 3-307, once the plaintiff-holder produces the authentic signed instrument, the plaintiff–holder is entitled to recover unless the defendant-maker establishes a defense. Coupounas v. Madden, 401 Mass. 125, 514 N.E.2d 1316 (1987). See also Sparks Creations v. Ford, 1991 U.S. Dist. Lexis 19243 (D. Mass. 1991). The defendant-maker of the Note has the burden of proof on any such defense or claim by a preponderance of evidence. Coupounas, Id. *See* also Cadle v. DeVincent, 57 Mass. App. Ct. 13, 16, 781 N.E.2d 817 (2003).

The interpretation of a contract is a question of law. See Sparks v. Microwave Assocs., Inc., 359 Mass. 597, 600 (1971); Beillante v. Granger & Sons, Inc., 55 Mass. App. Ct. 542, 548, 772 N.E.2d 74 (2002); Bottom Line Associates, Inc. v. International Data Group, 18 Mass. App.Ct. 921, 922, 465 N.E.2d 287 (1984).

"A contract is to be constructed to give reasonable effect to each of its provisions." McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264, 186 N.E.2d 827 (1962). "Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties."

Charles I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501, 19 N.E.2d 800 (1939); J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795, 494 N.E.2d 374 (1986).

As shown below, the terms of the Agreement, as amended by the First Amendment and the promissory notes themselves, clearly establish the parties' intent that setoff not be allowed against the $1.9 Million Note for the indemnification claims raised by BPI.[6] Since setoff against the $1.9 Million Note was unauthorized, BPI's failure to make full and timely payment under the $1.9 Million Note's terms constituted an "Event of Default", and thus triggered the $1.9 Million Note's acceleration provision.

### B.  Babcock is Entitled To Immediate Payment Under The $1.9 Million Note.

All material facts pertaining to the $1.9 Million Note are undisputed. The required signatures are authentic. Babcock has performed satisfactorily under the Transition Assistance Agreement. BPI admittedly has failed to make required principal and interest payments on the Note pursuant to its operative terms. Despite written notice from Babcock, BPI failed to cure its nonpayment deficiency within the contractual cure period.

Indeed, the sole justification advanced by BPI for its failure to honor the terms of the $1.9 Million Note is its claim (Exh. F) that is has exercised a right of set-off under the definition of "Event of Default" in the $1.9 Million Note itself, and under Agreement Schedule 3.06. As shown below, BPI's position clearly lacks merit; the Agreement, the First Amendment, and the definitions of "Event of Default" in both the $1.9 Million Note, and the $5 Million Note, all make explicit that such set-off rights apply only to the $5 Million Note specified in Agreement Section 2.04. The $1.9 Million Note, arising under Agreement Section 2.03, is not subject to such set-off.

---

[6] In contrast to the $1.9 Million Note, the $5 Million Note contains specific provisions concerning the issuance of an irrevocable Letter of Credit for the amount that the principal amount the note exceeds the "Contingent Risks".

6

1. **"Event of Default" Provisions**

BPI has claimed (Exh. F) that the setoff of alleged monies owed was authorized by the "Event of Default" provision contained in the $1.9 Million Note. This proferred defense to nonpayment is refuted by the express "Event of Default" provision term of the $1.9 Million Note itself. The "Event of Default" provision of the $1.9 Million Note (Exh. C) states as follows:

> It is expressly agreed that the occurrence of any one or more of the following shall constitute an "Event of Default" hereunder: <u>(a) failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after Payee has given written notice to Maker of such failure other than pursuant to a valid exercise of the Maker's right of set off set forth in Section 8.6 of the Stock Purchase Agreement;</u> or (b) [bankruptcy fillings, insolvency and assignments on behalf of creditors events]. <u>If any such Event of Default hereunder shall occur, the Payee may, at its option, declare to be immediately due and payable the then outstanding principal balance under this Note, with all accrued and unpaid interest thereon, and all other amounts payable to the Payee hereunder, whereupon all such amounts shall become and be due and payable immediately.</u> The failure of the Payee to exercise said option to accelerate shall not constitute a waiver of the right to exercise the same at any other time.

