UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHISSETTS

| | |
|---|---|
| BABOCK BORSIG POWER GmbH,<br><br>Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br><br>Defendant,<br><br>BABOCK POWER, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BABCOCK BORSIG, AG<br><br>Third-Party Defendant. | CIVIL ACTION<br>NO. 04-10825 (RWZ) |

Local Rule 56.1
Statement Of Material
Facts Not In Dispute
(Corrected)

Plaintiff Babcock Borsig Power GmbH ("Babcock"), pursuant to Local Rule 56.1, submits this Statement of Material Facts Not in Dispute in support of its Motion For Partial Summary Judgment on Promissory Note as follows:

1.  Babcock is an insolvent German Corporation which, among various businesses, operated a US-based power-generation, environmental and services business. (Kraenzlin Aff. at (¶1))[1]

---

[1] "Kraenzlin Aff." references are to the Affidavit of Dr. Georg-Peter Kraenzlin attached to Plaintiff's Motion For Partial Summary Judgment on Promissory Note; "Exh." references are to the exhibits attached to Dr. Kraenzlin's Affidavit.

1

2.  Babcock's ultimate corporation parent, Babcock Borsig AG ("BBX"), filed for bankruptcy in a German Court on July 4, 2002. In connection with BBX's reorganization, several BBX subsidiaries, including Babcock, have liquidated assets and/or sold some or all of their stock.

3.  On November 29, 2002, Babcock sold its US-based power generation environmental and services businesses to Hudson Investment Group, Inc. As part of the transaction, the parties executed a Stock Purchase Agreement (hereafter the "Agreement") and related documents in which all issued and outstanding stock of BBCC Holding Co., Inc. were sold by Babcock. Hudson Investment Group, Inc. later was renamed Babcock Power, Inc. ("BPI"). (Kraenzlin Aff. at ¶2 and Exh. A)

4.  The Agreement initially provided, among its various terms, for the issuance of two promissory notes; an $2,500,000 promissory note for transition services and a $5,000,000 promissory note for certain non-competition obligations. (Kraenzlin Aff. at ¶2, Exh. A)

5.  Specifically, Section 2.03 of the Agreement provided as follows:

> SECTION 2.03 Payment Under Transaction Consulting Services Agreement. Purchase shall deliver at Closing its Promissory Note for $2,500,000 (the "Transition Services Consideration") in the form attached hereto as Exhibit A in exchange for Seller's execution at Closing of the two-year Transition Consulting Services Agreement (the "Transition Consulting Services Agreement") description is Section 5.07(k), which shall provide for the payment of $250,000 in the first year and $2,250,000 in the second year, payable in equal quarterly installments in each year.

(Kraenzlin Aff. at ¶2, 5 Exhs. A and B)

6.  Section 2.04 of the Agreement provides as follows:

2

> SECTION 2.04. <u>Payment for Non-Competition Agreement.</u> Purchase shall deliver at Closing its Promissory Note for $5,000,000 (the "Non-Competition Consideration") in exchange for Seller's execution at Closing of the Non-Competition Agreement (the "Non-Competition Agreement") described in Section 5.07(1), which shall provide that during the period commencing on the Closing Date and ending in the third (3rd) anniversary of the Closing Date, neither the Seller nor any of its Affiliates or successors will, whether for their own account or for Person, or as principal, agent, representative, employee, proprietor, or partner, or in any other capacity, either directly or indirectly, conduct or engage in the Restricted Business as the term is defined therein.

(Kraenzlin Aff. at ¶2, 3, Exhs. A and B)

7. The Agreement was preceded by significant negotiations between the parties on issues of representations and warranties, letters of credit, promissory note terms, liability obligations and caps, waivers, setoff, and the procedures necessary to invoke such terms. (Exhs. A and B)

8. Agreement Article III contains detailed and specific provisions concerning the representations and warranties of Babcock, including Section 3.06 on intercompany accounts. Agreement Article VIII contains detailed and specific negotiated contractual agreements on the duration of representations and warranties (Section 8.01); or provisions on the manner in which indemnification claims may be brought (Section 8.02 and 8.04); a threshold damages requirement providing that losses must exceed $500,000 to invoke indemnification in specified instances (Section 8.05), and a $1,700,000 cap on certain indemnification claims (Section 8.05). (Kraenzlin Aff. at ¶2, Exh. A at Articles III and VIII)

