UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
BABCOCK BORSIG POWER GmbH,                           )
                                                    )
                 Plaintiff,                          )
                                                    )
          v.                                         )
                                                    )
BABCOCK POWER, INC.,                                 )
                                                    )
                 Defendant,                          )
                                                    )        CIVIL ACTION
BABCOCK POWER, INC.,                                 )        NO. 04-10825 (RWZ)
                                                    )
                 Third-Party Plaintiff,              )
                                                    )
          v.                                         )
                                                    )
BABCOCK BORSIG, AG                                   )
                                                    )
                 Third-Party Defendant.              )
                                                    )
_____)

**DEFENDANT BABCOCK POWER, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON PROMISSORY NOTE**

Defendant Babcock Power, Inc. ("Babcock Power") submits this memorandum in

opposition to Plaintiff Babcock Borsig Power GmbH's ("Plaintiff") Motion for Partial Summary

Judgment on a Promissory Note ("Motion"). As discussed below, Plaintiff's Motion lacks merit

and should be denied because (i) the promissory note at issue expressly allows for the set-off

Babcock Power took or, alternatively, (ii) if the note is ambiguous, there is a genuine issue of

material fact as to whether the set-off was appropriate. In any event, as no discovery has been

had as to the meaning of the note at issue, the Court should, at minimum, delay ruling under Fed. R. Civ. P. 56(f) to allow the parties to conduct the necessary discovery.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The facts supporting this opposition are set forth in either Plaintiff's Local Rule 56.1 Statement of Material Facts not in Dispute ("SMF") or Babcock Power's Statement of Disputed Material Facts ("SDMF") submitted herewith pursuant to Local Rule 56.1.  The following summarizes those facts.

In November 2002, Babcock Power, then doing business as Hudson Investment Group, Inc., entered into a Stock Purchase Agreement ("SPA") with Plaintiff to purchase all of the issued and outstanding shares of Plaintiff's subsidiary, BBCC Holding Co., Inc. ("BBCC Holding").  (*See* SMF at ¶3.)  BBCC Holding was the holding company for the various entities that operated the United States power equipment and service business of third-party defendant, the German conglomerate Babcock Borsig AG ("BBX").  (*See* SMF at ¶1.)  Plaintiff itself is a BBX subsidiary.  (*See* SMF at ¶2.)

Consideration for the SPA included the assumption of debt, a cash payment and two promissory notes.  (*See* SDMF at ¶9.)  The notes were tied to agreements entered as integral components of the SPA: a $5 million note (the "$5.0M Note") was executed in return for obligations undertaken in a Non-Competition Agreement ("NCA"), and a $1.9 million note (the "$1.9M Note") was executed in connection with a Transition Consulting Services Agreement ("TCSA"), an agreement calling for Plaintiff to assist in the transfer of the businesses to Babcock Power.  (*See* SDMF at ¶¶17-19, 21-23.)[1]  The assistance specified in the TCSA included, among other things, assistance "in providing information to support past claims and

---

[1]     The $5.0M Note and $1.9M Note are collectively referred to herein as "the Notes."

structural issues" and providing "information regarding employees and human resource matters in relation to (a) transition activities, and (b) past activities." (SDMF at ¶20.) The $5.0M Note calls for payment of accrued interest each month of approximately $15,000 and payment of the principal on the third anniversary of the $5.0M Note's execution. (*See* SDMF at ¶25.) This coincides with the expiration of the three year term of the obligations incurred by the NCA. (*See* SDMF at ¶23.) On the other hand, the $1.9M Note contemplates quarterly principal payments in the amount of $475,000, coinciding with the expiration of the two year term of the TCSA, plus accrued interest. (*See* SDMF at ¶26.) Thus, in the absence of any set-off rights, the first large payment to be made by Babcock Power was $475,000 under the $1.9M Note. (*See* SDMF at ¶¶25-27.)

