UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
BABCOCK BORSIG POWER GmbH,          )
                                    )
              Plaintiff,            )
                                    )
       v.                           )
                                    )
BABCOCK POWER, INC.,                )
                                    )
              Defendant,            )
                                    )   CIVIL ACTION
BABCOCK POWER, INC.,                )   NO. 04-10825 (RWZ)
                                    )
              Third-Party Plaintiff,)
                                    )
       v.                           )
                                    )
BABCOCK BORSIG, AG                  )
                                    )
              Third-Party Defendant.)
                                    )
_____)

**DEFENDANT BABCOCK POWER, INC.'S STATEMENT OF
DISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROMISSORY NOTE**

Defendant Babcock Power, Inc. ("Babcock Power"), through its undersigned counsel,

submits this statement of disputed material facts pursuant to Local Rule 56.1, on which there are

issues to be tried with respect to plaintiff's motion for partial summary judgment on the

promissory note:

1.      The $1.9 Million Promissory Note, dated November 29, 2002, executed by Babcock Power ("$1.9M Note") contains language expressly authorizing a right of setoff. (Brantl Aff., Ex. 5.)[1]

2.      The $1.9 Million Note expressly states on page 3:

> It is expressly agreed that the occurrence of one or more of the following shall constitute an "Event of Default" hereunder:  (a) failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after Payee has given written notice to Maker of such failure *other than pursuant to a valid exercise of the Maker's right of set off set forth in Section 8.6 of the Stock Purchase Agreement . . .*"  (*Id.*) (Emphasis added.)

3.      "Maker" is defined in the $1.9M Note as defendant Babcock Power.  (*Id.*)

4.      "Payee" is defined in the $1.9M Note as plaintiff Babcock Borsig Power GmbH ("Plaintiff") together with any subsequent holders of the note.  (*Id.*)

5.      There is no Section 8.6 of the Stock Purchase Agreement dated November 13, 2002, as amended dated November 29, 2002 ("SPA").  (Brantl Aff., Ex. 1.)

6.      Section 8.06 of the SPA allows for a setoff against the note issued to Section 2.04 of the SPA; the note issued pursuant to Section 2.04 of the SPA is a second promissory note executed by Babcock Power in the amount of $5 Million, also dated November 29, 2002 ("$5.0M Note").  (Brantl Aff., Ex. 1.)

7.      The $1.9M Note does not contain any reference on its face to Section 2.04 of the SPA.  (Brantl Aff., Ex. 5.)

8.      In an October 19, 2004 letter to Plaintiff's counsel, Babcock Power's counsel states that Babcock Power elected its rights of setoff under (i) both the $1.9M Note and the $5.0M Note (collectively, the "Notes") *and* (ii) Section 3.06 of the SPA.  (Brantl Aff., Ex. 12.)

---

[1]      "Brantl Aff." refers to the Affidavit of James S. Brantl in Support of Babcock Power Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment on Promissory Note, submitted herewith.

9.     The Notes, along with the assumption of debt and a cash payment, were part of the consideration for the SPA.

10.     In its October 19, 2004 letter, Babcock Power's counsel expressly states:

> [Babcock Power] will elect its setoff rights under the Notes in the definition of Event of Default section and Schedule 3.06 of the Stock Purchase Agreement with regard to principal payments and interest that would otherwise be due in regard to the Notes.  (*Id.*)

11.     Section 3.06 of the SPA addresses intercompany accounts, and identifies SPA Schedule 3.06 as listing such accounts.  (Brantl Aff., Ex. 1.)

12.     The revised SPA Section 3.06 attached to the November 29, 2002 First Amendment to the SPA, contains six separate intercompany items that are accompanied by a notation that includes the language "Subject to the setoff provisions of 8.06" or "subject to offset provision(s) of 8.06."  (Brantl Aff., Ex. 7, Schedule 3.06, fns. (b), (d) and (e).)

13.     Babcock Power also included the workers' compensation payments in the allegations in its state court complaint dated November 10, 2003.  (Brantl Aff., Ex. 9.)

14.     Prior to October 19, 2004, on July 8, 2003, Babcock Power sent Plaintiff a letter informing it of the amounts Babcock Power was owed for workers compensation payments and that payment to Babcock Power was due within thirty days.  The letter also informed Plaintiff that the amounts were also subject to set off against the Notes.  (Brantl Aff., Ex. 8.)

15.     The SPA and the Notes contemplated that certain inter-company accounts would need to be settled after the close of the SPA.  (Brantl Aff. at ¶17.)

16.     One type of intercompany account that would need to be settled after the execution of the SPA related to workers' compensation payments made by Babcock Power's businesses on behalf of businesses that were not purchased by Babcock Power from Plaintiff. (Brantl Aff. at ¶18.)

17.    The $1.9M Note was part of the consideration for the Transition Consulting Services Agreement ("TCSA").  (Brantl Aff. at ¶12.)

18.    The TCSA was entered into as part of the SPA and was an integral part of that agreement.  (Brantl Aff. at ¶4.)

19.    The purpose of the TCSA was to allow for an orderly way in which the seller, Plaintiff and its affiliates, would assist the buyer, Babcock Power, in conducting the purchased businesses going forward.  (Brantl Aff. at ¶13.)

20.    The services which Plaintiff agreed to perform for Babcock Power in the TCSA, as listed in Annex A of that agreement, include, but were not limited to:

> 3.  Assist in providing information to support past claims and structural issues; and

> 4.  Provide information regarding employees and human resource matters in relation to (a) transition activities, and (b) past activities.  (Brantl Aff. Ex. 6.)

21.    The $5.0M Note was part of the consideration for the Noncompetition Agreement ("NCA").  (Brantl Aff. at ¶8.)

22.    The NCA was entered into as part of the SPA and was an integral part of that Agreement.  (Brantl Aff. at ¶4.)

23.    The purpose of the NCA was to provide noncompetition protection for the purchased businesses for a term of three years after its execution.  (Brantl Aff. at ¶9.)

24.    The workers' compensation payments that were set off by Babcock Power under the $1.9M Note were more relevant to the obligations incurred under the Transition Consulting Services Agreement than they were to the obligations incurred in the Noncompetition Agreement.  (Brantl Aff. at ¶23.)

25.     The payment terms for the $5.0M Note call for payment of accrued interest of approximately $15,000 each month after the signing of the note, with principal payable three years after execution of the $5.0M Note.  (Brantl Aff. at ¶20.)

26.     The payment terms for the $1.9M Note call for payment of interest and principal in four equal installments of approximately $475,000 each quarter beginning one year after execution of the $1.9M Note.  (Brantl Aff. at ¶21.)

27.     Babcock Power's payment obligations were thus greater in the first two years after signing the Stock Purchase Agreement and its related agreements under the $1.9M Note than they were under the $5M Note.  (Brantl Aff. at ¶22.)

28.     Fact discovery in this litigation is not scheduled to be completed until December 30, 2005.  (Brantl Aff. at ¶32.)

29.     Babcock Power has noticed the 30(b)(6) deposition of third-party defendant, Babcock Borsig AG, which is currently scheduled to take place in Germany on July 28, 2005. (Brantl Aff. at ¶33.)


Respectfully submitted,

BABCOCK POWER, INC.
By its attorneys,


 _/S/ Steven J. Comen_____
Steven J. Comen (BBO #093320)
James O. Fleckner (BBO #641494)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
DATED:  July 22, 2005                      617-570-1000

5