UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH,<br><br>Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br><br>Defendant,<br><br>BABCOCK POWER, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BABCOCK BORSIG, AG<br><br>Third-Party Defendant. | CIVIL ACTION<br>NO. 04-10825 (RWZ) |

**AFFIDAVIT OF JAMES S. BRANTL IN SUPPORT OF**
**BABCOCK POWER, INC.'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROMISSORY NOTE**

I, James S. Brantl, hereby depose and state as follows:

1.   Among other positions, I am General Counsel to Defendant Babcock Power, Inc. ("Babcock Power"). I submit this declaration, which is based on my personal knowledge and belief, unless otherwise expressly stated, in support of Babcock Power Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment on the Promissory Note.

2. In November 2002, among other positions, I was a director of Babcock Borsig Capital Corporation. I was involved in the negotiation of various agreements that constituted the transaction by which Babcock Power's predecessor, Hudson Investment Group, purchased the United States power equipment operations of Plaintiff Babcock Borsig Power GmbH ("Plaintiff").

**The November 2002 purchase by Babcock Power of Plaintiff's United States operations.**

3. The sale of assets to Babcock Power was effectuated by a Stock Purchase Agreement ("SPA") and an amendment thereto.

4. Integral to the SPA, among other things, were a Non-Competition Agreement ("NCA") and a Transition Consulting Services Agreement ("TCSA") between the parties to the SPA (the SPA, NCA and TSCA are collectively referred to herein as the "Agreements"), as well as two promissory notes made by Babcock Power in the amounts of $5 million and $1.9 million (respectively, the "$5.0M Note" and the "$1.9M Note," or collectively "the Notes").

5. The Agreements and the Notes were interdependent parts of the overall transaction between Babcock Power and Plaintiff.

6. A true and correct copy of the SPA is attached hereto as Exhibit 1.

7. A true and correct copy of the First Amendment to the SPA is attached hereto as Exhibit 2.

8. The $5.0M Note was issued by Babcock Power as part of the consideration for the NCA.

9. The purpose of the NCA was to provide noncompetition protection for the purchased businesses for a term of three years after its execution.

10. A true and correct copy of the $5.0M Note is attached hereto as Exhibit 3.

11. A true and correct copy of the NCA is attached hereto as Exhibit 4.

2

LIBA/1564819.2

12. The $1.9M Note was issued by Babcock Power as part of the consideration for the TCSA.

13. The purpose of the TCSA was to set forth a way in which the seller, Plaintiff and its affiliates, would assist the buyer, Babcock Power, in conducting the purchased businesses going forward.

14. The services which Plaintiff agreed to perform for Babcock Power in the TCSA, as listed in Annex A of that agreement, include, but were not limited to:

> 3. Assist in providing information to support past claims and structural issues; and
>
> 4. Provide information regarding employees and human resource matters in relation to (a) transition activities, and (b) past activities.

15. A true and correct copy of the $1.9M Note is attached hereto as Exhibit 5.

16. A true and correct copy of the TCSA is attached hereto as Exhibit 6.

**The Notes expressly allow a right of set off for the convenient adjustment of inter-company accounts after the closing.**

17. The SPA and the Notes contemplated that certain inter-company accounts would need to be settled after the close of the SPA.

18. One type of inter-company account that would need to be settled after the execution of the SPA related to workers' compensation payments made by Babcock Power's businesses on behalf of businesses that were not purchased by Babcock Power from Plaintiff.

19. Schedule 3.06 of the First Amendment to the SPA expressly contains six separate intercompany items that are accompanied by a notation that includes the language "Subject to the setoff provisions of 8.06" or "subject to offset provision(s) of 8.06." A true and correct copy of updated Schedule 3.06 of the First Amendment is attached hereto as Exhibit 7.

LIBA/1564819.2

### The express language of the Notes accords with practical business reasons for allowing a right of set off against the $1.9M Note.

20. The payment terms for the $5.0M Note call for payment of accrued interest of approximately $15,000 each month after the signing of the note, with principal payable three years after execution of the $5.0M Note.

21. The payment terms for the $1.9M Note call for payment of interest and principal in four equal installments of approximately $475,000 each quarter beginning one year after execution of the $1.9M Note.

22. Babcock Power's payment obligations were thus greater in the first two years after entering the Agreements under the $1.9M Note than they were under the $5M Note.

23. Moreover, the workers' compensation payments that were set off by Babcock Power under the $1.9M Note were more relevant to the obligations incurred under the Transition Consulting Services Agreement than they were to the obligations incurred in the NCA.

### Babcock Power exercised its right of set off against the $1.9M Note.

24. On July 8, 2003, I caused a letter to be delivered to Plaintiff informing Plaintiff of the amounts Babcock Power was owed for workers compensation payments. A true and correct copy of the July 8, 2003 letter is attached hereto as Exhibit 8.

25. In the letter, I notified Plaintiff that payment to Babcock Power was due within thirty days, and that the amounts were also subject to set off against the Notes.

26. Because Plaintiff failed to reimburse Babcock Power, the workers' compensation payments became a subject of this litigation as allegations contained in Babcock Power's state court complaint dated November 10, 2003. A true and correct copy of the November 10, 2003 state court complaint is attached hereto as Exhibit 9.

4

27. Babcock Power also made the workers compensation payments an issue in its counterclaims in this action. A true and correct copy of Babcock Power's Counterclaims, Third-Party Complaint and Jury Demand is attached hereto as Exhibit 10. A copy of Answer of Plaintiff Babcock Borsig Power GmbH and Third-Party Defendant Babcock Borsig AG is attached hereto as Exhibit 11.

28. In an October 19, 2004 letter to Plaintiff's counsel, Babcock Power's counsel states that Babcock Power elected its rights of setoff under (i) both the $1.9M Note and the $5.0M Note *and* (ii) Section 3.06 of the SPA.

29. In its October 19, 2004 letter, Babcock Power's counsel expressly states:

> [Babcock Power] will elect its setoff rights under the Notes in the definition of Event of Default section and Schedule 3.06 of the Stock Purchase Agreement with regard to principal payments and interest that would otherwise be due in regard to the Notes.

30. A true and correct copy of the October 19, 2004 letter is attached hereto as Exhibit 12.

**Discovery will likely reveal material relevant to Babcock Power's position that the $1.9M Note allows a right of set off.**

31. Babcock Power believes that depositions of persons involved in the negotiation of the Agreements and the Notes and document discovery in this litigation are likely to result in information relevant to whether the parties intended a right of set off against the $1.9M Note.

32. No deposition have yet to be taken in this litigation. Fact discovery is not scheduled to be completed until December 30, 2005. A copy of the Joint Proposed Discovery Plan is attached hereto as Exhibit 13.

33. Babcock Power has noticed the 30(b)(6) deposition of third-party defendant, Babcock Borsig AG, which is currently scheduled to take place in Germany on July 28, 2005. A copy of that deposition notice is attached hereto as Exhibit 14. Babcock Power's counsel have attempted to accommodate requests by Plaintiff's counsel as to the scope of this first deposition by voluntarily limiting a few areas of inquiry, as indicated in the correspondence attached hereto as Exhibits 15 and 16.

34. Babcock Power intends to serve additional discovery requests after the completion of that deposition. As I understand, such additional discovery has been discussed between Babcock Power's counsel and Plaintiff's counsel from the very beginning of this litigation, the deposition is just the first step of discovery, to be followed by formal document discovery from the deponent and people under his control to be followed by substantive depositions of the deponent and others after relevant documents have been produced.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 22, 2005.

_____
James S. Brantl