# EXHIBIT 3



# PROMISSORY NOTE

$5,000,000                                                         November 2͞1͞, 2002

     FOR VALUE RECEIVED, the undersigned, Babcock Power Inc., a Delaware corporation, with a place of business at 82 Cambridge Street, Burlington, Massachusetts 01803 (hereinafter referred to as the "Maker"), promises to pay to the order of Babcock Borsig Power GmbH, a German corporation ("BBP," and together with any subsequent holders of this Note, the "Payee"), in accordance with the payment instructions designated below, or at such other place as the Payee may from time to time designate in writing, the principal sum of

FIVE MILLION UNITED STATES DOLLARS ($5,000,000)

together with interest on the unpaid principal balance hereof from time to time at the LIBOR Rate (as defined below). Such interest shall be due and payable monthly in arrears on the first day of each month commencing on the first day of the month next succeeding the date hereof, in the amount then accrued and unpaid. In the absence of demonstrable error, the books and records of the Payee shall constitute prima-facie evidence of the unpaid principal balance and accrued interest hereof from time to time.

     This Note is being delivered to BBP pursuant to the terms of that certain Non-Competition Agreement dated even herewith between the Maker and BBP.

     As used herein, the term "LIBOR Rate" means the rate per annum as determined each month on the basis of the offered rates for deposits in U.S. Dollars, for a one (1) year period which appears on the Telerate page 3750 as of 11:00 a.m. London time on the day that is two (2) London Banking Days preceding the first day of each such month; *provided, however*, if the rate described above does not appear on the Telerate System on any applicable interest determination date, the LIBOR Rate shall be the rate per annum for deposits in U.S. Dollars for a one (1) year period on the Reuters Page "LIBO" (or such other page as may replace the LIBO Page on that service for the purpose of displaying such rates), as of 11:00 a.m. London time, on the day that is two (2) London Banking Days prior to the beginning of each such month. As used herein, the term "London Banking Days" means a day on which dealings in U.S. Dollar deposits are transacted in the London Interbank Market.

     Principal shall be due and payable on the third anniversary of the date hereof, unless said third anniversary is a holiday or otherwise is a date upon which the New York Stock Exchange is not open, in which event principal shall be due and payable on the next succeeding business day as so defined. If not sooner paid, all outstanding principal and accrued and unpaid interest thereon shall be paid to the Payee on such date. This Note may be prepaid in whole, or from time to time in part, at any time without premium or penalty. The principal amount prepaid, if any, may not at any time be reborrowed.

     In the event that the aggregate of all contingent obligations of Maker and its subsidiaries arising, directly or indirectly, from its guaranties, sureties, or other exposures to the Contingent



Risks (as defined in the Stock Purchase Agreement dated as of November 13, 2002, between the Maker and the Payee pursuant to which the Maker purchased all of the issued and outstanding shares of capital stock of BBCC Holding Co., Inc. (the "Company") from BBP) is reduced below the principal amount of this Note then outstanding, Maker shall be required to post an irrevocable, unconditional letter of credit (with an expiration date no earlier than 30 days after the maturity date of this Note) issued by a first class international bank acceptable to the Payee (an "Letter of Credit") for an amount no less than the amount by which the then-outstanding principal amount of this Note exceeds the Contingent Risks. As and when the principal amount of this Note is reduced, Maker shall be entitled to reduce any Letter of Credit to reflect such reduction. If any Contingent Risks become non-contingent, or result in the incurrence of liability or payment on account thereof by Maker (a "Loss"), the principal amount of this Note shall be reduced dollar-for-dollar to reflect such Loss.

Payee hereby waives any right it may now have or hereafter acquire to require any of the Senior Lenders to marshal assets or otherwise exercise their respective rights and remedies in any particular order or manner.

In the event that the Payee intends to sell or otherwise transfer this Note, the Payee shall provide the Maker with written notice of such intended transfer and the price and other relevant terms relating to such transfer and provide the Maker with the right to elect in writing to purchase the Note upon the same terms as the intended transfer. In the event that the Maker does not provide notice to Payee exercising the Maker's right to purchase the Note within five (5) days of Maker's receipt of the Payee's notice to the Maker, the foregoing right shall thereupon expire.

Unless otherwise designated by Payee, all payments hereunder shall be submitted to Payee as follows:

<u>If by Wire Transfer</u>:

    Bank:    Sparkasse Krefeld, 47719 Krefeld
    Account No.:    60055795
    Bank ID No.:    32050000
    Swift Code:    SPKRDE33
    IBAN:    DE84 3205 0000 0060 0557 95
    Account Holder:    Babcock Borsig Power GmbH
    Attention:    Dr. Helmut Schmitz, Custodian of Babcock Borsig Power GmbH

<u>If by delivery of check, draft, or money order</u>:

    *Sparkasse Krefeld*
    *Ostwall 155*
    *GY-47798 Krefeld*



All payments hereunder shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment. Interest shall be calculated on the basis of a year consisting of 365 days. All payments shall be applied first to any costs and expenses of the Payee due hereunder, then to interest due hereunder, and any balance shall be applied in the manner as set forth above and the remainder shall be applied in reduction of principal in the inverse order of maturities.

