# EXHIBIT 4

## APPROVAL OF BANKRUPTCY CUSTODIAN

The undersigned, being duly authorized to act on behalf of Dr. Helmut Schmitz, the court-appointed Custodian of Babcock Borsig Power GmbH, a German company, pursuant to that certain Delegation of Authority dated November 30, 2002, in such capacity, and not individually, hereby approve the Non-Competition Agreement dated as of November 29, 2002, by and between Babcock Borsig Power GmbH and Hudson Investments Group, Inc. n/k/a Babcock Power Inc., a Delaware corporation, attached hereto, in accordance with the applicable laws of Germany as of this 29th day of November, 2002.

_____
Claus Brinkmann

_____
Bernhard Hampen

B646875.2

# NON-COMPETITION AGREEMENT

This NON-COMPETITION AGREEMENT (the "*Agreement*") is made as of November 29, 2002, by and among Babcock Power, Inc., a Delaware corporation ("*Purchaser*"), and Babcock Borsig Power GmbH, a German corporation ("*Seller*"). For the purposes of this Agreement, the term "*Seller*" shall mean Babcock Borsig Power GmbH, any of its direct or indirect Subsidiaries, Affiliates or successors or assigns, excluding for all purposes hereof the Seller's subsidiary NEM b.v., a Netherlands corporation and its subsidiaries, successors and assigns; provided, however, that this exclusion shall not apply to any business or operations acquired from and after the date hereof by NEM b.v. or any of its subsidiaries, successors or assigns, from Babcock Borsig AG, its subsidiaries, successors or assigns.

WHEREAS, Purchaser and Babcock Borsig Power GmbH have entered into a Stock Purchase Agreement dated as of November 13, 2002 (the "*Purchase Agreement*") which provides for the purchase by Purchase of all of the outstanding capital stock of BBCC Holding Co., Inc. (the "*Company*"). Capitalized terms used in this Agreement shall have the meaning of such terms as used in the Purchase Agreement, unless otherwise defined herein.

WHEREAS, prior to the consummation of the transactions contemplated in the Purchase Agreement (the "*Sale*"), Seller is the sole owner of the Company, and as a result of the Sale, Seller shall receive from Purchaser significant consideration in exchange for all the Shares of the Company's Common Stock held by Seller pursuant to the terms of the Purchase Agreement.

WHEREAS, as a condition to the Sale, and to preserve the value of the business being acquired by Purchaser after the Sale, the Purchase Agreement contemplates, among other things, that in consideration of the Non-Compete Payment (as defined herein), the Seller shall enter into this Agreement as of the date hereof.

NOW, THEREFORE, in consideration of the mutual promises and covenants made herein, Purchaser and the Seller hereby agree as follows:

Section 1.     Covenant Not to Compete or Solicit.

(a)     Beginning on the date hereof and ending on the third (3rd) anniversary of the Closing Date (the "*Non-Competition Period*"), Seller shall not directly or indirectly, without the prior written consent of Purchaser, Engage in a Competitive Business Activity anywhere in the Restricted Territory.

For all purposes hereof, the following terms shall be defined as follows:

"*Engage*" (including with correlative meanings the terms "Engages", "Engaging" and "Engaged") shall mean engaging, operating, managing, working, consulting and/or participating (whether as a partner, shareholder, investor, principal, representative, member, officer, director, agent, trustee, consultant, lender, employee, proprietor or in any other relationship or capacity) whether for the Seller's own account or for that of any other Person, either directly or indirectly.

"*Competitive Business Activity*" shall mean Engaging in the Business or having a direct or indirect ownership interest in any business, Person, or other entity which Engages in the Business.

"*Business*" shall mean: (i) within the customer market composed of fossil-fired and waste-to-energy power plants located in the Restricted Territory, all activities associated with the design, engineering, manufacture, fabrication, installation, servicing, maintenance and sale of new equipment or replacement parts for selective catalytic reduction and flue gas desulfurization equipment for the reduction of nitrous oxide or sulphur dioxide emissions (the "*Environmental Business*"); (ii) within the customer market composed of fossil-fired (including but not limited to combined cycle) or nuclear power plants located in the Restricted Territory, all activities associated with the provision of the design, engineering, manufacture, fabrication, installation, servicing, maintenance or sale of boiler components and pressure parts, power plant construction-related services, boiler rebuilds and retrofits, engineered replacement parts or field services (the "*Service Business*"); and (iii) within the customer market composed of fossil-fired (including but not limited to combined cycle) and nuclear power plants located in the Restricted Territory, all activities associated with the design, engineering, manufacture, fabrication, installation, servicing, maintenance or sale of condensers, feedwater heaters and moisture separator reheaters (the "*Heat Exchanger Business*").

