UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GbmH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BABCOCK POWER, INC., )<br>)<br>Defendant, )<br>)<br>BABCOCK POWER, INC., )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>BABCOCK BORSIG, AG, )<br>)<br>Third-Party Defendant. )<br>) | CIVIL ACTION<br>NO. 04-10825 (RWZ) |

**PLAINTIFF BABCOCK BORSIG POWER GmbH'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROMISSORY NOTE**

As authorized by this Court at the Scheduling Conference on June 30, 2005, Plaintiff Babcock Borsig Power GmbH ("Babcock")[1] submits its Reply to the Opposition of Defendant Babcock Power, Inc. ("BPI") to the pending Motion for Partial Summary Judgment on Promissory Note.

1.  Defendant's principal defense to liability – that the $1.9 Million Note "expressly allows a right of setoff" (Opp. at 7)[2] – is improperly premised on select portions of the Note's

---

[1] In its Motion, Plaintiff referred to itself, Babcock Borsig Power GmbH, as "Babcock" and to Defendant Babcock Power, Inc. as "BPI." For an unspecified reason, Defendant has used different references in its Opposition. In this Reply, Plaintiff will use the same designations used in its Motion for Partial Summary Judgment on Promissory Note.

[2] "Opp." references are to Defendant BPI's Opposition; "Exh." references are to the exhibits attached to Dr. Kraenzlin's Affidavit submitted in support of Plaintiff's Motion.

text lifted out of context. In the applicable "Event of Default" Section, the $1.9 Million Note (Exh. C at 3) provides:

> It is expressly agreed that the occurrence of one or more of the following shall constitute an "Event of Default" hereunder: (a) Failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after payee has given written notice to maker of such failure <u>other than pursuant to a valid exercise of the maker's right of setoff set forth in Section 8.6 of the Stock Purchase Agreement</u>....

(Emphasis supplied). As noted in Plaintiff's Motion and supporting Memorandum, Section 8.06 of the Stock Purchase Agreement (Exh. A at 26), as amended (Exh. B at Section 4), expressly limits setoff to the $5 Million Note issued pursuant to Section 2.04 of the Stock Purchase Agreement. Identical setoff limitation language is also contained in the $5 Million Note (Exh. D at 3) Thus, the *only* mention of setoff in the $1.9 Million Note is language which confirms that setoff is restricted to the $5 Million Note. Defendant cannot create a material factual dispute by simply ignoring an express contractual setoff limitation language in the $1.9 Million Note that flatly refutes its position.[3]

Similarly, the fact that both promissory notes contain identical "Event of Default" provisions stating that nonpayment constitutes default unless "pursuant to a valid setoff under Section 8.6" of the Asset Purchase Agreement does not, as Defendant suggests, create ambiguity. It is not uncommon for parties to repeat contractual limitations in related contractual documents for avoidance of doubt (the "belt and suspenders" approach). Moreover, Defendant's related suggestion that such repetition requires the Court to adopt a contract interpretation directly contrary to the express contractual language enjoys no support in case law or common sense.

---

[3] It is obvious that the reference to Asset Purchase Agreement "Section 8.6" in both promissory notes is to Section 8.06 of the Asset Purchase Agreement. Defendant implicitly concedes this point (Opp. at 4, n.4). Stock Purchase Agreement Article VIII is divided into seven (7) sections, 01 – 07. Defendant's suggestion that the reference in both promissory notes to Asset Purchase Agreement Section 8.6 somehow is ambiguous, or does not adequately reference Asset Purchase Agreement Section 8.06, is disingenuous.

-2-

BB&W – 03010493.doc.1

2. Defendant's second claim (Opp. at 8) -- that a dispute concerning inter-company transactions is related to the Transition Assistance Agreement, and thus setoff should be allowed against the $1.9 Million Note -- also is premised on a mischaracterization of relevant contractual provisions. As Defendant concedes (Opp. at 2-3), the Transition Assistance Agreement requires the provision of specified information post-transaction; it contains no provisions concerning reconciliation of inter-company accounts. On the other hand, Asset Purchase Agreement Article VIII (Exh. A), and particularly its Section 8.06, directly and exclusively addresses such matters. It specifically limits setoff to the $5 Million Note issued pursuant to Section 2.04. First Amendment (Exh. B) Section 4 confirms this point by amending Section 8.06 of the Asset Purchase Agreement to prescribe additional setoff rights against the $5 Million Note.

