UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH,　　　) <br> 　　Plaintiff,　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> 　　v.　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> BABCOCK POWER, INC.,　　　　　) <br> 　　Defendant and Third-Party Plaintiff, ) <br> 　　　　　　　　　　　　　　　　) <br> 　　v.　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　) <br> BABCOCK BORSIG, AG,　　　　　) <br> 　　Third-Party Defendant.　　　) <br> 　　　　　　　　　　　　　　　　) | Civil Action No.: 04 CV 10825-RWZ |

## **PLAINTIFF BABCOCK BORSIG POWER GmbH's MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL TESTIMONY BY RULE 30(b)(6) WITNESS**

Plaintiff Babcock Borsig Power GmbH ("Babcock GmbH" or "Plaintiff") moves

for an Order (proposed form included with this Motion) compelling Defendant Babcock

Power, Inc. ("BPI"): (i) to produce for deposition a Rule 30(b)(6) witness that complies

with the Federal Rules of Civil Procedure; and (ii) to require the witness to testify fully as

to matters within the scope of the designated topics. As to the latter, Babcock GmbH

specifically seeks a ruling that BPI, through its corporate witness, has improperly refused

to answer questions based on a false assertion[1] of attorney-client privilege.

---

[1] As set forth in the detailed facts below and the enclosed Affidavit of Attorney John Welsh, Mr. Brantl's suggestion at his deposition that BBCC Holding Co., Inc. and its managers were jointly represented by Attorney Stoler of Gadsby & Hannah has been refuted. Attorney Stoler has expressly denied the existence of an attorney-client relationship between these parties.

Babcock GmbH first noticed a Rule 30(b)(6) witness in July, 2005.[2] A witness was finally produced on December 20, 2005, only after the filing of a Motion to Compel. However, at the deposition taken on December 20th, BPI wholly failed to produce a witness prepared to testify as the corporate representative on the designated topics. To the contrary, BPI presented as its Rule 30(b)(6) corporate representative its General Counsel (James Brantl), whose testimony demonstrated that he had failed to conduct the investigation required by Rule 30(B)(6).

Moreover, to the extent that Mr. Brantl conducted a cursory investigation of the designated topics by reviewing relevant documents and/or communicating with other individuals with knowledge, he then refused to testify about the substance of the documents or communications, improperly asserting an attorney-client privilege.[3] In short, BPI has attempted to end-run its obligation to produce a Corporate Representative by presenting its General Counsel, and then having the General Counsel claim privilege with respect to communications occurring in connection with the fact gathering required of a Rule 30(b)(6) corporate witness. In addition, Mr. Brantl refused to respond to questions involving communications between and among persons outside of the scope of the attorney-client privilege.

As a result, Babcock GmbH was forced to spend the bulk of an entire day of deposition attempting to elicit testimony regarding the scope of Mr. Brant's investigation of the designated topics, and the supposed factual underpinnings of the purported attorney-client privilege. Babcock GmbH, therefore, seeks an Order compelling BPI and Mr. Brantl

---

[2] A copy of the Rule 30(b)(6) Notice, which identified eight topics of testimony, is attached hereto as Exhibit A.

[3] A copy of the deposition transcript is attached hereto as Exhibit B.

to conduct a proper investigation of the designated topics, and for Mr. Brantl to answer

fully questions concerning the noticed topics, including inquiries that he has refused to

testify based on a claimed privilege.  It also believes that given the complete failure to

prepare for the Rule 30(b)(6) deposition and the improper assertion of attorney-client

privilege, the Order should include (i) the legal fees and costs incurred for the first day of

deposition, and (ii) the legal fees and Discovery Master's costs incurred in connection with

this Motion.

## FACTS MATERIAL TO MOTION TO COMPEL

This lawsuit arises out of a business transaction involving the sale of stock by

Babcock GmbH to the Hudson Investment Group, Inc. ("Hudson") of the shares of a

Babcock GmbH subsidiary known as BBCC Holding Co., Inc., and its second tier

subsidiary, Babcock Borsig Capital Corporation ("BBCC").  Brantl Dep., 10.

