Page 109

[1] Q: Do you hold any director, officer or
[2] employee positions in any of these other companies?
[3] A: Yes.
[4] Q: Which ones?
[5] A: I'm a director of Riley Power, Inc.,
[6] Babcock Power Capital.
[7] Q: Riley Power, Babcock Power?
[8] A: Babcock Power Capital, BBCC Holding
[9] Company, Inc. I might be a director in several of
[10] the other companies. I forget.
[11] Q: Are you an officer —
[12] A: Possibly Vogt-NEM, Inc.
[13] Q: Are you an officer in any of these
[14] companies?
[15] A: Yes.
[16] Q: Which ones?
[17] A: I think I'm an officer in practically all
[18] of them.
[19] Q: Do you have any title, like general
[20] counsel, of any of these companies?
[21] A: No. Usually it's just vice-president.
[22] Q: Do you have any functional responsibilities
[23] in any of these companies?
[24] A: I'm the general counsel of Riley Power.

Page 110

[1] Q: And other than that, do you have any
[2] functional responsibilities?
[3] A: And also Babcock Power Environmental and
[4] Babcock Power Services.
[5] Q: Any others?
[6] A: No.
[7] Q: Switching —
[8] A: Excuse me. I'm the secretary of most of
[9] those, a lot of those companies too.
[10] Q: Switching to where we started, which was
[11] you've identified who was involved or who was party
[12] to some of these discussions between September and
[13] through November 29, how about from Hudson group?
[14] Who was involved, to your knowledge, from Hudson
[15] group?
[16] A: Nathan Hevrony and Dale Miller.
[17] Q: Anybody else?
[18] A: That's who I know.
[19] Q: How about for BB AG?
[20] A: Ludger Kramer, Dr. Kraenzlin, possibly Mr.
[21] Piepenberg. And there were two representatives in
[22] the Burlington office, Claus Brinkmann and Bernhard
[23] Hampen.
[24] Q: Mr. Brinkmann is now deceased, as I

Page 111

[1] understand it?
[2] MR. COMEN: The other way around.
[3] A: Mr. Hampen.
[4] Q: Mr. Brinkmann will be happy to hear that he
[5] is still alive and that I did not have that correct.
[6] When did the negotiations, for be it the
[7] Stock Purchase Agreement, the Non-Compete Agreement
[8] or the promissory estoppel — and if they occurred
[9] at different times we'll break it down — begin,
[10] between the buying — between any among these three
[11] groups that we have now identified, the management
[12] group, the Hudson group and BB AG?
[13] MR. COMEN: I'm sorry, what was the
[14] beginning?
[15] Q: When did the negotiations begin?
[16] A: For which documents?
[17] Q: Well, if there's a distinct — let's start
[18] with the Stock Purchase Agreement.
[19] A: Those negotiations began in September.
[20] Q: Who with respect to the management group
[21] that you've identified, the BPI group, participated
[22] in the negotiations with respect to the Stock
[23] Purchase Agreement?
[24] A: Jim Wood, Anthony Brandano. I participated

Page 112

[1] in giving input.
[2] Q: What does that mean, "giving input"?
[3] A: I didn't participate in the negotiations,
[4] but I gave comments to Jim Wood and Tony Brandano.
[5] Q: To your knowledge, who participated in the
[6] negotiations on the SPA for BB AG?
[7] A: I thought that's what we talked about.
[8] Q: Okay. Dr. Kraenzlin?
[9] A: We're talking about the Stock Purchase
[10] Agreement.
[11] Q: Right.
[12] A: Oh, for BB AG. Ludger Kramer and Dr.
[13] Kraenzlin.
[14] Q: And how about for Hudson?
[15] A: I wasn't directly involved in those
[16] negotiations, so I don't know who exactly
[17] participated.
[18] Q: I appreciate your answer you weren't
[19] directly, but you have no knowledge who
[20] participated?
[21] A: I believe that Nathan Hevrony and Dale
[22] Miller participated, but I don't — I was just
[23] involved with one meeting in September, and that was
[24] all. They both were there.

Babcock Borsig Power GmbH v.
Babcock Power Inc.  v.  Babcock Borsig AG

James S. Brantl
Vol. 1, December 20, 2005

Page 113

[1]   Q: Who was present at that meeting?
[2]   A: Jim Wood, Anthony Brandano, Dr. Kraenzlin,
[3] Ludger Kramer, Brian Crush from Nixon Peabody, and
[4] myself.
[5]   Q: Where was that meeting held?
[6]   A: A hotel in Bedford, Mass., near the
[7] Burlington office. I think it's a Sheraton.
[8]   Q: Do you recall the purpose of the meeting?
[9]   A: For the Hudson group to buy the stock of
[10] BBCC Holding Company.
[11]   Q: Was there any discussion at that meeting
[12] regarding a non-competition agreement?
[13]   A: I think there were some limited discussions
[14] at that point that the American company would need a
[15] non-competition agreement.
[16]   Q: What are you referencing when you say "the
[17] American company"?
[18]   A: The company that was buying the stock of
[19] BBCC Holding Company, Inc., to protect the U.S.
[20] market.
[21]   Q: Other than that there would be the need of
[22] a non-compete agreement to protect the U.S. market,
[23] do you recall anything else that was said, any more
[24] specifics, about the scope and details of what that

Page 114

[1] non-compete would look like, at least from the
[2] buyer's perspective?
[3]   A: I can't recall details.
[4]   Q: Did you take any notes at that meeting?
[5]   A: I don't remember.
[6]   Q: Have you searched to see if you took any
[7] notes at that meeting?
[8]   A: I don't recall searching for notes.
[9]   Q: Well, let me ask you a question. What did
[10] you do to investigate your — for purposes of this
[11] deposition, what occurred or did not occur at that
[12] meeting, what was said with respect to the Stock
[13] Purchase Agreement or the Non-Compete Agreement?
[14]   A: Just my memory and looking at e-mails.
[15]   Q: What e-mails?
[16]   A: There were a lot of — you know, there's
[17] constant e-mails going between everybody in
[18] September and October and November.
[19]   Q: Do you know if those e-mails have been
[20] produced?
[21]   A: I am pretty sure they have.
[22]   Q: Did you talk to Mr. Brandano at any time
[23] prior to this deposition for the purpose of getting
[24] his recollection of that meeting?

Page 115

[1]   A: About that particular meeting in September?
[2]   Q: Yes.
[3]   A: No, not specifically.
[4]   Q: Did you talk to Mr. Wood about his memory
[5] of that meeting in connection with preparing to be
[6] the corporate witness for this deposition?
[7]   A: No.
[8]   Q: Did you ask Mr. Wood or Mr. Brandano
[9] whether they had any notes themselves of that
[10] meeting?
[11]   A: I've asked all — for all of their printed
[12] materials regarding the Stock Purchase Agreement and
[13] the various documents.
[14]   Q: I appreciate that, but did you specifically
[15] say, "Do you have any handwritten notes of the
[16] substance of that meeting?" Have you asked Mr.
[17] Brandano or Mr. Wood about that?
[18]   A: I didn't ask them specifically whether they
[19] had any handwritten notes about that meeting.
[20]   Q: Do you know whether there was any e-mail
[21] traffic back and forth regarding specifically that
[22] meeting?
[23]   A: There was — we drafted a heads of
[24] agreement out of that meeting, I believe.

Page 116

[1]   Q: I'm sorry, a heads of agreement?
[2]   A: Yes.
[3]   Q: What is that?
[4]   A: It's kind of just general principles of
[5] what was going to be agreed to.
[6]   Q: Do you know if the Non-Compete was included
[7] as part of that heads of agreement?
[8]   A: I don't recall.
[9]   Q: Do you know if the heads of agreement has
[10] been produced?
[11]   A: I don't know.
[12]   Q: I will represent to —
[13]   MR. BELLO: Oh, you do have it. I won't
[14] represent that. He's got it.
[15]   Q: Were there any meetings — let me take a
[16] step back. With respect to the Non-Compete
[17] Agreement, have you exhausted your memory, as you
[18] sit here today, of the discussion, who said what to
[19] whom, with respect to that topic? And that is that
[20] there was a need, that the American company would
[21] need a non-compete to protect it in the U.S. market.
[22] Does that exhaust your memory?
[23]   A: No.
[24]   Q: Okay. What else do you recall with respect

Page 117

[1] to a non-compete at that meeting?
[2] **A:** Oh, at that meeting?
[3] **Q:** Yes.
[4] **A:** Yes, that exhausts that meeting.
[5] **Q:** Was there any discussion of the promissory
[6] notes or promissory notes in general at that
[7] meeting?
[8] **A:** I just don't recall. There's a lot of
[9] discussions about the business transaction, but it
[10] evolved over the last —
[11] **MR. COMEN:** Would you like to take a
[12] minute, since we just established that we produced
[13] the heads of agreement for you, rather than test his
[14] memory, show him the heads of the agreement and
[15] refresh his memory about that specific meeting.
[16] **MR. BELLO:** Again, I'm going to try not to
[17] get into an argument, Steve. He is obligated to
[18] have — he has been designated as the Rule 30(b)(6)
[19] witness. He is obligated to investigate, to gather
[20] facts, and to come prepared to testify as to those
[21] facts. That's the obligation of a corporate
[22] witness.
[23] **MR. COMEN:** Okay. All right. If you want
[24] to get information, you know, I'm sure if you show

Page 118

[1] him the document, it will establish what the
[2] subjects of discussion were —
[3] **A:** The September meeting —
[4] **MR. COMEN:** You've answered — there's no
[5] question before you.
[6] **Q:** No, actually, there is a question, which is
[7] your memory of the September meeting with respect to
[8] the subject matter of a non-compete or promissory
[9] notes.
[10] **A:** It just established the bare bones of the
[11] business transaction.
[12] **Q:** Do you recall whether that included any
[13] discussion of promissory notes?
[14] **A:** I don't recall.
[15] **Q:** Do you recall whether a price was discussed
[16] at this meeting or a potential price for the
[17] acquisition?
[18] **A:** There were discussions about pricing and
[19] offsets and additions. There's a big — what things
[20] should be added in, what things should be deducted.
[21] **Q:** When you say "offsets," what are you
[22] referring to, sir?
[23] **A:** There were a lot of liabilities on the
[24] balance sheet that had to be offset for the purchase

Page 119

[1] price.
[2] **Q:** Do you recall, if not the exact number, the
[3] range of the purchase price, before the offsets,
[4] that was discussed in September?
[5] **A:** I just don't recall right now.
[6] **Q:** Was it more than $50 million?
[7] **A:** I think the pricing was always 10 to 20 to
[8] 25 million.
[9] **Q:** Now, other than the meeting that you've
[10] described, were you present at any meeting —
[11] present — whether it was internal, that is, just
[12] among your — either just the BBCC group or the BBCC
[13] group with Hudson group, regarding the terms of the
[14] Non-Competition Agreement at any time between
[15] September and November 29, 2002?
[16] **THE WITNESS:** Could you repeat the
[17] question.
[18] (Question read)
[19] **A:** I was involved with a telephone discussion
[20] in November regarding the Non-Competition Agreement.
[21] **Q:** Who was also involved in that discussion?
[22] **A:** Jim Wood, Tony Brandano, Dale Miller,
[23] Nathan Hevrony.
[24] **Q:** Anybody else?

Page 120

[1] **A:** I believe Jeff Stoler may have been on the
[2] call?
[3] **Q:** Who is Mr. Stoler?
[4] **A:** He's with Gadsby & Hannah.
[5] **Q:** Anybody else that you can recall?
[6] **A:** No. That's all I can recall.
[7] **Q:** Tell me everything you can remember about
[8] that conversation.
[9] **MR. COMEN:** I object and direct him not to
[10] answer.
[11] **MR. BELLO:** Mr. Stoler was from Gadsby &
[12] Hannah. Mr. Miller did not work for the entity.
[13] Mr. Hevrony did not -- on what basis could you
[14] possibly assert an attorney-client privilege?
[15] **MR. COMEN:** I believe those are privileged
[16] discussions.
[17] **MR. BELLO:** On what basis?
[18] **MR. COMEN:** That Mr. Stoler was
[19] representing at that time the group that was buying.
[20] **MR. BELLO:** No. The witness already
[21] testified he was representing the Hudson group, not
[22] the management group. Mr. Miller was not part of --
[23] was not an employee of either BBCC or what became
[24] the entity.

---

Page 121

[1]     Let's stop for a moment. I want to talk
[2] to — let's see if we should just call the Master,
[3] because that's a completely inappropriate assertion
[4] of privilege.
[5]     MR. COMEN: Tell him at the same time about
[6] that document.
[7]     MR. BELLO: You can tell him anything you'd
[8] like.
[9]     (Brief recess)
[10]     MR. BELLO: Maybe pull all those
[11] instructions not to answer into a separate little
[12] Min-U-Script.
[13]     For the record, let the record reflect that
[14] the witness has been instructed not to answer on the
[15] basis of an attorney-client privilege. I've asked
[16] to understand the basis of the privilege. My
[17] understanding is now it is claimed that Gadsby &
[18] Hannah was counsel for all of the parties that
[19] participated in this conversation, which is
[20] inconsistent with the witness's testimony from
[21] earlier in the day.
[22]     MR. COMEN: Now let me explain. I don't
[23] believe that's true. I don't believe you've asked
[24] him the specific question that if you asked him

---

Page 122

[1] would elicit the answer that Gadsby & Hannah was
[2] representing all of the people involved in buying
[3] the entity.
[4]     MR. BELLO: Well, we'll let this testimony
[5] stand as it is on the record.
[6]     MR. COMEN: You can clarify it with him.
[7] I'm sure that's the case.
[8]     MR. BELLO: I'm sure you —
[9]     BY MR. BELLO:
[10]     Q: Did you ever pay —
[11]     MR. COMEN: Then at an appropriate time,
[12] let me elicit, before you ask questions —
[13]     MR. BELLO: (Shakes head)
[14]     MR. COMEN: Well, fine. Then when we
[15] present this to the Discovery Master, then I'll
[16] explain it, if he doesn't want to ask you the
[17] questions.
[18]     Q: Do you have a letter reflecting Gadsby &
[19] Hannah being retained as your counsel in connection
[20] with this transaction? Any documentation?
[21]     A: Babcock Power Inc. paid Gadsby & Hannah's
[22] legal bills.
[23]     Q: Do you have, up to November 29, 2002, do
[24] you have a letter reflecting that Gadsby & Hannah

---

Page 123

[1] was representing you in connection with this
[2] transaction?
[3]     MR. COMEN: "You" being who?
[4]     Q: Any part of the management group, Mr. Wood,
[5] Mr. Brandano, the 17 people. Is there any — strike
[6] that question.
[7]     Do you have a letter or any documentation
[8] reflecting that Gadsby & Hannah was retained to
[9] represent BBCC at any time prior to November 29,
[10] 2002?
[11]     A: There was no letter, but the fact —
[12]     Q: I'm asking if you had any letter, sir.
[13]     MR. COMEN: Just answer his questions. If
[14] he doesn't want to ask you the right questions,
[15] we'll deal with it with the Master.
[16]     Q: Do you have any documentation of any kind,
[17] reflecting that Gadsby & Hannah was counsel for BBCC
[18] prior to November 29, 2002?
[19]     A: We paid their bills, which reflected the
[20] time that they spent before November 29th. So
[21] that's documentation.
[22]     Q: You would agree with me, sir, that a party
[23] can pay bills on behalf — legal bills on behalf of
[24] another? Would you agree with that as a general

---

Page 124

[1] proposition?
[2]     A: I guess so.
[3]     Q: Other than the bills — when were those
[4] bills paid, by the way?
[5]     A: December 2002 or —
[6]     Q: After the transaction closed, correct, sir?
[7]     A: Yes.
[8] " Q. Do you have any documentation that is dated
[9] November — anything prior to November 29, 2002,
[10] that reflects that Gadsby & Hannah had been retained
[11] as legal counsel for BBCC in connection with the
[12] transaction?
[13]     THE WITNESS: Could you repeat the
[14] question.
[15]     (Question read)
[16]     A: After the meeting in September, it was very
[17] clear that the management, in order to save the
[18] company, was aligning itself with the Hudson group,
[19] and we were on one side of the transaction and the
[20] German parent was on the other side. And the German
[21] parent had put two Germans in our offices to oversee
[22] that process. "
[23]     MR. BELLO: Move to strike as nonresponsive
[24] to my question.

**Page 125**

[1]    MR. COMEN: It's precisely responsive, and
[2] I don't think Mr. Bello wants to hear and understand
[3] the relationships. But, please, it is precisely
[4] responsive.
[5]    MR. BELLO: Move to strike the answer as
[6] nonresponsive to my question.
[7]    Q: My question to you, sir, was not —
[8]    MR. COMEN: He *is* explaining to you why —
[9]    MR. BELLO: Steve —
[10]    MR. COMEN: — the discussion was
[11] privileged and who represented whom.
[12]    MR. BELLO: Steve, when you're done, you'll
[13] let me know.
[14]    MR. COMEN: Go ahead.
[15]    MR. BELLO: You're done.
[16] *** Q. My question was, do you have any
[17] documentation? That was my question.
[18]    A: We have documentation —
[19]    Q: Prior to November 29, 2002, reflecting that
[20] Gadsby & Hannah had been engaged as counsel for BBCC
[21] in connection with the acquisition?
[22]    A: We have documentation with us giving input
[23] into the various documents to Gadsby & Hannah.
[24]    Q: And is it your testimony that that reflects

**Page 126**

[1] Gadsby & Hannah being engaged as BBCC's counsel? Is
[2] that your testimony? ****
[3]    MR. COMEN: That's what he said.
[4]    MR. BELLO: Please, Steve, stop
[5] interrupting, please.
[6]    MR. COMEN: Is that not what he answered?
[7]    MR. BELLO: Steve, I'm asking you as — I'm
[8] asking you to stop interrupting my examination.
[9]    # Q. Is it your testimony that that constitutes
[10] documentation reflecting that BBCC had engaged
[11] Gadsby & Hannah as its legal counsel in connection
[12] with this transaction? ##
[13] MR. COMEN: I object. Would you please
[14] repeat that question, because that's unfair. Please
[15] ask the prior question about reflecting
[16] representation of someone, and then the follow-up
[17] question that used the term "BBCC." I believe there
[18] were two different "reflecting" questions.
[19]    (Record read from * to **, *** to ****,
[20] and # to ##)
[21]    Q: Now, maybe can you answer my question,
[22] please. Is that — is it your position that that
[23] reflects the engagement of Gadsby & Hannah as
[24] counsel to BBCC in connection with this transaction?

**Page 127**

[1]    A: The management was becoming — we were
[2] becoming shareholders, and that discussion regarding
[3] the Non-Compete was among future shareholders of
[4] BBCC Holding Company, Inc.
[5]    Q: So, if I understand, is it your position
[6] that all shareholders come within the privilege? Is
[7] that it?
[8]    MR. COMEN: No. He's made it clear. I'll
[9] tell you —
[10]    MR. BELLO: No, I don't want you —
[11]    MR. COMEN: I thought you were looking at
[12] me and asking me.
[13]    MR. BELLO: I'm not asking you, Steve.
[14]    A: We were having a discussion as future
[15] shareholders of BBCC Holding Company, Inc.
[16]    Q: Sir, all I'm asking —
[17]    A: And Gadsby & Hannah was representing all of
[18] us in that —
[19]    Q: And I'm asking you —
[20]    MR. COMEN: You let him finish. And he
[21] just explained who Gadsby & Hannah was representing,
[22] and those were the people with whom the discussions
[23] were privileged.
[24]    MR. BELLO: Do you want to testify, Steve,

**Page 128**

[1] because we can just have you testify?
[2]    MR. COMEN: No. Just let him finish.
[3]    MR. BELLO: We can have you testify.
[4] You're doing —
[5]    MR. COMEN: I hope it's getting clearer.
[6]    MR. BELLO: That's fine.
[7]    THE WITNESS: Can I run to the men's room
[8] for a second?
[9]    MR. COMEN: I want to go too. But we'll go
[10] separately.
[11]    (Recess)
[12]          BY MR. BELLO:
[13]    Q: Mr. Brantl, what I want to do — and please
[14] follow my question, which is I am interested only in
[15] one thing right now, documentation, paper.
[16]    And what I would like to know is, is there
[17] any documentation reflecting an attorney-client
[18] relationship between BBCC and Gadsby & Hannah with
[19] respect to the transaction that is dated prior to
[20] November 29, 2002? I'm not asking you about your
[21] belief or the group's. That we can save for another
[22] day.
[23]    A: The managers at BBCC were providing Gadsby
[24] & Hannah with input regarding the documents

Page 129

[1] throughout that period from September through the
[2] end of November.
[3]    Q: But I'm talking about the establishment of
[4] an attorney-client relationship, sir. Are you
[5] saying the day-to-day providing of input, those
[6] documents, in your view, reflects an attorney-client
[7] relationship between Gadsby and BBCC? Is that
[8] right?
[9]    A: We looked at Gadsby & Hannah as our
[10] attorneys.
[11]    Q: Is there any documentation to reflect that,
[12] sir?
[13]    A: Yes. Documentation regarding our input
[14] into various documents to Gadsby & Hannah.
[15]    MR. COMEN: The confusion is "our input."
[16] Is it BBCC, the company that was owned by the
[17] Germans, that you're talking about when you say
[18] "our," or the managers —
[19]    A: The managers of BBCC were providing input
[20] to Gadsby & Hannah, and the Germans knew about this.
[21] Mr. Brinkmann and Mr. Hampen were in the office to
[22] see this.
[23]    Q: Is there an engagement letter between
[24] Gadsby & Hannah and BBCC?

