# FIRST AMENDMENT TO
## STOCK PURCHASE AGREEMENT

**THIS FIRST AMENDMENT TO STOCK PURCHASE AGREEMENT** (this "Amendment") is entered into as of November 29, 2002, by and between Hudson Investment Group, Inc., a Delaware corporation, now known as Babcock Power Inc. (the "Purchaser"), and Babcock Borsig Power GmbH, a German corporation (the "Seller"), and amends that certain Stock Purchase Agreement dated November 13, 2002, by and between Purchaser and Seller (the "Agreement").

## RECITALS

**WHEREAS,** the parties have determined that it is in the mutual best interest to amend certain provisions of the Agreement as stated herein;

**NOW, THEREFORE** for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

Section 1.    Section 2.03 of the Agreement shall be amended to read, in its entirety, as follows: "Section 2.03  Payment Under Transition Consulting Services Agreement. Purchaser shall deliver at Closing its Promissory Note for $1,900,000 in the form attached hereto as Exhibit A, in exchange for Seller's execution at Closing of a Transition Consulting Services Agreement in the form attached hereto as Exhibit A-1."

Section 2.    Exhibit A to the Agreement shall be amended and restated in its entirety as set forth in Exhibit A to this Amendment.

Section 3.    Section 2.04 of the Agreement shall be amended to read, in its entirety, as follows: "Section 2.04  Payment for Non-Competition Agreement. Purchaser shall deliver at Closing a cash payment of $2,500,000 and its Promissory Note for $5,000,000 in exchange for Seller's execution at Closing of the Non-Competition Agreement."

Section 4.    Section 8.06 of the Agreement shall be amended to read, in its entirety, as follows: "Section 8.06   Special Indemnification and Set Off.  In the event that (i) Babcock Borsig Machinery, Inc. commits a material breach of its obligations to the Company under the Novation Agreement; (ii) the Company or any of its Subsidiaries becomes obligated for any liabilities under letters of credit and/or guarantees and/or credit and bonding obligations and/or other contingent obligations related to any company affiliated with Seller set forth on Schedules 8.06(a) and 8.06(b) attached hereto; (iii) within thirty (30) days of the Closing, BBCT Corp. has not paid in full its obligations, as set forth in Schedule 3.06 attached hereto;  and (iv) within thirty (30) days of the Closing, the obligations of TLT Babcock, Inc., BBF, Inc., Babcock Textile Machinery, Inc., and BD Air Fin, Inc., as set forth in the "Pay Under Normal Terms" column of Schedule 3.06 are not paid in full (collectively, the "Contingent Risks"), the Purchaser has the right to withhold, set off, and deduct from amounts due under the Note issued pursuant to Section 2.04, any amounts finally determined to be owed to the Purchaser pursuant to the terms of Article

VIII.  To the extent that the Company (or any of its Subsidiaries) are indemnified against any of the foregoing losses pursuant to any pre-existing written agreement(s) in their favor by Senior Thermal Engineering Australia, NEM bv, BDI, Inc. or the other company affiliates of Seller identified in Schedules 8.06(a) or 8.06(b), Purchaser shall reasonably pursue such indemnity rights (which obligation shall not, however, extend to the obligation to appeal the decision of the court of primary jurisdiction) for the purpose of reducing any right to withhold, set off or deduction otherwise permitted by this Section."

Section 5.    Updated Schedule 3.06.  In accordance with Section 5.06 of the Agreement, a revised Schedule 3.06 is attached to this Amendment as Exhibit B.

Section 6.  Section 5.07 (b) (ii) of the Agreement shall be amended to delete in the third line "$140,000,000" and replace that amount with "$120,000,000".

Section 7.    Section 5.07(h) of the Agreement shall be amended to read, in its entirety, as follows: "(h) Babcock Borsig Machinery, Inc./TLT Babcock, Inc.  Upon the sale by Babcock Borsig Machinery, Inc. ("BBMI")  of  TLT Babcock, Inc. ("TLT"), whether by sale of stock, assets, merger, license, distribution agreement or otherwise (the "TLT Sale"), BBMI  shall pay to Vogt-Nem, Inc. ("VNI") from the proceeds of the TLT Sale $1,100,000  in accordance with the terms of the Assignment of Account Receivable and Confirmation Agreement  among Seller, BBMI and VNI in the form attached hereto as Exhibit C; provided, however, in the event the proceeds available from the TLT Sale are insufficient to pay in full the $1,100,000 payable to VNI (the "Shortfall"), the Purchaser shall be entitled to setoff the Shortfall from any amounts otherwise payable by the Purchaser, Babcock Borsig Power, Inc. and/or VNI to BBMI and/or TLT; and provided, further, that if there will be any Shortfall upon application of the proceeds from the TLT Sale, the Seller shall, as a condition to the closing of the TLT Sale, make arrangements satisfactory to the Purchaser so that the $1,100,000 is paid in full.

[Remainder of Page Intentionally Blank / Signature Page Follows]

**IN WITNESS WHEREOF**, the Seller and the Purchaser have caused this Agreement to be executed as of the date first written above by their duly authorized signatories.

BABCOCK BORSIG POWER GmbH

By: _____
Name:
Title:

By: _____
Name:
Title:

BABCOCK POWER INC. (f/k/a HUDSON INVESTMENT GROUP, INC.)

By: _____
Nathan Hevrony, President