UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH, | ) |
| Plaintiff, | ) |
| v. | ) |
| BABCOCK POWER, INC., | ) |
| Defendant, | ) CIVIL ACTION |
| BABCOCK POWER, INC., | ) NO. 04-10825 (RWZ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| BABCOCK BORSIG, AG | ) |
| Third-Party Defendant. | ) |

### DEFENDANT BABCOCK POWER, INC.'S
### OPPOSITION TO PLAINTIFFS THIRD MOTION TO COMPEL

Steven J. Comen (BBO# 093320)
James O. Fleckner (BBO# 641494)
Peter F. Simons (BBO# 660704)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
617-570-1000

**Attorneys for Defendant and Third-Party Plaintiff, Babcock Power, Inc.**

Dated: January 20, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    Babcock GmbH's Claims in this Litigation have been Refuted by Its Own Witnesses ......................................................................................................................... 2

    BPI has Complied Fully with All of its Discovery Obligations ........................................ 4

    Babcock GmbH Serves its Third Motion to Compel, Asserting Positions that are Not Substantially Justified, Including the Purported Lack of Preparation of BPI's Primary 30(b)(6) Witness ................................................................................................ 6

ARGUMENT ......................................................................................................................... 7

    I.    BPI'S CORPORATE DESIGNEE WAS FULLY PREPARED TO TESTIFY ON BPI'S BEHALF ................................................................................ 7

    II.   BPI PROPERLY INVOKED THE ATTORNEY-CLIENT PRIVILEGE ............. 11

    III.  BPI DOES NOT HAVE TO PRODUCE OTHERWISE PRIVILEGED DOCUMENTS WHERE THEY WERE NOT USED TO REFRESH RECOLLECTION .......................................................................................... 15

    IV.  BABCOCK GMBH IS NOT ENTITLED TO ANY FEES OR AN AWARD OF ANY COSTS DUE TO THE FILING OF ITS THIRD MOTION TO COMPEL; INSTEAD, BPI SHOULD BE AWARDED ALL OF ITS FEES AND COSTS AS WELL AS THE FEES AND COSTS OF THE SPECIAL MASTER ................................................................. 16

CONCLUSION .................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

Derderian v. Polaroid Corp., 121 F.R.D. 13, 17 (D. Mass. 1988) .................................................16

Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995)....................................... 8

Fabiano Shoe Co., 201 F.R.D. 33, 35 (D. Mass. 2001) ............................................................ 11, 17

In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir. 2001)....................................................... 15

MBI Acquisition Partners, L.P. v. Chronical Publ'g Co., 301 F. Supp. 2d 873, 886 (W.D. Wis. 2002)................................................................................................................................ 13

S.E.C. v. Morelli, 143 F.R.D. 42, 46 (S.D.N.Y. 1992)........................................................... 8, 9, 14

Sony Elecs., Inc. v. Soundview Techs., Inc., 217 F.R.D. 104, 110 (D. Conn. 2002).............. 13, 14

U.S. v. Bay State Ambulance and Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (1st Cir. 1989) ...................................................................................................................................... 15

### STATE CASES

Bays v. Theran, 418 Mass. 685, 639 N.E.2d 720 (Mass. 1994) ..................................................... 14

Pytka v. Gadsby Hannah, 15 Mass. L. Rptr. 451, 2002 WL 31862712, at *4 (Mass. Super. Nov. 12, 2002) ..........................................................................................................................13

### RULES

Fed. R. Civ. P. 30(b)(6)........................................................................................................... passim

D. Mass. Local Rule 37.1(b)(4) ................................................................................................11, 17

Fed. R. Civ. P. 37(a)(4)(B) .......................................................................................................16, 17

## INTRODUCTION

Plaintiff Babcock Borsig Power GmbH's ("Babcock GmbH") third motion to compel, dated January 6, 2006, should be denied. Defendant Babcock Power, Inc. ("BPI") presented for its 30(b)(6) deposition its General Counsel, James Brantl, who was fully prepared to testify as to the corporation's knowledge of the issues identified in the deposition notice.[1] Mr. Brantl did not withhold a single fact that was required to be disclosed, and he properly asserted the attorney-client privilege when asked questions about communications that he had with others at BPI and with those who fell within their common interest.

Plaintiff's request for an award of fees should also be denied. If anything, costs should be awarded in full to BPI. Plaintiff should be required to bear the expense of the Special Master's time in deciding this motion. This motion is not substantially justified. At its core, this motion is plaintiff's attempt to divert the Court and the parties away from the merits of the litigation, and the inherent flaws in its position. Quite simply, the discovery adduced so far has confirmed that Babcock GmbH's asserted interpretation of the contract between the parties is incorrect, that BPI has taken no steps whatsoever which would constitute a breach of the duty of good faith or fair dealing, that there is no basis in fact or law for plaintiff's claim for unfair and deceptive trade practices. Instead, discovery has shown that it is Babcock GmbH that it is breach of contract, in an amount still to be determined, and that, as such, BPI was fully justified in withholding payments that were tied to Babcock GmbH's various obligations and undertakings to BPI.

