**<u>EXHIBIT G</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BABCOCK BORSIG POWER GmbH, ) | |
| Plaintiff, ) | |
| v. ) | |
| BABCOCK POWER, INC., ) | |
| Defendant, ) | CIVIL ACTION |
| BABCOCK POWER, INC., ) | NO. 04-10825 (RWZ) |
| Third-Party Plaintiff, ) | |
| v. ) | |
| BABCOCK BORSIG, AG ) | |
| Third-Party Defendant. ) | |

## NOTICE OF TAKING VIDEO DEPOSITION

TO:    Kenneth M. Bello, Esq.
       Bello Black & Welsh LLP
       535 Boylston Street Suite 1102
       Boston, MA  02116

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, defendant and third-party plaintiff Babcock Power, Inc., by its counsel, will take the

deposition upon video-recorded oral examination of a representative of third-party defendant

Babcock Borsig AG.  The deposition will take place on Wednesday, July 6, 2005, at the offices

of Babcock Borsig AG in Oberhausen, Germany, or on some other date, or at some other

location, as may be mutually agreed upon at the Status Conference with the Court scheduled for June 30, 2005.

Babcock Borsig AG is requested and required pursuant to Rule 30(b)(6) to designate and make available to testify on its behalf at said deposition the person or persons most knowledgeable about the subject matters set forth on the attached Schedule A.

The deposition will take place before a Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths. You are invited to attend and examine the witness.

BABCOCK POWER, INC.,

By their attorneys,

Steven J. Comen (BBO #093320)
James O. Fleckner (BBO #641494)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: June 13, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, James O. Fleckner, hereby certify that on this 13th day of June, 2005, I caused a true copy of the foregoing document to be served upon the attorney of record for each other party by hand-delivery upon:

> Kenneth M. Bello, Esq.
> Bello Black & Welsh LLP
> 535 Boylston Street Suite 1102
> Boston, MA  02116

*James O. Fleckner / PFS*
_____
James O. Fleckner

LIBA/1549295.1

## INSTRUCTIONS AND DEFINITIONS

1.      In accordance with Fed. R. Civ. P. 30(b)(6), Babcock Borsig AG shall designate an officer, director, managing agent or other person who consent to testify on its behalf concerning the matters described below in Schedule A.

2.      The term "concerning" shall be construed broadly and shall include, but not be limited to, the following meanings: containing, recording, discussing, mentioning, noting, evidencing, referencing, constituting, memorializing, analyzing, describing, commenting upon, pertaining to and/or referring to the matters set forth.

3.      The term "document" shall be interpreted broadly and shall include, but not be limited to, any writing, any matter or tangible thing containing a recording, handwriting, typewriting, printing, photograph or any other means of recording upon any tangible thing, videotapes, audio tapes, computer tapes or disks, electronically stored data, electronic mail, electronically-stored records or other computer files or records including without limitation deleted but recoverable data, computer printouts, any form of communication, including, without limitation, letters or other correspondence, words, pictures, notes, memoranda, contracts, agreements, reports, studies, summaries, records, transcripts, checks, checkbooks, check stubs, bank statements, deposit slips, journals, ledgers, worksheets, bills, invoices, minutes, minute books, agenda, bulletins, notices, announcements, instructions, charts, tables, manuals, brochures, pamphlets, lists, books, diaries, registers, appointment books, conferences or discussions of any kind, tax returns, or papers similar to any of the foregoing whether in draft or final form, however produced or reproduced, and whether sent or received or neither, including all copies thereof which are different in any way from the original.

4.     "ATB Austria Antriebstechnik" shall mean ATB Austria Antriebstechnik AG and any Related Entity.

5.     "Austrian Energy & Environment" shall mean Austrian Energy & Environment AG and any Related Entity.

6.     "BBP" shall mean Babcock Borsig Power GmbH and any Related Entity.

7.     "BBX" shall mean Babcock Borsig AG and any Related Entity.

8.     "Babcock Borsig Entities" shall mean BBX and BBP, and any Related Entity, either individually or collectively.

