UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH,<br><br>Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br><br>Defendant,<br><br>BABCOCK POWER, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>BABCOCK BORSIG, AG<br><br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 04-10825 (RWZ)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT BABCOCK POWER, INC.'S
## MOTION FOR PROTECTIVE ORDER

Defendant and Third-Party Plaintiff Babcock Power Inc. ("BPI") moves for a protective order preventing Plaintiff Babcock Borsig Power GmbH ("Babcock GmbH") from scheduling or conducting any further depositions in this action until such time as the Discovery Master rules on whether or not such discovery is unduly burdensome or otherwise violative of Rule 26. Currently, Babcock GbmH's counsel have noticed or expressed their intention to take at least twelve additional depositions in this litigation and to continue with all three depositions they have already begun. They intend to take these depositions in Germany, Japan and in various cities in the United States. But the depositions they seek will not cure the fatal and fundamental flaw in their amended complaint regarding the Hitachi matter, which is the only conceivable area

LIBA/1668809.2

of inquiry for these depositions. Namely, the testimony already given by the Plaintiff's key witness clearly establishes that the non-competition agreement between the parties has not been amended in writing. The NCA contains a merger clause that states unequivocally that the agreement cannot be altered except by written agreement of the parties. This fact is fatal to Babcock GmbH's claims regarding the Hitachi matter, which all rest on purported statements that Babcock GmbH alleges impact the meaning and interpretation of the plain language of the contract. Because there has been no subsequent writing, any further deposition practice would be irrelevant to the claims and defenses in this litigation. As such, any further deposition practice would subject BPI to the very type of annoyance, oppression and undue burden and expense designed to be avoided under Fed. R. Civ. P. 26(c) -- particularly where the depositions are anticipated to occur in far-flung areas of the world.

## Babcock GmbH's Claims are Meritless

The relevant facts of this matter have been laid out in detail in prior submissions of the parties. In short, this case involves the scope of a Non-Competition Agreement ("NCA") that required, for a period of three years beginning November 29, 2002, plaintiff, its affiliates and successors of it and its affiliates to refrain from competing with defendant BPI. Plaintiff Babcock GmbH has sued BPI for a declaratory judgment as to the scope of the NCA, and for damages arising from alleged breach of the covenant of good faith and fair dealing, breach of M.G.L. c. 93A and breach of promissory notes entered into at the same time as the NCA. Neither this motion nor the future depositions are directed to the alleged breach of the promissory notes. Rather, this motion and the depositions are directed to the rest of Plaintiff's case. Namely, the rest of Plaintiff's case is founded on the claim that BPI somehow interfered with efforts by Babcock GmbH affiliates to sell off the so-called "rescue company" to Babcock

2

LIBA/1668809.2

Hitachi, K.K. ("Hitachi") in ways that purportedly were inconsistent with oral statements allegedly made by BPI representatives at the time the NCA was executed. (See Am. Compl. ¶3.)

But the deposition testimony taken to date confirms that Babcock GmbH's theory has no merit for a variety reasons. But one reason stands alone for purposes of this motion. Specifically, all Babcock GmbH's witness, Dr. Georg-Peter Kraenzlin, identified as constituting the alleged offense by BPI was that he was told by BPI director Nathan Hevrony that BPI CEO James Wood had taken the position that had Hitachi purchased the "rescue company," Hitachi's then-existing business "should be bound by the non-compete agreement." (January 17, 2006 deposition of Georg-Peter Kraenzlin, uncertified rough transcript, at 68, lines 9-17, attached at Ex. A.)[1] Despite repeated questioning as to what BPI did that was purportedly unfair or deceptive with respect to Hitachi, Dr. Kraenzlin could point to nothing else other than a hearsay statement that Mr. Wood had taken the position the non-compete applied to successors of affiliates, even if such entities had preexisting businesses in North America. (See id. at 67-71.) This statement purportedly contradicted the alleged "GE Example" identified in the amended complaint at paragraphs 22-23, as being a statement made at the time of the NCA's execution by BPI representatives as to the applicability of the NCA to entities which had preexisting competing businesses and subsequently purchased assets from Babcock GmbH affiliates.

But the terms of the contract are clear that statements such as those addressing the supposed "GE Example" have no binding effect: "No statement, representation, warranty, covenant or agreement of any kind not set forth in this Agreement shall effect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement." (Non-

---

[1] Of course, as Dr. Kraenzlin himself testified earlier, the terms of the non-compete are clear in binding purchasers of the rescue company. (See July 28, 2005 deposition of Georg-Peter Kraenzlin at 121-23, attached at Ex. B.)

