# EXHIBIT D

```
                 UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF MASSACHUSETTS


BABCOCK BORSIG POWER GmbH,     *
                               *
     Plaintiff,                *
                               *
vs.                            *  CA No. 04 CV 10825-RWZ
                               *
BABCOCK POWER, INC.,           *
                               *
     Defendant.                *
                               *


         ORAL DEPOSITION OF DR. GEORG-PETER
KRAENZLIN, produced as a witness at the instance of
the Defendant, taken in the above-styled cause on
the 28th day of July, 2005, from 10:06 a.m. to 3:19
p.m., before Candice F. Flowers, a Certified
Shorthand Reporter, at the offices of Babcock Borsig
AG i.I., Duisburger Strasse 375, in the City of
Oberhausen, Country of Germany, pursuant to the
agreements as stated on the record and/or the
Federal Rules of Civil Procedure.

                                              COPY


                      Reported By:
                 Candice F. Flowers, CSR
                European Reporting Service
                    Meesmannstr. 52
                  58456 Witten, Germany
             Tel/Fax:  (011) 49 2302 277485
             www.EuropeanReportingService.com
```

1  shall be in writing and signed by the parties
2  hereto."
3         Do you see that?
4    A   I have read it.
5    Q   Okay. Now, are you aware of any
6  amendment, change, or modification of this
7  noncompetition agreement that exists?
8    A   I'm not sure. I have to look it up in my
9  files.
10   Q   And those are the files that are in this
11 building?
12   A   Yes.
13   Q   Okay. And since this goes to the very
14 heart of this case, perhaps during the break or
15 during the lunch recess, you might take a look to
16 see whether any such document exists.
17   A   No, I won't.
18         MR. WELSH: I will instruct the
19 witness what to do with respect to that. Next
20 question, please.
21   Q   (By Mr. Comen) But as you sit here today,
22 do you have a memory of whether such a document
23 exists?
24   A   I have a certain opinion which I don't
25 want to express now, because I am not sure of it.

1  Q   To the best of your knowledge, a document
2 exists or does not exist?
3       MR. WELSH:  I think the witness
4 indicated that he's not sure.
5  Q   (By Mr. Comen) If such a document did
6 exist, it would be in your files in this building;
7 is that correct?
8       MR. WELSH:  Objection.
9       You may answer if you are able.
10 A   Not necessarily.
11 Q   Where else might it be found?
12 A   With the overall files of BBP GmbH,
13 perhaps in the archive.
14 Q   And where are those archives?
15 A   On this real estate here somewhere,
16 because this is more than 30 kilometers long, so it
17 is in the cellar somewhere.  You have to check.
18 Q   And who has custody and control of those
19 archives?
20 A   The insolvency administrator.
21 Q   And that's Dr. Helmut Schmitz?
22 A   Correct.
23 Q   And you have access to those archives,
24 too, as the chief legal officer; is that correct?
25 A   Through his people, yes.

# EXHIBIT E

060117BA1.txt

UNCERTIFIED ROUGH TRANSCRIPT    1

COURT REPORTER'S DISCLAIMER IN THE MATTER OF

Babcock Borsig Power GmbH
vs.
Babcock Power Inc., ETC.

5     The following deposition transcript of Georg-Peter Kraenzlin, taken on Tuesday, Januar 17, 2006, is being delivered UNEDITED and UNCERTIFIED by the court reporter at the request of Attorneys Comen and Bello.

The party working with this product agrees not to share, give, copy, scan, fax, or in any way distribute this realtimed rough draft in any form (written or computerized) to any other party.

10    The party's experts, co-counsel, and staff may have limited internal use thereof with the understanding that this realtimed rough draft will be destroyed and replaced by the final edited, certified transcript when it is received by the party in due course.

The party agrees to indemnify and hold harmless Doris O. Wong Associates, Inc., and its court
15    reporter Carol H. Kusinitz if the unedited and uncertified version of this transcript is cited by any party to this matter and becomes a point of contention within this case or any other controversy.

20

UNCERTIFIED ROUGH TRANSCRIPT    2

P R O C E E D I N G S

GEORG-PETER KRAENZLIN, Resumed

a witness called for examination by counsel for the

Defendant, being duly identified by his German

5    identification card and sworn, was examined and

Page 1

060117BA1.txt
to pay BPI. So there was not an agreement between

UNCERTIFIED ROUGH TRANSCRIPT    49

Babcock and Hitachi on the one side and BPI on the other side paying 7.5 million. It was exclusively Hitachi's decision to pay the 7.5 million.

Q    At the end of that paragraph it says
5    "Reserving their rights to pursue any and all claims against BPI." Did anyone reserve their rights to pursue any and all claims against BPI?