(emphasis supplied).

As noted <u>infra</u>., Agreement Section 8.6, as modified by the First Amendment, references only Agreement Section 2.04 for setoff; in turn, Section 2.04 solely applies to the $5 Million Note. (Exh. A at Sections 2.04 and 8.06; Exh. B at Sections 3 and 4).

In sharp contrast, and confirming the Parties' manifest intent that the two Notes be treated differently for setoff purposes, Agreement Section 2.03 refers only to the $1.9 Million Note. (Exh. A Section 2.03) Thus, the "Event of Default" provision of the $1.9 Million Note, cited by BPI as the basis of its setoff defense, actually confirms that the

7

setoff is restricted to the $5 Million Note issued pursuant to Agreement Section 2.04, and that the claimed setoff against the $1.9 Million Note was unauthorized and improper.

2. **Agreement Schedule 3.06**

The second basis advanced by BPI in its October 19, 2004 letter (Exh. F) in defense of its nonpayment under the $1.9 Million Note was Agreement Schedule 3.06, a listing of intercompany accounts upon which representation and warranties were given by Babcock to BPI under Agreement Section 3.06.[7] BPI alleges that the failure of Babcock to make insurance payments on behalf of two entities[8] constituted a breach of representations and warranties set forth in Agreement Section 3.06.

As explained to BPI by Babcock in its response letter dated November 12, 2004 (Exh. G), not only are such claimed setoffs contested in amount and indemnification eligibility, but, in any event, they are not properly asserted against the $1.9 Million Note.

Agreement Schedule 3.06, together with Agreement Section 3.06, is only a representation and warranty provision concerning the accuracy of various intercompany accounts referenced in Schedule 3.06. (See Exh. A at Section 3.06 and Schedule 3.06). Neither Agreement Section 3.06 nor Agreement Schedule 3.06 contain any reference to setoff whatsoever. Rather, as a representations and warranties section, Agreement Section 3.06 is subject to the terms and conditions of Agreement Article VIII, and specifically Agreement Sections 8.02, 8.04, 8.05, 8.06 and 8.07.

Agreement Section 8.06 sets forth and limits the right of setoff under the Parties' Agreement to the reason specified in the Section 8.06, and further restricts setoff for

---

[7] Section 3.06 provides for a representation by the seller that the balances on Agreement Schedule 3.06 are a "true, correct, and complete listing as of the date set forth on such schedule" of intercompany accounts among the various subsidiaries and affiliates of Babcock and BPI. A reconciliation schedule is provided in Agreement Schedule 3.06 as adjusted to reflect the account balances as of the closing. An updated schedule was attached to the First Amendment and dated November 25, 2002.
[8] Ceramic Cooling Tower Corporation and Babcock Dürr Inc.

8

those reasons to the $5 Million Note under Agreement Section 2.04. Thus, Plaintiff's attempt to seek refuge in Agreement Section 3.06 is wide of the mark.

### C.  "Implied Right of Setoff"

The Agreement, the First Amendment, and both the $1.9 Million Note and the $5 Million Note all make clear the parties' explicit understanding and agreement that setoff was permitted only under contractually-specified conditions and exclusively against the $5 Million Note.

It is anticipated that, despite explicit contract language, BPI may argue that a generalized right of setoff/recoupment should be allowed in addition to the specific setoff rights outlined in the parties' written agreements. This contention lacks merit.

It is a long-settled principle of contract construction that the expression by the parties in a written instrument of certain things indicates an intention to exclude unmentioned things where it may reasonably be inferred that if the parties had intended to include subjects to which no reference is made in the instrument, the parties would have done so. Hamlen v. Rednalloh Co., 291 Mass. 119, 123, 197 N.E. 149 (1935). See also Allstate Ins. Co. v. Bearce, 412 Mass. 422, 447, 589 N.E.2d 1235 (1992). Here, the parties were fully aware of the steps necessary to fashion an appropriate contract provision authorizing setoff against the $1.9 Million Note had they desired to do so. The parties did exactly that with respect to setoffs against the $5 Million Note. The parties did not do so with respect to the $1.9 Million Note. The absence of such language in the $1.9 Million Note under these circumstances is compelling evidence that the parties intended to preclude setoff against the $1.9 Million Note.