9. Agreement Section 8.06 defines the circumstances under which indemnification and setoff are allowed:

3

> SECTION 8.06. <u>Special Indemnification and Set Off.</u> In the event that (i) Babcock Borsig Machinery, Inc. commits a material breach of its obligations to the Company under the Novation Agreement or (ii) the Company or any of its Subsidiaries becomes obligated for any liabilities under letters of credit and/or guarantees and/or credit and bonding obligations and/or other contingent obligations related to any company affiliated with Seller set forth on <u>Schedules 8.06(a) and 8.06(b)</u> attached hereto (collectively, the "Contingent Risks"), <u>the Purchaser has the right to withhold, set off and deduct from amounts due under the Note issued pursuant to Section 2.04 any amounts finally determined to be owed to the Purchaser pursuant to the terms of Article VIII.</u> To the extent that the Company (or any of its Subsidiaries) are indemnified against any of the foregoing losses pursuant to any pre-existing written agreement(s) in their favor by Senior Thermal Engineering Australia, NEM by, BDI, Inc. or the other company affiliates of Seller identified in <u>Schedule 8.06(a) or 8.06(b)</u>, Purchaser shall reasonably pursue such indemnity rights (which obligation shall not, however, extend to the obligation to appeal the decision of the court of primary jurisdiction) for the purpose of reducing any right to withholding, set off or deduction otherwise permitted by this Section.

(emphasis supplied) (Kraenzlin Aff. at ¶2, Exh.A at Section 8.06)

10. The Agreement also specified the exclusive remedies for indemnification and for failure of performance prior to closing, as follows:

> <u>SECTION 8.07 Exclusive Remedies.</u> <u>The Purchaser and the Seller acknowledge and agree that (a) following the Closing, the indemnification provision of Section 8.02 and 8.03 and Section 6.01 shall be the sole and exclusive remedies of the Purchaser and the Seller for any breach by the other party of the representations and warranties contained in this Agreement and for any failure by the other party to perform and comply with any covenants and agreements that, by their terms, were to have been performed or complied with by such party</u> prior to the Closing, (b) except as provided in Article VI, the Seller shall have no liability under any provision of this Agreement for any Loss related to actions taken (or omitted to be taken) by the Purchaser, the Company or the Subsidiary after the Closing Date, (c) anything herein to the contrary notwithstanding, no breach of any of representation, warranty, covenant or agreement contained

4

> herein shall give rise to any right on the part of the Purchaser or the Seller, after the consummation of the purchase and sale of the Shares contemplated by this Agreement, to rescind this Agreement or any of the transactions contemplated hereby and (d) notwithstanding anything to the contrary contained in the Agreement, no party hereto shall have any liability under any provision of this Agreement for any punitive, consequential or indirect damages. Each party hereto shall take all reasonable steps to mitigate its Losses upon and after becoming aware of any event which could reasonably be expected to give rise to any Losses.

(emphasis supplied) (Kraenzlin Aff. at ¶2, Exh. A at Section 8.07)

11. On November 29, 2002, the parties signed the First Amendment to the Stock Purchase Agreement (hereafter "First Amendment") (Kraenzlin Aff. at¶3, Exh. B)

12. First Amendment Section 1 modified Agreement Section 2.03 to provide, among various terms, for the issuance of a $1.9 Million Note by BPI to Babcock (instead of the prior $2.5 Million Note) in return for a Transition Consulting Agreement as follows:

> Section 1. Section 2.03 of the Agreement shall be amended to read, in its entirety, as follows: "Section 2.03 Payment Under Transition Consulting Services Agreement. Purchaser shall deliver at Closing its Promissory Note for $1,900,000 in the form attached hereto as Exhibit A, in exchange for Seller's execution at Closing of a Transition Consulting Services Agreement in the form attached hereto as Exhibit A-1".