The disentanglement in November 2002 of the recently purchased BBCC Holding businesses from their former BBX affiliates would not be a simple task. The BBCC Holding entities had become intertwined with other BBX operations over their years of common control. For example, Babcock Power entities were obligated for workers compensation and other insurance coverage payments on behalf of entities with which they were formerly affiliated, and the nature of those obligations required payment even after the closing of the sale of BBCC Holding. (*See* SDMF at ¶¶15-16.)

Thus, while the SPA contained provisions dealing with the settling of intercompany accounts prior to closing, such as Sections 3.06 and 5.06 (Brantl Aff. at Ex. 1),[2] the SPA as amended on November 29, 2002 contemplated that certain expenses would continue to be paid by Babcock Power businesses after closing. In the amended version of Section 3.06 attached to the First Amendment to the SPA ("First Amendment"), at least six intercompany items are listed

---

[2] "Brantl Aff." refers to the Affidavit of James S. Brantl in Support of Babcock Power Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment on Promissory Note, submitted herewith.

3

alongside a notation that includes the language "Subject to the setoff provisions of 8.06" or

"subject to offset provision" (*See* SDMF at ¶¶11-12. SMF Ex. B, Schedule 3.06, fns. (b), (d) and

(e).)[3]  Thus, the amended SPA contemplates that Plaintiff would compensate Babcock Power in

the normal course of business or, alternatively, Babcock Power would be entitled to deduct these

amounts from the periodic payments it made as part of the purchase of BBCC Holding.

To accommodate these necessary post-closing adjustments, such as any workers

compensation payments, each of the Notes contained language specifying the procedures by

which Babcock Power could exercise a right of set off against its periodic payments.  Each of the

Notes contains the following language:

> It is expressly agreed that the occurrence of any one or more of
> the following shall constitute an "Event of Default" hereunder:
> (a) failure to pay any amount of any installment of interest or
> principal hereunder which is not cured within five (5) days after
> Payee has given written notice to Maker of such failure *other than
> pursuant to a valid exercise of the Maker's right of **set off** set forth
> in Section 8.6 of the Stock Purchase Agreement*.  (Emphasis
> added.)  (SMF ¶¶19-20, SDMF ¶2.)[4]

The SPA, as amended, was executed on November 29, 2002.  (*See* SMF Ex. A.)  Later

the following year, on July 8, 2003, Babcock Power informed Plaintiff of the amounts that were

due to compensate Babcock Power for workers compensation payments it had made.  (*See*

SDMF at ¶14.)  Babcock Power asked Plaintiff to remit payment within 30 days, or the amount

---

[3]  Thus, Plaintiff simply failed to account for the First Amendment when it stated in its Memorandum in Support of its Motion ("Memorandum") that "[n]either Agreement Section 3.06 nor Agreement Schedule 3.06 contain any reference to setoff whatsoever."  Memorandum at 8.

[4]  But there is no Section 8.6 in the SPA; the SPA provision expressly referenced in each of the Notes does not even exist.  (*See* SMF Ex. A.)  The closest relevant clause in the SPA addressing set off appears in Section 8.06, which, as amended by the First Amendment, gave Babcock Power

> the right to withhold, set off, and deduct from amounts due under the Note issued pursuant to Section 2.04, any amounts finally determined to be owed to the Purchaser pursuant to the terms of Article VIII.  (SMF ¶17.)

The "Note issued pursuant to Section 2.04" of the SPA is, admittedly, the $5.0M Note.

LIBA/1563780.2

would be "subject to set off against *the notes*." (*Id.*) (emphasis added). As the Notes were already in dispute in the litigation between the parties—for the simple reason that they were part of the consideration for the SPA which included as a central component the disputed Noncompetition Agreement—the workers' compensation payments thus became intertwined with the dispute and their payment was included in the allegations contained in Babcock Power's state court complaint dated November 10, 2003. (*See* SDMF at ¶13.) Because Babcock Power still had not been reimbursed over one year later for these payments, it continued to make the amounts due an issue in its September 15, 2004 counterclaims in this action. *See* Babcock Power, Inc.'s Counterclaims, Third-Party Complaint, and Jury Demand ("Counterclaims") at ¶¶6, 60-61, and 77-81. In its pleadings, Plaintiff disputes that such payment is due Babcock Power. (*See* Answer of Plaintiff Babcock Borsig Power, GmbH and Third-Party Defendant Babcock Borsig AG ("Answer") at ¶61.)