Notwithstanding any other provision hereof, the Maker shall not be required to pay any amount pursuant hereto which is in excess of the maximum amount permitted under applicable law. It is the intention of the parties hereto to conform strictly to any applicable usury law, and it is agreed that if any amount contracted for, chargeable or receivable under this Note shall exceed the maximum amount permitted under any such law, any such excess shall be deemed a mistake and cancelled automatically and, if theretofore paid, shall be refunded to the Maker or, at the Payee's option, shall be applied as set forth above.

It is expressly agreed that the occurrence of any one or more of the following shall constitute an "Event of Default" hereunder: (a) failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after Payee has given written notice to Maker of such failure other than pursuant to a valid exercise of the Maker's right of set off set forth in Section 8.6 of the Stock Purchase Agreement; or (b) the Maker's commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or its authorizing, by appropriate proceedings, the commencement of such a voluntary case; (c) the Maker filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or admitting in writing the material allegations of any such petition; (d) the entry of an order for relief in any involuntary case commenced under said Title 11; (e) the Maker seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the modification or alteration of the rights of creditors, or its consenting to or acquiescing in such relief; (f) the entry of an order by a court of competent jurisdiction (i) finding the Maker to be bankrupt or insolvent, (ii) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of creditors, or (iii) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property and such receiver or custodian is not discharged within thirty (30) days; (g) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property; or (h) the failure of Maker to provide the Letter of Credit within five (5) business days after the Maker has been informed by Payee, in writing, that the conditions requiring the post of the Letter of Credit have been satisfied. If any such Event of Default hereunder shall occur, the Payee may, at its option, declare to be immediately due and payable the then outstanding principal balance under this Note, with all accrued and unpaid interest thereon, and all other amounts payable to the Payee hereunder, whereupon all such amounts shall become and be due and payable immediately. The failure of the Payee to exercise said option to accelerate shall not constitute a waiver of the right to exercise the same at any other time.



In the event of a sale or merger, in either a single transaction, or a series of directly related transactions, whereby there is a change in ownership of (1) a majority of the capital stock of the Maker, (2) a majority of the assets of the Maker, (3) a majority of the capital stock of the subsidiaries of the Maker which, on a consolidated basis, account for a majority of the income of the Maker and its subsidiaries, or (4) a majority of the assets of the subsidiaries of the Maker, the Payee may, at its option, declare to be immediately due and payable the then outstanding principal balance under this Note, with all accrued and unpaid interest thereon, and all other amounts payable to the Payee hereunder, whereupon all such amounts shall become and be due and payable immediately; provided however, that any such accelerated payment shall be made only and to the extent that, and in the amount by which, the outstanding principal balance under this Note exceeds the aggregate amount of the contingent and actual obligations of Payee under Section 8.06 of the Stock Purchase Agreement between Maker and Payee, as amended from time to time. The failure of the Payee to exercise said option to accelerate shall not constitute a waiver of the right to exercise the same at any other time.

The Maker will pay on demand all costs and expenses, including reasonable attorneys' fees, incurred or paid by the Payee in enforcing or collecting any of the obligations of the Maker hereunder. The Maker agrees that all such costs and expenses and all other expenditures incurred by the Payee on account hereof, other than advances of principal, which are not reimbursed by the Maker immediately upon demand, all amounts due under this Note after maturity, and any amounts due hereunder if an Event of Default shall occur hereunder, shall bear interest at the LIBOR Rate plus two percent (2%), but in no event more than the maximum rate of interest then permitted by law (the "Default Rate"), until such expenditures are repaid or this Note and such amounts as are due are paid to the Payee.

All notices required or permitted to be given hereunder shall be given in the manner required by the Stock Purchase Agreement between the Maker and the Payee.

All of the provisions of this Note shall be binding upon and inure to the benefit of the Maker and the Payee and their respective successors and assigns. This Note shall be interpreted in accordance with and governed by the laws of the Commonwealth of Massachusetts without regard to choice of law principles.

The Maker and every endorser and guarantor hereof hereby consents to any extension of time of payment hereof, release of all or any part of the security for the payment hereof, or release of any party liable for this obligation, and waives presentment for payment, demand, protest and notice of dishonor. Any such extension or release may be made without notice to the Maker and without discharging its liability.

IN WITNESS WHEREOF, the Maker has executed and delivered this Note, under seal, on the day and year first above written.

BABCOCK POWER INC.

By: _____
Nathan Hevrony, President

GH:0280483.7