"*Restricted Territory*" shall mean, each and every country, province, state, city or other political subdivision of the United States and Canada.

(b)     During the Non-Competition Period, Seller shall not directly or indirectly: solicit, encourage or take any other action which is intended to induce or encourage any employee of Purchaser, the Company or any of their respective Subsidiaries or to terminate his or her employment with Purchaser, the Company or any of their respective Subsidiaries.

(c)     The covenants contained in Section 1(a) hereof shall be construed as a series of separate covenants, one for each country, province, state, city or other political subdivision of the Restricted Territory. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenants contained in Section 1(a) and Section 1(b) hereof. If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In

the event that the provisions of this Section 1 are deemed to exceed the time, geographic or scope limitations permitted by applicable law of any specific jurisdiction, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be permitted by applicable laws of that jurisdiction, but without impact upon the meaning of those provisions in other jurisdictions.

(d)    Seller acknowledges that the goodwill associated with the existing business, customers and assets of the Company and its Subsidiaries prior to the sale are an integral component of the value of the Company to Purchaser and is reflected in the Non-Compete Payment and the consideration in the sale payable to Seller, and Seller's agreement as set forth herein is necessary to preserve the value of the Company and its Subsidiaries for Purchaser following the Sale.  Seller also acknowledges that the limitations of time, geography and scope of activity agreed to in this Agreement are reasonable because, among other things, (i) the Company, its Subsidiaries and Purchaser are engaged in a highly competitive industry, and (ii) Seller is receiving significant consideration in connection with the Sale and this Agreement.

Section 2.    Non-Compete Payment.  In consideration of the Seller's covenants contained herein, Purchaser shall deliver upon the execution hereof: (i)  a Promissory Note in the face amount of $5,000,000 in the form attached hereto as Exhibit A; and (ii) a payment in cash by wire transfer in the amount of $2,500,000.00 ((i) and (ii), collectively, the "Non-Compete Payment").

Section 3.    Choice of Law: Enforcement

(a)    This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts without giving effect to the principles of conflicts of laws.

(b)    Each of the parties hereto acknowledge and agree that the rights acquired by each party hereunder are unique and that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled to apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other interim or conservatory relief (as necessary) to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in any court of the United States located in the Commonwealth of Massachusetts or in a Massachusetts state court, this being in addition to any other remedy to which they are entitled at law or in equity. In addition, each of the parties:  (i) consents to submit itself to the personal jurisdiction of any Federal court in the Commonwealth of Massachusetts or any Massachusetts state court in the event any dispute arises out of this Agreement or any of the transactions contemplated hereby, (ii) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, and (iii) agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated hereby in any court other than a Federal court sitting in the Commonwealth of Massachusetts or a Massachusetts state court.

(c)    Without limiting any of the rights or remedies of the Purchaser contained herein, the parties hereto agree that the damages recoverable by any party under this Agreement shall be limited to actual damages and shall not include incidental, consequential, indirect or punitive damages whether arising in contract, tort, statute or otherwise.

(d)    EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUR OF OR RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) EACH SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (iii) EACH SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (iv) EACH SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

Section 4.    Miscellaneous.

(a)    Severability.  Without limiting the generality of Section 1 hereof: (i) In the event that any court of competent jurisdiction shall determine that any provision, or any portion thereof, contained in this Agreement shall be unenforceable in any respect, then such provision shall be deemed limited to the extent that such court deems it enforceable, and as so limited shall remain in full force and effect; and (ii) in the event that such court shall deem any such provision, or portion thereof, wholly unenforceable, the remaining provisions of this Agreement shall nevertheless remain in full force and effect.

(b)    Interpretation.  The parties hereto acknowledge and agree that the rule of construction to the effect that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this Agreement.

(c)    Headings and Captions.  The headings and captions of the various subdivisions of this Agreement are for convenience of reference only and shall in no way modify or affect the meaning or construction of any of the terms or provisions hereof.