Defendant's related claim is that setoff against the $5 Million Note is inappropriate because that payment was intended solely as compensation for noncompetition obligations. This misrepresentation is flatly contradicted by Asset Purchase Agreement Section 8.06 (Exh. A), by First Amendment Section 4 (Exh. B), and by the $5 Million Note itself (Exh. D). Each of these provisions make abundantly clear the parties' intent that setoff against the $5 Million Note be authorized for myriad business reasons unrelated to any noncompetition obligations. In fact, First Amendment Section 4 explicitly provides that disputes concerning inter-company accounts and Schedule 3.06 (the precise type of purported setoff claimed by Defendant) be addressed under Asset Purchase Agreement Section 8.06 and under the $5 Million Note. Moreover, the $5 Million Note further contains a specific provision concerning specific terms for the reconciliation of contingent risks, requiring a Letter of Credit if the principal amount of the Note exceeds the contingent risk, and a dollar for dollar setoff against principal if liability becomes non-contingent. (See Exh. D at 1-2.) Thus, Defendant's argument that the $5 Million Note payments were intended for noncompetition obligations only, and not Schedule 3.06 inter-company

account reconciliation, can only be sustained by ignoring or misrepresenting the express terms of the transactional documents.[4]

3. Defendant's further exhortation (Opp. at 11) that further discovery is necessary before it can adequately respond to Plaintiff's Partial Summary Judgment Motion is baseless. The Promissory Notes, the Stock Purchase Agreement, and all other documents were the product of bi-lateral negotiations. Presumably Defendant's negotiators are aware of all relevant facts.

If applicable contractual terms are ambiguous, Defendant is obligated to identify such ambiguous terms. If parole evidence establishes a different meaning of ambiguous terms that Plaintiff Babcock has presented by Motion, such parole evidence necessarily would be known by Defendant BPI's negotiators. No such evidence has been produce by Defendant BPI.

Indeed, despite repeated requests, Defendant BPI has <u>never</u> identified what additional evidence discovery would yield that is not currently available to it. Defendant's silence is telling proof that the purported need to delay resolution until discovery is completed lacks any substances whatsoever, and is just part and parcel of Defendant's avoidance of its payment obligation. <u>See, e.g.</u>, <u>Massachusetts School of Law v. ABA</u>, 142 F.3d 26, 54-58 (1st Cir. 1998).

4. Defendant's final contention (Opp. at 14) -- that the Court should delay ruling on Plaintiff's Motion until the conclusion of the case -- is transparently self serving. Defendant has wrongfully withheld payments required by a valid promissory note. Plaintiff negotiated express contractual provisions requiring immediate payment in full in the event of default. Plaintiff never agreed to allow Defendant to delay or defer the payment terms of the $1.9 Million Note based on the promise of future interest payments, as Defendant BPI now seeks. Instead, the parties agreed that authorized setoff would be restricted to the $5 Million Note. Defendant's

---

[4] Defendant challenges (Opp. 8, 17) Plaintiff to justify how setoffs for inter-company accounts could be logically tied to noncompetition payments. Plaintiff refers Defendant to First Amendment Section 4 (Exh. B), which expressly does so, including by its reference to Schedule 3.06. Plaintiff also refers Defendant to the $5 Million Note (Exh. D), and to Stock Purchase Agreement Section 8.06 (Exh. A).

suggestion that the Court simply delay its ruling to some unspecified future date, in effect, would unfairly and unjustly deprive Plaintiff of the benefit of its bargain. The balance of the $1.9 Million Note, and associated interest and costs, has been in arrears too long, and should be paid now.

## CONCLUSION

For the reasons stated above and in Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment on Promissory Note, Plaintiff requests that this Court rule that setoff against the $1.9 Million Note was improper, and constituted an "Event of Default" entitling Plaintiff to full payment under the $1.9 Million Note's terms.

Respectfully submitted,

BABCOCK BORSIG POWER GmbH,
By its Attorneys,

Kenneth M. Bello, Esq., BBO #036630
John F. Welsh, Esq., BBO #522640
BELLO BLACK & WELSH, LLP
535 Boylston Street, Suite 1102
Boston, MA 02116
(617) 247-8476

Dated: August 1, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 8/1/05

BB&W – 03010493.doc.1