The terms of the deal are contained in a Stock Purchase Agreement initially dated

November 13, 2002.[4]  At the time of the sale, Hudson established a separate corporate

entity, the defendant BPI.  On November 29, 2002, the date the stock transaction closed,

the parties entered into a First Amendment to Stock Purchase Agreement, as well as a

Non-Competition Agreement ("NCA") and two promissory notes – one for $1.9M and

another for $5.0M.[5]

The underlying disputes divide into two categories: (i) a dispute regarding the

meaning and scope of the NCA and attendant damages claimed by both parties; and (ii) the

---

[4] A copy of the Stock Purchase Agreement is attached hereto as Exhibit C.

[5] Copies of the same are attached hereto as Exhibits D, E, F, and G, respectively.

failure of BPI to pay interest and principal on both promissory notes. Partial summary judgment on the $1.9M Promissory Note is pending before the Court for decision.

### The Purchaser of BBCC

The purchaser of the stock of BBCC was Hudson Investment Group, Inc. ("Hudson Group"). See Exhibit C. The principal of Hudson Group is Nathan Hevrony. Brantl Dep., 14. Prior to November 29, 2005, Mr. Hevrony had no position with BBCC - either as an officer, director or employee. Id. at 12-13.[6]

The Hudson Group was represented by the law firm of Gadsby & Hannah, specifically Attorney Jeffrey Stoler. Neither Wood, Brantl nor Brandano were part of the Hudson Group. Brantl Dep., 25. Along with Attorney Stoler, the principal negotiators in connection with the acquisition for the Hudson Group were Mr. Hevrony and his partner Dale Miller. As testified to by Mr. Brantl, and as reflected in a recent affirmation by Mr. Stoler to Attorney Welsh,[7] Gadsby & Hannah did **not** represent BBCC or the members of its management team involved in the transaction. Brantl Dep., 27.

The BBCC management group involved in the transaction included Jim Wood, James Brantl and Anthony Brandano, as well as 17 others who became shareholders in BPI upon completion of the transaction. Brantl Dep., 20. At that time, all three were officers, directors and senior employees of BBCC. Mr. Brantl specifically served as a Director, Officer and General Counsel of BBCC. Id. at 12. He also filled other roles at BBCC, including Director (or Vice President) of Contract Administration and HR administration.

---

[6] Following the transaction, Mr. Hevrony became a member of the Board of Directors of BPI.

[7] See Affidavit of John Welsh, Esquire, attached hereto as Exhibit H.

Id. at 94.[8]  Mr. Brantl acknowledged that he had a continuing fiduciary obligation to

BBCC during the course of the transaction.  Id. at 137-138.  At BPI, Mr. Brantl serves both

as General Counsel and has a function of making sure contracts comply with certain

internal standards.  Id. at 97.

To the extent that these individuals had representation, it was provided by the law

firm of Goodwin Proctor.  Mr. Brantl testified that Goodwin Proctor represented the

"management group" in connection with the negotiation of a new shareholders agreement.

Brantl Dep., 133.  He also testified that Goodwin Proctor provided "some limited advice"

to BBCC in connection with "inter-company agreements."  Brantl Dep., 21, 23.[9]

The selling entity, Babcock GmbH and its second tier subsidiary BBCC, was

represented by the law firm of Nixon Peabody.  Brantl Dep., 21.  Other than counsel, its

principal negotiators were Dr. Georg-Peter Kraenzlin, Ludger Kramer, Claus Brinkmann

and Bernard Hampen (now deceased).  Brantl Dep., 23, 33, 110-112.

### Brantl's Preparation/Investigation as BPI's Rule 30(b)(6) Corporate Designee

Mr. Brantl has been designated by BPI as the corporate representative for Items 1 -7

of the Rule 30(b)(6) Notice.  Brantl Dep., 3, Dep. Exh. 1.  His testimony reflects a

fundamental failure on his part to investigate and gather facts sufficient for him to testify

as to the designated items.

First, he was unable and/or unwilling to distinguish his knowledge of the underlying

facts in his role as BPI General Counsel from his independent obligation to gather and

---

[8] Mr. Brantl testified that he held various roles in other affiliated companies as well.  Brantl Dep., 92-96.
[9] Mr. Brantl testified that no waiver was sought or provided in connection with Goodwin Proctor's counsel to
BBCC.  Brantl Dep., 20-21.

present testimony as a Rule 30(b)(6) witness. See e.g., Brantl Dep., 7.[10]  Mr. Brantl

acknowledged that he had reviewed the topics contained in the notice at least as of

September, 2005. Id. at 7, 45-46, 51, 143-144; Brantl Dep. Exh. 1.[11]  He specifically

testified that he has "had several discussions in meetings since September 2005 about this

case as the general counsel.  I'm generally familiar with all the documents in the closing.