Page 130

[1]    A: Not that I'm aware of.
[2]    Q: Is there any bill that was paid to Gadsby &
[3] Hannah before November 29, 2002, by BBCC?
[4]    A: I don't know. I haven't checked those
[5] records.
[6]    Q: Are you aware, sitting here today, of any
[7] bill paid by BBCC prior to November 29, 2002? Are
[8] you aware of any, to Gadsby & Hannah?
[9]    A: I haven't checked the records.
[10]    Q: So sitting here today, you're not aware of
[11] any?
[12]    A: I'm not aware of any right now.
[13]    Q: Do you have an employment contract with
[14] BPI?
[15]    A: It's a shareholders' agreement.
[16]    Q: Is that the only agreement you have with
[17] respect to your relationship to BPI, the
[18] shareholders' agreement?
[19]    A: There are, I believe, three documents.
[20]    Q: What are the other documents?
[21]    A: One of them is an employee confidentiality
[22] and nondisclosure type agreement.
[23]    Q: That's two. What's the third?
[24]    A: I think the third one is a subscription

Page 131

[1] agreement for the stock.
[2]    Q: But no employment agreement?
[3]    A: The document I just mentioned, the
[4] nondisclosure, could be considered an employment
[5] agreement.
[6]    Q: An employment agreement in the sense of
[7] setting out terms and conditions of employment other
[8] than confidentiality, like salary, like severance
[9] and things of that type of nature, is there such a
[10] document?
[11]    A: No. That's the only document there is.
[12]    Q: When was that — the shareholders'
[13] agreement, was that entered into as of November 29,
[14] 2002?
[15]    A: Yes.
[16]    Q: Is there any documentation reflecting a
[17] disclosure — documentation reflecting a disclosure
[18] to the directors of BBCC that Gadsby & Hannah was
[19] the legal counsel to the management group involved
[20] in this transaction?
[21]    THE WITNESS: Would you repeat the
[22] question, please.
[23]    (Question read)
[24]    A: I don't know. There was a lot of

Page 132

[1] documentation —
[2]    MR. COMEN: You don't know. You've
[3] answered that.
[4]    A: I don't know.
[5]    Q: Is there any documentation that you're
[6] aware of reflecting a disclosure by you to Dr.
[7] Kraenzlin that Gadsby & Hannah had been retained as
[8] the legal counsel to the management group in
[9] connection with the acquisition?
[10]    A: I don't know.
[11]    Q: Do you know who Gadsby & Hannah directed
[12] its bills to prior to November 29, 2002?
[13]    A: I don't know.
[14]    Q: Well, those bills were paid in December
[15] 2002, is that correct, by BPI?
[16]    A: Yes. December or January.
[17]    Q: But you don't know who they were directed
[18] to?
[19]    A: I haven't checked those records.
[20]    Q: The shareholders' agreement that you
[21] referenced, was that negotiated prior to — if it
[22] was effective as of November 29th, was it negotiated
[23] prior to November 29th?
[24]    A: Yes.

Page 133

[1]   Q: Who negotiated it? Who were the parties to
[2] the negotiations?
[3]   A: I'd say Jim Wood, Tony Brandano.
[4]   Q: Yourself?
[5]   A: No, I wasn't really involved with it.
[6]   Q: Anyone else?
[7]   A: I wasn't party to those negotiations. I
[8] don't know who it was.
[9]   Q: Was there any outside counsel involved in
[10] those negotiations?
[11]   A: Gadsby & Hannah was involved.
[12]   Q: Representing whom?
[13]   A: For that particular document, they were
[14] representing Hudson.
[15]   Q: Representing Hudson group, but not the rest
[16] of the management group or the rest of the
[17] shareholders; is that correct?
[18]   A: For that particular document.
[19]   Q: Who drafted it, do you know?
[20]   A: No.
[21]   Q: Who represented the management group in the
[22] negotiation?
[23]   A: Goodwin Procter.
[24]   Q: Who at Goodwin Procter?

Page 135

[1] 2002, regarding the Non-Competition Agreement.
[2]   MR. COMEN: Yes.
[3]   MR. BELLO: And the basis of that is the
[4] supposed attorney-client privilege?
[5]   MR. COMEN: What I've said all along.
[6]   MR. BELLO: I'm sorry —
[7]   MR. COMEN: Yes. And at the appropriate
[8] time I'll clarify. I can clarify it on the record
[9] through questions with Mr. Brantl, or we can do it
[10] with Judge Hershfang.
[11]   BY MR. BELLO:
[12]   Q: Do you know if the management group had an
[13] engagement letter from Goodwin Procter in connection
[14] with any of the work it did in connection with this
[15] transaction?
[16]   MR. COMEN: "This transaction" being?
[17]   MR. BELLO: The November 29, 2002,
[18] acquisition.
[19]   A: Not that I can recall.
[20]   Q: You don't recall one way or the other?
[21]   A: No, I don't.
[22]   Q: And who paid the bill of Goodwin Procter in
[23] connection with the transaction? For example, with
[24] respect to the shareholders' agreement, who paid

Page 134

[1]   A: I believe it was Paul Goren who was
[2] involved.
[3]   Q: G-o-r-e-n?
[4]   A: Yes.
[5]   MR. BELLO: Just so I'm clear, I assume,
[6] Steve, that it will still be in your instruction to
[7] this witness not to answer the question regarding
[8] the conversation that occurred among and between Mr.
[9] Wood, Brandano, Miller, Hevrony and Stoler in
[10] November of 2002?
[11]   MR. COMEN: My instructions will stay the
[12] same. At some point I'll have a chance to clarify
[13] the testimony of Mr. Brantl. I can do it now, I can
[14] do it later, I can do it before Judge Hershfang,
[15] however.
[16]   MR. BELLO: I'm asking if you are
[17] instructing him not to answer that question.
[18]   MR. COMEN: Which question?
[19]   MR. BELLO: The question is, I'm asking the
[20] witness, in light of all the testimony that has been
[21] presented, to testify as to his best memory as to
[22] what was said in the conversation between Mr. Wood,
[23] Mr. Brandano, Mr. Miller, Mr. Hevrony and Mr.
[24] Stoler, counsel at Gadsby & Hannah, in November of

Page 136

[1] that bill?
[2]   A: I haven't specifically checked those
[3] records, so I can't say one way or the other.
[4]   Q: You have no memory?
[5]   A: I could guess.
[6]   Q: I don't want you to guess. Did you
[7] personally pay any of the legal fees of Goodwin
[8] Procter or contribute to the payment of the legal
[9] fees of Goodwin Procter?
[10]   A: I approved bills, generally.
[11]   Q: I am not asking in your role of general
[12] counsel. I'm asking you, did you personally, out of
[13] your own pocket, as opposed to the company pocket,
[14] pay any of the bills of Goodwin Procter?
[15]   A: No.
[16]   Q: Did Mr. Wood pay any of the bills of
[17] Goodwin Procter personally?
[18]   A: Not that I'm aware.
[19]   Q: How about Mr. Brandano?
[20]   A: Not that I'm aware.
[21]   Q: So do you have a belief that BPI paid the
[22] bills of Goodwin Procter in connection with the
[23] transaction?
[24]   A: It would only be a guess at this point.

Page 137

[1]    Q: Other than — are you aware of the
[2] existence of any letters or any documentation of any
[3] kind waiving a conflict of interest between the
[4] management group and BBCC in connection with the
[5] representation, the alleged representation by Gadsby
[6] & Hannah?
[7]    A: I don't recall any waivers. They were just
[8] in our offices —
[9]    MR. COMEN: You answered already.
[10]    Q: Up until November 29, 2002, you were
[11] employed by BBCC, correct?
[12]    A: Yes.
[13]    Q: And you were an officer, correct?
[14]    A: Yes.
[15]    Q: And a director, correct?
[16]    A: Yes.
[17]    Q: And a general counsel, correct?
[18]    A: Yes.
[19]    Q: And in those roles you had fiduciary duties
[20] to BBCC; is that correct?
[21]    A: Yes.
[22]    Q: And as general counsel, did you consider
[23] whether or not you needed a waiver to separate your
[24] obligations owed to BBCC as a director, officer and

Page 138

[1] general counsel and your role as part of the
[2] purchasing group?
[3]    A: I thought I was fulfilling my fiduciary
[4] responsibilities to the company, because the company
[5] would eventually have gone bankrupt if we didn't get
[6] bought by somebody.
[7]    Q: Did you consider whether you needed to get
[8] a waiver in the context of your dual role, sir?
[9]    MR. COMEN: I object to "dual role."
[10]    Q: Well, you would agree with me you had
[11] different roles. You had a role as general counsel,
[12] an officer and director to the existing entity,
[13] right? That's one role; is that a fair
[14] characterization?
[15]    A: Yes.
[16]    Q: And you also had a role as part of a buying
[17] group. Is that a fair characterization as a second
[18] role?
[19]    A: Yes. I was representing, though, when I
[20] was — I was representing the company trying to get
[21] protection for the company I was working from
[22] the present owner that was going to sell us to this
[23] new group who wanted to — I wanted to make sure my
[24] company was protected.

Page 139

[1]    Q: And you were part of the new group too,
[2] though, weren't you?
[3]    A: Yes.
[4]    Q: Did you consider whether you should have a
[5] waiver letter in connection with being a part of the
[6] new group as well as being the general counsel,
[7] officer, director of the selling group?
[8]    A: I was protecting BBCC, not the shareholders
[9] of BBCC.
[10]    Q: I'm just asking whether you considered you
[11] should get a waiver, a written waiver with respect
[12] to any conflict of interest in connection with the
[13] representation by Gadsby & Hannah.
[14]    A: I don't recall thinking I needed that at
[15] that point.
[16]    Q: Did you consider whether you should have a
[17] conflict of interest waiver letter between your
[18] group and Hudson investments with respect to the
[19] representation by Gadsby & Hannah?
[20]    A: I didn't think — I wasn't aware of any
[21] need for that.
[22]    Q: And up through the present day, have you
[23] ever had any conversation with Mr. Stoler regarding
[24] whether or not Gadsby & Hannah represented the

Page 140

[1] management group as well as Hudson in connection
[2] with that transaction?
[3]    THE WITNESS: Could you repeat the
[4] question, please.
[5]    (Question read)
[6]    A: I had several conversations with the Gadsby
[7] & Hannah attorneys during the October, November time
[8] frame. I don't recall the details of them.
[9]    Q: That's not my question. My question is,
[10] have you ever specifically talked with Mr. Stoler,
[11] right through the present day, about whether or not
[12] Gadsby & Hannah was the managing group's legal
[13] counsel in connection with the transaction?
[14]    A: I can't recall anything —
[15]    (Telephone interruption)
[16]    Q: Have you ever specifically asked — have
[17] you ever asked Mr. Stoler whether he considered him
[18] and Gadsby & Hannah to be the legal counsel of the
[19] management buying group in connection with the
[20] transaction?
[21]    THE WITNESS: Could you repeat that
[22] question.
[23]    (Question read)
[24]    A: I don't recall ever asking him.

Page 141

[1]   **Q:** Now, in connection with — well, just going
[2]  back to the Non-Competition Agreement, as I
[3]  understand it, the only two communications that I'm
[4]  aware of that you participated in that you've
[5]  described is the telephone call in November and the
[6]  introductory meeting in September. Were there any
[7]  other communications regarding the Non-Competition
[8]  Agreement and the substance of it that you
[9]  participated in at any time between September and
[10] November 29, 2002?
[11]   **THE WITNESS:** Would you repeat the
[12] question.
[13]   (Question read)
[14]   **MR. COMEN:** There are two questions. Do
[15] you want him to answer one? You asked about any
[16] communications, and then you said "the substance."
[17]   **Q:** Let's start with any communications.
[18]   **A:** I recall reading it and providing input in
[19] the definitions.
[20]   **Q:** Input to who?
[21]   **A:** Either directly to the Gadsby & Hannah
[22] attorneys or Jim Wood or Tony Brandano.
[23]   **Q:** Do you have any current memory, sitting
[24] here today, as to any input that you provided to the

Page 143

[1]   **Q:** Do you remember any of the substance —
[2]   **MR. COMEN:** I direct you not to answer.
[3]   **MR. BELLO:** All I'm asking is if he
[4] remembers.
[5]   **Q:** Yes or no, do you remember the substance of
[6] the input you gave to the Gadsby & Hannah attorneys?
[7]   **A:** I think I have probably several comments.
[8] I can remember one of them right now.
[9]   **MR. COMEN:** Don't disclose it. I direct
[10] you not to answer.
[11]   **Q:** The question will be, what was that input?
[12]   **MR. COMEN:** And I direct you not to answer.
[13]   **MR. BELLO:** On the basis of attorney-client
[14] privilege?
[15]   **MR. COMEN:** Yes.
[16]   **Q:** Other than the input to the Gadsby & Hannah
[17] attorneys or to Mr. Wood and Brandano in the other
[18] two meetings, did you participate in any other
[19] communications regarding the Non-Competition
[20] Agreement between September and November 2002,
[21] November 29, 2002?
[22]   **MR. COMEN:** Can you repeat — what was the
[23] beginning to that? Other than what?
[24]   (Question read)

Page 142

[1]  Gadsby & Hannah attorneys?
[2]   **MR. COMEN:** The substance of it?
[3]   **MR. BELLO:** Well, first, does he have any
[4]  memory as to the — the substance will come
[5]  immediately following, which I'm assuming you will
[6]  instruct him not to answer.
[7]   **MR. COMEN:** Yes.
[8]   **A:** Could you repeat that question.
[9]   **Q:** Let me —
[10]   **MR. COMEN:** So what is it that you want him
[11] to answer now?
[12]   **Q:** Do you have any memory — I'm not asking
[13] the substance yet -- of any input given to the
[14] Gadsby & Hannah attorneys regarding the subject
[15] matter or the language of the Non-Compete Agreement?
[16]   **A:** I have a memory about the terms of the
[17] market definitions. I don't know — I can't
[18] remember who I gave that input to.
[19]   **Q:** So you can't separate that, whether you
[20] gave that to Mr. Brandano, Wood or the Gadsby &
[21] Hannah lawyers; is that correct?
[22]   **A:** I'm trying to remember right now, and I
[23] think I gave that to one of the Gadsby & Hannah
[24] attorneys.

Page 144

[1]   **MR. COMEN:** So other than the input —
[2]   **MR. BELLO:** Other than what he's testified
[3] about is the short answer.
[4]   **A:** In the week prior to the closing, Jim Wood
[5] and I had a couple of discussions regarding the
[6] Non-Compete Agreement.
[7]   **Q:** Just you and Mr. Wood?
[8]   **A:** Tony Brandano may have been there.
[9]   **Q:** Anyone else who might have been there?
[10]   **A:** Not that I can recall.
[11]   **Q:** What, then, sir, did you do to investigate
[12] the negotiations or other communications that led to
[13] the execution of the Non-Competition Agreement for
[14] purposes of this deposition today?
[15]   **A:** I've spoken to Jim Wood and Tony and Nathan
[16] and Dale Miller, when the complaint was filed, and
[17] had several other discussions with them about the
[18] negotiations leading up to the Non-Competition
[19] Agreement.
[20]   **Q:** And those discussions including as part of
[21] your preparation for this deposition as a corporate
[22] witness?
[23]   **A:** More as my role as general counsel.
[24]   **Q:** Have those conversations occurred — well,

Page 145

[1] I'm asking you specifically what you did to prepare
[2] for the deposition as corporate witness to
[3] investigate the negotiations or other communications
[4] that led to the execution of the Non-Competition
[5] Agreement.
[6]    A: I looked at the various correspondence
[7] about six months ago, and I looked at it yesterday.
[8]    Q: I'm not going to ask you the substantive
[9] question. Let me try it a different way, sir. In
[10] connection at any time, did you discuss with Mr.
[11] Wood the negotiations and the communications that
[12] occurred that he had with anyone from BB AG
[13] regarding the Non-Competition Agreement?
[14]    THE WITNESS: Could you repeat the
[15] question.
[16]    (Question read)
[17]    A: Yes, I've had discussions with Mr. Wood.
[18]    MR. BELLO: Are you going to instruct him
[19] not to answer?
[20]    MR. COMEN: Yes.
[21]    Q: So in your role in preparing for this
[22] deposition and investigating, you talked — Mr. Wood
[23] described to you conversations that he had either —
[24] with BB AG regarding the back and forth on the

Page 147

[1]    MR. COMEN: Go ahead.
[2]        BY MR. BELLO:
[3]    Q: Did you have any conversations with Mr.
[4] Wood regarding communications he had with others
[5] within the management group or the Hudson group
[6] regarding the Non-Competition Agreement?
[7]    THE WITNESS: Could you repeat the
[8] question.
[9]    (Question read)
[10]    A: I just can't recall right now.
[11]    Q: Did you have any conversations with Mr.
[12] Brandano regarding any of the communications — and
[13] I'll break this down into two categories — that
[14] occurred with respect to the Non-Competition
[15] Agreement with BB AG, Mr. Brandano describing to you
[16] what was said back and forth with respect to the
[17] Non-Competition Agreement with BB AG?
[18]    THE WITNESS: Could you repeat the
[19] question.
[20]    (Question read)
[21]    A: I may have had some discussions with him
[22] yesterday when we were preparing for this
[23] deposition.
[24]    Q: What did he tell you?

Page 146

[1] Non-Compete Agreement, correct?
[2]    A: Yes.
[3]    Q: What were those conversations?
[4]    MR. COMEN: I direct you not to answer.
[5]    MR. BELLO: I am going to again put on the
[6] record, I believe this is a complete subterfuge of
[7] the obligation of a corporate witness. You've
[8] presented Mr. Brantl as a corporate witness, but you
[9] are raising an attorney-client privilege on the very
[10] topics that he was obligated to investigate and
[11] present information on.
[12]    MR. COMEN: Okay.
[13]    MR. BELLO: Is that — is there any other
[14] basis by which he's not presenting testimony?
[15]    MR. COMEN: You know, Mr. Brandano is going
[16] to be deposed in two days.
[17]    MR. BELLO: He's not the corporate witness.
[18]    MR. COMEN: We have agreed to a date for
[19] Mr. Wood.
[20]    MR. BELLO: We're entitled to a corporate
[21] witness.
[22]    MR. COMEN: You know, knock yourself out.
[23]    MR. BELLO: Make sure that's on the record,
[24] please.