---

[1]   Mr. Brantl was designated as BPI's 30(b)(6) designee as to seven of the eight topics listed on Babcock GmbH's 30(b)(6) notice. BPI Chief Financial Officer, Anthony Brandano, was designated as the corporate designee to the remaining topic. In its motion, Babcock GmbH does not challenge this allocation of designees, nor does it challenge any part of the preparation or deposition of Mr. Brandano.

## BACKGROUND

### Babcock GmbH's Claims in this Litigation have been Refuted by Its Own Witnesses

The relevant facts of this matter have been laid out in detail in prior submissions of the parties. In short, this case involves the scope of a non-competition agreement that required, for a period of three years beginning November 29, 2002, plaintiff and various of its related entities and any of their successors to refrain from competing with defendant BPI. Plaintiff Babcock GmbH alleges in its amended complaint that BPI has taken an overly expansive view of the non-competition obligations assumed upon closing. Babcock GmbH alleges that the scope of the non-competition agreement applies only to Babcock GmbH successors *or* affiliates, but not to successors of Babcock GmbH affiliates. (See Am. Compl. at ¶2.)

BPI disagrees that the agreement is so narrow. BPI has asserted that the plain language of the non-compete agreement extends to Babcock GmbH, its affiliates *and* "their respective, successors [sic] (including without limitation by sale or transfer of all or substantially all assets . . .)." (See BPI Countercl. and Third-Party Compl. at ¶¶36-38.) The testimony of plaintiff's own corporate designee, its General Counsel and parent company director, Dr. Georg-Peter Kraenzlin, has confirmed BPI's interpretation that the agreement was designed to apply to successors of Babcock GmbH affiliates, including purchasers of the so-called "rescue company," which was an affiliate of plaintiff. (See July 28, 2005 deposition of Georg-Peter Kraenzlin at 121-23, attached at Ex. A.)

Babcock GmbH also asserts that BPI has in some way prevented Babcock GmbH affiliates from being able to sell off portions of their operations. It alleges that BPI specifically interfered with the sale or prospective sale of assets or operations to at least two entities, Babcock Hitachi, K.K. ("Hitachi") and Mitsui Babcock ("Mitsui"). (See Am. Compl. ¶¶28, 38.) The testimony of Babcock GmbH's witness has undermined these allegations as well. Dr.

2

Kraenzlin has flatly asserted that Babcock GmbH has suffered no damage at all based on any proposed transaction with Mitsui, nor could it have been damaged because there is no evidence at all that BPI took any steps at all in relation to Mitsui. (See January 17, 2006 deposition of Georg-Peter Kraenzlin, uncertified rough transcript, at 21, lines 7-10, attached at Ex. B.)

With respect to Hitachi, the testimony is simply that Dr. Kraenzlin was told by BPI director Nathan Hevrony that BPI CEO James Wood had taken the position that had Hitachi purchased the "rescue company," Hitachi's then-existing business "should be bound by the non-compete agreement." (January 17, 2006 deposition of Georg-Peter Kraenzlin, uncertified rough transcript, at 68, lines 9-17, attached at Ex. C.) Of course, as Dr. Kraenzlin himself testified earlier, the terms of the non-compete are clear in binding purchasers of the rescue company. Despite repeated questioning as to what BPI did that was purportedly unfair or deceptive, Dr. Kraenzlin could point to nothing else other than a hearsay statement that Mr. Wood had taken the position the non-compete applied to successors of affiliates, even if such entities had preexisting businesses in North America. (See id. at 67-71.) Not only are such purported statements by Mr. Wood completely consistent with the terms of the non-compete agreement, but they are in any event irrelevant because the terms of the contract are clear that such statements have no binding effect: "No statement, representation, warranty, covenant or agreement of any kind not set forth in this Agreement shall effect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement." (Non-competition Agreement, §4(h), attached to Amended Compl.)[2]

For its part, BPI has also alleged in counterclaims and a third-party complaint against Babcock GmbH's parent, Babcock Borsig AG ("BBX"), that the German entities have breached

---

[2] Thus, the so-called "GE Example" identified in the Amended Complaint at ¶¶22-23 has no bearing on the interpretation of the agreement's plain terms.