9.     "Babcock Power, Inc." shall mean Babcock Power, Inc., and any Related Entity.

10.     "Balcke-Dürr" shall mean Balcke-Dürr GmbH and and any Related Entity.

11.     "BBP Service Ratingen" shall mean BBP Service Ratingen GmbH and any Related Entity.

12.     "BD Heat" shall mean BD Heat Recovery Division, Inc. and any Related Entity.

13.     "BOREAS" shall mean BOREAS Gruppe of Dresden, Germany, and any Related Entity.

14.     "Borsig Energy" shall mean Borsig Energy GmbH and any Related Entity.

15.     "Caterpillar" shall mean Caterpillar, Inc. and any Related Entity.

LIBA/1549336.1

16.     "Deutsche Beteiligungs" shall mean Deutsche Beteiligungs AG and any Related Entity.

17.     "FISIA Babcock" shall mean FISIA Babcock Environment GmbH and and any Related Entity.

18.     "GEA Ecoflex" shall mean GEA Ecoflex GmbH and any Related Entity.

19.     "HDW" shall mean Howaldtswerke-Deutsche Werft AG and any Related Entity.

20.     "Hitachi" shall mean Babcock-Hitachi K.K. and any Related Entity.

21.     The term "Intellectual Property" shall mean patents, patent applications, inventions, trade secrets, trademark registrations, trademark registration applications, copyrights, trade names, trade dress, copyrights, know-how, and licenses to any of the foregoing.

22.     "Meade Corporation" shall mean The Meade Corporation and any Related Entity.

23.     "Mitsui" shall mean Mitsui Babcock Ltd. and any Related Entity.

24.     The term "Non-Competition Agreement" shall mean the Non-Competition Agreement between Babcock Borsig Power GmbH and Babcock Power, dated November 29, 2002.

25.     The term "Promissory Notes" shall mean the two promissory notes dated November 29, 2002, in the amounts of $1.9 million and $5.0 million, signed by Babcock Power, Inc.

3

26.    The term "Purchase Agreement" shall mean the Stock Purchase Agreement between Babcock Borsig Power GmbH and Babcock Power, dated November 13, 2002 and amended November 29, 2002.

27.    The term "Related Entity," when used in reference to any corporation named herein, shall mean any parent, subsidiary, affiliate, predecessor, successor, assign or "rescue company" of such corporation, and shall include all of the successors and assigns of such corporation's present or future parents, subsidiaries and affiliates.

28.    "One Equity Partners" shall mean One Equity Partners LLC and any Related Entity.

29.    "SPX" shall mean SPX Corporation and any Related Entity, excluding Balcke-Dürr.

30.    "Steinmüller" shall mean Steinmüller Engineering Services (Pty) Limited and any Related Entity.

31.    In construing these definitions and instructions and the topics delineated in Schedule A, (i) the singular shall include the plural and the plural shall include the singular; (ii) the conjunctions "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of this request all information that might otherwise be construed to be outside its scope; and (iii) the word "any" shall be read to mean each and every.

4

## <u>SCHEDULE A – AREAS OF INQUIRY</u>

Babcock Power, Inc., will take the deposition upon oral examination of the representative of Babcock Borsig AG who is most knowledgeable about the corporate structure and organization of the Babcock Borsig Entities and the location or locations of the following:

1.    Organizational charts showing the relationships between or amongst the Babcock Borsig Entities.

2.    Documents concerning corporate meetings of any or all of the Babcock Borsig Entities.

3.    Documents concerning the negotiation, execution, and interpretation of the Purchase Agreement.

4.    Documents concerning the negotiation, execution, and interpretation of the Non-Competition Agreement.

5.    Documents concerning the negotiation, execution, and interpretation of the Promissory Notes, including, but not limited to, documents concerning the collection of amounts owed by Babcock Power, Inc. under the Promissory Notes.