3

competition Agreement, §4(h), attached as Ex. C.) Dr. Kraenzlin has testified that that he is aware of no amendment to the NCA that would allow such oral statements to have any legal bearing on the interpretation of the NCA. Indeed, on July 28, 2005, Dr. Kraenzlin testified, as the Rule 30(b)(6) designee of Babcock GmbH's parent, that he was "not sure" whether any written document amending the NCA existed, and would have to "look it up" in his files. (July 28, 2005 deposition of Georg-Peter Kraenzlin, at 18, line 5, through 19, line 4, attached at Ex. D.) In his most recent deposition testimony, Dr. Kraenzlin confirmed that he is aware of no amendment to the NCA. (January 17, 2006 deposition of Georg-Peter Kraenzlin, uncertified rough transcript, at 50, line 13, through 51, line 22, attached at Ex. E.)

Quite simply, absent an amendment to the NCA and absent the ability of Babcock GmbH's primary executive to identify any allegedly improper conduct by BPI, Babcock GmbH's amended complaint regarding the Hitachi matter is meritless and should not be the subject of any further depositions.

### Babcock GmbH Proposes Endless Depositions across the Globe that Would Cause Undue Burden and Expense

Nevertheless, Babcock GmbH has either served deposition notices or has indicated that it will depose at least twelve new people and entities, in addition to continuing every one of the depositions it has already begun. Attached at Exhibits F through O are the deposition notices or correspondence by Babcock GmbH counsel indicating their desire to proceed with the following depositions:

- Drs. Walter Kuna and Helmut Balthasar, both of whom were investment bankers involved in the transaction that included the NCA;

- Attorney Sebastian Freitag with the firm Freitag & Gellert, which assisted on the transaction;

- Attorney Jeffrey Stoler of Gadsby Hannah and the keeper of records of Gadsby, which also was involved with the transaction;

4

- Hitachi;

- Ms. M.J. Moltenbrey of the law firm Freshfields Brukhaus Deringer, which served as Hitachi's outside counsel when Hitachi ultimately purchased the rescue company;

- BPI director Nathan Hevrony and the keeper of records of four private equity entities affiliated with Mr. Hevrony.

Babcock GmbH has indicated that many of these depositions will necessarily occur in Germany, may also take place in Japan and also in other cities in the United States. In addition, Babcock GmbH has not finished any of the three depositions it has begun of BPI's 30(b)(6) designees, officers Brantl and Brandano, as well as BPI CEO, James Woods. It has indicated its intention to continue with these depositions.

Babcock GmbH has given no reason why any of these depositions should take place at all. In light of the clear testimony to date, and the plain language of the NCA and its merger clause, no testimony would aid the Court in deciding the meaning of the plain terms of the NCA. As such, forcing BPI to travel across the globe wasting its time and resources for frivolous discovery practice would cause undue burden and expense. Thus, it is respectfully requested that the Discovery Master issue a protective order barring any further discovery practice under Fed. R. Civ. P. 26(c) until such time, if any, that Babcock GmbH can show that these depositions are reasonably calculated to lead to the discovery of admissible evidence, and not simply a world-wide fishing expedition.

                    Respectfully submitted,

                    BABCOCK POWER, INC.

                    By its attorneys,

                    */s/ Steve Comen/PFS*

                    Steven J. Comen (BBO# 093320)
                    James O. Fleckner (BBO# 641494)
                    Peter F. Simons (BBO# 660704)
                    GOODWIN PROCTER LLP
                    Exchange Place
                    Boston, Massachusetts 02109

DATED: January 24, 2006       617-570-1000

**LOCAL RULE 7.1(A)(2) AND 37.1 CERTIFICATE AND CERTIFICATE OF SERVICE**

   A conference pursuant to Local Rules 7.1(A)(2) and 37.1(B)(1) was not held prior to the Discovery Master's ruling on this motion due to the expedited nature of the motion so that it might be considered at a previously-scheduled hearing with the Discovery Master, Judge Herbert H. Hershfang, for the resolution of other discovery disputes between the parties. The absence of a Local Rule 37.1 conference caused no prejudice to the opposing party, which filed papers in opposition to this motion before the hearing with the Discovery Master and made oral argument at the hearing relating to this motion.

   I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies were sent by hand to the Discovery Master on January 24, 2006.

/s/ Steven J. Comen