A    After the Hawaii meeting, when we were informed about the ultimate settlement between BPI
10   on the one side and Hitachi on the other side -- Babcock Hitachi on the other side, Babcock Hitachi turned to us and said, "We only close the transaction with you on the acquisition of the rescue company, Babcock Borsig Power Systems if you
15   pay us the 7.5 million." And we were refusing that and we asked for documentation about the settlement reached between BPI and Babcock Hitachi.

Having read the settlement, covenant not to sue, and this cooperation agreement, we learned that
20   this agreement between BPI and BHK goes far beyond what we had to provide under the transaction agreement we entered into, we meaning BBP with Babcock Hitachi, what we had to provide under the closing conditions. And therefore, we refused to

UNCERTIFIED ROUGH TRANSCRIPT    50

pay 7.5 and negotiated that price or that amount.
Page 42

060117BA1.txt

Q   You negotiated it to splitting the 7.5 --

A   Ultimately we agreed to a purchase price reduction for the consideration of the rescue
5   company by 3.75 million, and we, towards Babcock Hitachi, reserved our right to collect this money from BPI, because, from our perspective, BPI has forced us to accept this purchase price reduction, because if we had not agreed to that purchase price
10   reduction, the rescue company would have gone bust due to lack of closing of the sale of the rescue company.

Q   Before we take a break, and then we'll go to 1:15 and then we'll break for lunch -- if you
15   want to take a bathroom break, just give me one more minute -- do you recall during the deposition in Germany that I asked you repeatedly about whether or not there was any document amending the Non-Competition Agreement?
20   A   I do remember.

Q   To your knowledge, as we sit here today, is there any such document?

MR. BELLO:  Objection.

A   Since I was also curious whether I were

UNCERTIFIED ROUGH TRANSCRIPT   51

going to find that, I checked it, and there is none.

MR. COMEN:  All right.  Why don't we take a break.

(Recess)
5   BY MR. COMEN:

Page 43

060117BA1.txt

    Q      I show you a copy of the Non-Competition Agreement that's already been marked, and I'm directing your attention to Page 6, Paragraphs H and I, typically described as merger clauses.

10  A      H and I.

    Q      Yes.

    A      (Reviewing document) Okay.

    Q      You're aware of those provisions, are you not, that those provisions are in the

15  Non-Competition Agreement?

           MR. BELLO:  Objection.

    A      Yes.

    Q      And you testified a few minutes ago that there has been no written amendment to the

20  Non-Competition Agreement, correct?  That is your understanding?

    A      This is my understanding, right.

    Q      Then in light of the two paragraphs I just directed your attention to, are you claiming that

UNCERTIFIED ROUGH TRANSCRIPT   52

there nevertheless were some oral understandings that modify the words in the Non-Competition Agreement?

           MR. BELLO:  Objection.

5   A      Can you repeat the question, please?

    Q      Are you claiming -- is it your position in this lawsuit that there were some oral understandings that modify the words that are written in the Non-Competition Agreement?

10  A      It is my understanding that our claim is

Page 44

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH,<br>　　Plaintiff,<br><br>v.<br><br>BABCOCK POWER, INC.,<br>　　Defendant and Third-Party Plaintiff,<br><br>v.<br><br>BABCOCK BORSIG, AG<br>　　Third-Party Defendant. | C.A. No. 04 CV 10825-RWZ |

## NOTICE OF DEPOSITION

To:   Steven J. Comen, Esq.
　　　Goodwin Procter LLP
　　　Exchange Place
　　　Boston, MA 02109

Please take notice that beginning at 10:00 a.m. on October 13, 2005, or on such other date agreed to by counsel, at the offices of Babcock Borsig AG, located in Oberhausen, Germany, the Plaintiff Babcock Borsig Power GmbH will take the deposition of Dr. Walter Kuna.

The deposition will be conducted before a Notary Public or other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

　　　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　　BABCOCK BORSIG POWER GMBH,
　　　　　　　　　　　　　　　　　　　By Its Attorneys,

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Kenneth M. Bello, BBO #036630
　　　　　　　　　　　　　　　　　　　John F. Welsh, BBO #522640
　　　　　　　　　　　　　　　　　　　Josiah M. Black, BBO #632690
　　　　　　　　　　　　　　　　　　　Bello Black & Welsh LLP
　　　　　　　　　　　　　　　　　　　535 Boylston Street, Suite 1102
　　　　　　　　　　　　　　　　　　　Boston, Massachusetts 02116
　　　　　　　　　　　　　　　　　　　(617) 247-4100

Dated: August 29, 2005