If unlimited setoff/recoupment rights were intended, the parties were aware how to accomplish that goal by drafting pertinent contractual terms.[9] Thus, Babcock and BPI intended open-ended setoff against both promissory notes, such rights would have been clearly spelled out in the documents.

The parties' intent to disallow indemnification setoff against the $1.9 Million Note itself is obvious when both the $1.9 Million Note and the $5 Million Note are compared side by side. Both notes have the same "Event of Default" language referencing Agreement Section 8.06, which explicitly is limited by its reference to Agreement Section 2.04 to setoffs against the $5 Million Note. However, the $5 Million Note also has detailed contingent liability reconciliation and setoff provisions that are completely absent from the $1.9 Million Note. (See Exh. D at 5th full paragraph). The parties' intent is clearly expressed; such setoffs are not available against the $1.9 Million Note.

Lastly, a fundamental principle of contract interpretation is that a contract is to be construed to give meaning and effect to each of its provisions. McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264, 186 N.E.2d 827 (1962). If a generalized, implied right of setoff/recoupment were allowed in these circumstances, the "Event of Default" provision of both notes would have no meaning. In fact, the principal operative terms of the "Event of Default" provision – "failure to pay any amount...other than pursuant to a valid exercise of the maker's setoff set forth in Section 8.6..."--not only would be ignored, but in fact would be completely contradicted, by BPI's alleged "implied setoff right."

---

[9] Indeed First Amendment Section 7 states, with respect to a specifically identified condition, that "Purchaser shall be entitled to set off the shortfall from any amounts otherwise payable by the Purchaser"... (Exh. B at Section 7). Thus, the parties obviously knew how to grant broad setoff rights when they so desired.

10

Similarly, most of Agreement Article VIII, and specifically Sections 8.02, 8.04, 8.05, 8.06 and 8.07, would be rendered wholly superfluous. If unconditional setoff by implication is available, as BPI apparently contends, BPI would not be subject to the one year limit on indemnification claims (Exh. A at Section 8.01), the notice of claim provision (Exh. A at Section 8.02), the parties' agreed indemnification procedures (Exh. A at Section 8.04), the $500,000.00 indemnification claim threshold (Exh. A at Section 8.05), or the exclusive remedy provision (Exh. A at Section 8.07). Obviously, the parties did not intend, in crafting these precise, complex contractual provisions that their carefully negotiated terms would be ignored or circumvented by "implied" self-help remedies.

Every phrase and clause of a contract must be presumed to have been designedly employed. I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501, 19 N.E.2d 800 (1939); J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795, 494 N.E.2d. 374 (1985). If each provision of Babcock's Agreement with BPI is given meaning and effect, then it is inescapable that the parties have manifested, in these documents, their intent to restrict indemnification setoff to the $5 Million Note pursuant to, and subject to, the detailed and specific terms of Agreement Article VIII. The notion that a broad, unstated setoff/recoupment right authorized BPI's conduct with respect to the $1.9 Million Note would render large portions of the transactional documents mere suplusage. Clearly, that was not these parties' intent.

## Conclusion

For the foregoing reasons, Babcock respectfully requests this Court to grant this Motion for Partial Summary Judgment on Promissory Note, finding that the attempted

setoff against the $1.9 Million Note was unauthorized and improper, and that the "Event of Default" provisions of $1.9 Million Note was triggered by BPI's failure to perform.

Respectfully submitted,

BABCOCK BORSIG POWER GmbH,
By its Attorneys,

Kenneth M. Bello, Esquire, BBO #36630
John F. Welsh, Esquire, BBO # 52240
BELLO BLACK & WELSH, LLP
535 Boylston Street, Suite 1102
Boston, MA 02116
(617) 247-8476

Dated: June 7, 2005
3009698

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 6/7/05.

12