(Kraenzlin Aff. at ¶3, Exh. B at Section 1)

13. Although the First Amendment Section 4 prescribed specific terms whereby BPI could withhold, set-off, and deduct certain sums from the $5 Million Note, the First Amendment did not contain similar provisions concerning the $1.9 Million Note. (Kraenzlin Aff. at ¶3, Exhs. B at Section 4, C and D).

5

14. A draft of the $1.9 Million Dollar Note, was attached to the First Amendment. (Kraenzlin Aff. at ¶2, Exh. B)

15. Section 3 of the First Amendment provided as follows:

> Section 3. Section 2.04 of the Agreement shall be amended to read, in its entirety, as follows: "Section 2.04 Payment for Non-Competition Agreement. Purchaser shall deliver at Closing a cash payment of $2,500,000 and its Promissory Note of $5,000,000 in exchange for Seller's execution at Closing of the Non-Competition Agreement."

(Kraenzlin Aff. at ¶2, Exh. B at Section 3)

16. Section 4 the First Amendment revised Section 8.06 of the Agreement, (the Special Indemnification and Setoff Provision) to add to the special indemnity certain obligations of BBCT Corporation as well as certain obligations of four affiliated companies. (Kraenzlin Aff. at ¶2, Exhs. B at Section 4)

17. As modified by the First Amendment, Section 8.06 of the Agreement provides, in its entirety, as follows:

> Section 4. Section 8.06 of the Agreement shall be amended to read, in its entirety, as follows: "Section 8.06 Special Indemnification and Set Off. In the event that (i) Babcock Borsig Machinery, Inc. commits a material breach of its obligations to the Company under the Novation Agreement; (ii) the Company or any of its Subsidiaries become obligated for any liabilities under letter of credit and/or guarantees and/or credit and bonding obligations and/or other contingent obligations related to any company affiliated with Seller set forth on Schedules 8.06(a) and 8.06(b) attached hereto; (iii) within thirty (30) days of the Closing, BBCT Corp. has not paid in full its obligations, as set forth in Schedule 3.06 attached hereto; and (iv) within thirty (30) days of Closing, the obligations of TLT Babcock, Inc., BBF, Inc., Babcock Textile Machinery, Inc., and BD Air Fin, Inc., as set forth in the "Pay Under Normal Terms" column of Schedule 3.06 are not paid in full (collectively, the "Contingent Risks"), the Purchaser has the right to withhold, set off, and deduct from amounts due under the Note issued pursuant to Section 2.04, any amounts finally determined to be owed to the Purchaser

6

> pursuant to the terms of Article VIII. To the extent that the Company (or any of its Subsidiaries) are indemnified against any of the foregoing losses pursuant to any pre-existing written agreement(s) in their favor by Senior Thermal Engineering Australia, NEM by, BDI, Inc. or the other company affiliates of Seller identified in Schedules 8.06(a) or 8.06(b), Purchaser shall reasonably pursue such indemnity rights (which obligation shall not, however, extend to the obligation to appeal the decision of the court of primary jurisdiction) for the purpose of reducing any right to withhold, set off or deduction otherwise permitted by this Section."

(emphasis supplied) (Kraenzlin Aff. at ¶3, Exh. B at Section 4)

18. Thus, the First Amendment retained the language of Agreement Section 8.06 that any set off for indemnity was restricted to the Note issued under Agreement Section 2.04 (the $5 Million Note). Agreement Section 8.06, as modified by the First Amendment, contained no terms authorizing withholding setoff or deduction from the $1.9 Million Note. (Kraenzlin Aff. at ¶2, 3 and Exhs. A and B)

19. The $1.9 Million Note contained the following "Event of Default" provision.

> It is expressly agreed that the occurrence of any one or more of the following shall constitute an "Event of Default" hereunder: (a) failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after Payee has given written notice to Maker of such failure other than pursuant to a valid exercise of the Maker's right of setoff set forth in Section 8.6 of the Stock Purchase Agreement; or (b) [the Maker bankruptcy / insolvency]
> If any such Event of Default hereunder shall occur, the Payee may, at its option, declare to be immediately due and payable the then outstanding principal balance under this Note, with all accrued and unpaid interest thereon, and all the other amounts payable to the Payee hereunder, whereupon all such amounts shall become and be due and payable immediately. The failure of the Payee to exercise

7

said option to accelerate shall not constitute a waiver of the right to exercise the same at any other time.