Babcock Power has since begun making payments on the Notes, less the set off explicitly allowed by the Notes, while reserving all of its rights. (*See* SDMF at ¶¶8-10.) In response to Babcock Power's exercise of its right of set off, Plaintiff included in its First Amended Complaint on December 20, 2004 a claim on the $1.9M Note, alleging that such set off was improper as to that note. (*See* Plaintiff's First Amended Complaint at ¶48.)[5] Six months after it filed its amended complaint on June 7, 2005, Plaintiff made the instant Motion, seeking partial summary judgment on that claim.

---

[5]   Interestingly, Plaintiff states in its Memorandum that it "has performed satisfactorily under the [TCSA]." (Memorandum at 6.) Plaintiff offers no factual support for this statement, nor can it harmonize its refusal to pay over $1.7 million in post-closing workers compensation payments with its TCSA obligations of assisting "in providing information to support past claims and structural issues" and providing "information regarding employees and human resource matters in relation to (a) transition activities, and (b) past activities."

LIBA/1563780.2

## II.    PARTIAL SUMMARY JUDGMENT STANDARD

Partial summary judgment is only appropriate if the pleadings, discovery and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court examines the record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor."  *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997).

An argument between parties about the meaning of a contract "is typically an argument about a material fact, namely, the factual meaning of the contract."  *Boston Five Cents Sav. Bank v. Secretary of the Dep't of Housing and Urban Dev.*, 768 F.2d 5, 8 (1st Cir. 1985).  Thus, summary judgment may only be granted where the language of a contract is so unambiguous, or other supporting evidence is so one-sided, that no reasonable person could differ about what the contract means.  *Id.*  These principles apply to construction of promissory notes.  *See Deere & Co. v. Ford*, 2002 Mass. Super. LEXIS 296 (Mass. Super. Ct., 2002) (applying contract law principles in deciding motion for summary judgment on a promissory note).

Moreover, the situation here is analogous to cases in which courts deny motions for partial summary judgment under Rule 56(d) for prudential reasons.  In ruling on a motion for partial summary judgment under Rule 56(d), a court may, in its discretion in shaping the case for trial, consider whether granting the motion would promote the expeditious disposition of the case.  The court may deny the motion if granting it would not "be of practical assistance in setting the underlying controversy to rest."  *Datatrend, Inc. v. Jabil Circuit, Inc.*, 3 F. Supp. 2d 66, 74 (D. Mass. 1997) (citing *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994)).

III.     **LEGAL ARGUMENT**

    A.     **Plaintiff's Motion for Summary Judgment on the $1.9M Note Should Be Denied Because the Note Expressly Allows a Right of Set Off.**

Plaintiff's Motion should be denied because the express terms of the $1.9M Note allow for a set off.  Plaintiff asks the Court to treat language in the $1.9M Note allowing for the right of set off as mere surplusage.  This position is at clear odds with Massachusetts contract law, which requires that each clause of a contract be given meaning and effect.

Under Massachusetts law, a contract is to be construed to give effect to each of its provisions.  *McMahon v. Monarch Life Ins. Co.*, 345 Mass. 261, 264 (1962).  As Plaintiff's own cases make clear, every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect.  *Hosmer v. Commonwealth*, 302 Mass. 495, 501 (1939).  In essence, no part of a contract is to be disregarded or deemed superfluous.  *Starr v. Fordham*, 420 Mass. 178, 190 (1995); *Den Norske Bank AS v. First Nat'l Bank*, 75 F.3d 49, 54 (1st Cir. 1995).  Nor can it be argued that any words of a contract were "added heedlessly" such that they are to be ignored.  *Hosmer*, 302 Mass. at 502.