(d)    No Waiver of Rights, Powers and Remedies.  No failure or delay by a party hereto in exercising any right, power or remedy under this Agreement, and no course of dealing between the parties hereto, shall operate as a waiver of any such right, power or remedy of the party.

No single or partial exercise of any right, power or remedy under this Agreement by a party hereto, nor any abandonment or discontinuance of steps to enforce any such right, power or remedy, shall preclude such party from any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.

      (e)      Attorney Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

      (f)      Transfer of Rights. This Agreement, and the rights and benefits which may inure to the Purchaser hereunder, may be transferred by the Purchaser to any transferee or purchaser of the Purchaser in connection with any transaction in which such transferee or purchaser acquires at least fifty (50%) percent of the stock equity or assets of the Purchaser. No such transfer shall, however, be effective unless and until the Seller is given written notice of such transfer and the transferee has provided the Seller with its principal business address and has agreed in writing to be bound by the terms and conditions of this Agreement.

      (g)      Notices. All notices, requests, consents and other communications hereunder shall be in writing, shall be addressed to the receiving party's address set forth below or to such other address as a party may designate by notice hereunder, and shall be either: (i) delivered by hand, (ii) made by facsimile transmission, (iii) sent by overnight courier, or (iv) sent by certified mail, return receipt requested, postage prepaid.

      if to the Seller:

            Babcock Borsig Power GmbH
            Duisburger Strasse 375
            46044 Oberhausen
            Germany
            Facsimile: 011-49.208.833.4657
                 Attention: General Counsel

            with a copy to:

            Nixon Peabody LLP
            101 Federal Street
            Boston, MA 02110
            Facsimile: (617) 345-1300
            Attention: Brian J. Crush, P.C.

      if to the Purchaser:

Babcock Power Inc.
c/oHudson Investment Group, Inc.
200 East 61st Street, Suite 406
New York, NY 10021
Facsimile: (212) 750-5039
Attention: Nathan Hevrony, President

with a copy to:

Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
Facsimile: (617) 204-8011
Attention: Jeffrey M. Stoler, Esq.

All notices, requests, consents and other communications hereunder shall be deemed to have been given (a) if by hand, at the time of the delivery thereof to the receiving party at the address of such party set forth above, (b) if made by facsimile transmission, at the time during business hours that receipt thereof has been acknowledged by electronic confirmation or otherwise and if not, at 10:00 a.m. the following business day, (c) if sent by overnight courier, at the time of receipt thereof on the next business day following the day such notice is delivered to the courier service, or (d) if sent by certified mail, at the time of receipt thereof by the receiving party at the address of such party set forth above.

(h)     Entire Agreement. This Agreement, together with the Exhibits hereto and the other agreements executed and delivered herewith, embody the entire agreement and understanding between the Purchaser and the Seller , and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

(i)     Modifications and Amendments. Every amendment, change or modification of this Agreement shall be in writing and signed by the parties hereto.

(j)     Waivers and Consents. The terms and provisions of this Agreement may be waived, or consent for the departure therefrom granted, only by written document executed by the party entitled to the benefits of such terms or provisions. No such waiver or consent shall be deemed to be or shall constitute a waiver or consent with respect to any other terms or provisions of this Agreement, whether or not similar. Each such waiver or consent shall be effective only in the specific instance and for the purpose for which it was given, and shall not constitute a continuing waiver or consent.

(k)    Binding Effect, Assignment. This Agreement shall be binding upon and inure to the benefit of the Seller and the Purchaser and their respective, successors (including, without limitation, by sale or transfer of all or substantially all assets, merger or consolidation) and permitted assigns, except that the Seller shall have no right to delegate its obligations hereunder or to assign its rights hereunder or any interest herein except by a consent complying with the provisions set forth above.

(l)    Counterparts. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

[ REMAINDER OF PAGE INTENTIONALLY LEFT BLANK ]

IN WITNESS WHEREOF, the Parties have executed this Non-Competition and Non-Solicitation Agreement as of the date first above written.

**SELLER**

**BABCOCK BORSIG POWER GmbH**

By: _____
Name: _____
Its: _____

By: _____
Name: _____
Its: _____

**PURCHASER**

**BABCOCK POWER INC.**

By: _____
Nathan Hevrony, President

-8-