I'm generally familiar with the correspondence and several meetings.  And I've had

meetings with our attorneys, and I had an all-day meeting yesterday." Id. at 63.  He

acknowledged that this was "in part preparation for [Brantl] to be the corporate witness."

Id.  However, having established that he had engaged in these various discussions as part

of preparation to be the corporate witness, Mr. Brantl was instructed and refused to answer

any questions regarding the substance of any of those discussions, based on a purported

attorney-client privilege.  Id. at 64-65, 66, 68-72.  His refusal to answer applied to:  (i)

conversations pre-dating the November 29, 2002 acquisition, including conversations with

Nathan Hevrony and Dale Miller, neither of whom were employed or otherwise engaged

with BBCC prior to that date; and (ii) conversations with Attorney Stoler of Gadsby &

Hannah, even though the latter never represented Wood, Brantl or Brandano individually,

or the management group collectively.  Brantl Dep., 120-122 133-135, 142-143.

Second, he testified that he asked others (including Wood, Brandano, Hevrony and

Miller) for documents which he then reviewed in preparation for the deposition.  Mr.

---

[10] At the deposition, Mr. Comen stated on the record:  "This witness is the general counsel of the Defendant, Babcock Power, Inc.  As such, it appears that he's being asked to distinguish between the conversations he's had in the normal course of his duties as general counsel with all of these people in connection with this litigation and otherwise about these subjects.  And I don't know how anyone could distinguish conversations as Mr. Bello keeps persisting and asking him to distinguish." Brantl Dep., 53-54.  In fact, by designating its General Counsel as the Rule 30(b)(6) witness, BPI is obligated to make that very distinction.

[11] In fact, the original Rule 30(b)(6) notice was served on June 16, 2005, and the second (unchanged in substance) notice was served on August 29, 2005.

Brantl was not even able to distinguish which documents had been produced in discovery and which had not, purportedly because of an attorney-client privilege. Brantl Dep., 9-10, 29-30. Indeed, the only documents that he could recall reviewing at all were a privilege log, a note from Jim Wood to him, and a "chronology" provided to him by counsel. Brantl Dep., 31-32. He also testified that he spoke with and requested documents from Attorney Stoler of Gadsby & Hannah. Brantl Dep., 36 – 37, 40. Neither Mr. Brantl nor Attorney Comen would confirm whether those documents had been produced in discovery. Brantl Dep., 38-39.

Third, Mr. Brantl testified that he spoke with various individuals, again including Jim Wood, Anthony Brandano, Nathan Hevrony and Dale Miller. In doing so, he purportedly gathered information regarding topics included in the Rule 30(b)(6) notice, including, the negotiations relating to the Stock Purchase Agreement and the NCA between Babcock GmbH and BPI. He specifically testified that following his receipt of the original Rule 30(b)(6) notice, and as part of his investigation to prepare for the deposition, he spoke and/or met with Mr. Hevrony on two occasions, including a meeting at BPI's office located in Danvers, Massachusetts. Brantl Dep., 45-46, 51. In doing so, he gathered information on Items 1-5 and 7 of the Rule 30(b)(6) notice. Id. at 46-48. Mr. Brantl had similar preparatory conversations with Jim Wood and Anthony Brandano, the substance of which he would not testify about. Brantl Dep., 51-52, 58.

As to these various communications, his deposition testimony makes clear that he either did not conduct an adequate investigation and, to the extent that he had any memory of his conversations, he refused to testify about them. By way of example, Mr. Brantl testified about a September 2002 meeting attended by representatives of Babcock GmbH

and the Hudson Group, and representatives of the BBCC related entities, including (among others) Anthony Brandano and Jim Wood. Brantl Dep., 114-115. When asked if he made inquiry of either Mr. Brandano or Mr. Wood about the substance of that meeting as it relates to the Rule 30(b)(6) topics, he testified "no." Id. at 115. He also did not inquire as to whether either had taken and maintained any written notes of that meeting. Id.