Page 148

[1]    MR. COMEN: I direct him not to answer.
[2] Those discussions took place with me.
[3]    MR. BELLO: So you direct him on the
[4] attorney-client privilege even though he is a
[5] corporate witness.
[6]    MR. COMEN: We were meeting together.
[7]    MR. BELLO: Again, I'm going to state for
[8] the record, the corporate witness has the obligation
[9] to gather facts and to be able to respond. The
[10] corporate witness cannot put on the role of an
[11] attorney-client privilege. Then someone other than
[12] general counsel should have been presented as a
[13] corporate witness.
[14]    MR. COMEN: We can only do them one at a
[15] time.
[16]    MR. BELLO: We're entitled to a corporate
[17] witness.
[18]    MR. COMEN: I mean, how many times do you
[19] have to make that point? I'll make that point.
[20] Let's be clear. You know, we could have had this
[21] discussion before Judge Hershfang when we were
[22] meeting with him in anticipation of this issue
[23] coming up. If you were going to spend so much time
[24] in this discussion today, we could have raised the

Page 149

[1] question with Judge Hershfang.
[2]     MR. BELLO: I didn't expect that the
[3] witness would decline to provide the information.
[4]     MR. COMEN: Well, you seem to be prepared
[5] with a memorandum that appears lengthy with
[6] Magistrate Collings.
[7]     MR. BELLO: That's the obligation of the —
[8]     MR. COMEN: At any rate, we could have had
[9] this discussion with Judge Hershfang. I would have
[10] been happy to have it with him.
[11]     MR. BELLO: We will have it at an
[12] appropriate time.
[13]     MR. COMEN: Okay.
[14]     MR. BELLO: So you are instructing him not
[15] to answer.
[16]             BY MR. BELLO:
[17]     Q: Did you have any conversation with Mr.
[18] Hevrony regarding his memory of the negotiations
[19] with respect to the Non-Compete Agreement?
[20]     A: Yes. I believe that was one of the items
[21] that we discussed back in September.
[22]     Q: September of this year?
[23]     A: Yes.
[24]     Q: Is that the only time you've had a

Page 150

[1] conversation with Mr. Hevrony regarding the
[2] negotiations with respect to the Non-Competition
[3] Agreement?
[4]     A: I think I've had previous conversations
[5] with him.
[6]     Q: How many?
[7]     A: I think two.
[8]     Q: Do you recall when?
[9]     A: I believe we discussed it when the
[10] complaint was filed and in regard to the production
[11] of documents.
[12]     Q: Was the conversation with respect to the
[13] production of documents before or after the
[14] September conversation?
[15]     A: I think it was one before and one after.
[16]     Q: So that would be four total?
[17]     A: No, those two conversations. One was
[18] before and one was after.
[19]     Q: The one when the complaint was filed would
[20] have been before?
[21]     A: Yes.
[22]     Q: And the one about the production of
[23] documents would have been after?
[24]     A: Yes.

Page 151

[1]     Q: And in the — and both of these, the
[2] September and the production of documents
[3] conversations, both occurred after the Rule 30(b)(6)
[4] notice, original Rule 30(b)(6) notice, had been
[5] issued; is that correct?
[6]     A: I don't know.
[7]     Q: Well, if I represent to you that the date
[8] of the letter to Mr. Comen was August 29, 2005, and
[9] that was the second letter — the original Rule
[10] 30(b)(6) was not dated as to a specific date. The
[11] deposition went out, I believe, in July. Is it fair
[12] to say those conversations occurred after you had
[13] seen the Rule 30(b)(6) notice?
[14]     MR. COMEN: I'm sorry, when was the
[15] complaint filed?
[16]     MR. BELLO: The complaint was filed
[17] probably a year earlier.
[18]     MR. COMEN: I thought he said sometime
[19] around the time of the complaint.
[20]     MR. BELLO: That's right. That's the first
[21] one. Then he said two — one was after September of
[22] 2005.
[23]     Q: Is it fair to say that those conversations
[24] occurred after you first saw the Rule 30(b)(6)

Page 152

[1] notice of deposition?
[2]     A: Yes. The meeting in September occurred
[3] afterwards, and I believe I spoke to Mr. Hevrony in
[4] October or November.
[5]     Q: Have you reviewed any summaries or
[6] chronologies of events in connection with
[7] preparation for the deposition today?
[8]     A: I looked at a chronology yesterday.
[9]     Q: Created by who?
[10]     MR. COMEN: Counsel.
[11]     A: Goodwin Procter.
[12]     Q: Has the chronology been produced?
[13]     MR. COMEN: No.
[14]     Q: I assume you reviewed that to better
[15] refresh your recollection of the events that have
[16] occurred in the chronology? Please answer the
[17] question.
[18]     A: I didn't need that chronology.
[19]     Q: Did it refresh your recollection?
[20]     A: Maybe a little bit.
[21]     Q: And what did Mr. Hevrony say to you and
[22] what did you say to him in connection with the
[23] Non-Competition Agreement?
[24]     MR. COMEN: I object. I instruct him not

Page 153

[1] to answer.

[2]   Q: I assume the conversation with Mr.

[3] Hevrony — he's going to instruct you — let me try

[4] it a different way.

[5]   Is it fair to say that Mr. Hevrony

[6] reflected to you his memory of the communications

[7] that occurred in connection with the negotiation of

[8] the Non-Competition Agreement? Is that correct?

[9]   THE WITNESS: Would you repeat the

[10] question.

[11]   (Question read)

[12]   THE WITNESS: Could you repeat it again.

[13]   (Question read)

[14]   A: I just remember that we discussed —

[15]   MR. COMEN: Go ahead.

[16]   A: We discussed the noncompetition

[17] negotiations back in November of 2002.

[18]   Q: Did he describe to you the discussions he

[19] had with Dr. Kraenzlin and Ludger Kramer in 2002?

[20]   A: I believe we had some general discussions

[21] about that.

[22]   Q: Did he discuss with you or did he — let me

[23] try again. Did the subject matter of the GE

[24] example come up in your communications with Mr.

Page 154

[1] Hevrony, either in September or — at the September

[2] meeting or in the conversation that occurred

[3] afterwards?

[4]   MR. COMEN: You know, I'm not sure at what

[5] point we're getting past the privilege question, so

[6] I think I'll direct him not to answer at this point.

[7] You're getting into what was discussed.

[8]   Q: So other than privileged — what your

[9] counsel identifies as privileged information, what

[10] else did you do to be able to come here today as the

[11] corporate witness?

[12]   You had conversations with Mr. Hevrony, Mr.

[13] Wood, Mr. Brandano about the subject matter of the

[14] seven items. You said you've reviewed documents.

[15] What outside of your privilege role did you do to be

[16] the corporate witness today for which you are

[17] prepared to testify about? Because if I —

[18]   MR. COMEN: In connection with the subjects

[19] listed here?

[20]   MR. BELLO: Right.

[21]   MR. COMEN: Okay. Do you want to look at

[22] subjects again?

[23]   A: (Reviewing document) I believe I've given

[24] you a tremendous amount of information during the

Page 155

[1] three or four hours we've been discussing this

[2] matter.

[3]   Q: You need to answer my question, sir, not

[4] your assessment of the quantum of information you

[5] gave, with all due respect.

[6]   Other than — I've tried to elicit from

[7] you, sir, what investigation you undertook to be

[8] prepared to testify as a corporate witness. You've

[9] testified that you've reviewed documents, some of

[10] which you claim to be privileged. You've testified

[11] that you've had various conversations with, among

[12] others, Mr. Hevrony, Mr. Brandano, Mr. Wood, Mr.

[13] Kramer — I'm sorry, not Mr. Kramer — Mr. Hevrony,

[14] Mr. Brandano, Mr. Wood, all of which you have been

[15] instructed not to disclose on a supposed

[16] attorney-client privilege.

[17]   What communications have you had as part of

[18] your investigation that is not claimed to be

[19] privileged, sir, that you can testify about?

[20]   MR. COMEN: Take the heads of agreement

[21] document that you have that was produced and ask him

[22] about that.

[23]   MR. BELLO: Steve, if I want you as my

[24] witness, I'll direct my questions to you.

Page 156

[1]   A: I've been answering questions for three or

[2] four hours, and I don't understand why you're saying

[3] what you're saying.

[4]   Q: Your attorney can explain that at a break.

[5] Is there any communication that you have had as part

[6] of your investigation with any individual that you

[7] are prepared to testify about in terms of

[8] information, the investigation you did to be able to

[9] testify on these seven topics, sir?

[10]   A: I've given you the identity of the persons

[11] involved in these topics.

[12]   Q: I'm asking the substance.

[13]   A: The location of the documents —

[14]   Q. I'm asking, is there any communication you

[15] have had with any individual that you are prepared

[16] to testify today as to the substance of the

[17] communications that you had with respect to your

[18] investigation of these seven topics? If the answer

[19] is no, you can tell me no, you're not prepared to

[20] testify as to any communication.

[21]   MR. COMEN: I believe you'll find that this

[22] witness is prepared to testify with respect to

[23] numerous documents that have been turned over to you

[24] in discovery, such as the document about the heads

Page 157

[1] of agreement that you refuse to ask him about that
[2] is one of the substantive issues in the case.
[3]    Q: Can you now answer my question, sir,
[4] please.
[5]    THE WITNESS: Could you repeat the
[6] question.
[7]    (* Question read)
[8]    A: I think I've already discussed the various
[9] communications and answered your questions.
[10]    MR. COMEN: And for the record, this
[11] witness is prepared to testify about numerous of the
[12] nonprivileged documents that were produced to you in
[13] discovery with respect to the topics that are listed
[14] here, except for No. 8.
[15]    MR. BELLO: I'm going to ask my question —
[16]    MR. COMEN: The only exhibit that's been
[17] marked in today's deposition — we're now after four
[18] o'clock in the afternoon; we started at ten.
[19]    MR. WELSH: We started at a quarter past
[20] ten.
[21]    MR. COMEN: — is the 30(b)(6) deposition
[22] notice.
[23]    Q: Let me try my question for the fifth time.
[24] Is there any communication, sir, with any individual

Page 158

[1] that you've had in preparing for this deposition on
[2] the topics that you are prepared to testify about,
[3] specifically the substance of that communication,
[4] what was said to you, what was said to that
[5] individual, with respect to any of the events that
[6] are identified in the Rule 30(b)(6) notice,
[7]    A: I guess — do you want to go one by one,
[8] the communications regarding these subjects, and —
[9]    Q: Well, I don't want to waste a lot of time
[10] if you're going to refuse to testify as to what Mr.
[11] Hevrony told you and what Mr. Wood told you on the
[12] attorney-client privilege. Then we might as well
[13] just have that. I want to be clear that you are not
[14] prepared as a Rule 30(b)(6) witness to testify
[15] regarding anything that was disclosed to you in your
[16] gathering information for this deposition.
[17]    MR. COMEN: That's your characterization.
[18]    MR. BELLO: Well, then we can go through it
[19] one by one.
[20]    MR. COMEN: If you want to go through
[21] various documents —
[22]    MR. BELLO: No.
[23]    MR. COMEN: — where other people were
[24] participants, if you want to go through the meetings

Page 159

[1] in Hawaii where other people were participants. I
[2] think we've been clear.
[3]    MR. BELLO: This is my deposition, sir.
[4] I'm not asking you about documents at this juncture.
[5] Maybe, hopefully, someday we'll get there.
[6]    Q: Is there any — on Item No. 1, sir, that's
[7] all I've been talking about for the last hour,
[8] trying to get some testimony. Are you prepared to
[9] testify as to any communications that you had with
[10] respect to the subject matter there that you had
[11] with Mr. Hevrony, Mr. Wood or Mr. Brandano regarding
[12] the events that occurred, the negotiation of the
[13] Non-Competition Agreement?
[14]    MR. COMEN: Separate and apart from events
[15] when other people were present?
[16]    MR. BELLO: That's correct. Well, let me
[17] be clear about that. Let me — maybe we're two
[18] ships passing in the night.
[19]    MR. COMEN: I think we are. If you take,
[20] for example —
[21]    MR. BELLO: Could you —
[22]    MR. COMEN: You're asking about what I'm
[23] instructing him not to answer.
[24]    MR. BELLO: Steve —

Page 160

[1]    MR. COMEN: Okay.
[2]    Q: As I understand your testimony — let's
[3] take Mr. Brandano. He has told you about the
[4] negotiations and the communications, the discussions
[5] that were had between Mr. Brandano and
[6] representatives of BB AG; is that correct? That
[7] would be Dr. Kraenzlin and/or Mr. Kramer.
[8]    A: I don't believe — I don't believe Tony
[9] Brandano had direct discussions with —
[10]    Q: Then let's use Mr. Wood or Mr. Hevrony.
[11] Mr. Hevrony described to you communications that he
[12] had with Mr. Kramer and/or Dr. Kraenzlin with
[13] respect to the Non-Competition Agreement; is that
[14] correct?
[15]    A: I believe he told me that he had
[16] discussions in November 2002 about the
[17] Non-Competition Agreement, but I don't remember him
[18] saying what the substance was.
[19]    Q: Well, as part of your investigation of
[20] being the corporate witness today, did you ask him
[21] what was the substance of those communications?
[22]    A: I believe we did discuss something about it
[23] in September, last September.
[24]    Q: And when you say "something," that included

Page 161

[1] the communications that he had with representatives
[2] of BB AG on the subject matter of the Non-Compete
[3] Agreement; is that correct?
[4]    A: Yes. We had some —
[5]    MR. COMEN: And this is where I've
[6] instructed him. So — we can keep going through
[7] this, but having in mind that it's time to break —
[8]    MR. BELLO: Well —
[9]    MR. COMEN: If you want to thrash out our
[10] view for privilege with Judge Hershfang so that
[11] we'll have productive depositions, I'm happy to do
[12] that whenever it's convenient for people to do that.
[13]    MR. BELLO: We're going to file a motion to
[14] compel, Steve. We're not going to have a
[15] free-for-all on this.
[16]    MR. COMEN: I'm welcoming that discussion
[17] with Judge Hershfang sooner rather than later.
[18]    MR. BELLO: I'm trying to be clear. Maybe
[19] you can tell me if I'm wrong. It is clear that you
[20] will not let this witness testify about any
[21] conversations he had in gathering facts and
[22] information regarding the events, whether they
[23] involve internal discussions or with the other side,
[24] that is our side, BB AG, regarding the topic of the

Page 162

[1] negotiating of the Non-Compete Agreement.
[2]    MR. COMEN: No, no, no, no. I don't think
[3] you characterized that correctly.
[4]    So this witness is anxious to get on the
[5] Mass. Turnpike to get back to his office to take
[6] care of some pressing business. We can keep
[7] thrashing this out on the record, off the record, I
[8] don't care.
[9]    MR. BELLO: We understood that the witness
[10] was not available yesterday because of meetings, but
[11] according to the witness he spent the day meeting
[12] with you guys. So we're having a little trouble
[13] with your representations. That's what you said to
[14] Judge Hershfang.
[15]    MR. COMEN: Okay. Why don't we suspend the
[16] deposition. Let's go.
[17]    I'll do whatever you want fairly.
[18]    MR. BELLO: Off the record.
[19]    (Discussion off the record)
[20]    (Whereupon the deposition was
[21] adjourned at 4:12 p.m.)
[22]
[23]
[24]

Page 163

[1]                CERTIFICATE
[2]    I, James S. Brantl, do hereby certify that I
[3] have read the foregoing transcript of my testimony,
[4] and further certify under the pains and penalties of
[5] perjury that said transcript (with/without)
[6] suggested corrections is a true and accurate record
[7] of said testimony.
[8]    Dated at __, this day of ,
[9] 2006.
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

Page 164

[1] COMMONWEALTH OF MASSACHUSETTS)
[2] SUFFOLK, SS.                        )
[3]    I, Carol H. Kusinitz, Registered Professional
[4] Reporter and Notary Public in and for the
[5] Commonwealth of Massachusetts, hereby certify that
[6] there came before me on the 20th day of December,
[7] 2005, at 10:07 a.m., the person hereinbefore named,
[8] who was by me duly sworn to testify to the truth and
[9] nothing but the truth of his knowledge touching and
[10] concerning the matters in controversy in this cause;
[11] that he was thereupon examined upon his oath, and
[12] his examination reduced to typewriting under my
[13] direction; and that the deposition is a true record
[14] of the testimony given by the witness.
[15]    I further certify that I am neither attorney or
[16] counsel for, nor related to or employed by, any
[17] attorney or counsel employed by the parties hereto
[18] or financially interested in the action.
[19]    In witness whereof, I have hereunto set my hand
[20] and affixed my notarial seal this _____ day of
[21] December, 2005.
[22]
[23]            Notary Public
[24]    My commission expires  6/2/06

**Lawyer's Notes**

# #

## #

**##** 126:12, 20

## $

**$1.7 million** 48:24
**$5 million** 47:1; 66:17
**$50 million** 119:6

## 1

**1** 4:4; 6:19; 7:11; 14:11;
16:4; 25:4; 46:13, 17; 47:2;
49:9; 66:3; 70:16; 71:1, 2;
81:10; 82:23; 159:6
**10** 119:7
**11266** 19:6
**11267** 19:7
**12:30** 80:12, 21
**12:47** 91:8
**14** 26:17
**14,000** 18:6
**15** 26:17
**17** 102:12; 103:2, 4; 123:5
**19** 6:23

## 2

**2** 25:5; 46:23; 47:2; 70:16,
24
**20** 16:19; 119:7
**2001** 98:18; 99:5
**2002** 10:21; 13:24; 26:14;
33:20, 23; 34:10; 35:8, 9,
18, 19, 24; 36:4; 47:11;
61:23; 93:8; 94:23; 95:21;
98:2; 100:16, 21, 24;
102:23; 107:16, 19; 108:2;
119:15; 122:23; 123:10,
18; 124:5, 9; 125:19,
128:20; 130:3, 7; 131:14;
132:12, 15; 134:10; 135:1,
17; 137:10; 141:10;
143:20, 21; 153:17, 19;
160:16
**2003** 4:11; 86:13; 89:21
**2005** 6:23; 55:10; 61:24;
63:8; 65:14, 23; 67:2, 3;
75:2, 16; 151:8, 22
**2006** 163:9
**201** 31:8
**223** 5:23
**25** 119:8
**29** 13:24; 26:14; 35:9;
93:8; 94:23; 98:2; 100:16,
21; 102:22; 106:21;
107:16, 19; 108:1; 110:13;
119:15; 122:23; 123:9, 18;
124:9; 125:19; 128:20;
130:3, 7; 131:13; 132:12;
135:17; 137:10; 141:10;
143:21; 151:8

## 3

**3** 47:3; 70:16; 71:4; 81:10;
82:23
**30** 5:4
**30(b)(6** 3:10, 23; 6:18, 22;
7:12; 14:17, 21, 23; 15:1,
15, 20; 30:8; 31:6; 40:23;
42:1; 46:7, 14; 48:20;
50:24; 51:15, 21; 53:8;
54:13, 15, 24; 56:10;
58:11, 17; 65:16; 66:4;
67:6; 70:8; 72:9, 18; 74:23;
75:4, 19; 76:8; 78:15;
82:23; 83:2; 86:23; 87:2;
88:17, 24; 89:10, 17; 90:7,
17; 117:18; 151:3, 4, 10,
13, 24; 157:21; 158:6, 14
**33** 31:8
**34** 5:8

## 4

**4** 47:14; 67:11; 70:16;
71:12; 78:18; 81:7
**4:12** 162:21
**4th** 100:24

## 5

**5** 47:14; 67:12; 70:16;
71:14; 78:19; 83:2, 4, 7;
84:11, 24
**5:30** 58:8
**5th** 100:24

## 6

**6** 47:24; 48:1, 12, 23; 49:9;
70:16; 71:16

## 7

**7** 4:4; 7:11; 47:20, 24;
48:13; 66:3; 67:12; 70:16;
71:18, 19

## 8

**8** 3:24; 48:20, 22; 67:14,
16, 17, 18; 71:20; 157:14
**84** 94:3
**8:30** 58:8

## A

**able** 53:5; 63:16; 148:9;
154:10; 156:8

**absent** 38:5; 82:17
**accept** 62:14, 17; 90:4
**accommodate** 4:22
**according** 162:11
**accountants** 72:19, 20,
23
**accurate** 19:9; 28:17;
89:3; 163:6
**acquired** 11:2
**acquisition** 12:6; 19:24;
20:10, 15; 21:16, 17;
100:15, 20; 101:17;
107:21; 108:1, 10; 118:17;
125:21; 132:9; 135:18
**acting** 69:6
**active** 100:8
**activities** 56:5; 60:19;
63:15
**actually** 19:19; 24:15;
25:8; 76:13, 14; 93:15;
118:6
**added** 118:20
**addition** 42:18; 46:1
**additions** 118:19
**address** 39:2
**adjourned** 162:21
**adjustments** 49:1
**administration** 94:13,
14, 19; 95:15, 24; 96:9
**administrative** 94:14
**advice** 21:11; 23:22;
24:8; 43:4; 68:3, 9
**advise** 21:3
**advising** 20:24
**affiliates** 93:13, 14
**affirmed** 88:21
**AFTERNOON** 92:1;
157:18
**afterwards** 152:3; 154:3
**AG** 13:10, 14; 21:7; 23:4;
74:5; 101:23; 110:19;
111:12; 112:6, 12; 145:12,
24; 147:15, 17; 160:6;
161:2, 24
**again** 11:15; 15:2; 27:17;
28:4; 36:10, 13; 50:12;
54:16; 63:4; 68:14;
117:16; 146:5; 148:7;
153:12, 23; 154:22
**ago** 19:17, 21; 27:24;
40:16, 17; 73:11; 78:3;
145:7
**agree** 25:10; 123:22, 24;
138:10
**agreed** 116:5; 146:18
**Agreement** 46:19, 20;
47:6, 17; 48:17; 49:3;
76:21; 79:11, 23; 80:1, 4,
6, 7; 105:10, 10, 23; 111:7,
7, 18, 23; 112:10; 113:12,
15, 22; 114:13, 13; 115:12,
24; 116:1, 7, 9, 17; 117:13,
14; 119:14, 20; 130:15, 16,
18, 22; 131:1, 2, 5, 6, 13;
132:20; 135:1, 24; 141:2,