3

their obligations under the non-competition agreement. Indeed, the testimony adduced so far shows clearly that Babcock GmbH has taken no steps whatsoever to enforce its non-compete obligations with respect to an unidentified number of businesses that have been sold under the auspices of administrators in the German bankruptcy court other than Dr. Schmitz, the administrator who oversees Babcock GbmH. (See January 18, 2006 deposition of Georg-Peter Kraenzlin, uncertified rough transcript, at 8, line 3 through 9, line 9, attached at Ex. D.) BPI alleges that as a result of the damage it has suffered due to the German entities' breaches, as well as their failure to settle certain post-closing obligations relating to intercompany accounts, BPI is entitled to set off some or all of the payments identified in two notes signed as part of the buy-out transaction.

### **BPI has Complied Fully with All of its Discovery Obligations**

Discovery is underway. Fact discovery is currently slated to conclude by March 31, 2006. BPI has completed its production of documents. Babcock GmbH has produced some of its documents, but according to recent correspondence from its counsel may be withholding additional documents. (See January 10, 2006 correspondence from Mr. Welsh to Mr. Comen, attached hereto as Ex. E.)[3] No interrogatories have been served.

The parties are engaged in deposition practice. BPI has conducted a preliminary 30(b)(6) deposition of BBX in Oberhausen, Germany on July 28, 2005, to identify the location of documents and witnesses relevant to the claims, counterclaims and third-party claims in this litigation. A prior 30(b)(6) deposition notice of BBX directed to personal jurisdiction issues had previously been withdrawn as moot after BBX withdrew its personal jurisdiction challenge. BPI

---

[3] Although Babcock GbmH produced a small volume of additional documents on the eve of and during the recent deposition of Dr. Kraenzlin on January 16 and 18, it is not clear whether it has produced all responsive, non-objectionable and nonprivileged documents.

4

LIBA/1664991.1

has also conducted two days of depositions of BBX and Babcock GmbH General Counsel Dr. George-Peter Kraenzlin, in his personal capacity, on January 17 and 18, 2006.

For its part, Babcock GmbH has also conducted three days of depositions: one day of BPI's primary 30(b)(6) witness, BPI General Counsel James Brantl, on December 20, 2005; one day of BPI Chief Financial Officer, Anthony Brandano, on December 22, 2005, in both his individual capacity and as BPI's 30(b)(6) designee as to the topic of the 30(b)(6) notice addressing post-closing adjustments; and one day of BPI Chief Executive Officer James Wood, on January 16, 2006, in his individual capacity. Babcock GmbH has sought to recall each BPI witness it has deposed.

In addition, Babcock GmbH has noticed the deposition of BPI director, Nathan Hevrony, and has indicated its intention to depose non-party witnesses Jeffrey Stoler, Esq. of Gadsby, Hannah (whose involvement is discussed below); Hitachi attorney M.J. Moltenbrey of Freshfields Brukhaus Deringer, who served as Hitachi's outside counsel; various private equity entities associated with Mr. Nathan Hevrony and various investment bankers involved with the transaction between Babcock GmbH and BPI. Counsel for BPI have indicated that if the parties are to travel to Germany for additional depositions, they may wish to take additional depositions of other witnesses. The parties are attempting to work out an agreeable schedule for some of those depositions. Babcock GmbH has also raised various concerns about the conduct of discovery, as reflected in their letter to BPI counsel dated December 30, 2005 attached as Ex. F, and has indicated it anticipates filing a fourth motion to compel.

### Babcock GmbH Serves its Third Motion to Compel, Asserting Positions that are Not Substantially Justified, Including the Purported Lack of Preparation of BPI's Primary 30(b)(6) Witness

Babcock GmbH has filed the instant motion to compel on January 10, 2006. The motion challenges whether BPI's 30(b)(6) designee for seven of eight topics, General Counsel James Brantl, was properly prepared for his December 20, 2005 deposition and whether Attorney Brantl properly invoked the attorney-client privilege in response to certain questions posed by Babcock GmbH's counsel. This is the third motion to compel filed by Babcock GmbH.

Its first motion to compel, dated August 31, 2005, Babcock GmbH complained that BPI had not produced all of its documents. BPI opposed the motion as premature and moot, but in any event has since produced all of its documents.[4] In its second motion to compel, dated December 15, 2005, Babcock GmbH moved to compel depositions on December 19 and 20th of BPI's 30(b)(6) designee and Mr. Brandano. The dispute arose because BPI had suggested alternative dates that same week, but Babcock GbmH complained that its dates must be used. In response, BPI filed a motion for appointment of a Special Master to address the continued discovery issues raised by Babcock GmbH in this litigation. A Special Master was appointed, and the depositions went forward on December 20 and 22.