6.    Documents concerning any sales of stock or assets (tangible or intangible) by any of the Babcock Borsig Entities to any other entity, including but not limited to:

      a.    ATB Austria Antriebstechnik;

      b.    Austrian Energy & Environment;

      c.    Balcke-Dürr;

d.      BD Heat Recovery;

e.      BOREAS;

f.      Borsig Energy;

g.      Caterpillar;

h.      Deutsche Beteiligungs;

i.      FISIA Babcock;

j.      GEA Ecoflex;

k.      HDW;

l.      Hitachi;

m.      Meade Corporation;

n.      Mitsui;

o.      One Equity Partners;

p.      SPX; and

q.      Steinmüller.

7.      Documents concerning any non-competition agreements entered into as part of any sale of stock or assets by any of the Babcock Borsig Entities, and any efforts at enforcement thereof.

8.      Documents concerning any Intellectual Property owned or possessed by the Babcock Borsig Entities within the last five years.

9.      Employment, payroll, and personnel records of the Babcock Borsig Entities.

10.      Documents concerning any active or ongoing litigation, and any litigation within the last ten years, involving any of the Babcock Borsig Entities.

11.      Any document retention and destruction policies of the Babcock Borsig Entities.

6

12.    Documents concerning any damages allegedly sustained by BBP or any of the Babcock Borsig Entities and relating to the claims asserted in BBP's First Amended Complaint.

13.    The identity and location of any other person or persons in possession of knowledge and documents relating to any of the foregoing, including, but not limited to each person's name, title or former title, or a description of the person's association or former association with the Babcock Borsig Entities, and each person's current address or other contact information, if known.

LIBA/1549336.1

**EXHIBIT H**

**GOODWIN | PROCTER**

Steven J. Comen                 Goodwin Procter LLP
617.570.1660                    Counsellors at Law
scomen@                         Exchange Place
goodwinprocter.com              Boston, MA 02109
                                T: 617.570.1000
                                F: 617.523.1231

July 6, 2005

<u>**By Facsimile (617.247.4125) and First Class Mail**</u>

John F. Welsh, Esq.
Bello Black & Welsh LLP
535 Boylston Street
Suite 1102
Boston, MA 02116

Re:     <u>**Babcock Borsig Power GmbH v. Babcock Power, Inc.**</u>
        **Civil Action No. 04-10825 RWZ**

Dear John:

Thank you for confirming that the 30(b)(6) deposition of Babcock Borsig, AG ("BBX") will take
place in Germany on July 28. I will await word from you as to the location and time you would
like to start, and remain flexible as to having the deposition occur over the two day period from
July 28 to the 29th, pending availability of Dr. Kraenzlin.

To accommodate your concerns about the scope of the deposition, I propose the following
limitation of the Areas of Inquiry contained in the June 13 notice:

- We will withdraw completely Area of Inquiry No. 10.

- We will withdraw Area of Inquiry No. 9 with the understanding that due to his present
  position and background with BBX and some of its subsidiaries, Dr. Kraenzlin will be able to
  identify the names and locations of key witnesses. If he is not able to do so, we expect that
  we might need to ask for certain targeted employment records or other like discovery.

- We will limit the scope of Areas of Inquiry Nos. 1, 2, 6, 7, 8 and 11 in two ways.

  - First, we will apply a revised definition of "Related Entity," as incorporated into the
    term "Babcock Borsig Entities" in Areas of Inquiry Nos. 1, 2, 6, 7, 8 and 11, as
    follows:

        The term "Related Entity," when used in reference to any corporation
        named herein, shall mean any parent, subsidiary, affiliate, predecessor,