(Kraenzlin Aff. at ¶4, Exh. C at paragraph 3)

20. The $5 Million Note contained the same "Event of Default" provision set forth above at paragraph 19. In addition, the $5 Million Note contained the following provision concerning contingent obligations:

> "In the event that the aggregate of all contingent obligations of Maker and its subsidiaries arising, directly or indirectly, from its guaranties, sureties, or other exposures to the Contingent Risks (as defined in the Stock Purchase Agreement dated as of November 13, 2002, between the Maker and the Payee pursuant to which the Maker purchased all of the issued and outstanding shares of capital stock of BBCC Holding Co., Inc. (the "Company") from BBP) is reduced below the principal amount of this Note then outstanding, Maker shall be required to post an irrevocable, unconditional letter of credit (with an expiration date no earlier than 30 days after the maturity date of this Note) issued by a first class international bank acceptable to the Payee (a "Letter of Credit") for an amount no less than the amount by which the then-outstanding principal amount of this Note exceeds the Contingent Risks. As and when the principal amount of this Note is reduced, Maker shall be entitled to reduce any Letter of Credit to reflect such reduction. If any Contingent Risks become non-contingent, or result in the incurrence of liability or payment on account thereof by Maker (a "Loss"), the principal amount of this Note shall be reduced dollar-for-dollar to reflect such Loss.

(Kraenzlin Aff. at ¶6, Exh. D at paragraph 3)

21. The terms of the $5 Million Note, issued pursuant to Section 2.04 of the Agreement and Section of the First Amendment, limits indemnification setoff to those matters referenced in Section 8.06 of the Agreement. (Kraenzlin at ¶3, 6, 9, Exhs. B and D)

8

22. In contrast to the $5 Million Note, the $1.9 Million Note does not have language authorizing setoff. Rather, the $1.9 Million Note contains parallel language in its "Event of Default" section indicating that setoff was authorized against the note issued pursuant to Section 2.04 of the Agreement (the $5 Million Note). (Kraenzlin Aff. at ¶2, 3, Exhs. B and D)

23. On October 15, 2004, Babcock informed BPI of "Event of Default" on the $1.9 Million Note and the $5 Million Note both due to BPI's failure to pay principal and interest as specified in both the $1.9 Million Note and the $5 Million Note. (Kraenzlin Aff. at ¶11, Exh. E)

24. On October 19, 2004, BPI, notified Babcock the payment of principal under both the $1.9 Million Dollar Note and under the $5 Million Dollar Note would be set of against amounts allegedly due for an insurance program. In claiming such set off against The $1.9 Million Dollar Note, BPI cited its reliance on the definition of Event of Default Section and Schedule 3.06 in the Agreement. (Kraenzlin Aff. at ¶13, Exh. G)

25. BPI failed to cure the Event of Default within the time period specified in the $1.9 Million Note and the $5 Million Note. (Kraenzlin Aff. at ¶12, Exh. F)

26. BPI has paid Babcock only $4,758.00 of interest and $152,876.00 of principal on the $1.9 Million Note. Pursuant to the terms of the $1.9 Million Note, BPI has been obligated to pay upon Babcock's demand a total of $1,900,000.00 of principal and $59,129.00 of interest, plus costs and attorneys fees. (Kraenzlin at ¶12).

> Respectfully Submitted,
> **Babcock Borsig Power GmbH**
> By its Attorneys
>
> _____
> Kenneth M. Bello, BBO# 036630
> Josiah M. Black, BBO #632690
> John F. Welsh, BBO #522640
> Bello Black & Welsh LLP
> 535 Boylston Street, Suite 1102
> Boston, MA 02116
> (617) 247-4100

Dated: June 7, 2005

3009685

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 6/8/05