In light of these fundamental principles of contract law, Plaintiff's Motion lacks merit. On its face, the $1.9M Note expressly and unambiguously provides for a right of set off. It allows for "a valid exercise of the Maker's right of set off".  (SDMF at ¶2.)  Rather than accepting that these express terms have meaning applicable to the note in which they appear, Plaintiff instead contends that the set off provision contained in the $1.9M Note applies only to the $5.0M Note.  *See* Plaintiff's Memorandum at II.B.  In effect, under Plaintiff's reading of the $1.9M Note, there could never be a right of set off against that note.  This position disregards and renders superfluous the express language of the $1.9M Note allowing a right of set off, thus

contradicting the clear directive of the case law to give meaning and effect to each clause of a contract.

Indeed, it is eminently reasonable to assume that there is a set off for intercompany accounts allowable against the $1.9M Note, for at least two reasons. First, the workers' compensation payments being set off relate to the transition of the purchased businesses from their former parent and affiliates, and thus relate directly to the TCSA. As such, any set-off should apply to the note associated with the TCSA—the $1.9M Note—and not the note more directly tied to non-competition obligations—the $5.0M Note. Second, the first large payment due under either of the Notes was the $475,000 payment under the $1.9M Note due in November 2003. (SDMF at ¶¶25-27.) Thus, from a business perspective, it is entirely logical that the maker would want to set off against its first large payment, as it did here, rather than against the more modest payments due at first in 2003 and 2004 under the $5.0M Note.[6]

Because the $1.9M Note expressly and sensibly provides for a right of set off, the grounds for Plaintiff's Motion are untenable and its Motion should be denied.[7]

### B.    Plaintiff's Motion Should Be Denied Because the $1.9M Note's Ambiguity Makes Summary Judgment Inappropriate.

Alternatively, Plaintiff's Motion should be denied because the $1.9M Note is ambiguous, and there is a genuine dispute concerning its meaning.

---

[6]    No discovery has yet been had in this litigation, as explained in more detail in §III.C., *infra*. Discovery may reveal additional reasons for the express language in the $1.9M Note allowing set off against that note.

[7]    Plaintiff offers only a tortured discussion of the text of the Notes and SPA in support of its position that no set off is allowed under the $1.9M Note. It offers no justification as to why the set off language in the $1.9 M appears in the Note if it is to not apply at all to that note, nor does it offer any business justification supporting its argument that set off for workers compensation payments should be allowed against the $5.0M Note which, by Plaintiff's own admission, is tied not to any transition activities, but rather to noncompetition obligations. (*See* SMF ¶4.) Plaintiff offers no justification, nor could it, as to how setoffs for intercompany accounts could logically be tied to noncompetition obligations or payments.

Under Massachusetts law, a contract is ambiguous as a matter of law where its terms are inconsistent. *Lanier Prof'l. Serv., Inc. v. Ricci*, 192 F.3d 1, 10 (1st Cir. 1999). Where contractual language is ambiguous, a fact finder must resolve the ambiguity by considering the factual evidence offered by the parties to support their differing interpretations, in order to discern their true intent. *Den Norske*, 75 F.3d at 52-53. A court should not grant summary judgment on an ambiguous contract unless the extrinsic evidence presented regarding the parties' intended meaning reasonably supports only one construction of the contract. *Id*. Thus, as stated in *Allen v. Adage, Inc.*, 967 F.2d 695, 698 n.3 (1st Cir. 1992), "in situations where the extrinsic evidence relevant to the interpretation of an ambiguous contractual provision is contested or contradictory, summary judgment will often be inappropriate."

Here, even if the Court is not persuaded that the $1.9M Note unambiguously allows for a right of set off, it should find at a minimum that the Note is ambiguous. As described above, the $1.9M Note's express terms allow for a right of set off, and this is entirely consistent with the stated text of the companion TCSA. The Motion ignores completely the $1.9M Note's set-off clause and the context of the $1.9M Note. Instead, Plaintiff relies upon other text in the Notes and SPA in support of its argument that no set off is permitted against the $1.9M Note. *See* Plaintiff's Memorandum at II.B.1-2. These competing interpretations of the $1.9M Note, in light of the TCSA, present, at best, a textual inconsistency.