When Mr. Brantl was asked to review whatever memory he had of his investigatory communications, he refused to do so based on an attorney-client privilege. Brantl Dep., 144-146, 160-161 (counsel instructing him not to answer with respect to investigatory conversations with Jim Wood). The same instruction was given with respect to conversations with Anthony Brandano and Nathan Hevrony. Id. at 147-148, 152-154, 160-161. Indeed, when asked to identify any communications that he had with individuals in connection with preparing for the deposition that he did not claim to be privileged, he was unable to do so. Brantl Dep., 157, 160-161. [12]

## ARGUMENT

### I.    BPI Wholly Failed to Have its Corporate Witness Adequately Prepare for the Rule 30(b)(6) Deposition

Rule 30(b)(6) requires a corporation to designate and produce a witness to testify as the corporate representative on the topics designated. See Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 41 (D. Mass. 2001). In Calzaturficio, Magistrate Judge Collings held that "the law is well-established that a 30(b)(6) deponent

---

[12] Mr. Brantl also identified conversations with representatives of Hitachi regarding the Rule 30(b)(6) notice topics, but again was instructed and refused to testify about the substance of them. Brantl Dep., 75-76, 81-82, 86-87.

does have an affirmative obligation to educate himself as to the matters regarding the

corporation:

> 'Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process . . . [p]reparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business . . . [A company] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available . . . .'"

Id. at 36 (quoting United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C., 1996), aff'd

166 F.R.D. 367 (M.D.N.C. 1996)).[13]

In Calzaturficio, Magistrate Judge Collings further stated that "Rule 30(b)(6)

witnesses are obligated to review all corporate documentation that might have had a

bearing on the 30(b)(6) deposition topics." Calzaturficio, 201 F.R.D. at 37. The party

responding to a 30(b)(6) deposition notice "must prepare deponents by having them review

---

[13] See also Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000) ("Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed."); Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995)(citing Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989))("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation."); Buycks-Roberson v. Citibank Fed. Savings Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995)(duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.); Securities and Exchange Commission v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (citing Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority, 93 F.R.D. 62, 67 (D.P.R. 1981)) ("under Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters.'"); ABA Civil Discovery Standards (Aug. 1999), § 19(f) ("Counsel for the [corporation] should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.").

prior fact witness deposition testimony as well as documents and deposition exhibits." Id.
(quoting Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 639 (D. Minn. 2000)(citing
Taylor, 166 F.R.D. at 361)); see also Bank of New York v. Meridien Biao Bank Tanzania,
Lt'd, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)(deponent must be prepared "to the extent
matters are reasonably available, whether from documents, past employees, or other
sources."). Even if the documents are voluminous and the review of those documents
would be burdensome, the deponents are still required to review them in order to prepare
themselves to be deposed. See id. (citing Prokosch, 193 F.R.D. at 638 ("the burden upon
the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an
onerous one, but we are not aware of any less onerous means of assuring that the position
of a corporation that is involved in litigation, can be fully and fairly explored."). Such
preparation is necessary because the "individuals so deposed are required to testify to the
knowledge of the corporation, not the individual." Id. (quoting Poole, 192 F.R.D. at 504).[14]
"[I]f, after reviewing all information known or reasonably available to the company, the
[30(b)(6) witnesses] still would not be able to testify as to some of the 30(b)(6) topics and
there were no other available witnesses who could do so," the Company should inform
plaintiffs well in advance of the scheduled depositions to avoid a waste of time and money.
Id. at 38.

    "[I]f the originally designated spokesman for the corporation lacks knowledge in the
identified areas of inquiry, that does not become the inquiring party's problem, but

---

[14] See also Prokosch, supra, 193 F.R.D. at 638 (a corporation must prepare its deponents "so that they may
give complete, knowledgeable and binding answers on behalf of the corporation."); Taylor, supra, 166 F.R.D.
at 361 ("the designee must not only testify about facts within the corporation's knowledge, but also its
subjective beliefs and opinions . . . [t]he corporation must provide its interpretation of documents and
events.").

demonstrates the responding party's failure of duty." Id. (quoting Elliott, 192 F.R.D. at 504-05). "Producing an unprepared witness is tantamount to a failure to appear at a deposition." Id. at 39 (quoting Starlight Int'l v. Herlihy, 186 F.R.D. 626, 639 (D. Kan., 1999)(citing Taylor, 166 F.R.D. at 363).[15]