8; 142:15; 143:20; 144:6,
13, 19; 145:5, 13; 146:1;
147:6, 15, 17; 149:19;
150:3; 152:23; 153:8;
155:20; 157:1; 159:13;
160:13, 17; 161:3; 162:1
**agreements** 23:23; 24:1,
9; 78:18, 20; 83:10; 89:22
**ahead** 88:14; 96:4; 99:2;
102:6; 125:14; 147:1;
153:15
**aligning** 124:18
**alignment** 26:24
**alive** 111:5
**all-day** 63:13
**allegation** 48:15, 22;
79:16, 18
**alleged** 137:5
**along** 9:7; 38:16; 135:5
**Alred** 103:16
**always** 119:7
**America** 77:12, 13, 16;
107:6; 108:5
**American** 49:2, 4; 101:9;
113:14, 17; 116:20
**among** 101:22; 111:10;
119:12; 127:3; 134:8;
155:11
**amount** 154:24
**and/or** 82:23; 160:7, 12
**announced** 100:6
**answered** 25:13; 35:5,
20; 50:10; 53:12; 62:2, 3;
81:4; 98:19; 118:4; 126:6;
132:3; 137:9; 157:9
**Anthony** 10:1; 36:1;
104:7; 111:24; 113:2
**anticipate** 12:21
**anticipation** 148:22
**anxious** 162:4
**apart** 159:14
**appears** 38:5; 54:2;
149:5
**apply** 64:12
**appreciate** 48:19; 67:15;
98:21; 112:18; 115:14
**appropriate** 6:11; 8:21,
22; 39:17; 69:8; 82:1;
122:11; 135:7; 149:12
**appropriately** 69:7
**approved** 136:10
**approximate** 43:9
**area** 96:9
**argument** 117:17
**arisen** 88:8
**arising** 49:1
**arose** 78:23; 80:3; 81:19,
21
**around** 22:11; 80:21;
111:2; 151:19
**articulated** 50:3
**aside** 72:22
**assert** 120:14
**asserting** 87:16

**assertion** 121:3
**assessment** 155:4
**assets** 49:4; 97:24;
101:9, 10
**assisting** 9:15
**associate** 58:1, 3
**assume** 4:18; 134:5;
152:14; 153:2
**assuming** 68:9; 142:5
**assumption** 68:2
**attempted** 98:17; 99:13
**attorney** 84:13, 20;
89:19; 156:4
**attorney-client** 29:24;
32:2, 6; 46:10; 65:7; 66:23;
67:23; 72:3; 82:10;
120:14; 121:15; 128:17;
129:4, 6; 135:4; 143:13;
146:9; 148:4, 11; 155:16;
158:12
**attorneys** 4:12, 12; 9:19,
21; 36:24; 37:2; 42:24;
63:12; 129:10; 140:7;
141:22; 142:1, 14, 24;
143:6, 17
**August** 151:8
**authorizing** 22:5
**authors** 32:1, 5
**available** 84:16; 162:10
**aware** 38:3; 80:7, 8; 89:7;
90:1; 97:23; 98:11, 15;
130:1, 6, 8, 10, 12; 132:6;
136:18, 20; 137:1; 139:20;
141:4

## B

**B-a-l-i-s** 103:13
**B-a-l-l-e-s** 103:14
**Babcock** 3:10; 5:20;
9:20, 10:11; 11:5, 5, 8, 10,
10, 17, 19; 12:2, 4, 5; 13:2,
6, 9, 10, 10, 13, 16, 21, 23;
14:15; 16:6; 21:6, 7, 13,
15; 22:4; 23:4, 4; 24:23;
26:12; 27:4; 33:13, 16, 18;
34:13, 13, 18, 21; 35:15;
47:9, 21; 48:24; 54:1;
68:16; 75:17; 76:3, 6, 9,
21; 77:12; 79:8; 88:8;
103:11, 15; 106:15; 107:4,
5, 8, 10; 108:3, 3, 4; 221;
109:6, 7, 8; 110:3, 4;
122:21
**back** 4:11; 7:20; 9:4; 15:1;
23:1; 27:7, 13; 29:6; 32:22;
60:8; 81:2; 82:8, 20; 85:23;
115:21; 116:16; 141:2;
145:24; 147:16; 149:21;
153:17; 162:5
**background** 15:13, 15;
50:22, 23
**backwards** 65:24
**balance** 118:24
**Balles** 103:14
**bank** 99:19

banker's 42:5, 10, 15, 15
bankers 72:16, 19
bankrupt 101:4; 138:5
bankruptcy 100:22, 23
bare 118:10
basis 15:8; 36:4; 38:2;
  56:4; 65:7, 10; 66:23;
  67:23; 72:3; 120:13, 17;
  121:15, 16; 135:3; 143:13;
  146:14
Bates 6:5, 14; 19:6
BB 74:5; 101:23; 110:19;
  111:12; 112:6, 12; 145:12,
  24; 147:15, 17; 160:6;
  161:2, 24
BBCC 10:20; 11:18;
  20:11; 92:20; 93:8, 10, 13;
  94:5, 10, 16, 18; 95:11, 14;
  98:1, 17; 99:4, 11; 100:14,
  19; 104:14, 21, 22; 105:1;
  107:9; 108:23; 109:8;
  113:10, 19; 119:12, 12;
  120:23; 123:9, 17; 124:11;
  125:20; 126:10, 17, 24;
  127:4, 15; 128:18, 23;
  129:7, 16, 19, 24; 130:3, 7;
  131:18; 137:4, 11, 20, 24;
  139:8, 9
BBCC's 126:1
BBP 47:4; 48:16
BBX 13:10; 47:5
BBX's 47:10, 22
became 34:9; 93:12;
  101:6; 120:23
become 25:23; 26:2, 5,
  9:23; 98:11, 11, 15;
  100:13, 18; 101:1
becoming 127:1, 2
Bedford 113:6
began 35:3; 93:11;
  101:19; 102:19; 103:1;
  111:19
begin 7:9, 8:1, 9:2; 111:9,
  15
beginning 28:16; 79:10;
  95:7, 20; 111:14; 143:23
behalf 49:2; 123:23, 23
belief 60:10; 128:21;
  136:21
believes 88:21
BELLO 3:9, 16; 4:3, 6, 7,
  8, 5, 7, 11, 14, 17; 6:20;
  7:16; 8:17, 20; 11:1; 14:18;
  15:3, 6, 23; 17:5, 7, 8, 11,
  19; 18:2, 7, 13, 20, 23;
  19:2, 8, 9, 12; 22:23; 23:8,
  10, 14, 16, 20; 24:3, 4, 44,
  17; 25:8, 14; 26:19, 22;
  30:21, 24; 35:22; 37:16,
  18; 38:10, 20; 39:14, 19,
  22; 40:4, 5; 43:3, 7; 50:15,
  20, 23; 51:3, 5; 52:7, 10,
  17; 53:12, 22; 54:8; 57:22,
  60:12; 62:5, 7, 10, 66:23;
  61:23; 65:7, 10, 66:23;
  69:12; 70:18, 13; 69:10,
  15; 71:22; 72:3; 78:24;

79:6, 15, 20; 80:9, 14, 17;
  81:1, 12; 82:6, 16, 19;
  83:15; 85:8, 11, 15, 20;
  86:1, 4; 87:16, 21; 88:2,
  10, 12, 15, 20; 89:4; 90:12,
  91:4; 92:2; 96:13, 16;
  98:13, 21; 99:1; 102:19,
  22; 116:13; 117:16;
  120:11, 17, 20; 121:7, 10;
  122:4, 8, 9, 13; 124:23;
  125:2, 5, 9, 12, 15; 126:4,
  7; 127:10, 13, 24; 128:3, 6,
  12; 134:5, 16, 19; 135:3, 6,
  11, 17; 142:3; 143:3, 13;
  144:2; 145:18; 146:5, 13,
  17, 20, 23; 147:2; 148:3, 7,
  16; 149:2, 7, 11, 14, 16;
  151:16, 20; 154:20;
  155:23; 157:15; 158:18,
  22; 159:3, 16, 21, 24;
  161:8, 13, 18; 154:16; 16:17; 6,
  5, 9

BRANTL 3:2, 11, 13; 4:3,
  8; 6:19, 21; 17:14; 19:13;
  21:2, 5; 26:24; 38:14;
  54:22; 60:14; 88:21; 92:3;
  128:13; 134:13; 135:9;
  146:8; 163:2
breached 48:16
break 4:21; 6:12; 26:19;
  31:5; 55:9; 80:13, 21;
  81:14; 82:3, 4; 88:2; 91:4;
  102:1; 111:9; 147:13;
  156:4; 161:7
breaking 80:15
Brian 113:3
Brief 5:16; 80:24; 121:9
briefly 17:4
bring 64:15
Brinkmann 110:22, 24;
  111:4; 129:21
Burk 103:15
Burlington 110:22; 113:7
business 41:3; 76:20;
  117:9; 118:11; 162:6
buy 113:9
buyer 91:4
buyer's 114:2
buyers 90:9, 15; 99:17
buying 111:10; 113:18;
  120:19; 122:2; 138:16;
  140:19

C

C-a-l-z-a-t-u-r-f-i-c-i-o
  31:8
call 15:1; 24:13, 19;
  80:20, 23; 85:15; 120:2;
  121:2; 141:5
called 3:3
came 10:12; 15:18; 59:5;
  74:20; 107:24; 108:10
can 4:22; 6:15, 24; 7:16;
  8:20, 23; 12:21; 18:15, 20,
  23, 20:7; 23:8, 17; 24:3, 4,
  10, 12, 21; 25:9; 30:6, 6,
  22; 31:9; 32:10; 34:1;
  35:19; 36:13; 37:22;
  39:11, 15, 15, 17; 41:13;
  43:9, 12; 45:15, 21; 50:11, 11; 51:2, 18, 18,

25:21; 26:5; 27:9; 28:10;
  33:3; 36:1; 52:1, 3, 15, 24;
  53:7, 17; 54:14, 21, 23;
  55:3, 11; 56:8, 14; 57:4,
  14; 59:8, 16; 65:1, 15;
  66:2, 16, 18; 67:4, 21;
  69:18; 92:11; 102:3;
  104:8; 105:6, 19; 106:10,
  19; 111:24; 112:4; 113:2;
  114:22; 115:8, 17; 119:22;
  123:5; 133:3; 134:9, 23;
  136:19; 141:22; 142:20;
  143:17; 144:8; 146:15;
  147:12, 15; 154:13;
  155:12, 14; 159:11; 160:3,
  5, 9

52:1; 53:2, 13; 54:10;
  55:14; 62:11, 18; 63:24;
  64:3; 65:2, 11; 70:23;
  72:11; 74:15; 82:6; 84:21;
  87:23; 88:3; 89:4; 102:14;
  103:6; 120:5, 6, 7; 121:7;
  122:6; 123:23; 126:21;
  128:1, 3, 7, 21; 134:13, 13,
  14; 135:8, 9, 19; 143:8, 22;
  144:10; 148:14; 155:19;
  156:4, 19; 157:3; 158:18;
  161:6, 19; 162:6
capacities 26:9
capacity 22:6; 25:16;
  33:22
Capital 11:6; 8, 10, 17;
  12:5; 13:6; 21:13; 22:4;
  27:5; 34:13, 18; 107:9;
  108:21; 109:6, 8
care 162:6, 8
carrying 78:20; 80:5
case 4:9; 16:23; 31:6;
  37:13; 46:9; 49:23; 61:8;
  63:8; 69:6; 74:12; 122:7;
  157:2
cases 74:19
categories 147:13
category 6:13; 51:7
ceased 100:8
CEO 12:2
certain 9:22; 97:12;
  106:1
certainly 79:6, 12, 15
CERTIFICATE 163:1
certify 163:2, 4
chance 92:14; 134:12
characterization
  138:14, 17; 158:17
characterized 19:10;
  162:3
charge 106:7
check 14:2
checked 130:4, 9;
  132:19; 136:2
chief 10:3, 4
chronologies 152:6
chronology 152:8, 12,
  16, 18
circumstances 69:5
claim 32:7; 74:5; 155:10
claimed 121:17; 155:18
claims 47:16
clarification 6:12
clarify 66:12; 122:6,
  134:12; 135:8, 8
clarity 52:1
Claus 110:22
clear 4:15, 16, 18; 8:18,
  39:8; 53:14; 62:22; 64:7,
  16, 14; 68:1, 13; 69:10;
  79:7; 92:3; 102:17;
  124:17; 127:8; 134:5,
  148:20; 158:13; 159:2, 17;
  161:18, 19
clearer 128:5

clearly 15:1, 18; 22:21;
  82:9
client 39:14; 79:8; 80:4
closed 124:6
closing 29:13; 63:10;
  144:4
coach 50:16, 18
colleagues 17:15, 20;
  38:15
collect 41:21, 22
collected 17:14
Collings 31:5; 149:6
collusion 79:9, 14, 19,
  22, 23
COMEN 3:18; 4:5; 5:6,
  10; 7:15, 17, 24; 8:15, 18;
  10:10, 16, 24; 11:12;
  12:23; 13:11; 14:16, 22;
  15:5, 19; 17:8, 12; 18:6,
  15, 18, 21; 19:1, 3; 20:6, 8,
  12; 21:19; 22:20; 23:7, 9,
  12, 15, 18; 24:2, 5, 12, 16,
  18; 25:6, 12, 15; 26:20;
  27:16; 30:11, 18, 23;
  32:18; 33:24; 34:2; 35:5,
  13, 20, 22; 38:6, 9, 11, 20;
  39:10, 20; 40:1; 43:1, 5;
  48:8; 50:9, 13, 18, 21;
  51:2, 4; 52:6, 8, 11; 53:1,
  11, 14, 21; 54:16, 57:15,
  18; 58:1, 12; 60:6; 61:4,
  15; 62:2, 5, 21; 63:2;
  64:18; 65:5, 9, 12, 17, 19;
  66:4, 9, 12, 13, 21; 67:1,
  19; 68:1, 12; 69:5; 72:2, 5;
  73:6, 18, 20; 75:22; 76:11,
  22, 77:15, 17; 78:17; 79:4,
  14, 18, 24; 80:12, 16, 19;
  81:1, 13; 82:13; 83:13;
  85:7, 9, 13, 18, 23; 86:3;
  87:14, 19, 24; 88:6, 11, 14,
  18, 89:2; 90:10, 23; 91:5;
  92:14, 16; 94:6; 95:2, 12;
  96:2, 4, 11, 14; 98:3, 5, 10,
  19, 24; 99:2; 102:6, 17, 21,
  24; 111:2, 13; 117:11, 23;
  118:4; 120:9, 15, 18;
  121:5, 22; 122:6, 11, 14;
  123:3, 13; 125:1, 8, 10, 14;
  126:3, 6, 13; 127:8, 11, 20;
  128:2, 5, 9; 129:15; 132:2;
  134:11, 18; 135:2, 5, 7, 16;
  137:9; 138:9; 141:14;
  142:2, 7, 10; 143:2, 9, 12,
  15, 22; 144:1; 145:20;
  146:4, 12, 15, 18, 22;
  147:1; 148:1, 6, 14, 18;
  149:4, 8, 13; 151:8, 14, 18;
  152:10, 13, 24; 153:15;
  154:4, 18, 21, 155:20;
  156:21; 157:10, 16, 21;
  158:17, 20, 23; 159:14, 19,
  22; 160:1; 161:5, 9, 16;
  162:2, 15
coming 148:23
comments 112:4; 143:7
communicated 90:8
communication 4:10;
  73:22; 130:5, 14, 20;

157:24; 158:3

**communications** 46:18, 24; 47:4, 9, 21; 68:21; 77:1; 86:24; 87:7, 9; 89:7, 11, 13; 90:3, 9, 14; 141:3, 7, 16, 17; 143:19; 144:12; 145:3, 11; 147:4, 12; 153:6, 24; 155:17; 156:17; 157:9; 158:8; 159:9; 160:4, 11, 21; 161:1

**companies** 109:2, 10, 14, 20, 23; 110:9

**company** 9:23; 10:21; 11:18; 14:5, 8, 10; 19:24; 21:11, 12; 34:9; 53:23; 64:22; 69:6; 93:16; 98:17, 18; 99:4, 4, 8, 11, 12; 101:9; 106:14; 107:5, 9; 108:5, 5, 9, 14, 16, 18, 20, 22, 23, 24; 109:9; 113:10, 14, 17, 18, 19; 116:20; 124:18; 127:4, 15; 129:16; 136:13; 138:4, 4, 20, 21, 24

**compel** 69:12; 161:14

**compensation** 49:1

**complaint** 79:19; 144:16; 150:10, 19; 151:15, 16, 19

**complete** 27:8; 39:4, 23; 40:3; 146:6

**completed** 48:10

**completely** 121:3

**complied** 31:12; 37:20; 38:18, 21, 24

**comply** 97:12

**comprise** 24:22

**computer** 16:14; 17:22; 18:3; 41:6; 55:22

**concerned** 60:7

**concerning** 47:5, 10, 22; 66:16

*conditions* 131:7

**conduct** 41:2; 78:19

**confidential** 78:22; 81:24

**confidentiality** 130:21; 131:8

**conflict** 21:21, 137:3; 139:12, 17

**confused** 28:12; 53:3; 54:18; 107:2

**confusing** 27:19

**confusion** 129:15

**connection** 8:12; 11:23; 16:10, 22; 17:2; 19:16, 24; 20:10, 14, 15, 17; 21:1, 15, 17, 21; 22:14, 18; 24:8; 27:11; 28:5, 8, 19, 23; 29:18; 31:18; 32:14; 36:10; 37:5, 13; 43:19; 44:4, 5; 49:18; 54:5; 62:12; 79:10; 88:7; 99:17, 22; 115:5; 122:19; 123:1; 124:11, 125:21; 126:11, 24; 132:9; 135:13, 14, 23; 136:22; 137:4; 139:5, 12; 140:1, 13, 19; 141:1; 145:10; 152:6, 22; 153:7;

154:18

**consider** 69:13, 14; 81:14; 82:2, 4, 6, 15; 137:22; 138:7; 139:4, 16

**consideration** 69:1

**considered** 131:4; 139:10; 140:17

**Consolidated** 93:17

**constant** 114:17

**constitutes** 126:9

**Construction** 105:16; 107:7; 108:13

*consummation* 79:11

**contain** 42:16

**contained** 42:9, 17; 54:15; 55:12; 67:5; 87:2; 89:9; 90:17

**context** 46:5; 68:3, 4; 101:3; 138:8

**continual** 36:4

**continuing** 79:19, 22

**contract** 94:12, 13, 19; 95:15, 24; 96:9; 130:13

**contracts** 97:12

**contrary** 38:5

**contribute** 136:8

**convenient** 161:12

**conversation** 40:7, 12; 41:6, 7; 44:7, 18; 46:3; 49:23; 56:8; 64:24; 65:3, 14; 66:1, 15, 20; 68:5; 73:12; 74:18; 120:8; 121:19; 134:8, 22; 139:23; 149:17; 150:1, 12, 14; 153:2; 154:2