In its latest discovery motion, its third, Babcock GmbH challenges the responses given to certain of its counsel's questions during the first of the depositions subject to Babcock GmbH's second motion to compel, that of James Brantl, as BPI's 30(b)(6) designee. During the December 20 deposition, Attorney Brantl was questioned at length about the preparation he undertook in advance of the deposition, including the substance of conversations he had with various people who are now BPI officers, directors or employees in preparing for the deposition.

---

[4] It is still unclear, as discussed above, whether Babcock GmbH, for its part, has produced all of its documents to BPI.

6

LIBA/1664991.1

At no time was he asked to provide defendant BPI's position with respect to any of the seven topics for which he was identified as corporate designee. He was shown no documents to which he was asked for BPI's interpretation. Indeed, over a full day of questioning, the only document he was shown was the 30(b)(6) deposition notice. Among other things, Babcock GmbH now challenges whether Mr. Brantl was adequately prepared to serve as BPI's 30(b)(6) designee and whether Mr. Brantl appropriately invoked the attorney-client privilege as to certain conversations.[5]

The current motion to compel appears to be part of an effort by plaintiff Babcock GmbH to deflect the attention of the Court and parties away from the substantive issues involved in this case. Like the others before it, this motion is not substantially justified. For the following reasons the motion should be denied and costs and fees awarded to BPI.

## ARGUMENT

### I.   BPI'S CORPORATE DESIGNEE WAS FULLY PREPARED TO TESTIFY ON BPI'S BEHALF

The first item in Babcock GmbH's proposed order accompanying its third motion to compel ("Proposed Order") states: "BPI shall prepare Mr. Brantl fully to testify, and Mr. Brantl shall testify as to all matters and topics specified in the Rule 30(b)(6) notice including, without limitation, all facts gathered by Mr. Brantl as the corporate witness." But Mr. Brantl was sufficiently prepared for his deposition on December 20, 2005. Thus, the first issue is moot. It also is not ripe because Mr. Brantl was not asked any substantive questions as to the matters and topics specified in the 30(b)(6) notice.

---

[5] BPI is puzzled why Babcock GmbH filed this motion with the Court. The Court's December 20, 2005 Order appointing Judge Hershfang as special master states that "[t]he special master shall resolve all discovery disputes by ruling or agreement and shall report to the court only such matters as he determines to be beyond his authority." BPI understood that, accordingly, discovery issues should be addressed in the first instance to Judge Hershfang. Nonetheless, in an abundance of caution, since Babcock GmbH's motion was filed with the Court in the first instance, BPI has submitted this opposition to both the Court and Judge Hershfang.

The law relating to a 30(b)(6) designee's preparation is clear. As Babcock GmbH's own cases state: "If no current employee has sufficient knowledge to provide the requested information, the party is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995) (emphasis added) (internal quotations, citations and brackets omitted).[6]

Babcock GmbH does not point to any issue about which Mr. Brantl was unprepared in that he either had no first hand knowledge or was unable to give complete, knowledgeable and binding answers for BPI. In its memorandum of law ("Memo of Law"), Babcock GmbH points to only two examples of purported inadequate preparation: the fact that Mr. Brantl supposedly "could only recall reviewing three documents" in preparation for his deposition (Memo of Law at 11; see also id. at 7), and the fact that he testified as to not having asked Messrs. Brandano or Wood about their recollection of a September 2002 meeting that he himself attended. (See id. at 7-8.) But these examples cannot form the basis of any claim of insufficient preparation: the first misconstrues the evidence and the second is insufficient as a matter of law.

Mr. Brantl testified that he had first-hand knowledge with respect to the relevant 30(b)(6) topics. (See, e.g., December 20, 2005 Brantl Dep. Tr. at 8, lines 4-5; at 61, lines 22-23, attached to Memo of Law at Ex. B.) He testified further that, in addition to his first-hand knowledge, he prepared for the 30(b)(6) deposition by reviewing "[t]he closing documents and a lot of the documents that were produced," including "looking at e-mails." (Id. at 29, lines 13-14; at 114, line 14) He testified that there were "a lot" of these emails. (Id. at 114, line 16.) He testified

---

[6] As discussed in greater detail in the following section of this brief, another case identified by Babcock GmbH explains that a 30(b)(6) designee is not required to "divulge the substance of attorney-client conversations" or be required to testify as to "unwarranted inquiries into the files and the mental impressions of an attorney." S.E.C. v. Morelli, 143 F.R.D. 42, 46 (S.D.N.Y. 1992) (quotations and citations omitted).

8

that he spent at least one day with his outside counsel preparing, and he had numerous other conversations with BPI officers, employees and directors as part of his preparation. (Id. at 57-58; at 63 lines 7-13). The Memo of Law itself sets forth in great detail many of the conversations Mr. Brantl identified as contributing to his preparation. (See Memo of Law at 6-7.) Thus, to the extent Babcock GmbH argues that all Mr. Brantl did was review three documents, it misconstrues the testimony.