GOODWIN | PROCTER

John F. Welsh, Esq.
July 6, 2005
Page 2

> successor, assign or "rescue company" of such corporation, and shall
> include all of the successors and assigns of such corporation's present or
> future parents, subsidiaries and affiliates, but only if such entity has
> engaged since January 1, 2000 in the following:
>
> (i) within the customer market composed of fossil-fired and waste-to-
> energy power plants, all activities associated with the design, engineering,
> manufacture, fabrication, installation, servicing, maintenance or sale of
> new equipment or replacement parts for selective catalytic reduction and
> flue gas desulfurization equipment for the reduction of nitrous oxide or
> sulphur dioxide emissions; (ii) within the customer market composed of
> fossil-fired (including but not limited to combined cycle) or nuclear power
> plants, all activities associated with the provision of the design,
> engineering, manufacture, fabrication, installation, servicing, maintenance
> or sale of boiler components and pressure parts, power plan construction-
> related services, boiler rebuilds and retrofits, engineered replacement parts
> or field services; and (iii) within the customer market composed of fossil-
> fired (including but not limited to combined cycle) and nuclear power
> plants, all activities associated with the design, engineering, manufacture,
> fabrication, installation, servicing, maintenance or sale of condensers,
> feedwater heaters and moisture separator repeaters.

- Second, we will limit the time period of inquiry to the period from January 1, 2000 to
  the present for Areas of Inquiry Nos. 1, 2, 6, 7, 8 and 11. If it appears during the
  course of the deposition that information predating January 1, 2000 may be relevant,
  we reserve the right to ask questions about such period. But as you and I discussed, if
  Dr. Kraenzlin's honest answer to such question(s) is "I don't recall" or "I don't
  know," then I will not attempt to hold his lack of preparation against him as to such
  responses.

These accommodations apply solely to the 30(b)(6) deposition noticed on June 13. We reserve
all rights to later seek discovery into those areas that previously were an Area of Inquiry but are
being eliminated to facilitate this present process. I believe that these accommodations address
all of the concerns you raised, but preserve our right to seek legitimate discovery tailored to the
claims and defenses in this litigation. While you had asked for a list of "relevant identified
Babcock entities" in Areas of Inquiry Nos. 1, 2, 6, 7 and 11, we are unable in advance of the
deposition to craft such a list as we do not possess the necessary information. Nonetheless, to be
as accommodating as we reasonably can be, we have used the functional definition above --
taken from the Noncompetition agreement itself -- to attempt to limit the entities that may be
subject to inquiry.

LIBA/1563459.2

# GOODWIN | PROCTER

John F. Welsh, Esq.
July 6, 2005
Page 3

Additionally, as we discussed, we will schedule the 30(b)(6) deposition you noticed for a date no later than 10 days after we have all returned from Germany.   Let us know your preference and I will confirm the date next week, when the deponent returns from vacation.

Finally, consistent with our conversation, this letter also serves as our written objection under Fed. R. Civ. P. 34(b) to your First Request to Defendant Babcock Power, Inc. for Production of Documents as being prematurely served in contravention of the agreed upon discovery ordering contained in the Joint Proposed Discovery Plan, which contemplates that we first proceed with these 30(b)(6) depositions.  Notwithstanding this formal objection necessary under the Rules, be advised that we have begun the process of collecting the documents that are called for in your document requests and plan nonetheless to produce them in a timely fashion, with the expectation that should you provide documents in advance of your deposition as you have represented you will, we will do the same.

I look forward to working together as adversaries who avoid being adversarial.

Very truly yours,

Steve

Steven J. Comen

**EXHIBIT I**

GEORG-PETER KRAENZLIN - JULY 28, 2005

1

1            UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF MASSACHUSETTS

3    _____
     BABCOCK BORSIG POWER GmbH,        *
4                                      *
           Plaintiff,                  *
5                                      *
     vs.                               *   CA No. 04 CV 10825-RWZ
6                                      *
     BABCOCK POWER, INC.,              *
7                                      *
           Defendant.                  *
8    _____  *

9

10           ORAL DEPOSITION OF DR. GEORG-PETER

11   KRAENZLIN, produced as a witness at the instance of

12   the Defendant, taken in the above-styled cause on

13   the 28th day of July, 2005, from 10:06 a.m. to 3:19

14   p.m., before Candice F. Flowers, a Certified

15   Shorthand Reporter, at the offices of Babcock Borsig

16   AG i.I., Duisburger Strasse 375, in the City of

17   Oberhausen, Country of Germany, pursuant to the

18   agreements as stated on the record and/or the

19   Federal Rules of Civil Procedure.

20                                        **COPY**

21

22                  Reported By:
                Candice F. Flowers, CSR
23             European Reporting Service
                  Meesmannstr. 52
24             58456 Witten, Germany
              Tel/Fax:  (011) 49 2302 277485
25             www.EuropeanReportingService.com