Assuming that the $1.9M Note is ambiguous, the extrinsic evidence submitted by the parties on Plaintiff's Motion does not lead to only one plausible interpretation. Rather, it reveals a genuine dispute about the factual meaning of the contract. Although Dr. Kraenzlin's affidavit is silent as to whether the parties intended to create a right of set off against the $1.9M Note, the obvious import of his declaration in that the parties did not intend to include a right to set off

9

against the $1.9M Note.  *See* undated Affidavit of Dr. Georg-Peter Kraenzlin, submitted along with Motion for Partial Summary Judgment on Promissory Note ("Kraenzlin Aff.") at ¶¶8-11. In an affidavit in support of this opposition, Jim Brantl, Babcock Power's general counsel and a participant in the SPA negotiations—which included negotiations as to the Notes—states that it is entirely reasonable for the right of set off to apply to the $1.9M Note, consistent with the terms of that note.  (*See* Brantl Aff. at ¶¶20-23.)  Summary judgment is therefore inappropriate in this case as there is a genuine issue of material fact as to whether the $1.9M Note properly includes a set off right for intercompany accounts, such as workers compensation payments.

The present case is analogous to *Space Master Int'l, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir. 1991), where the district court had granted summary judgment in favor of the plaintiff regarding the enforceability of a liquidated damages provision in a contract between the parties.  On appeal, the First Circuit reversed the district court's grant of summary judgment because the parties offered "contradictory and ambiguous" deposition statements regarding the intended meaning of the liquidated damages provision, raising a genuine issue of material fact. *Id*. at 19-20.  The case was remanded for trial on the issue of the parties' intent.  *Id*. at 20.

Similarly, in *Henry v. Nat'l Geographic Soc'y,* 147 F. Supp. 2d 16, 19-20 (D. Mass. 2001), the court denied defendant's motion for summary judgment on a contract claim where the contract at issue was ambiguous because it contained contradictory provisions.  In a dispute over whether the contract allowed defendant to use plaintiff's photographs in publications other than the "Driving Guides" for which they were taken, the defendant cited a provision that "appear[ed] to transfer to it all rights in [] photographs" taken by plaintiff.  The court found that the defendant's reliance on this provision would have rendered "superfluous" a provision cited by the plaintiff that limited defendant's publication of the photographs to materials "related to" the

Driving Guides, and refused to adopt a construction of that contract that "render[ed] any part a

nullity." *Id*. The court also found that a genuine dispute existed regarding the meaning of the

term "related" in the contract at issue. *Id. See also Am. Heritage Life Ins. Co. v. U.S. Adm'rs*,

*Inc*., 1986 U.S. Dist. LEXIS 21110 (D. Mass. 1986) (Zobel, J.) (denying summary judgment

because of ambiguity in underlying contract).

Based on the foregoing, the Court should find that there is a genuine dispute concerning a

material fact relating to the express set off clause contained in the $1.9M Note and deny

Plaintiff's Motion.

### C.    Plaintiff's Motion Should Be Denied to Allow Discovery Pursuant to Fed. R. Civ. P. 56(f).

Not only is partial summary judgment on the $1.9M inappropriate because (i) the $1.9M

Note unambiguously allows a right of set off or, alternately, (ii) the $1.9M Note is ambiguous,

and Mr. Brantl's affidavit raises a genuine issue of material fact as to whether a set off right

exists, but plaintiff's Motion also must be denied under Fed. R. Civ. P. 56(f) because no

discovery has been taken to fully develop facts relating to the intention of the parties.

Rule 56(f) of the Federal Rules of Civil Procedure provides for a denial or continuance of

a motion for summary judgment where, as here, no discovery has occurred as to matters

susceptible to factual dispute raised in a summary judgment motion. Specifically, the rule

provides:

> Should it appear from the affidavits of a party opposing the motion
> that the party cannot for reasons stated present by affidavit facts
> essential to justify the party's opposition, the court may refuse the
> application for judgment or may order a continuance to permit
> affidavits to be obtained or depositions to be taken or discovery to
> be had or may make such other order as is just.