Mr. Brantl's deposition testimony recounted above shows that he failed to comply with his "affirmative obligation [as BPI's Rule 30(b)(6) witness] to educate himself as to the matters regarding the corporation." Calzaturficio, 201 F.R.D. at 37. At best, he made only limited inquiry as to the topics noticed for his deposition; indeed, he could only recall reviewing three documents (a privilege log, a note from Jim Wood and a chronology) as part of his investigation in preparation for his deposition, and could not even remember the substance of meetings with those he allegedly interviewed for such. Brantl Dep., 31-32, 114-115. His failure to prepare adequately leaves Babcock GmbH "at an unfair disadvantage, having no understanding of what [BPI's] position is as to many areas of inquiry." Calzaturficio, 201 F.R.D. at 38. Consequently, BPI and Mr. Brantl should be ordered to conduct a proper investigation as to the noticed topics and answer questions concerning those topics accordingly.

## II. BPI Improperly Asserted An Attorney-Client Privilege When Its Corporate Witness Was Instructed and Refused to Testify To Conversations Outside of the Privilege and/or which Were Waived.

The essential elements of the attorney-client privilege, as endorsed by the First Circuit, are as follows: "(1) Where legal advice of any kind is sought (2) from a

---

[15] See also Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 303 (3rd Cir. 2000)("If the agent [of a corporation] is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."); Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989)(An inadequate Rule 30(b)(6) designation amounts to a refusal or failure to answer a deposition question. Among the other remedies, the Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense.").

professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." United States v. Bisanti, 2005 U.S. App. LEXIS 13575, ** 6-7 (1st Cir. 2005); Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002). The party who invokes the attorney-client privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived. See Bisanti, 2005 U.S. App. LEXIS 13575 at ** 5 ; XYZ Corp. v. United States, 2003 U.S. App. LEXIS 21388, ** 10 (1st Cir. 2003); FDIC v. Ogden Corp., 2000 U.S. App. LEXIS 1657, **13 (1st Cir. 2000).

The attorney-client privilege also applies in the corporate setting, "protecting communications between corporate officers and corporate General Counsel." Borase v. M/A Com, Inc., 1997 U.S. Dist. LEXIS 4773, ** 12 (D. Mass. 1997) (citing Upjohn Co. v. United States, 449 U.S. 383, 389-90, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)). However, "the attorney-client privilege attaches only when the attorney acts in that capacity" and "does not apply when in-house counsel is engaged in 'nonlegal work.'" Borase, 1997 U.S. Dist. LEXIS 4773 at ** 12 (quoting Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995). However, when a corporation invokes the attorney-client privilege for in-house counsel, that invocation may be questionable in many situations because "an in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw." City of Springfield v. Rexnord Corp., 2000 U.S. Dist. LEXIS 12553, ** 4-5 (D. Mass. 2000) (finding certain documents not protected by attorney-client privilege because fact in-house counsel performed certain legal functions as part of team does not render privileged each

12

communication made by or copied to him, if communication could equally have been made to or by an individual without a law degree.).

Moreover, and importantly for the present case and Motion, "when general counsel is designated by a party as one of its Rule 30(b)(6) witnesses, the witness is required to testify about the business operations of the corporation to the extent he is knowledgeable about the operations, irrespective of the fact that he also serves as legal advisor for the corporation." Sony Electronics, Inc. v. Soundview Technologies, Inc., 2002 U.S. Dist. LEXIS 26656, ** 17 (D. Conn. 2002); see also Primetime 24 Joint Venture v. Echostar Comm. Corp., 2000 U.S. Dist. LEXIS 779, *6 n.2. (S.D.N.Y. 2000). "Questions posed which elicit purely factual information that is now in the possession of corporate officials and do not ask for the substance of communications between counsel and client are to be answered as the answers to these inquiries will not be disclosing legal advice of counsel." Id.