**conversations** 40:13; 41:1, 13, 19; 43:18; 44:9; 46:10; 48:14; 50:2; 52:3, 14, 23; 54:3, 8, 14; 55:7, 11, 18; 58:20, 21; 64:2, 4, 21, 22; 67:3, 20; 68:2; 73:8; 75:5, 15; 90:6; 140:6; 144:24; 145:23; 146:3; 147:3, 11; 150:4, 17; 151:3, 12, 23; 154:12; 155:11; 161:21

**cooperation** 76:20

**copies** 32:9

**copy** 7:2

**Corp** 12:5; 13:6; 27:5; 108:21

**corporate** 5:1; 7:10; 8:8; 28:7, 29:7; 49:19; 51:9, 22; 52:4, 22; 53:9; 60:20, 22; 61:3, 20; 62:8, 14; 63:21; 64:5, 8; 68:17, 20; 115:6; 117:21, 144:21; 145:2; 146:7, 8, 17, 20; 148:5, 8, 10, 13, 16; 154:11, 16; 155:8; 160:20

**corporation** 8:7; 11:5, 6, 8, 10, 17; 21:13; 22:4; 34:14, 18; 35:17; 107:9

**corrected** 48:1

**corrections** 163:6

**correctly** 162:3

**correspondence** 63:11; 145:6

**counsel** 3:3; 4:9; 5:18; 7:3; 20:10, 24; 21:3; 22:3; 30:15; 31:10; 53:24; 54:4, 60:15, 21; 63:9, 19; 67:4, 22; 68:4, 19; 70:11; 72:21, 22; 75:13; 81:3; 84:16; 87:10, 12, 18; 88:22; 89:14; 90:2; 92:7; 93:2, 7, 13, 19; 94:5; 96:5; 97:1; 99:14; 109:20, 24; 121:18; 122:19; 123:17; 124:11; 125:20; 126:1, 11, 24; 131:19; 132:8; 133:9; 134:24; 136:12; 137:17, 22; 138:1, 11; 139:6; 140:13, 18; 144:23; 148:12; 152:10; 154:9

**counsels** 94:8, 9

**count** 48:2; 92:16

**counterclaim** 48:16

**country** 22:11

**couple** 18:5, 7; 19:22; 37:24; 99:23; 144:5

**course** 41:2; 53:17; 54:4; 101:6

**covenant** 76:20

**covenants** 47:6

**cover** 3:21; 18:15, 21; 19:3

**covered** 58:9; 70:10

**created** 14:13; 16:5; 20:13, 14; 152:9

**creation** 108:1

**Crush** 113:3

**current** 141:23

## D

**Dale** 33:4; 36:2; 105:14; 110:16; 112:21; 119:22, 144:16

**Danvers** 45:8; 59:11

**date** 8:2; 32:5; 40:15; 61:8; 75:4; 146:18; 151:7, 10

**dated** 124:8; 128:19, 151:10; 163:8

**day** 45:17; 55:4; 61:10; 121:21; 128:22; 139:22; 140:11; 162:11, 163:8

**day-to-day** 56:1, 4, 5; 129:5

**days** 4:2; 5:4; 8:14; 146:16

**deal** 14:24; 20:5; 21:4; 22:19, 22; 31:13; 69:7, 8; 123:15

**deceased** 110:24

**December** 35:19, 21, 24; 36:4; 47:11; 124:5; 132:14, 16

**decline** 149:3

**deducted** 118:20

**Defendant** 3:4, 10; 54:1

**define** 95:18

**definitions** 141:19; 142:17

**deliver** 3:20

**deponents** 4:13

**deposed** 146:16

**deposition** 3:10, 13, 24; 4:2, 24; 6:22, 23; 8:12; 9:1, 11; 11:24; 14:20; 17:3; 19:16; 27:12, 23; 28:6, 20, 24; 29:5, 7, 19; 30:8, 13; 31:18; 32:16, 24; 36:11; 37:6; 39:23; 40:2, 23; 44:4, 12; 45:17; 46:14; 50:5; 51:9; 53:19; 55:12; 60:18; 65:16; 82:2, 14; 87:20; 114:11, 23; 115:6; 144:14, 21; 145:2, 22; 147:23; 151:11; 152:1, 7; 157:17, 21; 158:1, 16; 159:3; 162:16, 20

**depositions** 79:21; 161:11

**describe** 64:1; 65:2; 101:2; 153:18

**described** 63:15; 119:10; 141:5; 145:23; 160:11

**describing** 84:10; 147:15

**description** 5:22; 6:1

**designate** 3:24; 68:16; 70:16

**designated** 3:12; 4:4; 7:12; 8:7; 48:19; 51:7, 9, 22; 52:4; 53:9; 54:13; 56:10; 64:4; 67:16, 78:14; 117:18

**designating** 68:19

**designation** 42:2; 68:21

**detail** 31:5; 65:2; 74:21; 82:2

**details** 113:24; 114:3; 140:8

**determine** 6:8

**difference** 96:23

**different** 31:14; 60:14; 69:23; 111:9; 126:18; 138:11; 145:9; 153:4

**difficult** 76:17

**DIRECT** 3:15; 85:13; 87:14; 120:9; 143:2, 9, 12; 146:4; 148:1, 3; 154:6; 155:24; 160:9

**directed** 132:11, 17

**directly** 112:15, 19; 141:21

**director** 34:21, 22, 24; 35:2, 4, 6, 8, 11; 36:3; 72:7, 17; 92:4, 20, 93:23; 94:12, 18; 95:15, 23; 109:1, 5, 9; 137:15, 24; 138:12; 139:7

**directors** 12:13, 14; 13:18, 24; 35:15, 18, 24, 151:18

**disclose** 32:5; 143:9; 155:15

**disclosed** 91:1; 158:15

**disclosure** 131:17, 17; 132:6

**Discovery** 15:11; 39:3, 12, 64:16; 85:15; 88:3; 122:15; 156:24; 157:13

**discuss** 46:16, 23; 47:3, 8, 13, 20; 48:4, 7, 9, 12, 13, 21; 81:5, 9; 82:22; 83:1; 145:10; 153:22; 160:22

**discussed** 46:9, 22; 48:3; 67:13, 15, 17; 70:6, 8, 15; 71:2; 78:15; 81:22; 83:3, 7; 84:19; 90:20; 118:15; 119:4; 149:21; 150:9; 153:14, 16; 154:7; 157:8

**discussing** 71:3; 74:19; 155:1

**Discussion** 5:13; 17:6; 37:17; 39:20; 50:1; 51:11; 59:3, 3; 78:21; 80:2; 81:18; 83:4; 84:9, 23; 87:20; 103:1; 113:11; 116:18; 117:5; 118:2, 13; 119:19, 21; 125:10; 127:2, 14; 148:21, 24; 149:9; 161:16; 162:19

**discussions** 38:12, 13; 43:2, 6; 49:18, 21, 22; 51:7, 13, 16, 19; 53:6, 16; 63:7, 12; 70:18; 72:20, 23; 76:10; 81:24; 82:1, 12; 87:11, 13, 17; 88:22; 89:14, 20; 90:19; 101:16, 18, 19, 21; 102:9, 11, 13; 103:3; 110:12; 113:13; 117:9; 118:18; 120:16; 127:22; 144:5, 17, 20; 145:17; 147:21; 148:2; 153:18, 20; 160:4, 9, 16; 161:23

**disdain** 31:2

**disk** 9:22

**distinct** 111:17

**distinguish** 52:12; 54:3, 7, 9; 62:15, 23, 24

**distinguished** 60:16

**division** 108:6

**document** 5:22, 23, 24; 6:3, 18; 7:1; 19:14; 29:4; 32:15, 33:2; 36:12; 37:5; 39:7; 46:15; 67:11; 118:1; 121:6; 131:3, 10, 11; 133:13, 18; 154:23; 155:21; 156:24

**documentation** 122:20; 123:7, 16, 21; 124:8; 125:17, 18, 22; 126:10; 128:15, 17; 129:11, 13; 131:16, 17; 132:1, 5; 137:2

**documents** 3:22; 5:21; 6:7, 9, 13; 9:13, 16, 23; 11:23; 12:19; 16:9, 23; 17:9, 17, 19, 23; 18:1, 4, 5, 8, 12, 17; 19:15; 23:4; 27:9, 10,

22; 28:7, 9, 18, 23; 29:3, 8, 10, 11, 13, 14, 15, 20, 22, 23; 30:1, 5, 10; 31:16; 32:13, 24; 33:1; 36:6, 13, 23; 37:1, 4, 8, 12, 14, 19, 23, 24; 38:6, 14, 16, 17, 23; 39:5, 13, 14, 24; 40:8, 20; 41:20, 22, 24; 42:6, 9, 16, 18, 18, 21; 43:10, 20; 44:3, 6, 8, 13; 46:9; 49:10; 56:13, 16, 17; 57:3, 5, 13; 60:17, 24; 63:10; 81:18, 20, 21; 111:16; 115:13; 125:23; 128:24; 129:6, 14; 130:19, 20; 150:11, 13, 23; 151:2; 154:14; 155:9; 156:13, 23; 157:12; 158:21; 159:4
dollars 99:24
done 51:3, 4; 79:21; 88:13; 125:12, 15
doubt 39:6
Dougherty 103:7
down 12:24; 55:9; 102:1; 111:9; 147:13
downloaded 16:13
dozen 55:16
Dr 14:20; 110:20; 112:8, 12; 113:2; 132:6; 153:19; 160:7, 12
drafted 115:23; 133:19
driver's 3:6
dual 138:8, 9
due 155:5
duly 3:6
during 44:19; 45:13; 59:12; 67:12; 78:23; 81:14; 82:2, 3; 95:13; 110:7; 154:24
duties 54:4; 137:19

E

e-mail 115:20
e-mailing 80:19
e-mails 16:13, 21; 17:1; 19:5, 20, 21; 114:14, 15, 17, 19
Earl 59:20; 104:8; 105:24; 106:7
earlier 19:20; 27:21; 29:2; 46:3; 53:5; 59:13; 86:11, 12; 121:21; 151:17
early 17:1; 86:13
easier 7:19; 12:23
easy 103:8
effective 132:22
effort 100:1
efforts 100:8
eight 51:19; 89:17
either 10:22; 33:1; 37:4; 49:11; 64:20; 66:5; 69:3; 94:5, 10; 105:9, 22; 106:20; 108:1; 119:12; 120:23; 141:21; 145:23;

154:1
elicit 122:1, 12; 155:6
else 9:20; 21:8; 22:13; 23:24; 24:7; 27:10; 28:11; 32:24; 44:20, 23; 45:4; 57:23; 59:2; 60:1; 61:1; 66:4, 14; 68:9; 73:22; 74:10; 75:9; 84:5, 19; 87:8; 89:12; 110:17; 113:23; 116:24; 119:24; 120:5; 133:6; 144:9; 154:10
employed 10:22; 11:4, 7; 12:4; 13:12; 72:6, 7, 14, 17; 93:10, 12; 105:4; 137:11
employee 12:17; 13:2, 5, 8; 33:9, 16; 34:13; 106:16; 109:2; 120:23; 130:21
employment 93:11; 130:13; 131:2, 4, 6, 7
end 94:3; 95:7; 100:4; 129:2
engaged 125:20; 126:1, 10
engagement 126:23; 129:23; 135:13
Engineering 103:20, 22; 105:15; 107:6, 7; 108:8, 12
enough 98:20
entered 131:13
entire 74:18
entities 13:9, 13; 15:18; 24:21, 24; 48:23; 49:2, 3; 100:11; 107:12, 14, 15, 18
entitled 87:21; 146:20; 148:16
entity 10:14, 17; 14:13; 16:4, 6; 20:13; 21:15; 22:6; 25:24; 26:3, 6; 77:19; 94:2; 99:3, 5, 7; 101:17; 103:17; 105:4; 120:12, 24; 122:3; 138:12
Environmental 103:11, 15; 107:4; 108:4; 110:3
Eric 103:12
Erie 22:15
errata 5:2
establish 118:1
established 117:12; 118:10
establishment 129:3
estimate 55:15
estoppel 111:8
European 107:13
even 12:20; 39:23; 40:2; 82:7, 16; 148:4
events 152:6, 15; 158:5; 159:12, 14, 161:22
eventually 143:5
everybody 114:17
evident 101:7
evolved 117:10
exact 8:2; 16:16; 27:3; 28:1; 40:15; 43:11; 44:16; 45:18; 53:4; 119:2

exactly 14:7; 19:18; 35:3; 40:24; 83:3; 100:9; 112:16
examination 3:3, 15; 7:7; 126:8
examined 3:7
example 5:23; 94:8; 135:23; 153:24; 159:20
except 4:5; 157:14
Excluding 67:18
Excuse 3:18; 14:16; 18:18; 24:12; 33:24; 57:18; 75:22; 105:12; 107:13; 110:8
executed 21:20; 22:8; 76:21; 81:18, 22
execution 46:19; 47:1; 79:11; 80:6; 81:20; 144:13; 145:4
exhaust 116:22
exhausted 116:17
exhausts 117:4
Exhibit 6:19; 46:13; 157:16
exist 43:8; 107:15, 18
existed 107:22
existence 10:12; 91:2; 107:24; 137:2
existing 138:12
expect 68:14; 149:2
explain 62:5; 85:6; 88:6; 121:22; 122:16; 156:4
explained 127:21
explaining 3:22; 125:8
explanation 22:21
extent 17:22; 39:5
external 97:13

F

face-to-face 58:23
facial 30:12, 19; 31:1
fact 60:21; 123:11
fact-gathering 7:10
facts 106:1; 117:20, 21; 148:9; 161:21
failed 43:2
fair 19:1, 7, 10; 51:6; 54:11, 17; 56:21; 63:14; 84:22; 138:13, 17; 151:11, 23; 153:5
fairly 95:6; 162:17
fall 98:18; 99:5
familiar 34:4, 10; 63:9, 10
far 15:20, 21; 25:20, 22; 104:5
fashion 39:17; 77:1
faster 14:24
favor 60:6
fees 34:7, 9
few 15:20; 17:22; 18:4; 45:14; 49:16; 82:4
fiduciary 137:19; 138:3
Fields 75:6

fifteen 55:14; 80:18, 21
fifth 157:23
file 161:13
filed 61:9; 144:16; 150:10, 19; 151:15, 16
finance 59:22; 94:9; 97:18; 103:19; 104:2, 10
financial 10:3, 4; 106:8
financials 74:14
find 3:12; 89:4; 156:21
fine 7:23; 23:16; 62:11; 80:9, 22; 122:14; 128:6
fingers 92:17
finish 10:10; 23:13; 25:9, 11; 52:6; 88:14; 95:2; 127:20; 128:2
finished 7:17; 102:7
finishes 13:1
firm 20:1
firms 21:5; 22:9, 11, 19
first 3:6, 21; 4:10; 9:3; 18:9; 40:23; 41:14; 44:3; 67:13; 73:13; 75:3; 97:23; 98:10, 15; 100:13, 18; 142:3; 151:20, 24
five 16:16; 55:14; 57:21
folks 27:8
follow 5:7, 9; 128:14
follow-up 126:16
followed 41:21
following 5:19; 142:5
follows 3:8
foregoing 163:3
forget 73:2, 14; 76:13, 14; 83:23; 108:6; 109:10
forgot 105:12
form 6:4, 14; 10:16; 22:20; 41:6; 56:6; 98:6
formation 10:7
formed 35:17; 108:5
forth 115:21; 145:24; 147:16
forward 64:9
forwarded 7:3; 17:2
found 101:4, 13
four 49:24; 60:5; 69:22; 70:3; 78:3; 150:16; 155:1; 156:2; 157:17
frame 140:8
framework 15:15
FRD 31:8
free-for-all 161:15
Fresh 75:6
full 12:20, 22
function 96:8, 18, 20; 97:6, 9, 11
functional 94:4, 10; 96:7; 97:16, 18, 20; 109:22; 110:2
functioned 96:12, 15
functions 97:4
further 163:4

future 127:3, 14

G

G-o-r-e-n 134:3
Gadsby 20:1; 21:9; 26:24; 27:4; 36:19; 37:23; 39:5; 42:18; 43:11; 120:4, 11; 121:17; 122:1, 18, 21, 24; 123:8, 17; 124:10; 125:20, 23; 126:1, 11, 23; 127:17, 21; 128:18, 23; 129:7, 9, 14, 20, 24; 130:2, 8; 131:18; 132:7, 11; 133:11; 134:24; 137:5; 139:13, 19, 24; 140:6, 12, 18; 141:21; 142:1, 14, 20, 23; 143:6, 16
gather 11:23; 61:2; 117:19; 148:9
gathered 60:24
gathering 60:17; 158:16; 161:21
gave 17:12; 19:4, 21, 22; 36:24; 37:1; 38:14; 85:4; 112:4; 142:18, 20, 23; 143:6; 155:5
GE 153:23
general 9:7, 9; 22:3; 30:9; 45:16; 46:9; 49:21; 53:16, 24; 54:4; 60:15, 21; 63:8, 19, 24; 68:4, 19; 70:11; 83:6; 92:7; 93:2, 7, 12, 19; 94:5, 8, 9; 96:5; 97:1; 99:14; 109:19, 24; 116:4; 117:6; 123:24; 136:11; 137:17, 22; 138:1, 11; 139:6, 144:23; 148:12; 153:20
generally 63:9, 10; 136:10
generic 37:20
generically 99:10
genesis 79:22
gentlemen 78:11
George 103:19
German 48:23; 49:3; 99:7, 10; 101:1; 101:4, 7; 124:20, 20
Germans 124:21, 129:17, 20
gesture 31:1
gestures 30:12, 19
gist 28:3
given 43:4; 62:21; 106:2; 142:13; 154:23; 156:10
giving 61:10; 68:3; 106:1, 3, 4, 8; 112:1, 2; 125:22
glitch 17:22; 18:4
GmbH 11:11, 19; 21:7
goes 87:19
Good 24:6
Goodwin 9:19; 21:10, 14; 22:5; 23:1, 2, 6, 12, 18, 22; 24:7; 58:1; 133:23, 24; 135:13, 22; 136:7, 9, 14,

Min-U-Script®    Doris O. Wong Associates    (617) 426-2432

17, 22; 152:11
**Goren** 134:1
**great** 12:22; 31:5
**group** 20:4, 5, 14; 21:10;
24:11, 21, 22; 25:17; 27:1,
5; 33:7, 9; 100:14, 19;
101:24; 102:12; 105:7;
110:13, 15; 111:12, 12, 20,
21; 113:9; 119:12, 13, 13;
120:19, 21, 22; 123:4;
124:18; 131:19; 132:8;
133:15, 16, 21; 135:12;
137:4; 138:2, 17, 23;
139:1, 6, 7, 18; 140:1, 19;
147:5, 5
**group's** 128:21; 140:12
**groups** 111:11
**guess** 67:11; 100:22;
124:2; 136:5, 6, 24; 158:7
**guide** 30:16
**Guy** 36:2
**guys** 162:12

## H

H-o-r-v-a-y 103:24
**half** 10:6; 43:12; 50:22;
93:9, 11; 95:5
**Hampen** 110:23; 111:3;
129:21
**handwritten** 41:7;
115:15, 19
**Hannah** 20:1; 21:9;
26:24; 36:19; 37:23; 39:5;
120:4, 12; 121:18; 122:1,
19, 24; 123:8, 17; 124:10;
125:20, 23; 126:1, 11, 23;
127:17, 21; 128:18, 24;
129:9, 14, 20, 24; 130:3, 8;
131:18; 132:7, 11; 133:11;
134:24; 137:6; 139:13, 19,
24; 140:7, 12, 18; 141:21;
142:1, 14, 21, 23; 143:6,
16
**Hannah's** 122:21
**happy** 111:4; 149:10;
161:11
**Harmon** 104:1
**hat** 60:15
**Hawaii** 159:1
**head** 30:4; 122:13
**heads** 115:23; 116:1, 7,
9, 11; 117:13, 14; 155:20;
156:24
**hear** 12:20; 89:23; 111:4;
125:2
**heard** 18:3; 98:13
**held** 13:20, 22; 32:22;
33:15; 34:7, 17; 113:5
**helpful** 16:1; 23:21;
36:14; 99:1
**helping** 22:12
**hereby** 163:2
**Hershfang** 134:14;
135:10; 148:21; 149:1, 9;