The second example given by Babcock GmbH of alleged unpreparedness is equally unavailing. Mr. Brantl testified that he did not ask two members of BPI senior management, Messrs. Wood and Brandano, for their recollection of a single meeting that the three of them attended in September 2002, two months before the closing of the stock purchase agreement and non-competition agreement identified in topics 1 and 3 of the 30(b)(6) notice. But he has done nothing wrong by not discussing this meeting in advance of testifying as BPI's designee because he himself attended the meeting. (See December 20, 2005 Brantl Dep. Tr. at p. 112, lines 22-23, attached as Ex. B to Memo of Law.) Babcock GmbH can point to no obligation on a 30(b)(6) designee to speak with people who attended the same meeting as the designee in advance of a 30(b)(6) deposition. Nor does such an obligation exist. Babcock GmbH has noticed the depositions of Messrs. Wood and Brandano and can ascertain their recollection of the meeting in the event it deems it necessary to discuss the same meeting with all participants. Under these circumstances in particular, any obligation on a 30(b)(6) designee to speak to other participants of a meeting in which the designee himself participated would be particularly unnecessary and unduly burdensome.

What's more, Babcock GmbH points to no single piece of substantive information that it was unable to ascertain due to the alleged unpreparedness of Mr. Brantl. Nor could it. Mr.

9

Brantl was fully prepared to testify about the facts gathered in his investigation and the corporation's position as to the matters set forth on the deposition notice. But he was never asked these substantive questions. Because Babcock GmbH never probed the facts, its motion as to the adequacy of Mr. Brantl's preparation is premature in addition to being contrary to the facts and law. The issue of preparedness would only ripen into an actual controversy if Mr. Brantl were posed questions about the corporation's position as to the facts relevant to the issues identified on the 30(b)(6) deposition notice to which he could not offer a response through a deficiency in his preparation.[7] That point was never reached here. Instead of asking Mr. Brantl about the facts or the corporation's position as to those facts, Mr. Brantl was constantly asked about conversations he had in preparing for the deposition and conversations he had with people with whom he acted in a privileged role.

Babcock GmbH's leading case is particularly instructive in demonstrating why the facts here fall far short of those where a 30(b)(6) witness has been insufficiently prepared. In Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 35 (D. Mass. 2001), the only person who had knowledge of a key document between the parties was deceased. The corporation proffered two officials who had no first-hand knowledge of the document or the events leading to its coming into existence. See id. at 36. Not only did these witnesses have no first-hand knowledge, but the corporation further took the position that these witnesses had

---

[7] Such a situation likely occurred with the 30(b)(6) deposition of third-party defendant BBX. One topic for that deposition was the identity of those entities that were under BBX control that competed in the relevant areas that were subject to the non-compete protections. (See Notice of Taking Video Deposition dated June 10, 2005, topics 6-7, attached at Ex. G; letter to John F. Welsh dated July 6, 2005, attached as Ex. H.) This information is solely within BBX's knowledge. Rather than have its deponent prepared to testify as to which entities existed, BBX's designee stated that he could not know that information as there were too many entities under the control of the organization for which he served as general counsel. (See July 28, 2005 Kraenzlin Dep. Tr. at p. 34, line 7 through p. 36, line 23; p. 39, line 22 through p. 40, line 20, attached at Ex. I.) This is an example, unlike the ones identified by Babcock GmbH, where a corporation had not fully prepared its 30(b)(6) witness to testify as to the matters identified in the 30(b)(6) deposition notice.

10

"absolutely no obligation whatsoever to go out and educate" themselves. Id. Neither of the deponents "reviewed any . . . company records or correspondence prior to being deposed." Id. at 37. Indeed, in response to questions, the deponents provided only "evasive, unhelpful and often sarcastic answers." Id. at 38. The Court held that this complete lack of preparation was patently insufficient because the "deposing party [was] left at an unfair disadvantage, having no understanding as to what the corporation's position is as to many areas of inquiry." Id. at 37.

Here, the circumstances are completely different. Mr. Brantl has first-hand knowledge of the items for which he was designated to testify. (See Dec. 20, 2005 Brantl Dep. Tr. at p. 8, lines 4-5.) He has complemented his first-hand knowledge with a comprehensive inquiry. (See, e.g., id. at 63.) In short, Mr. Brantl was fully prepared to testify as to the corporate position on the designated topics.