GEORG-PETER KRAENZLIN - JULY 28, 2005

34

```
 1       Q     Just read the names slowly to the

 2   reporter.   Perhaps I can help you.   If you look at

 3   page 2 of the noncompetition agreement...

 4                 MR. WELSH:  So third page of the

 5   exhibit?

 6                 MR. COMEN:  Yes.

 7       Q     (By Mr. Comen) Can you now look at the

 8   chart, Exhibit 5, and describe what affiliates were

 9   involved with the business as described on page 2 of

10   the noncompetition agreement?

11                 MR. WELSH:  Environmental, services,

12   and heat exchanger.

13                 MR. COMEN:  Well --

14                 MR. WELSH:  I'm summarizing the

15   paragraph.

16                 MR. COMEN:  And I think it goes

17   beyond that.

18       A     I will not be in a position to identify

19   each and every company which might have a business

20   area related to these three business segments here:

21   Environmental, service, and heat exchanger.   The

22   scope is, by far, too big.   And I'm a latecomer to

23   that organization, so I don't know by myself without

24   looking at the company's register, and particularly

25   there where the objectives of the specific
```

35

```
 1   company -- or what the objectives of the specific
 2   companies are, what their scope is.  But, of course,
 3   there are certain companies which are in these
 4   businesses active, yes.
 5        Q    Which ones are those?
 6        A    Is it my copy?  May I keep it?
 7             MR. WELSH:  Do you want him to mark
 8   on it or do you want to keep it clean?
 9        Q    (By Mr. Comen) Perhaps I will give you a
10   pencil.  Why don't you mark in pencil.
11        A    Babcock Borsig Espana, for example.
12        Q    Babcock Borsig which?
13        A    Espana, as I said.
14        Q    Okay.
15        A    In Spain.  That's power-related,
16   environmental-related.  This is the group of company
17   Hudson bought.
18        Q    When you say "this," you have to be more
19   descriptive.  You can either put Xs next to them.
20   Since you have the only copy, it's hard for us to --
21   so you are circling those companies.
22        A    Right, and this was sold to Hudson.
23             NEM B.V. in the Netherlands.  BBP
24   Environment.  Austrian Energy, but we had no control
25   over this group because this went bankrupt by itself
```

36

1  on a different receivership.  Babcock
2  Kraftwerkstechnik with specific companies beneath
3  it.  BBP Service GmbH with specific companies below
4  it.
5       Q    Well, I'm -- the chart is upside down as I
6  look at it.  So are you saying everything below
7  what's the entity at the top of what you were just
8  pointing to?
9       A    This one?
10      Q    Yes.
11      A    BBP Service GmbH.
12      Q    All right.  And so all the entities below
13  that would be encompassed?
14      A    No.  As I said, specific companies.
15      Q    Okay.  Which ones?  Are you putting a mark
16  next to the ones that --
17      A    I don't know them.
18      Q    Okay.  But you know at least some of the
19  ones within that entity that you just described?
20      A    But I cannot give you a comprehensive
21  markup of this chart of those companies which are
22  related to these three business segments, because
23  some of the companies I have no clue of.
24           This one, yes.  This was actually sold
25  prior to the BBCC deal.

GEORG-PETER KRAENZLIN - JULY 28, 2005

1      Q      Which one are you referring to?

2      A      The Abu Dhabi Workshops, which is a

3  conglomerate, per se.  This one.

4          And if I mark a company here, this does

5  not mean that I mean all the companies below it,

6  because they have subsidiaries which are a different

7  business area which is not affiliated to the three

8  business segments in the noncompete agreement.