A district court, in its discretion, may consider five requirements for relief under

Rule 56(f): "authoritativeness, timeliness, good cause, utility, and materiality." *Resolution Trust*

*Corp. v. North Bridge Assoc., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994). Not every requirement

must be met in every case, but, "[w]hen all five requirements are satisfied . . . a strong

presumption arises in favor of relief." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 n.5 (1986)). Each of the five requirements is met here.

First, an affidavit in support of a motion under Rule 56(f) is authoritative if it is of record,

has been served on the opposing party, and "signed by a person who possesses firsthand

knowledge and who is competent to address the specifics of the matters discussed." *Id.* at 1204.

Here, Babcock Power submits the attached Affidavit of James S. Brantl. *See* Brantl Aff. His

affidavit was duly sworn and is being served on Plaintiff concurrently with this opposition.

Second, a Rule 56(f) request must be timely, that is, it must be made within a "reasonable

time" after receipt of a motion for summary judgment. *Id.*; *see also Rodriguez-Cuervos v.*

*Wal-Mart Stores, Inc.*, 181 F.3d 15, 23 (1st Cir. 1999) ("to 'savor the balm' of Rule 56(f), a

party must move for a discovery continuance in a timely fashion") (*citing Massachusetts Sch. of*

*Law at Andover, Inc. v. American Bar Assoc.*, 142 F.3d 26, 44 (1st Cir. 1998)). Here, Babcock

Power's request, made herein as an alternative grounds for denial of the Motion within the

prescribed time to oppose Plaintiff's motion for summary judgment, is timely. *Cf. C.B.*

*Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44 (1st Cir. 1998) ("a party ordinarily

may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its

first effort is unsuccessful").

Third, defendants must show good cause for the request for continuance by

demonstrating diligence in discovery. *See Resolution Trust*, 22 F.3d at 1205. Here, there has not

yet been an opportunity for the discovery of any materials relating to the intended meaning of the

$1.9M Note. A scheduling order contemplates that fact discovery shall be completed by

December 30, 2005, and Babcock Power is diligently attempting to depose Plaintiff by means of a Rule 30(b)(6) deposition. (*See* SDMF at ¶¶28-29.) So far, that deposition has not occurred, though it is scheduled for July 28, 2005. Babcock Power will base its subsequent discovery requests on information learned in this deposition about the location and identity of documents and witnesses.

Fourth, the Court may consider the utility of permitting additional discovery under Rule 56(f), that is, whether there is a "plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact." *Resolution Trust*, 22 F.3d at 1206. For purposes of this requirement, the "Rule 56(f) proffer need not be presented in a form suitable for admission as evidence at trial, so long as it rises sufficiently above mere speculation." *Id.* In his attached affidavit, Mr. Brantl states that it is his belief that discovery is likely to result in information relevant to whether the parties intended that a right of set off be allowed against that note. *See* Brantl Aff. at ¶31. Indeed, such discovery might alternatively reveal whether the reference to Section 2.04 in SPA Section 8.06 is simply a mistake, not unlike the apparent mistake on the face of each of the Notes in referring to an SPA section which does not even exist—"Section 8.6." In any event, regardless whether or not there was a drafting mistake, the proffer that discovery will likely result in information reflecting on the intent of the parties rises well above the level of "mere speculation" that the proposed discovery will lead to information relevant to ascertaining the meaning of the set off provision in the $1.9M Note, and Babcock Power should be permitted to pursue such discovery.

Fifth and finally, the facts sought pursuant to Rule 56(f) must be material or "foreseeably capable of breathing life into [a party's] claim or defense." *Resolution Trust*, 22 F.3d at 1207 (citation omitted). Because "[e]valuating the potential significance of unknown facts in regard to

unadjudicated issues is something of a metaphysical exercise . . . the threshold of materiality at this stage of a case is necessarily low." *Id.* Of course, here, the materiality threshold is easily met because the intent of the parties and circumstances surrounding the making of the $1.9M Note are directly relevant to the interpretation of the $1.9M Note's express set off provision.