Here, Mr. Brantl improperly invoked the attorney-client privilege as to the questions posed by Plaintiff's counsel at the Rule 30(b)(6) deposition because he failed "to establish that the privilege exists and covers the statements at issue here." Bisanti, 2005 U.S. App. LEXIS 13575 at ** 5. His improper invocation of the privilege falls into three major categories. First, oral communications to which no privilege at all attaches; specifically (i) communications occurring or about events pre-dating the November 29, 2002 acquisition with Nathan Hevrony and/or Dale Miller (neither of which were employed with BBCC prior to that date), and (ii) communications with Attorney Stoler of Gadsby & Hannah, who never represented Wood, Brantl or Brandano individually, or the BBCC collectively. Brantl Dep., 120-122 133-135, 142-143. Second, documentary

communications between or among the same group of individuals which, for the same reasons, no privilege attaches. *Third, communications reflected in documents that Mr. Brantl testified he reviewed to prepare to be the Rule 30(b)(6) corporate witness and to refresh his recollection.*

The record here demonstrates that there was not at any time an attorney client relationship between BBCC and/or its management group and Gadsby & Hannah.[16] Indeed, Mr. Brantl's own early testimony acknowledged that Gadsby & Hannah represented the Hudson Group, not BBCC or its managers. Attorney Stoler also has denied the existence of such a relationship. Moreover, while there are no other indicia of an attorney-client relationship, *there are several facts belying any such relationship.* Mr. Brantl testified that there is no known engagement letter between Gadsby & Hannah and BBCC or its managers, or BBCC's parent, Babcock GmbH. He also testified that he did not know of a conflict of interest waiver document. Brantl Dep., 129-130, 131, 137, 139. When asked to identify any specific documents reflecting the establishment of such an attorney-client relationship, he could not do so. When asked to identify who paid Gadsby & Hannah's bills prior for services prior to November 29, 2002, he could not do so. Id. at 132. Indeed, when Mr. Brantl was asked whether he "***ever asked Mr. Stoler whether he considered him and Gadsby & Hannah to be the legal counsel of the management buying group in connection with the transaction?***", Mr. Brantl said, "***I don't recall ever asking him.***" Brantl Dep., 140.

In short, BPI and Mr. Brantl have not and cannot establish an attorney-client relationship between or among BBCC or its management group with Gadsby &

---

[16] Absent an attorney-client privilege between BBCC and its management group with Gadsby & Hannah, BPI could not possibly contend that any pre-November 29, 2002 written or oral communications between and among Hudson Group and BBC or its management group somehow was privileged.

Hannah/Attorney Stoler because the communications between them did not involve any "legal advice" "made in confidence" *to or from a "client."* See Bisanti, 2005 U.S. App. LEXIS 13575 at ** 6-7.

Lastly, Mr. Brantl's improperly refused to testify as to both the substance of any of the documents he reviewed in preparation for the Rule 30(b)(6) deposition. It is a settled *legal principle that a party is entitled to examine documents reviewed by a deposition witness used to refresh his or her recollection prior to testifying at deposition.* See Fed. R. Evid. 612; see also In re Atlantic Financial Management Securities Litigation, 121 F.R.D. 141, 143 (D. Mass. 1988)(fact witness reviewed documents in anticipation of deposition sufficient to compel production of the documents under Fed. R. Evid. 612). At his deposition, Mr. Brantl testified that he reviewed documents to refresh his recollection of events in preparation of the Rule 30(b)(6) deposition, an unspecified number of which have not been produced to Plaintiff. Brantl Dep., 29-30 (testifies that he reviewed "some documents that were not produced"). He also testified that he had reviewed a "chronology" of events to refresh his recollection which was not produced. Brantl Dep., 152.

Babcock is entitled to production of those documents reviewed by Mr. Brantl used to refresh his recollection to prepare to be as the Rule 30(b)(6) corporate witness. Without equal access to all the of those documents, including the "chronology," Babcock GmbH will not be able to conduct an effective and thorough examination of Mr. Brantl as to his

Rule 30(b)(6) investigation.  As such, BPI should be ordered to produce all of the documents Mr. Brantl reviewed in preparation of his Rule 30 (b)(6) deposition.[17]

## CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully moves for an Order either compelling BPI and Mr. Brantl to conduct a proper investigation of the noticed topics, and to answer questions concerning the designated topics accordingly.

Respectfully submitted,

BABCOCK BORSIG POWER GmbH

By its Attorneys,

Kenneth M. Bello, BBO # 036630
John F. Welsh,   BBO #522640
Kevin R. Powers, BBO # 644635
BELLO BLACK & WELSH, LLP
535 Boylston Street, Suite 1102
Boston, MA 02116
(617) 247-4100

Dated: January 6, 2006

---

[17] *Babcock GmBh expects that following the continued deposition of Mr. Brantl, and that of other witnesses, additional motions will be required and filed regarding the refusal to produce documents based on a claimed attorney-client privilege.*