161:10, 17; 162:14
**Hevrony** 12:10, 11; 16:9;
18:1, 10, 16; 19:6, 13, 23;
27:10; 28:11; 32:13; 33:3;
36:2; 43:19; 44:2, 8, 10,
14, 17, 21, 24; 45:5, 9, 20;
46:6, 16; 47:13; 48:14;
49:10; 59:9; 69:17;
110:16; 112:21; 119:23;
120:13; 134:9, 23; 149:18;
150:1; 152:3, 21; 153:3, 5;
154:1, 12; 155:12, 13;
158:11; 159:11; 160:10,
11
**Hitachi** 47:9, 9, 14, 15;
75:15, 18; 76:3, 6, 9, 21;
77:12, 12, 16, 17; 78:12,
12, 13; 79:9; 81:19; 83:10;
84:13; 87:1; 88:8, 22; 89:8,
22
**Hitachi's** 47:10, 17; 81:6
**hold** 13:16; 26:8; 34:20;
44:11; 60:7; 92:6; 94:4;
103:9; 109:1
**Holding** 10:20; 11:18;
93:16; 98:18; 99:4, 11, 11;
107:9; 108:23; 109:8;
113:10, 19; 127:4, 15
**hope** 128:5
**hopefully** 80:15; 159:5
**hoping** 80:17; 98:7
**Horvay** 103:22
**hotel** 113:6
**hour** 50:21; 159:7
**hours** 45:14; 60:5; 69:23;
70:3; 155:1; 156:2
**HR** 94:8, 14, 21; 95:17,
24; 96:10; 97:16
**Hudson** 14:11; 16:4;
21:9; 24:11, 20, 22; 25:4,
4, 17; 27:1, 2; 33:6, 9;
101:23; 110:13, 14;
111:12; 112:14; 113:9;
119:15; 120:21; 124:18;
133:14, 15; 139:18; 140:1;
147:5
**human** 104:24
**hundred** 18:5, 7, 12;
43:10, 11, 99:23

## I

**idea** 43:16; 76:15
**identification** 6:19; 30:3
**identified** 3:5; 7:6; 16:4;
36:10; 46:17; 48:15;
51:15, 20; 52:23; 53:7;
54:24; 58:11, 22; 69:19;
88:16; 99:17, 20; 106:20;
110:11; 111:11, 21; 158:6
**identifies** 154:9
**identify** 70:23; 85:21;
87:12; 102:14
**identity** 85:4; 87:17;
156:10
**immediately** 100:22;

142:5
**implicate** 64:20
**impression** 103:1
**improper** 69:3
**in-house** 78:11
**inappropriate** 69:2;
121:3
**Inc** 3:11; 5:20; 10:12, 21;
11:19; 12:2; 13:3, 17, 23;
14:15; 16:7; 23:5; 24:24;
26:12; 33:13, 16, 19;
34:21; 35:15; 54:1; 68:16;
98:18; 99:12; 107:8, 10;
109:5, 9, 12; 113:19;
122:21; 127:4, 15
*incidental* 68:8
**incidents** 80:3
**include** 53:18
**included** 19:4; 56:16;
116:6; 118:12; 160:24
**including** 45:24; 46:2;
68:18; 144:20
**inconsistent** 121:20
**incorrect** 29:2
**indicated** 28:5, 10
**indicates** 5:24
**indicating** 9:3
**individual** 3:13; 26:9;
156:6, 15; 157:24; 158:5
**individual's** 68:22
**individually** 42:7
**individuals** 20:17; 28:8;
36:9; 60:24; 65:3; 72:16;
76:19; 77:3, 20, 24; 78:9;
105:8, 21; 106:20
**inform** 31:3
**information** 8:10, 11;
15:14; 60:17; 61:2; 92:19;
106:9; 117:24; 146:11;
149:3; 154:9, 24; 155:4;
156:8; 158:16; 161:22
**initial** 35:15, 16; 45:16
**input** 61:10; 106:1, 2, 2, 3,
4; 112:1, 2; 125:22;
128:24; 129:5, 13, 15, 19;
141:18, 20, 24; 142:13, 18;
143:6, 11, 16; 144:1
**inquiries** 5:19
**inquiry** 6:2; 46:5; 74:6
**insolvency** 100:10
**Instead** 30:11; 38:11
**instruct** 14:19; 15:3;
64:13; 65:5; 66:21; 79:1;
81:13; 85:16; 87:22, 24;
142:6; 145:18; 152:24;
153:3
**instructed** 15:7; 65:11;
67:22; 68:10; 72:1;
121:14; 155:15; 161:6
**instructing** 15:9; 88:4;
134:17; 149:14; 159:23
**instruction** 134:6
**instructions** 64:19;
121:11; 134:11
**insurance** 97:8

**intent** 66:13; 69:11
**intercompany** 23:23;
24:1, 9
**interest** 14:6, 8; 137:3;
139:12, 17
**interested** 128:14
**internal** 9:20; 97:13, 15;
119:11; 161:23
**International** 103:20, 22;
104:1, 2, 4; 105:15; 107:6,
7, 8; 108:8, 12
**Internet** 101:5
**interrupt** 98:22
**interrupted** 82:21
**interrupting** 18:24;
88:20; 126:5, 8
**interruption** 140:15
*into* 10:12; 43:2, 6; 82:1;
107:24; 117:17; 121:11;
125:23; 129:14; 131:13;
147:13; 154:7
**introductory** 141:6
**investigate** 9:10; 62:8;
114:10; 117:19; 144:11;
145:3; 146:10
**investigating** 145:22
**investigation** 7:9; 8:10;
9:2; 27:11; 28:6; 29:18;
33:2; 36:11; 49:19; 50:4;
51:8, 21; 52:9, 13, 21;
53:9, 19; 61:14; 63:16;
68:18; 155:7, 18; 156:6, 8,
18; 160:19
**investing** 16:5
**investment** 14:14; 33:7,
9; 72:16, 19; 99:19
**investments** 139:18
**investor** 27:2
**involve** 161:23
**involved** 7:14; 8:4; 9:12,
15; 15:16; 20:17, 18, 20,
22; 21:4, 22; 32:9; 33:6; 34:9;
61:22; 76:19, 23, 24;
79:23; 85:4; 97:24; 98:11;
99:13; 100:13, 18; 101:1;
102:2; 105:8, 21; 110:11,
14; 112:15, 23; 119:19, 21;
122:2; 131:19; 133:5, 9,
11; 134:2; 156:11
**involving** 9:13; 23:3; 97:3
**issue** 15:10; 68:14;
87:22; 88:8; 148:22
**issued** 151:5
**issues** 78:23; 81:19, 21;
157:2
**Item** 46:17, 23; 47:3, 8,
13, 20; 48:20; 72:1, 11, 11,
12, 14, 16, 17; 81:7; 83:1,
7; 84:11, 24; 159:6
**items** 46:21; 49:8, 17;
52:4, 22, 24; 56:9; 61:9,
21, 22; 63:17; 66:3; 67:13;
70:12; 81:10; 82:23;
88:16; 89:17, 17, 24; 90:1,
3, 6, 149:20; 154:14

## J

**JAMES** 3:2; 12:1; 36:1;
103:7; 163:2
**January** 132:16
**Japan** 77:5; 78:11
**Japanese** 76:13, 17
**Jeff** 36:22; 120:1
**Jim** 21:2; 32:8; 102:3;
104:7; 111:24; 112:4;
113:2; 119:22; 133:3;
141:22; 144:4, 15
**John** 103:18
**joined** 95:20; 105:2
**Judge** 31:5; 134:14;
135:10; 148:21; 149:1, 9;
161:10, 17; 162:14
**July** 100:24; 101:19;
151:11
**juncture** 159:4

## K

K.K 47:9
**keep** 41:1; 88:20; 161:6;
162:6
**keeps** 38:21; 54:8
**Ken** 4:8; 103:20
**kept** 41:5
**kind** 34:17; 42:12, 14;
116:4; 123:16; 137:3
**kinds** 81:24
**knew** 8:11; 9:22; 129:20
**knock** 146:22
**knowledge** 13:4, 5, 7, 8,
12, 15; 14:12; 16:3, 8;
30:8; 32:17, 21; 33:10, 17,
21; 34:12, 16, 20; 73:3;
77:20; 110:14; 112:5, 19
**known** 13:10; 14:14;
16:6; 26:12
**KPMG** 72:24; 73:13
**Kraenzlin** 110:20; 112:8,
13; 113:2; 132:7; 153:19;
160:7, 12
**Kraenzlin's** 14:20
**Kramer** 110:20; 112:12;
113:3; 153:19; 155:13, 13;
160:7, 12

## L

L-e-C-l-a-i-r 104:3
**language** 142:15
**last** 8:14; 44:17, 17;
54:20, 23; 58:15; 62:19;
66:1; 73:14; 86:7, 15;
103:23; 117:10; 159:7;
160:23
**lasted** 70:2
**later** 44:5; 134:14; 161:17
**lafter's** 47:22

law 20:1; 21:5; 22:9, 11, 19
lawsuit 91:2
lawyer 78:12, 12; 94:7; 96:15
lawyers 21:4; 142:21
leading 98:1; 144:18
least 18:5, 7; 30:9; 49:18; 69:11; 70:19; 78:6; 114:1
leave 62:11; 90:13; 96:20
LeClair 104:3
led 46:18, 24; 100:15, 20; 144:12; 145:4
Leeman 104:8, 17, 18; 105:24; 106:7, 11, 18
left 52:8; 66:9; 76:22
legal 43:4; 68:3, 9; 96:6, 8, 19, 22, 23, 24; 97:2, 10; 122:22; 123:23; 124:11; 126:11; 131:19; 132:8; 136:7, 8; 140:12, 18
legitimately 43:8
lengthy 149:5
letter 3:22; 18:15, 21; 19:3; 122:18, 24; 123:7, 11, 12; 129:23; 135:13; 139:5, 17; 151:8, 9
letters 137:2
liabilities 118:23
license 3:6
light 134:20
limited 14:23; 21:10, 16; 96:8; 99:15; 113:13
line 25:9, 11, 12, 15; 44:24
list 26:17; 27:8; 46:13; 92:18; 102:15; 103:5
listed 27:23; 90:7; 154:19; 157:13
listen 12:24
litigation 54:6; 56:18; 97:4
little 107:2; 121:11; 152:20; 162:12
LLC 14:11; 16:5; 25:4, 5
located 73:16; 77:3, 4
location 156:13
log 5:14, 20; 6:6; 31:23; 57:10, 11, 14
long 10:4; 45:12; 58:7; 60:3; 69:21; 70:1; 93:7
longer 80:16, 22; 90:23
look 6:15; 31:4; 42:20, 21; 46:12, 13; 70:14; 114:1; 154:21
looked 17:4; 37:8; 42:6; 56:12; 64:11; 129:9; 145:6, 7; 152:8
looking 22:16; 114:14; 127:11
looks 18:12; 31:1
lot 7:19; 29:13; 110:9; 114:16; 117:8; 118:23; 124:21; 158:9
Ltd 47:10

Ludger 110:20; 112:12; 113:3; 153:19
lunch 80:13; 81:14; 82:3, 3
Luncheon 91:7

**M**

M-i-n-u-r-a 84:7
Magistrate 149:6
main 93:18
maintain 56:1
makes 30:19
making 30:12; 97:11
management 20:5, 14; 26:11; 94:21; 95:17, 23; 97:6, 9; 100:14, 19; 103:16; 111:11, 20; 120:22; 123:4; 124:17; 127:1; 131:19; 132:8; 133:16, 21; 135:12; 137:4; 140:1, 19; 147:5
managers 101:15, 24; 102:1, 8, 10; 128:23; 129:18, 19
managing 140:12
many 16:15; 45:19; 50:14, 15; 51:16; 55:7, 10; 57:11; 78:9; 92:11; 93:4; 94:1; 103:6; 104:4; 148:18; 150:6
March 4:11
mark 15:6; 103:22
marked 6:18; 19:6; 46:12; 157:17
market 113:20, 22; 116:21; 142:17
Mason 59:20, 20, 21; 69:18; 104:8, 9; 105:24; 106:8, 10, 18
Mass 31:8; 113:6; 162:5
Massachusetts 45:10, 13
Master 15:12; 39:3, 12; 64:16; 85:16; 88:5; 121:2, 122:15; 123:15
materials 8:13; 115:12
matter 32:5; 46:17; 48:22; 64:15; 65:17; 70:19; 75:6; 79:2; 81:6; 82:22; 83:1; 90:6; 118:8; 142:15; 153:23; 154:13; 155:2; 159:10; 161:2
matters 7:7; 9:2; 46:6; 55:12; 58:16; 68:17; 88:23
may 4:10; 49:16, 56:21; 57:8; 60:15; 64:20; 66:9; 69:22; 75:13, 22; 80:8; 93:16; 94:2; 102:8, 10; 105:24; 120:1; 144:8; 147:21
maybe 18:8; 22:17; 34:8; 39:11; 55:16; 60:5; 84:7; 88:3; 90:12; 107:2; 121:10; 126:21; 152:20; 159:5, 17; 161:18

mean 22:22; 35:16; 72:13; 76:5, 22; 96:22; 101:12; 112:2; 148:18
means 6:2
meet 58:7, 10
meeting 39:12; 57:23; 58:19, 23, 24; 59:5, 7, 10, 12, 16; 60:1, 3; 61:14; 63:13; 67:12; 69:16, 19, 21, 23; 70:1, 2, 4, 7, 9, 15; 78:10, 16, 21; 81:5; 82:22; 83:9, 17, 21, 22; 84:2, 6, 8, 10; 86:9, 10, 11, 11, 12, 21; 87:1; 89:8, 21; 112:23; 113:1, 5, 8, 11; 114:4, 7, 12, 24; 115:1, 5, 10, 16, 19, 22, 24; 117:1, 2, 4, 7, 15; 118:3, 7, 16; 119:9, 10; 124:16; 141:6; 148:6, 22; 152:2; 154:2; 162:11
meetings 63:7, 11; 79:3; 102:4; 116:15; 143:18; 158:24; 162:10
member 13:17, 23
memorandum 149:5
memory 8:3; 30:9; 31:15; 40:14; 41:17; 45:19; 60:4; 71:8, 9, 23; 114:14; 115:4; 116:17, 22; 117:14, 15; 118:7; 134:21; 136:4; 141:23; 142:4, 12, 16; 149:18; 153:6
memos 57:11
men's 57:20; 60:9; 80:10; 128:7
mentioned 56:20; 71:19; 104:17; 105:20; 131:3
met 61:10; 77:24
Michael 104:2
middle 95:7; 98:22
might 34:7; 63:23; 109:9; 144:9; 158:12
Miller 33:4, 5; 34:14, 20; 35:2; 36:2, 3, 6; 59:8, 15; 69:17; 110:16; 112:22; 119:22; 120:12, 22; 134:9, 23; 144:16
million 99:23; 119:8
Min-U-Script 121:12
mind 161:7
minds 86:5
Minura 84:7; 86:18
minute 25:9; 57:20; 60:9; 117:12
minutes 57:21, 21; 62:15, 16; 80:18, 22; 82:4
misleading 98:2
misreading 34:8
missed 69:22
Mitsui 47:21
moment 44:11; 60:8; 75:23; 82:9; 90:4; 121:1
monies 47:15
month 7:13, 22; 73:11; 105:2
months 19:17, 21; 40:16,

17; 78:3; 145:7
more 15:21; 16:16, 16, 18, 19; 18:1, 8; 39:20; 62:6; 70:11; 82:20; 83:18; 113:23; 119:6; 144:23
morning 17:21; 18:9; 19:11
most 4:13; 8:4; 65:13, 24; 110:8
mostly 102:3
motion 69:12; 161:13
motions 61:9, 17
move 9:7; 62:24; 124:23; 125:5
much 28:15; 39:20; 65:2; 68:6; 80:16; 82:20; 90:23; 148:23
Murakoshi 103:21
Murphy 104:15, 22; 106:11, 18
myself 113:4

**N**

N-a-u-g-h-t-o-n 105:14
name 3:17; 4:8, 10; 10:14; 14:10; 27:3; 58:3; 68:7; 73:13, 14; 77:18; 103:23; 104:16; 105:12
names 36:13; 73:2; 76:14, 14, 15, 18; 83:13, 23, 24; 85:5; 103:9; 105:20
narrow 82:20
Nathan 12:10; 19:6; 36:1; 110:16; 112:21; 119:23; 144:15
natural 80:15
nature 6:7, 9; 94:20; 95:16; 96:1; 131:9
Naughton 105:14; 106:11
near 113:6
necessarily 98:12
necessary 39:2
need 5:1; 6:24; 15:11; 19:10; 24:19; 28:16; 40:15; 54:22; 57:19; 60:18; 62:7, 9; 113:14, 21; 116:20, 21; 139:21; 152:18; 155:3
needed 137:23; 138:7; 139:14
needs 22:21
negotiated 132:21, 22; 133:1
negotiating 162:1
negotiation 22:18, 22; 78:22; 79:10; 105:8; 133:22; 153:7; 159:12
negotiations 15:17; 23:3; 46:18, 24; 47:4, 14; 76:23; 77:1; 85:3; 89:20; 105:22; 111:6, 15, 19, 22; 112:3, 6, 16, 19; 126:6, 13; 69:17; 70:2; 93:8; 94:23; 95:21; 98:2; 100:15, 20;

17; 78:3; 145:7
149:18; 150:2; 153:17; 160:4
neither 66:13
new 25:23; 26:3, 6; 73:5; 77:9, 11, 21; 108:20; 138:23; 139:1, 6
Newco 20:14
newly 108:5
newswires 101:5
next 57:20, 21; 80:18; 101:6
night 159:18
Nine 104:6
Nixon 21:6; 113:3
Non-Compete 81:9; 105:10, 23; 111:7; 113:22; 114:1, 13; 116:6, 16, 21; 117:1; 118:8; 127:3; 142:15; 144:6; 146:1; 149:19; 161:2; 162:1
Non-Competition 46:20; 47:6, 17; 48:17; 113:12, 15; 119:14, 20; 135:1; 142:7; 143:19; 144:13, 18; 145:4, 13; 147:6, 14, 17; 150:2; 152:23; 153:8; 159:13; 160:13, 17
noncompetition 153:16
nondisclosure 130:22; 131:4
None 37:10
nonprivileged 157:12
nonresponsive 124:23; 125:6
Nor 25:19, 21; 65:18; 66:4, 14; 72:7
normal 54:4
Nos 19:6
notarized 5:1
Notary 3:7
note 32:8; 38:4; 47:1; 66:16, 17; 68:6; 70:22; 71:3
notebook 56:1
notes 41:1, 5; 55:17, 20; 105:11, 23; 114:4, 7, 8; 115:9, 15, 19; 117:6, 6; 118:9, 13
notice 6:22; 29:20; 46:7; 51:15, 21; 53:8; 54:15, 24; 55:12; 58:17; 66:4; 67:6; 70:8; 72:9, 10, 19; 73:10; 74:24; 75:4, 16, 19; 76:8; 78:15; 79:3; 82:23; 83:2; 86:23; 87:3; 88:17, 24; 89:10, 17; 90:7, 16, 17; 151:4, 4, 13; 152:1; 157:22; 158:6
noticed 6:22; 40:23
noticing 45:17
November 10:21; 13:24; 26:14; 33:20, 23; 34:9; 35:8, 9, 18; 44:19; 58:18, 23; 59:6; 66:16; 67:3; 69:17; 70:2; 93:8; 94:23; 95:21; 98:2; 100:15, 20;

102:22; 103:3; 106:21;
107:16, 19; 108:1; 110:13;
114:18; 119:15, 20;
122:23; 123:9, 18, 20;
124:9, 9; 125:19; 128:20;
129:2; 130:3, 7; 131:13;
132:12, 22, 23; 134:10, 24;
135:17; 137:10; 140:7;
141:5, 10; 143:20, 21;
152:4; 153:17; 160:16
**number** 5:18, 21; 18:4;
43:11; 44:16; 45:18;
70:23; 74:22; 78:14; 119:2
**numbers** 6:5, 15
**numerous** 156:23;
157:11