## II.  BPI PROPERLY INVOKED THE ATTORNEY-CLIENT PRIVILEGE

The second and third issues identified in the Proposed Order address the propriety of BPI's invocation of the attorney-client privilege with respect to communications on or prior to the November 29, 2002 closing of the buy-out agreement between Attorneys Stoler and Brantl and Messrs. Hevrony and Miller.[8] Because these conversations were all protected by the

---

[8] Paragraph 2 of the Proposed Order seeks production of all documents between the outside investors at "Hudson Investment, Inc." [sic] and "BBCC" [sic] management, regardless of whether an attorney was involved in the communications memorialized in such documents. To the extent that no attorney-client privilege exists with respect to an otherwise responsive document, it has been produced; as an example, if BPI located a responsive document between non-attorneys Hevrony and Wood prior to the November 29, 2002 closing, such document has been produced. To the extent an otherwise responsive document has been withheld on the basis of privilege, such document is identified on the privilege log BPI produced to counsel for Babcock GmbH. In its motion and Proposed Order, Babcock GmbH does not identify which document(s), if any, from that log that it challenges as being improperly withheld, nor does it challenge the sufficiency of BPI's privilege log in this motion. Thus, BPI cannot know which documents, if any, are being challenged in this motion. Like Babcock GmbH's seemingly undifferentiated allegations of improper invocation of attorney-client privilege, it appears to have failed to comply with D. Mass. Local Rule 37.1(b)(4), which requires a memorandum to "state with particularity" "each interrogatory, deposition question, request for production, request for admission or other discovery matter raising an issue to be decided by the court".

11

attorney-client privilege, as that privilege has been extended through the common interest doctrine, Babcock Power GmbH's motion should be denied.[9]

With respect to the appropriate areas of inquiry of an attorney designated as a 30(b)(6) witness, the law is clear, as reflected in cases cited by Babcock GmbH:

> Questions posed which elicit purely factual information that is now in the possession of corporate officials *and do not ask for the substance of communications between counsel and client* are to be answered as the answers to these inquiries will not be disclosing legal advice of counsel.

Sony Elecs., Inc. v. Soundview Techs., Inc., 217 F.R.D. 104, 110 (D. Conn. 2002) (emphasis added) (quoted at Memo of Law at 13).[10] Indeed, in Sony, a party properly designated its general counsel as a 30(b)(6) witness. The designating party was later subjected to a challenge similar to the one here, addressing the invocation by the designee of the attorney-client privilege. The court held that it was appropriate for the general counsel to invoke both the attorney-client and joint defense privileges while still providing the factual information to which the deposing party was entitled. See id. Accord S.E.C. v. Morelli, 143 F.R.D. 42, 46 (S.D.N.Y. 1992) (a

---

[9] Although the Proposed Order addresses only privilege claims insofar as they relate to the communications on or prior to the November 29, 2002 closing between Mr. Brantl or others in the management group and Attorney Stoler or others in the outside investor group, the Memo of Law appears to challenge the invocation of the attorney-client privilege with respect to conversations Mr. Brantl had with officers, directors and employees of BPI after November 29, 2002, particularly with respect to his preparation for the December 20, 2005 30(b)(6) deposition. But even if these post-November 29, 2002 conversations are being challenged directly in this motion, which it does not appear they are, they are not suspect where Mr. Brantl, as general counsel, is conversing with individuals within his corporation for the purpose of providing legal advice. As addressed in other parts of this brief, to the extent non-privileged facts are conveyed to Mr. Brantl, Babcock GmbH is, of course, entitled to learn of the existence of those underlying facts during its 30(b)(6) deposition. But Babcock GmbH is simply not entitled to learn of the substance of the communications between Mr. Brantl and his corporate client.

[10] Attorneys generally and general counsels specifically are routinely utilized as 30(b)(6) designees. See, e.g., Pytka v. Gadsby Hannah, 15 Mass. L. Rptr. 451, 2002 WL 31862712, at *4 (Mass. Super. Nov. 12, 2002) (outside counsel as designee under Massachusetts' analog to Fed. R. Civ. P. 30(b)(6)); MBI Acquisition Partners, L.P. v. Chronical Publ'g Co., 301 F. Supp. 2d 873, 886 (W.D. Wis. 2002) (general counsel as Fed. R. Civ. P. 30(b)(6) designee). Indeed, when BPI issued its initial 30(b)(6) deposition notice to identify the location of relevant documents and witnesses from the German third-party defendant, BBX itself designated its General Counsel, Dr. Georg-Peter Kraenzlin. It is notable that in stark contrast to the deposition conducted of BPI's 30(b)(6) designee, rather than delving into Mr. Kraenzlin's privileged conversations, BPI's counsel simply asked the substantive questions identified in the deposition notice.