9          Power is also too broad of a definition

10 because BPI or BBCC never did any turbine business,

11 although turbine business is power-related.  So it's

12 quite a broad scope, Power.

13         I think this exercise is pretty worthless

14 because it's incomplete --

15     Q      Well, let me try to get back to Exhibit 4.

16 What I'm trying to do is establish which companies

17 are referred to by you in Exhibit 4 so that we can

18 focus on getting the documents of those companies.

19         So let me direct your attention to Exhibit

20 4.  And as I understand Exhibit 4, you say that if

21 "Affiliates" is in the noncompetition agreement with

22 a capital A, it would subject Babcock Borsig AG and

23 its affiliates, small A, and subsidiaries to the

24 noncompete.

25         Now, which of Babcock Borsig AG and its

GEORG-PETER KRAENZLIN - JULY 28, 2005

38

```
 1  affiliates and subsidiaries are you referring to

 2  that are shown on that chart?

 3      A    It's not referred to on that chart under

 4  this name, because as you see here, a release date

 5  is end of March 2002.

 6      Q    Right.

 7      A    At that time, Babcock Borsig AG was still

 8  alive and not in insolvency.

 9      Q    Yes.

10      A    So the Babcock Borsig Power Systems GmbH,

11  at that time, was called quite different.

12      Q    When you say "at that time," which time?

13      A    At that time.

14      Q    Okay.  You are pointing to the chart that

15  says March 31, 2002.

16      A    At that time, Babcock Borsig Power System

17  was a pure shell company sitting here called

18  OFT Vermoegenverwaltung GmbH, spelled

19  V-E-R-M-O-E-G-E-N-V-E-R-W-A-L-T-U-N-G, GmbH.

20      Q    Now, before we spend a lot more time on

21  this chart which is apparently outdated for our

22  purposes, referring to November 2002 and the

23  entities to which you were referring in Exhibit 4,

24  is there a chart similar to this Exhibit 5 that

25  would describe the entities to which you were
```

GEORG-PETER KRAENZLIN - JULY 28, 2005

39

1  referring in Exhibit 4?

2      A    I don't know, but after the insolvency or

3  after filing for insolvency July 4, 2002, we have

4  sold already a bunch of companies which you can

5  partly see on this chart, but you won't see on a

6  chart, if it exists, per the end of November 2002.

7      Q    So between -- if I understand you

8  correctly, you are saying that between July 4th,

9  2002 and November 2002, some of the entities on this

10  chart that's Exhibit 5 were sold.

11      A    Correct.

12      Q    And it's the remaining ones together with

13  the rescue company, Babcock Borsig Power Systems

14  GmbH and its subsidiaries, that you were referring

15  to in Exhibit 4?

16      A    Correct.

17      Q    And then as I understand it, we can use

18  this chart at least to identify some of the

19  companies?  Or would it help if we --

20      A    It's probably the best guess, so to say,

21  for your purposes, yes.

22      Q    Okay.  Then why don't you keep going.  You

23  have my pencil.  Why don't you mark the ones that

24  you were referring to in Exhibit 4.

25      A    I can only repeat myself.  This exercise

40

1   of marking companies will not be exclusive or cannot

2   be exclusive because I don't know each company by

3   their company's objective.  So I can only give you

4   the best knowledge I have, implying that it might

5   not be exclusive.

6        Q    Okay.  The goal of all of this is that

7   if we were to request from you all of the documents

8   of the companies to which you were making reference

9   in Exhibit 4, how would you go about producing those

10  documents and identifying the companies for which

11  you would have to produce the documents?

12           It's a clumsy question, but I think you

13  understand what I meant.  That's what we're

14  searching for.

15       A    First of all, we have to do our best to

16  get a comprehensive list of all the companies, which

17  we don't have.  Secondly, we would have to ask, for

18  each company, the latest version of the company's

19  register to get an excerpt from that institution

20  what the company's objectives are.

21       Q    The "latest," do you mean the latest in

22  relation to November 2002?

23       A    Yes, this would be an even bigger task

24  then.

25       Q    Yes.  Okay.