Thus, all factors counseling in favor of a postponement of consideration under Rule 56(f) are met here. Until Babcock Power has had the opportunity to discover the materials relating to the $1.9M Note's intended meaning, Plaintiff's Motion is premature.

**D.    Granting Plaintiff's Motion Will Not Materially Expedite the Adjudication of the Litigation.**

In addition to satisfaction of the factors developed under Rule 56(f) caselaw, for prudential reasons of case management the Court should not address Plaintiff's Motion now, before any discovery has been taken.

First, granting Plaintiff's Motion on the $1.9M Note will not narrow the scope of discovery or the issues to be adjudicated in this action. The intent of the parties with respect to the SPA and its adjunct agreements, the NCA and TCSA—and the circumstances under which those agreements and the Notes were made—will be the subject of discovery and remain at issue in the litigation regardless whether the Court rules now on Plaintiff's Motion or reserves judgment until later in the litigation. The intent of the parties on the $1.9M Note is interwoven with these issues and discovery will be had as to this issue regardless how the Court rules on the Motion; indeed, payment of the Notes at all will remain an issue regardless of how the Court rules on Plaintiff's Motion by virtue of the counterclaims raised by Babcock Power. *See* Counterclaims at ¶66. Moreover, BPI has included in its Counterclaims a claim seeking a declaratory judgment that it is entitled to the workers compensation payments it has paid on behalf of Plaintiff and BBX—the very payments at issue in the Motion. *See id.* at ¶¶6, 60-61,

77-81.  The propriety of these payments and fact that they are reimbursable will remain at issue regardless whether the Court decides the Motion now; thus, the Motion will not even fully resolve all of the narrow issues relating to the workers compensation payments.

Second, any decision on the $1.9M Note now, prior to the commencement of fact discovery, would result in determining this litigation in piecemeal fashion.  Of course, such practice runs the risk that subsequent discovery may reveal new facts relevant to an issue already decided upon, leading to the possibility of inconsistent rulings.

Third, Plaintiff is not prejudiced by delaying a ruling on its claim on the $1.9M Note until after fact discovery is complete.  If Plaintiff is entitled to payments due on the $1.9M Note without set off, as it now argues, it can recover such amount at the end of this litigation; the ability of the Court to award pre-judgment interest eliminates any potential prejudice. Furthermore, over two years have elapsed since Babcock Power first raised the issue of set off in its July 8, 2003 letter; twenty months have elapsed since Babcock Power put the $1.9M Note at issue in the related state court litigation; and six months have elapsed since Plaintiff filed its First Amended Complaint including its claim regarding the $1.9M Note.  The passage of six more months until the completion of fact discovery surely will not prejudice Plaintiff given the amount of time that had already elapsed before it moved for partial summary judgment as to this note.[8]

---

[8]    Because the $1.9M Note expressly allows for set off, or, alternatively, the $1.9M Note is on its face ambiguous and there is a dispute as to its meaning, summary judgment should be denied or at least deferred under Rule 56(f) according to the terms appearing on the face of the note and the accompanying affidavit.  Thus, Babcock Power does not need to address Plaintiff's argument in Memorandum Section III.C. that the $1.9M Note contains an implied right of setoff or recoupment.   Babcock Power will brief this issue if the Court deems it necessary, but believes any argument about implied setoff is irrelevant at this point due to the genuine issues of material fact raised simply on the face of the $1.9M Note, or the need for further discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Babcock Power requests that this Court deny

Plaintiff's Motion for Partial Summary Judgment, or, in the alternative, continue consideration of

Plaintiff's Motion until after the close of fact discovery pursuant to Rule 56(f).


Respectfully submitted,

BABCOCK POWER, INC.

By its attorneys,


_/S/ Steven J. Comen_____
Steven J. Comen (BBO #093320)
James O. Fleckner (BBO #641494)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Telephone: (617) 570-1000

Dated: July 22, 2005

16