## O

**o'clock** 157:18
**O-g-a-w-a** 84:4
**object** 8:15, 20, 21;
10:16; 13:11; 14:16; 20:6;
22:20; 23:9, 10, 15; 24:3,
5; 30:11; 33:24; 35:13;
50:9; 53:1, 11, 15, 21;
54:16; 61:4, 15; 62:21;
66:21; 85:7, 9, 13; 87:14,
21, 23; 94:6; 96:2, 11;
98:6; 120:9; 126:13;
138:9; 152:24
**objecting** 15:10
**objection** 8:22; 50:16;
98:13
**objectionable** 82:15, 16
**objections** 22:23; 23:21
**obligated** 32:4; 64:6;
117:17, 19; 146:10
**obligation** 50:24; 68:16;
117:21; 146:7; 148:8;
149:7
*obligations* 30:7, 14;
31:6, 9, 12; 137:24
**obtain** 47:16
**obviously** 6:24; 8:2;
18:10; 45:10; 62:22; 68:8
**occasional** 68:5
**occasions** 38:22
**occur** 40:14; 101:22;
114:11
**occurred** 101:3; 111:8;
114:11; 134:8; 144:24;
145:12; 147:14; 151:3, 12,
24; 152:2, 16; 153:7;
154:2; 159:12
**October** 61:23; 101:20;
114:18; 140:7; 152:4
**off** 5:12, 13, 17; 17:5, 6, 8;
30:4; 37:16, 17, 18; 38:12;
162:7, 18, 19
**office** 34:7, 17; 42:13;
45:3, 5, 7, 7, 8; 65:18;
66:5, 14; 73:15; 77:7, 11,
22; 92:6; 110:22; 113:7;
129:21; 162:5
**officer** 10:3, 5; 33:18, 22;

72:8, 17; 92:22; 93:21;
109:1, 11, 13, 17; 137:13,
24; 138:12; 139:7
**offices** 124:21; 137:8
*offset* 118:24
**offsets** 118:19, 21; 119:3
**Ogawa** 84:1; 86:8, 16
**Ohio** 77:8
**old** 108:9, 14, 16, 18, 22,
24
**one** 4:8; 12:12; 17:24;
18:4, 11; 24:13; 31:1, 22,
24; 40:11; 41:23; 42:24;
46:21; 48:14; 49:6; 51:18,
18; 56:19, 19; 57:6, 20;
58:22; 59:18; 60:8; 61:19,
19; 62:16; 64:2; 74:20;
79:16; 84:1, 15; 90:11;
93:18; 94:16, 21; 95:17;
101:9; 112:23; 124:19;
128:15; 130:21, 24;
135:20; 136:3; 138:13;
141:15; 142:23; 143:8;
148:14; 149:20; 150:15,
15, 17, 18, 19, 22; 151:21,
21; 157:2; 158:7, 7, 19, 19
**ones** 67:10; 70:9, 21;
107:24; 109:4, 16
**only** 15:8; 24:23; 35:19;
56:19; 61:24; 63:18;
81:20; 128:14; 130:16;
131:11; 136:24; 141:3;
148:14; 149:24; 157:16
**opening** 3:20
**operational** 97:20
**operations** 104:3
**opinion** 74:4, 16
**opposed** 15:9; 96:8;
136:13
**oral** 86:24; 89:8
**order** 47:15; 82:17;
124:17
**ordinary** 41:2
**original** 6:21; 151:4, 9
**others** 5:24; 9:15; 47:15;
56:21; 57:8; 110:5; 147:4;
155:12
**otherwise** 4:18; 54:6;
60:18
**out** 3:12; 5:8; 12:22; 18:6,
11; 22:12; 24:13; 31:5, 22,
24; 52:1, 8, 17; 64:24;
66:9; 73:15; 76:22; 77:23;
78:20; 80:5; 101:5, 13;
115:24; 131:7; 136:12;
146:22; 151:11; 161:9;
162:7
**outside** 14:20, 22; 67:4,
4, 21, 22; 72:21, 22; 75:13;
78:12; 87:10, 12; 88:22;
89:14, 19; 90:2; 133:9;
154:15
**outsiders** 72:15
**over** 7:13, 22; 8:5; 15:12;
17:15, 19, 23; 39:13, 14;
41:23; 48:24; 53:17; 55:7;
101:5; 117:10; 156:23

*overnight* 45:14
*oversee* 124:21
*owed* 137:24
**own** 31:1; 136:13
**owned** 11:18, 19; 25:1;
129:16
**owner** 138:22
**ownership** 14:14; 16:6
**owns** 14:6, 8

## P

*p.m.* 91:8; 162:21
**package** 17:24
**page** 46:14
**pages** 18:12
**paid** 47:15; 49:2; 122:21;
123:19; 124:4; 130:2, 7;
132:14; 135:22, 24;
136:21
**pains** 163:4
**paper** 128:15
**Paragraph** 3:24; 48:23
**parent** 98:17; 99:3, 8, 22;
101:4, 7; 124:20, 21
**part** 25:17; 28:14; 46:7;
49:18, 19; 50:4, 7, 8; 51:8,
11, 14, 21; 52:8, 12, 21;
53:8, 18; 54:12; 60:13;
62:13, 13; 63:14, 15, 20;
65:17; 77:21; 79:3, 7, 17;
82:12; 100:13, 18; 107:21;
108:10; 116:7; 120:22;
123:4; 138:1, 16; 139:1, 5;
144:20; 155:17; 156:5;
160:19
**participant** 73:12
**participants** 158:24;
159:1
**participate** 23:2; 112:3;
143:18
**participated** 102:4;
111:21, 24; 112:5, 17, 20,
22; 121:19; 141:4, 9
**participating** 65:4
**particular** 77:18; 115:1;
133:13, 18
**parties** 21:21; 78:19;
82:11; 121:18; 133:1
**parts** 28:13; 43:24
**party** 73:22; 87:18;
110:11; 123:22; 133:7
**passing** 159:18
**past** 7:13, 22; 8:5; 55:8;
154:5; 157:19
**Paul** 73:14, 23; 74:2, 2,
18; 134:1
**pause** 62:21; 75:23
**pay** 48:24; 122:10;
123:23, 136:7, 14, 16
**payment** 136:8
**payments** 49:2
**Peabody** 21:6; 113:3
**penalties** 163:4

**pending** 24:14; 25:7;
75:24
**Pennsylvania** 22:15
**people** 9:22; 12:9; 17:14;
26:18; 28:18; 29:3; 54:5;
64:22; 73:5; 76:13; 80:19;
84:2; 89:21; 103:2, 4;
122:2; 123:5; 127:22;
158:23; 159:1, 15; 161:12
**per** 49:11
**perhaps** 6:11
**period** 78:23; 94:22;
95:6, 7, 18, 19; 129:1
**perjury** 163:5
**permitted** 22:24
**persisting** 54:8
**person** 26:11; 45:20;
59:17, 18; 66:6
**personal** 25:16
**personally** 14:5; 21:2;
40:8; 44:22; 136:7, 12, 17
**persons** 83:13; 156:10
**perspective** 114:2
**Peter** 58:6
**Phillips** 103:19
**phone** 44:20; 45:20;
59:17; 66:5
**phraseology** 28:1, 2
**physically** 45:4, 9; 77:4;
78:7
**Piepenberg** 110:21
**place** 6:23; 83:10; 148:2
**Plaintiff** 3:4
**plants** 22:15
**please** 15:24; 16:2; 20:7;
27:16; 29:9; 34:1; 43:2;
64:18; 65:22; 67:10;
70:23; 73:1; 85:12; 101:3,
102:14; 103:6, 23; 125:3;
126:4, 5, 13, 14, 22;
128:13; 131:22; 140:4;
146:24; 152:16; 157:4
**pledged** 47:15
**pocket** 136:13, 13
**point** 3:23; 6:12; 80:15;
94:21; 95:17; 102:18;
104:14; 113:14; 134:12;
136:24; 139:15; 148:19,
19; 154:5, 6
**pointing** 18:11
**position** 33:8, 15; 34:7,
18, 21; 53:23; 68:15; 72:7;
104:19, 23; 126:22; 127:5
**positions** 88:13; 109:2
**possibility** 40:1
**possibly** 106:8; 109:12;
110:20; 120:14
**post-closing** 48:24
**potential** 90:9, 15; 91:1;
97:24; 98:16; 99:17;
100:14, 19; 118:16
**Power** 3:11; 5:20; 9:21;
10:12; 11:5, 11, 19; 12:2,
4; 15:2, 16, 23; 14:1, 15,
16:7; 21:7; 23:5; 24:24;

25:4, 5; 26:12; 33:13, 16,
19; 34:21; 35:15; 47:11,
18, 23; 48:24; 54:1; 68:16;
81:6; 88:9; 93:15, 16, 17,
18, 19; 94:2, 5, 11; 103:11,
15, 19, 24; 104:2, 4;
106:15; 107:4, 5, 7, 8, 9,
10, 14; 108:3, 3, 4, 15, 19,
21; 109:5, 6, 7, 7, 8, 24;
110:3, 4; 122:21
**Powerjim** 58:13
**Powers** 16:4
**practical** 100:7
**practically** 109:17
**precisely** 60:16; 125:1, 3
**predecessor** 10:19
**preface** 63:24
**preparation** 27:11; 28:6,
19, 23; 51:11, 14; 54:12;
61:13; 62:13; 63:20;
144:21; 152:7
**prepare** 27:22; 29:7;
50:5; 51:8; 64:8; 145:1
**prepared** 53:19; 61:20;
69:7; 117:20; 149:4;
154:17; 155:8; 156:7, 15,
19, 22; 157:11; 158:2, 14;
159:8
**preparing** 44:12; 60:20;
69:11; 115:5; 145:21;
147:22; 158:1
**presence** 67:4, 22
**present** 14:1; 31:22;
36:4; 44:13; 45:4, 9, 17;
55:10; 57:23; 59:2, 7, 16;
60:1; 61:2; 62:1; 65:15, 18,
24; 66:5, 14; 69:12; 72:10;
73:10; 75:17; 78:7, 9;
84:13, 15, 20; 86:23;
90:16, 106:21; 113:1;
119:10, 11; 122:15;
138:22; 139:22; 140:11;
146:11; 159:15
**presented** 68:15; 69:1;
134:21; 146:8; 148:12
*presenting* 69:13;
146:14
**President** 103:11, 20, 24;
105:15
**pressing** 162:6
**Presumably** 53:13
**pretty** 114:21
**previous** 150:4
**previously** 108:6
**price** 99:21; 118:15, 16;
119:1, 3
**pricing** 118:18; 119:7
**principles** 116:4
**printed** 115:11
**prior** 33:22; 34:4; 45:15;
93:8; 94:23; 95:1, 4;
114:23; 123:9, 18; 124:9;
125:19; 126:15; 128:19,
130:7; 132:12, 21, 23;
144:4
*pristine* 3:19

**privilege** 5:14, 20; 6:6;
15:10; 17:16; 30:1; 31:17,
23; 32:3, 6; 38:3; 43:1;
46:11; 57:10, 11, 14; 64:3,
12; 65:8; 66:24; 67:24;
69:3, 4, 4; 72:4; 81:15;
82:10, 10, 17; 87:17;
120:14; 121:4, 15, 16;
127:6; 135:4; 143:14;
146:9; 148:4, 11; 154:5,
15; 155:16; 158:12;
161:10

**privileged** 17:17; 64:20,
21; 68:23; 79:2; 120:15;
125:11; 127:23; 154:8, 9;
155:10, 19

**privileges** 43:8

**probably** 4:9, 13; 73:17,
20; 92:15; 143:7; 151:17

**problem** 39:22

**PROCEEDINGS** 3:1

**process** 100:4; 124:22

**Procter** 9:19; 21:10, 14;
22:5; 23:1, 2, 6, 12, 18, 22;
24:7; 58:2; 133:23, 24;
135:13, 22; 136:8, 9, 14,
17, 22; 152:11

**produce** 16:9, 12; 18:16;
19:14, 15, 19; 27:22; 33:1;
36:6, 23; 38:7; 43:20

**produced** 5:20; 6:3, 4, 8,
10, 14, 16; 16:22; 17:10;
18:9; 19:11; 29:14, 16, 21,
22, 23; 30:10; 31:17;
32:14, 17; 37:13, 20; 38:1,
7, 15, 17, 23; 39:8, 13, 15;
43:12; 44:14; 49:11;
56:17, 23; 57:4; 114:20;
116:10; 117:12; 152:12;
155:21; 157:12

**producing** 44:8

**production** 3:5, 16, 23;
17:18; 19:5; 29:4; 32:22,
23; 37:5, 14; 38:18; 39:4;
40:8, 20; 41:23; 44:6; 46:8;
57:5; 150:10, 13, 22; 151:2

**productive** 161:11

**project** 103:16

**promissory** 47:1;
105:11, 23; 111:8; 117:5,
6; 118:8, 13

**promptly** 38:8

**pronounce** 31:7

**proposition** 124:1

**protect** 113:19, 22;
116:21

**protected** 138:24

**protecting** 139:8

**protection** 138:21

**protective** 82:17

**provide** 28:9, 18, 22;
149:3

**provided** 5:3; 21:10;
23:22; 141:24

**providing** 128:23; 129:5,
19; 141:18

**Public** 3:7

**pull** 121:10

**Purchase** 46:19; 47:10,
17, 22; 49:3; 81:6; 97:24;
105:9, 22; 111:7, 18, 23;
112:9; 114:13; 115:12;
118:24; 119:3

**purchasing** 138:2

**purpose** 9:10; 14:13;
16:5; 113:8; 114:23

**purposes** 114:10;
144:14

**pursuant** 57:5

**pursuing** 79:16; 101:17

**put** 18:22; 19:7; 30:21,
22, 24; 44:11; 56:3; 68:24;
72:22; 73:5; 124:21;
146:5; 148:10

## Q

**Q** 33:18; 61:24; 75:2;
124:8; 125:16; 126:9;
156:14

**quantum** 155:4

**quarter** 43:13; 157:19

**quickly** 4:22

## R

**raised** 148:24

**raising** 146:9

**range** 119:3

**rate** 149:8

**rather** 117:13; 161:17

**read** 7:21; 9:3; 11:14, 16;
27:13, 15, 18; 31:21;
32:20; 34:3; 36:17; 43:23;
45:22; 49:15; 61:7; 62:19,
19; 63:5; 65:20; 66:11;
72:12; 75:12; 85:23; 86:4;
87:6; 98:4; 119:18;
124:15; 126:19; 131:23;
140:5, 23; 141:13; 143:24;
145:16; 147:9, 20; 153:11,
13; 157:7; 163:4

**reading** 141:18

**really** 16:20; 23:20;
39:23; 100:5; 133:5

**reason** 31:18; 79:17

**reasons** 49:24

**recall** 7:2, 4, 5; 11:21;
14:19; 16:15, 16, 20;
19:17, 23; 22:10, 13,
23:24; 24:2, 7, 10; 30:4, 6;
32:10; 35:10, 11, 19;
40:24; 42:3; 45:6; 49:6, 16;
56:19; 57:17; 65:2; 66:18;
68:6, 7; 69:19; 71:2, 5, 7,
13, 15, 21; 73:24; 74:1, 10,
15, 18; 83:3, 11; 84:5, 9,
21; 99:6, 21; 100:9;
107:11; 113:8, 23; 114:3,
8; 116:8, 24; 117:8;
118:12, 14, 15; 119:2, 5;
120:5, 6; 135:19, 20;

137:7; 139:14; 140:8, 14,
24; 141:18; 144:10;
147:10; 150:8

**recalls** 83:15

**receipt** 40:19, 22

**received** 19:5; 29:19;
38:15; 72:9; 75:3, 4, 16;
90:15

**recent** 66:1

**recently** 17:21; 19:5, 22,
22; 29:17; 65:13

**recess** 5:16; 26:21;
60:11; 80:24; 91:7; 121:9;
128:11

**recipients** 32:1, 9

**recognize** 47:16

**recollection** 83:6;
114:24; 152:15, 19

**record** 3:9; 5:12, 13, 17,
17; 17:5, 6, 7, 8; 18:22, 18,
22; 19:8; 30:22, 22, 24;
31:3, 21; 34:3; 37:16, 17,
18, 19, 22; 38:4, 12, 13;
39:11; 53:22; 55:23; 56:3,
4, 5; 61:7; 62:19; 63:5;
64:1, 8; 68:13, 24; 75:12;
89:1, 18; 92:17; 96:16;
121:13, 13; 122:5; 126:19;
135:8; 146:6, 23; 148:8;
157:10; 162:7, 7, 18, 19;
163:6

**recording** 55:22

**records** 14:2; 34:4, 10;
130:5, 9; 132:19; 136:3

**redacted** 6:1, 4, 14

**reference** 5:21; 6:6; 29:5

**referenced** 24:11, 20;
78:18; 132:21

**referencing** 25:3; 59:13;
113:16

**referring** 99:9, 10;
118:22

**reflect** 18:19; 92:17;
121:13; 129:11

**reflected** 72:8; 75:18;
76:7; 81:7, 10; 82:22;
123:19; 153:6

**reflecting** 68:20; 122:18,
24; 123:8, 17; 125:19;
126:10, 15, 18; 128:17;
131:16, 17; 132:6

**reflects** 5:22; 124:10;
125:24; 126:23; 129:6

**refresh** 117:15; 152:15,
19

**refuse** 157:1; 158:10

**refused** 64:17

**regard** 150:10

**regarding** 7:10; 40:7;
46:6; 55:11; 65:15; 66:2;
67:5; 68:18; 69:16; 70:22;
72:18; 76:7; 84:10, 23;
87:1, 17; 88:23; 89:9, 20,
21; 90:3, 16; 105:9, 22;
113:12; 115:12, 21;
119:13, 20; 127:2; 128:24;
129:13; 134:7; 135:1;

139:23; 141:7; 142:14;
143:19; 144:5; 145:13, 24;
147:4, 6, 12; 149:18;
150:1; 158:8, 15; 159:11;
161:22, 24

**regular** 41:2

**related** 13:13; 15:18;
47:2; 89:16

**relating** 47:16; 56:14

**relation** 49:23

**relationship** 11:9;
128:18; 129:4, 7; 130:17

**relationships** 80:5;
125:3

**relative** 70:7

**release** 47:16

**relevance** 88:5, 7

**relevant** 28:9

**remains** 48:21

**remember** 27:24; 28:1;
49:5, 9; 58:3; 70:6; 71:7;
73:4, 7, 7; 76:16; 83:20,
24; 103:6; 114:5; 120:7;
142:18, 22; 143:1, 5, 8;
153:14; 160:17

**remembers** 143:4

**remotely** 39:23; 40:2

**reorganized** 101:8

**repeat** 7:20; 11:15; 27:16;
31:19; 32:18; 34:2; 36:15;
43:21; 45:21; 49:13; 61:5;
62:18; 63:3; 65:19, 21;
66:7; 69:24; 72:11; 75:10;
76:1; 87:4; 98:3, 14;
100:17; 105:17; 119:16;
124:13; 126:14; 131:21;
140:3, 21; 141:11; 142:8;
143:22; 145:14; 147:7, 18;
153:9, 12; 157:5

**rephrase** 4:17; 65:23

**reported** 94:15, 22;
95:17

**reporting** 70:11

**reports** 106:13

**represent** 22:5; 27:4;
116:12, 14; 123:9; 151:7

**representation** 38:5;
126:16; 137:5, 5; 139:13,
19

**representations** 162:13

**representative** 36:18;
73:13; 75:17

**representatives** 72:24;
73:4, 75:14; 78:13; 87:1;
89:8; 101:23; 110:21;
160:6; 161:1

**represented** 20:1, 4, 9;
21:6, 9; 27:1; 125:11;
133:21; 139:24

**representing** 21:14;
120:19, 21; 122:2; 123:1;
127:17, 21; 133:12, 14, 15;
138:19, 20

**request** 16:10, 22; 17:18;
27:21; 29:4; 32:8; 33:2;
33:2; 36:12; 37:14, 21,

38:18; 39:7, 7; 40:19;
43:20; 44:6; 49:11; 57:5

**requests** 41:24

**reread** 16:1

**reserve** 74:12

**reserves** 74:14

**resources** 104:24

**respect** 18:10; 24:9;
51:24; 53:6; 55:5; 58:16;
68:21, 22; 74:2; 75:6, 18;
78:20, 22; 83:7; 111:20,
22; 114:12; 116:16, 19, 24;
118:7; 128:19; 130:17;
135:24; 139:11, 18;
147:14, 16; 149:19; 150:2,
12; 155:5; 156:17, 22;
157:13; 158:5; 159:10;
160:13