12

LIBA/1664991.1

30(b)(6) designee is not required to "divulge the substance of attorney-client conversations" or to testify as to "unwarranted inquiries into the files and the mental impressions of an attorney") (quotations and citations omitted). Likewise, here, Mr. Brantl was under no obligation to testify as to the substance of his privileged conversations.

Not only does Babcock GmbH challenge whether BPI was allowed to invoke the privilege at all with respect to Mr. Brantl's communications seeking legal advice, but they also challenge whether an attorney-client relationship existed in fact before November 29, 2002 between Mr. Brantl and the members of the investor's group that assisted management in buy-out. Moreover, Babcock GmbH challenges whether Attorney Jeffrey Stoler of Gadsby Hannah was acting prior to November 29, 2002 as attorney solely for the outside investors, Messrs. Nathan Hevrony and Dale Miller, or for all the prospective purchasers of the assets from Babcock GmbH which later operated under BPI.[11] But these issues do not affect the outcome of this motion.

Quite apart from the disputed fact as to whom Mr. Stoler represented as amongst the purchasers of BPI, however, a more fundamental reason exists as to why BPI properly invoked the privilege with respect to conversations between Mr. Stoler and any member of the team purchasing BPI. Courts have long held that an attorney-client privilege can be invoked where communications were made to an attorney with an expectation that they not be disclosed to potential adversaries, regardless whether the attorney, in fact, represented the person with whom he or she had the confidential communication. See, e.g., Bays v. Theran, 418 Mass. 685, 639 N.E.2d 720 (Mass. 1994). Under the common interest doctrine in particular, it is well settled in

---

[11] Mr. Brantl testified that it was his belief that Mr. Stoler represented both the management and outside investors. (See Dec. 20, 2005 Brantl Dep. Tr. at p. 127-129.) Babcock GmbH responds with hearsay statements of Mr. Stoler contained in an affidavit from Babcock GmbH's counsel, Mr. Welsh, indicating that Mr. Stoler apparently believed he was representing only the outside investors. Babcock GmbH's hearsay submission is insufficient to discredit the sworn testimony of Mr. Brantl as an evidentiary matter.

13

this circuit and elsewhere that even where an individual is not represented by a particular attorney, its conversations with that attorney are privileged where they are conducted in forming a common legal strategy and are made with the expectation of confidentiality. See, e.g., U.S. v. Bay State Ambulance and Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (1st Cir. 1989).[12] This privilege has been referred to as "an extension of the attorney-client privilege." Bay State Ambulance, 874 F.2d at 28.

Here, then, even if Attorney Stoler and Gadsby Hannah were not directly representing Attorney Brantl and the management group in the negotiations with the German parent, the management group and outside investors had a common interest in securing the deal and in collaborating on their legal position in the negotiations. Similarly, such conversations amongst Attorney Brantl and Messrs. Hevrony or Miller outside of Attorney Stoler's presence would be privileged. Thus, Mr. Brantl properly invoked the attorney-client privilege in response to questions that asked him to divulge privileged conversations he had with Messrs. Stoler, Hevrony and Miller. To the extent he spoke with any of those individuals for the purpose of a legal strategy to secure the buy-out of assets from Babcock GmbH, such communications were privileged.[13]

Babcock GmbH's third motion to compel highlights what was evident from the deposition of Mr. Brantl: he was not asked about the underlying facts relating to the seven topics

---

[12] This privilege is often referred to as the joint defense privilege, but such name is misleading. The privilege applies only to the joint defense of a litigation but also whenever there is a common interest in a legal strategy, regardless of the prospect of litigation. See In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir. 2001).

[13] In its motion, Babcock GmbH also identifies questions about settlement negotiations with a non-party as being inappropriately objected to. (See Memo of Law at 8, n.12.) These questions, however, did not relate to the topics identified in the 30(b)(6) notice. In addition, these questions relate to confidential discussions with a non-party and Babcock GmbH has not agreed to an acceptable confidentiality stipulation in this matter protecting commercially sensitive information. In any event, as these discussions are not addressed in Babcock GmbH's Proposed Order, BPI will not address the propriety of the instruction in greater length in this brief. But BPI is happy to further address the issue of confidentiality should the Court or Special Master so wish.

14

for which he was designated as BPI's 30(b)(6) representative. Instead he was asked time and again on December 20, 2005 to divulge the substance of privileged communications. That is not a proper area of inquiry in a 30(b)(6) deposition of any corporate designee, be it an attorney or non-attorney. BPI was entirely within its rights to object to such questions on the ground of privilege.