**respond** 51:14; 74:6;
83:19; 148:9

**responded** 83:8, 16

**respondent** 48:20

**response** 29:4; 32:15;
36:12; 37:14; 38:24

**responses** 44:5; 83:12

**responsibilities** 63:19;
109:22; 110:2; 138:4

**responsible** 95:23

**responsive** 17:18; 33:1;
38:17; 39:16; 125:1, 4

**rest** 17:23; 133:15, 16

**restatement** 28:16

**restrictive** 47:5

**result** 81:19

**retained** 122:19; 123:8;
124:10; 132:7

**review** 7:1; 8:11; 29:8, 11,
15, 20; 31:9; 32:15; 33:1;
36:7, 13; 44:13; 49:9; 56:9,
13; 58:10; 74:21

**reviewed** 17:1; 28:7;
29:10; 30:10; 31:16, 23;
32:16; 49:16; 57:3, 13;
60:23; 152:5, 14; 154:14;
155:9

**reviewing** 7:5; 8:13;
46:15; 67:11; 154:23

**Richard** 104:15, 22

**right** 8:17; 24:10; 25:17,
18; 26:24; 27:6; 31:1, 7;
41:12; 74:15; 82:7; 85:20;
100:3; 105:2; 106:17;
112:11; 117:23; 119:5;
123:14; 128:15; 129:8;
130:12; 138:13; 140:11;
142:22; 143:8; 147:10;
151:20; 154:20

**Riley** 93:15, 15, 17, 17,
18, 19; 94:1, 5, 11, 16, 17;
103:19; 107:7; 108:15;
109:5, 7, 24

**risk** 94:21; 95:17, 23;
96:10; 97:6, 9, 10

**Roberts** 36:2

**role** 8:8; 64:10; 93:4;
94:7, 10; 95:6; 96:7, 18,

19, 21, 23, 23, 24; 97:2, 3, 16, 18, 21; 99:15; 136:11; 138:1, 8, 9, 11, 13, 16, 18; 144:23; 145:21; 148:10; 154:15

roles 15:17; 95:10; 96:12; 137:19; 138:11

room 57:20; 60:9; 80:11; 128:7

rough 60:3

roughly 93:5; 94:1

Rule 3:10; 5:8, 8; 6:18, 22; 7:12; 30:8; 40:23; 42:1; 46:7, 14; 48:20; 51:15, 20; 53:8; 54:13, 15, 24; 56:10; 58:11, 17; 65:16; 66:3; 67:6; 70:8; 72:9, 18; 74:23; 75:4, 19; 76:7; 78:15; 82:23; 83:2; 86:23; 87:2; 88:17, 23; 89:9, 17; 90:17; 117:18; 151:3, 4, 9, 13, 24; 158:6, 14

rules 5:3, 7; 15:8; 38:19, 21; 39:1

run 13:9, 11; 57:19; 128:7

## S

S 3:2; 163:2

salary 131:8

sale 98:16, 16; 99:13, 18, 22; 100:1

Sales 107:10; 108:3

same 51:24; 52:17; 53:4; 59:12; 98:12; 103:17; 121:5; 134:12

sarcasm 31:2

satisfactorily 3:5

save 124:17; 128:21

saw 42:4; 151:24

saying 38:21; 49:24; 57:7; 66:19, 19; 71:7; 74:1, 2, 10, 16; 80:4; 129:5; 156:2, 3, 160:18

scope 14:17, 23; 47:5; 79:5, 7, 7, 12; 81:16; 82:14; 85:10; 87:19, 22; 88:16, 19; 113:24

Scott 104:8, 17, 18; 105:24; 106:7

searched 114:6

searching 114:8

Second 18:8; 23:2; 24:13, 13, 19; 41:14; 128:8; 138:17; 151:9

secretary 110:8

seem 149:4

seemingly 81:4

sell 98:17; 99:4; 100:8; 101:8; 138:22

selling 139:7

send 42:1

senior 103:14

sense 43:14; 48:5; 131:6

sent 41:23

separate 41:13; 58:20, 21; 121:11; 137:23; 142:19; 159:14

separately 44:22; 59:4; 128:10

September 6:23; 9:4; 44:12; 46:4; 49:12; 55:9; 61:1, 24; 63:8; 65:14, 23; 67:2, 12; 73:9; 75:2, 3, 16; 101:19; 102:20, 22; 110:12; 111:19; 112:23; 114:18; 115:1; 118:3, 7; 119:4, 15; 124:16; 129:1; 141:6, 9; 143:20; 149:21, 22; 150:14; 151:2, 21; 152:2; 154:1, 1; 160:23, 23

series 4:14

serve 94:8, 9, 10; 97:4, 6, 9, 11

served 95:10

Service 47:23; 106:13

services 94:15; 106:15; 107:5; 108:4; 110:4

serving 72:17

SESSION 92:1

set 31:5

setting 131:7

settlement 78:22; 81:23; 82:11, 12

seven 52:22; 56:9; 61:3, 13, 21, 22; 63:17; 88:16; 89:16, 24, 24; 90:3; 154:14; 156:9, 18

several 8:14; 16:13; 18:12; 19:17, 21; 22:11; 28:13; 29:24; 38:22; 40:16, 17; 43:11; 44:9; 50:10; 55:3, 8; 58:14, 20, 21; 63:7, 11; 67:9; 70:18; 93:17; 101:6; 107:13; 109:9; 140:6; 143:7; 144:17

severance 131:8

Shakes 122:13

shareholder 14:4, 5, 6, 9; 25:23; 26:2, 5, 13; 33:12, 14

shareholders 12:12; 24:23; 25:2; 127:2, 3, 6, 15; 130:15, 18; 131:12; 132:20; 133:17; 135:24; 139:8

shares 20:11; 25:1; 26:8; 102:12

sheet 5:3; 118:24

Sheraton 113:7

shielded 68:19

ships 159:18

short 94:14, 22; 95:6, 18; 144:3

show 30:12; 117:14, 24

showing 6:21

side 124:19, 20; 161:23, 24

sign 4:24; 5:2

signed 22:4

similar 42:5, 9

Simons 3:20; 58:6

simple 17:12

simply 7:1; 8:24; 44:7; 57:2, 7; 64:12; 76:2

sit 116:18

sitting 42:10; 50:8; 56:22; 57:8, 12; 130:6, 10; 141:23

six 145:7

size 42:8

slow 12:23; 35:22

sole 61:12, 13

somebody 138:6

someday 159:5

someone 85:24; 101:2; 126:16; 148:11

someone's 68:7

sometime 151:18

sometimes 55:3

soon 80:14

sooner 161:17

sorry 11:12; 12:5; 27:16; 32:18; 48:1, 6; 58:13; 102:6; 111:13; 116:1; 135:6; 151:14; 155:13

sort 39:15

sought 99:22

SPA 112:6

speak 40:9; 43:19; 44:17; 45:1, 2; 55:3

specific 8:7, 8, 10; 9:8; 15:16; 60:19; 74:22; 90:6; 101:16, 18, 19, 21; 117:15; 121:24; 151:10

specifically 29:6; 50:6; 55:5; 61:1; 70:10, 21; 73:1; 83:18; 115:3, 14, 18, 21; 136:2; 140:10, 16; 145:1; 158:3

specifics 113:24

specious 74:9, 17

speech 54:11

speeches 39:11

spell 52:1; 84:3; 103:23

spelled 5:8

spend 77:21; 148:23

spent 123:20; 162:11

spoke 36:18; 44:22; 45:3; 58:15; 86:15; 88:7; 152:3

spoken 58:14; 76:6; 86:19; 144:15

stamp 6:5, 15

stand 48:1; 96:16; 122:5

standards 97:12, 13, 13, 15

start 5:12; 45:15; 49:23; 64:24; 111:17; 141:17

started 52:17; 92:16; 105:5; 110:10; 157:18, 19

state 3:17; 37:22; 53:21; 148:7

stay 134:11

stayed 45:14

staying 61:8

STENOGRAPHER 77:16

step 78:17; 116:16

Steve 15:4; 18:20, 23; 22:24; 23:20; 24:3; 25:9, 14; 30:21; 50:16; 81:12; 82:7; 96:17; 117:17; 125:9, 12; 126:4, 7; 127:13, 24; 134:6; 155:23; 159:24; 161:14

sticks 31:22, 24

still 12:14; 48:21; 50:22; 111:5; 134:6

stipulations 5:6

stock 10:20; 11:2, 2; 46:19; 98:1; 99:11; 100:15, 20; 105:9, 22; 111:7, 18, 22; 112:9; 113:9, 18; 114:12; 115:12; 131:1

Stoler 36:22, 23; 40:7; 41:8; 120:1, 3, 11, 18; 134:9, 24; 139:23; 140:10, 17

stop 18:20, 23; 19:2; 98:23; 121:1; 126:4, 8

stopped 23:21

stricken 8:23

strike 13:21; 123:5; 124:23; 125:5

subject 7:6; 9:2; 32:2, 5; 46:6, 10, 17; 48:22; 55:8, 12; 58:16; 64:15; 65:17; 66:3; 70:19; 75:6; 78:21; 79:2; 80:2; 81:6; 82:22; 83:1; 90:5, 11; 118:8; 142:14; 153:23; 154:13; 159:10; 161:2

subjects 46:13; 54:6; 81:17; 118:2; 154:18, 22; 158:8

subscription 130:24

subsequent 79:24; 80:3, 6; 81:21

subsequently 80:1

subsidiaries 106:23, 24; 107:3

subsidiary 11:18; 47:11, 22

substance 30:3; 41:14; 70:15; 74:22; 84:23; 115:16; 141:8, 16; 142:2, 4, 13; 143:1, 5; 156:12, 16; 158:3; 160:18, 21

substantive 148:8; 157:2

subterfuge 146:6

successful 100:2

sue 76:20

suffice 30:15

suggest 9:6; 31:4; 37:24

suggested 34:6; 163:6

suggesting 31:11

summaries 152:5

supported 64:11

supposed 28:14; 30:16;

135:4; 155:15

sure 11:20; 26:23; 27:8; 32:11, 12; 38:10; 41:11; 44:1; 56:24; 71:10; 76:4; 96:22; 97:11; 100:5; 101:12; 102:16; 105:13; 114:21; 117:24; 122:7, 8; 138:23; 146:23; 154:4

Surely 78:24

suspend 162:15

Switching 110:7, 10

sworn 3:6

Systems 47:11, 18; 81:7

## T

talk 25:10; 40:6; 60:7, 10; 72:6, 15; 114:22; 115:4; 121:1

talked 17:15; 45:19; 54:20, 23; 86:7; 112:7; 140:10; 145:22

talking 22:23; 23:21; 50:16; 70:4; 80:1; 99:6; 112:9; 129:3, 17; 159:7

Tarrytown 77:7, 8, 11, 21; 78:5, 7; 80:2; 84:10; 86:22

tax 104:20; 106:7

technically 97:3

technology 103:15

telephone 45:1; 119:19; 140:15; 141:5

telling 30:14; 43:5; 80:20

ten 16:17, 18; 55:14; 57:20; 80:18, 21; 90:11; 91:5; 92:15; 157:18, 20

term 126:17

termination 100:6, 7

terms 15:15; 41:14; 105:9; 119:13; 131:7; 142:16; 156:7

test 111:13

testified 3:7; 19:20; 44:2, 3, 4; 69:16; 120:21; 144:2; 155:9, 10

testify 61:2, 21; 63:16; 67:20; 68:17; 117:20; 127:24; 128:1, 3; 134:21; 154:17; 155:8, 19; 156:7, 9, 16, 20, 22; 157:11; 158:2, 10, 14; 159:9; 161:20

testimony 27:21; 28:24; 29:2; 61:12; 62:10; 67:14; 68:22; 88:24; 89:4; 90:1, 4; 121:20; 122:4; 125:24; 126:2, 9; 134:13, 20; 146:14; 159:8; 160:2; 163:3, 7

Thanksgiving 44:19; 45:24; 46:2; 49:12; 59:13

therefore 38:4; 68:23

Thermal 103:20, 21; 105:15; 107:6, 6; 108:7, 12

thinking 139:14
third 46:14; 87:18;
130:23, 24
Third-Party 3:4
Thomas 104:1
though 19:1; 46:11;
138:19; 139:2; 148:4
thought 34:7; 60:8;
102:7; 112:7; 127:11;
138:3; 151:18
thrash 161:9
thrashing 162:7
three 8:5; 10:6; 62:16;
67:13; 78:3; 89:24;
111:10; 130:19; 155:1;
156:1
throughout 129:1
timely 39:17
times 45:19; 50:10, 14,
15; 55:4; 58:14; 111:9;
148:18
title 13:16, 20, 22; 22:14;
92:6; 94:4; 96:5; 109:19
today 5:19; 12:15; 39:21;
40:3; 50:8; 53:20; 56:22;
57:9, 12; 116:18; 130:6,
10; 141:24; 144:14;
148:24; 152:7; 154:10, 16;
156:16; 160:20
today's 157:17
together 9:13, 16; 148:6
told 42:22, 23; 57:7;
60:23; 81:17; 83:20;
84:17; 88:18; 90:11;
158:11, 11; 160:3, 15
Tony 102:3; 104:7; 112:4;
119:22; 133:3; 141:22;
144:8, 15; 160:8
took 83:10; 114:6; 148:2
top 30:4
topic 42:2; 63:18; 79:12;
88:23; 106:6; 116:19;
161:24
topics 3:12; 4:4; 7:5, 11;
8:4; 9:1, 10, 14; 15:16,
27:23; 51:10, 14, 20; 53:7,
17; 54:15, 21, 24; 55:6,
56:14; 58:11; 61:3, 13, 18;
62:12; 64:9; 65:16; 66:2;
67:5, 21; 70:6, 7, 10, 14,
19, 20; 71:24; 72:8, 18;
74:3, 23; 75:7, 18; 76:7;
78:14; 81:3; 87:2; 89:9;
90:17; 106:6; 146:10;
156:9, 11, 18; 157:13;
158:2
total 150:16
totality 74:17
totally 11:20; 32:12;
54:18; 74:9, 17
toto 39:8
traffic 115:21
transaction 10:8, 11;
20:18; 35:12; 98:1;
100:16, 21; 117:9; 118:11;
122:20; 123:2; 124:6, 12,

19; 126:12, 24; 128:19;
131:20; 135:15, 16, 23;
136:23; 140:2, 13, 20
transcript 163:3, 5
tremendous 154:24
tried 99:4; 155:6
trouble 162:12
true 121:23; 163:6
try 4:16; 8:24; 9:6; 27:20;
28:4; 50:12, 16; 51:1, 2;
54:11; 117:16; 145:9;
153:3, 23; 157:23
trying 15:13; 43:13;
50:18; 64:7; 80:17; 95:18;
98:23; 138:20; 142:22;
159:8; 161:18
Tube 107:5; 108:4
turn 38:9
turned 17:15, 19, 23;
156:23
Turnpike 162:5
twenty 55:14
twice 45:23, 24, 24
two 4:2; 8:16; 17:24; 19:5;
40:13; 41:13; 43:24;
49:22; 62:15; 76:13;
77:20; 78:11, 13; 89:24;
91:6; 98:5; 110:21;
124:21; 126:18; 130:23;
141:3, 14; 143:18; 146:16;
147:13; 150:7, 17; 151:21;
159:17
type 6:9; 94:19; 95:16, 24;
130:22; 131:9
types 29:11; 37:1

**U**

U.S 101:15; 113:19, 22;
116:21
under 30:8; 49:3; 69:5;
163:4
understands 20:8; 53:2
understood 54:19;
56:24; 57:7; 162:9
undertake 8:9
undertook 60:19; 155:7
unfair 19:10; 126:14
unfortunate 15:12
unit 106:13
unless 25:10
unusual 4:13
up 13:9, 11; 30:12; 41:21;
59:5; 61:8; 74:20; 122:23;
137:10; 139:22; 144:18;
148:23; 153:24
use 69:3; 160:10
used 126:17
using 71:11
Usually 109:21

**V**

value 99:21
various 7:11; 9:13;
15:17; 122:12, 16; 60:24;
61:9; 70:12; 115:13;
125:23; 129:14; 145:6;
155:11; 157:8; 158:21
Ventures 14:11; 16:4;
25:4, 5
vice-president 59:22;
92:7, 8, 12, 24; 94:13;
96:6; 103:14, 16, 18, 21;
104:1, 3, 10, 20, 24;
109:21
vice-presidents 92:9
video 30:13
view 64:6; 69:2; 79:8;
129:6; 161:10
violating 32:6
Vogt 103:24; 104:2, 4;
107:8, 14; 108:19
Vogt-NEM 107:8; 108:17;
109:12
volume 43:14
voluminous 6:7

**W**

wait 12:24; 102:6
waive 43:7
waived 69:4
waiver 21:20, 22, 24;
22:5, 7; 137:23; 138:8;
139:5, 11, 11, 17
waivers 137:7
waiving 43:1; 137:3
wants 35:23; 125:2
waste 158:9
way 5:23; 14:20; 18:3;
19:15; 21:5, 16; 31:14;
35:14; 43:12; 49:6; 54:11;
60:14; 69:13; 76:24;
87:19; 88:19; 111:2;
124:4; 135:20; 136:3;
145:9; 153:4
wear 60:15
week 44:19; 45:13; 144:4
weeks 101:6
welcoming 161:16
Welsh 19:4; 157:19
weren't 17:17; 52:13;
70:10; 112:18; 139:2
What's 10:16; 14:10;
24:18; 25:12; 42:5; 43:4;
96:23; 130:23
whenever 69:8; 161:12
Whereupon 162:20
wholly 11:18
whomever 69:9
Whose 45:7
with/without 163:5
withheld 38:3

within 5:3; 14:17; 15:14;
26:11; 39:6; 64:22; 79:5, 6,
12; 81:15; 82:13; 87:8;
88:15; 89:12; 127:6; 147:5
without 30:19; 32:5
witness 3:3; 4:14; 5:1;
7:10, 12; 8:8, 18; 11:15;
15:7, 9; 22:21; 27:13; 28:7;
29:8; 30:14; 31:6, 19;
36:15; 43:21; 45:21;
49:13, 20; 50:17, 19; 51:1,
22; 52:5, 22; 53:10, 22, 24;
54:13; 56:11; 60:20, 22;
61:3, 5, 20; 62:9, 14, 18,
23; 63:3, 21; 64:1, 5, 8;
65:21; 66:7; 67:19; 68:17,
20; 71:23; 72:11; 75:10;
79:1; 80:10; 81:3, 14; 87:4;
89:6; 98:22; 115:6;
117:19, 22; 119:16;
120:20; 121:14; 124:13;
128:7; 131:21; 134:7, 20;
140:3, 21; 141:11; 144:22;
145:2, 14; 146:7, 8, 17, 21;
147:7, 18; 148:5, 8, 10, 13,
17; 149:3; 153:9, 12;
154:11, 16; 155:8, 24;
156:22; 157:5, 11; 158:14;
160:20; 161:20; 162:4, 9,
11
witness 121:20
witnesses 51:9
Wood 12:1, 8; 20:20;
25:19; 26:2; 27:9; 28:10;
32:8; 33:3; 36:1; 51:13, 17,
19; 53:6; 58:12, 13, 14, 16;
59:4, 8, 16; 69:17; 102:3;
104:7; 105:6, 19; 106:10,
19; 111:24; 112:4; 113:2;
115:4, 8, 17; 119:22;
123:4; 133:3; 134:9, 22;
136:16; 141:22; 142:20;
143:17; 144:4, 7, 15;
145:11, 17, 22; 146:19;
147:4; 154:13; 155:12, 14;
158:11; 159:11; 160:10
Woods 58:10
word 76:22
words 71:11
work 22:14; 50:2; 77:23;
96:8; 106:11, 12, 20, 22;
120:12; 135:14
workers 49:1
working 65:24; 104:14;
138:21
writing 38:20; 56:4
written 32:3; 55:22; 56:6;
86:24; 89:8; 139:11
wrong 161:19

**Y**

year 93:9, 10; 95:5, 13;
149:22; 151:17
years 8:5; 10:6; 55:8;
93:4, 17; 94:1
Yesterday 55:1; 56:9;

57:4, 15, 16, 24; 61:10, 14;
63:13; 65:1; 145:7;
147:22; 152:8; 162:10
York 77:9, 11, 21

**Z**

Zicconi 103:18

**Lawyer's Notes**