### III. BPI DOES NOT HAVE TO PRODUCE OTHERWISE PRIVILEGED DOCUMENTS WHERE THEY WERE NOT USED TO REFRESH RECOLLECTION

The fourth item on Babcock GmbH's Proposed Order seeks disclosure of all documents "reviewed and used by Mr. Brantl in preparation of the Rule 30(b)(6) deposition." But no such documents need to be disclosed. A party has no obligation to disclose privileged documents used in preparing for a deposition; only those documents used to refresh recollection could be forced to be disclosed if the Court determines that the interests of justice require disclosure. See Derderian v. Polaroid Corp., 121 F.R.D. 13, 17 (D. Mass. 1988) (declining to require production of 100 pages of notes reviewed by deponent the night prior to her testimony). Here, Babcock GmbH has pointed to no reason requiring disclosure of the one document identified in its Memo of Law at 15, a chronology of events prepared by BPI's outside counsel.

Indeed, contrary to Babcock GmbH's characterization of the testimony, Mr. Brantl's actual testimony reflects that he did not review the chronology referenced in the Memo of Law to refresh his recollection, only that he reviewed it "in connection with the preparation for the deposition." (Dec. 20, 2005 Brantl Dep. Tr. at 152, lines 5-8.) Moreover, Mr. Brantl testified that he did not "need" the chronology prepared by counsel to refresh his recollection. (Id. at 152, lines 14-18.) Upon further questioning as to whether the attorney work product "refresh[ed his] recollection," Mr. Brantl responded, "Maybe a little bit." (Id. at p. 152, lines 19-20.) Babcock

15

LIBA/1664991.1

GmbH has not proffered any reason why this document, even if used to refresh Mr. Brantl's recollection (which it was not) is required to be disclosed in the interests of justice.

IV. **BABCOCK GMBH IS NOT ENTITLED TO ANY FEES OR AN AWARD OF ANY COSTS DUE TO THE FILING OF ITS THIRD MOTION TO COMPEL; INSTEAD, BPI SHOULD BE AWARDED ALL OF ITS FEES AND COSTS AS WELL AS THE FEES AND COSTS OF THE SPECIAL MASTER**

The fifth and sixth items on Babcock GmbH's Proposed Order seek (i) an award of all costs and attorneys fees associated with the Rule 30(b)(6) deposition it conducted of Mr. Brantl and (ii) an order that BPI pay all costs of the Special Master relating to this "dispute." But such orders are not appropriate. Even under the egregious facts recounted in Babcock GmbH's leading case, Calzaturfico, 201 F.R.D. at 41 -- where the deponents had no first hand knowledge and took the position that they had to conduct no factual inquiry whatsoever -- the court declined to award fees against the nonmovant. So here, certainly, where Mr. Brantl had both first-hand knowledge of relevant events and conducted a thorough inquiry, no fees should be awarded against BPI.

Here, if anything, BPI should be awarded its attorneys fees and costs under Fed. R. Civ. P. 37(a)(4)(B) and an order should issue that Babcock GmbH be forced to pay all of the Special Master's costs for addressing this frivolous motion. Babcock GmbH did not use the 30(b)(6) deposition to probe the substantive issues on which Mr. Brantl was fully prepared to testify. Babcock GmbH's counsel showed the witness no documents other than the deposition notice during a full day of questioning. The deposition and this motion appear to be designed solely to create tangential and irrelevant issues that distract the attention of the Court and parties away from the substance of this litigation. The motion diverts the Court and parties from the fact that allegations central to Babcock GmbH's amended complaint have been flatly denied by its 30(b)(6) designee and sole witness. Moreover, the issues raised in this third motion to compel

16

are entirely baseless in their own right: Mr. Brantl clearly prepared thoroughly for his deposition and his invocation of privilege was entirely reasonable and substantiated by the facts and law. In short, this third motion was not "substantially justified," and, as such, fees should be awarded BPI under Fed. R. Civ. P. 37(a)(4)(B).[14]

## CONCLUSION

For the foregoing reasons, plaintiff Babcock Borsig Power GmbH's third motion to compel and request for fees should be denied, and fees and costs should be awarded to defendant Babcock Power, Inc.

Respectfully submitted,

BABCOCK POWER, INC.

By its attorneys,

/S/ James O. Fleckner
Steven J. Comen (BBO# 093320)
James O. Fleckner (BBO# 641494)
Peter F. Simons (BBO# 660704)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
DATED: January 20, 2006                 617-570-1000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 20, 2006.

/S/ James O. Fleckner
James O. Fleckner (BBO# 641494)

---

[14] In addition, BPI should be awarded all its costs and fees, and Babcock GmbH should be required to pay all costs and fees of the Special Master, because Babcock GmbH failed completely to comply with Local Rule 37.1(b)(4) in filing its Memo of Law, in that the memorandum does not "state with particularity" "each interrogatory, deposition question, request for production, request for admission or other discovery matter raising an issue to be decided by the court".

17