UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BABCOCK BORSIG POWER GmbH, )<br>     Plaintiff, )<br> )<br> )<br>     v. )<br> )<br>BABCOCK POWER, INC., )<br>     Defendant and Third-Party Plaintiff, )<br> )<br>     v. )<br> )<br> )<br>BABCOCK BORSIG, AG, )<br>     Third-Party Defendant. )<br> ) | Civil Action No.: 04 CV 10825-RWZ |

**PLAINTIFF'S REPLY TO DEFENDANT BPI'S
OPPOSITION TO PLAINTIFF'S MOTION TO
COMPEL TESTIMONY BY RULE 30(b)(6) WITNESS**

Plaintiff Babcock Borsig Power GmbH ("Babcock GmbH" or "Plaintiff") submits this Reply to the Opposition filed by Defendant Babcock Power, Inc. ("BPI"), concerning Plaintiff's Motion to Compel Testimony by Rule 30(b)(6) Witness.[1] In its Motion and Memorandum, Babcock GmbH has presented facts demonstrating: (i) that BPI failed in its obligations to produce a witness responsive to subjects identified in the Rule 30(b)(6) Notice; and (ii) improperly asserted the attorney-client privilege to shield testimony about discussions with third parties concerning Rule 30(b)(6) topics.

In its Opposition, BPI makes three principal points: (i) its position regarding the interpretation of the underlying Non-Competition Agreement ("NCA") is "right," so no

---

[1] BPI's Opposition intentionally mis-titles Plaintiff's Motion to highlight the unfortunate fact that Babcock Borsig GmbH has been forced to file three separate Motions to Compel.  The first – a Motion to Compel Production of Documents -- was granted by Judge Zobel.  The second -- a Motion to Compel Depositions -- was resolved by the Discovery Master on terms consistent with Plaintiff's position. This is the Third Motion to Compel Rule 30(b)(6) Testimony.  Unfortunately, other motions will be submitted soon unless and until BPI acknowledges and complies with its discovery obligations.

further discovery should be allowed; (ii) its designated Rule 30(b)(6) witness (James Brantl) was fully prepared to answer "substantive questions", but no such inquiry was made; and (iii) Mr. Brantl properly invoked an attorney-client privilege concerning pre-transaction communications between BBCC managers and Hudson Investment Group and its attorneys, despite the admitted absence of any attorney-client relationship whatsoever between BBCC and Hudson Investment Group, based on a "common interest" theory.  In a nutshell, BPI has engaged in a transparently circular argument:  BPI's Rule 30(b)(6) witness properly invoked the attorney-client privilege preventing meaningful inquiries of the listed topics but purportedly was prepared to testify fully on these same topics.

The following replies more specifically to Defendant BPI's Opposition.

1. **BPI'S INCOMPLETE AND INACCURATE PRESENTATION ON LIABILITY DOES NOT WARRANT ITS PRESENT FAILURE TO COMPLY WITH DISCOVERY OBLIGATIONS.**

BPI devotes the first seven pages of its Opposition to arguing why it is right regarding the underlying substantive disputes.  Aside from the fact that it is *wrong* on both the facts and law, these arguments are plainly irrelevant to the narrow discovery issues presented by the pending Motion to Compel.  Defendant BPI cannot seek a summary judgment-like liability determination under the guise of a discovery dispute.  Since BPI has made the near identical argument in its pending Motion for Protective Order seeking to prohibit scheduled depositions, Babcock GmbH Borsig incorporates by reference its Opposition to BPI's Motion to for Protective Order for appropriate rebuttal of Defendant BPI's "lack of liability" claim.

2.  **BPI'S RELIANCE ON ITS PURPORTED COMPLIANCE WITH OTHER DISCOVERY OBLIGATIONS IS NOT MATERIAL AND IS FACTUALLY INCORRECT.**

BPI's purported concerns about Babcock GmbH's document production does not afford license for BPI to refuse to provide Rule 30(b)(6) testimony. BPI has presented a self-serving, inaccurate account of the current status of discovery. Despite numerous letters from Plaintiff Babcock GmbH regarding Defendant BPI's failure to respond or comply with respect to numerous discovery issues -- including without limitation, BPI's failure to produce relevant requested documents, BPI's over designation of all documents produced as "confidential," and BPI's continued refusal to conference with Plaintiff on the adequacy of its production -- BPI now unabashedly claims, for the first time, that it "has completed its production of documents." BPI simply has ignored the numerous letters and emails from counsel for Babcock GmbH on this topic. BPI also has claimed, inaccurately, that Plaintiff Babcock GmbH has not completed its document production.

Thus, BPI has presented an inaccurate and disingenuous report on the status of discovery to distract the Court and to evade the plain fact that its Rule 30 (b)(6) witness has not complied with the law. BPI continues to throw as many roadblocks as possible in the way of Babcock GmbH's discovery efforts in this case though incomplete and inadequate disclosures, avoidance of deposition testimony, and evasive court filings. Plaintiff Babcock GmbH simply seeks the reasonable discovery to which it is entitled under the Rules.

>    3.    **THE "COMMON INTEREST" DOCTRINE DOES NOT SUPPORT BPI'S IMPROPER EFFORTS TO CONCEAL RELEVANT COMMUNICATIONS BETWEEN BBCC MANAGEMENT AND HUDSON INVESTMENT UNDER A CLOAK OF PURPORTED PRIVILEGE.**

BPI's position that communications between counsel for the Hudson Investment Group, Inc. ("Hudson") and the BBCC management group (specifically Wood, Brantl and Brandano) were privileged based on a theory of "common interest" is without factual or legal basis.[2] For the common interest privilege to apply, "the party asserting the privilege must show that: (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." Ken's Foods, Inc. v. Ken's Steak House, 213 F.R.D. 89, 93, 2002 U.S. Dist. LEXIS 25892, * *12  (D. Mass. 2002)(quoting, United States v. Bay State Ambulance and Hosp. Rental Serv. Inc., 874 F.2d 20, 28 (1st Cir. 1989)).[3]

The common-interest doctrine is "an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." Cavallaro v. United States, 284 F.3d 236, 250 (1st Cir. 2002).  As discussed below, the "common interest" privilege is improperly invoked by BPI to shield transactions-related communications between BBCC and Hudson Investment Group.

>    a.    **BPI admits there is no attorney-client relationship.**

Despite insinuations by Mr. Brantl to the contrary, it now appears uncontested that no actual attorney-client privilege existed between Hudson Investment Group and the BBCC management group.  Former BBCC President James Wood has testified (albeit

---

[2] Whether known as "common interest," "joint defense," "joint client," or "allied lawyer" doctrine, the principle is the same; it is an exception to the general rule that attorney-client privileged is waived by disclosure to a third party.  United States v. Cavallaro, 384 F.3d 236, 250 (1st Cir. 2002).

[3] A copy of Ken's Food, Inc. v. Ken's Steak House, 213 F.R.D. 89, 2002 U.S. Dist. LEXIS 25892 (D. MASS 2002) is attached as Exhibit I for convenience.

reluctantly) that Attorney Stoler of Gadsby & Hannah represented Hudson and that Mr. Wood's role in the transaction was to be "representative of BBCC and BBCC management." Exh J (Wood Dep.) at 60-63, 92-95, 100.[4]  Wood acknowledged that he, as BBCC management, was to represent the interests of the *seller* (which was represented by Attorney Brian Crush of Nixon Peabody).  Exh J(Wood Dep.) at 116-117.  Indeed, BBCC management group were represented in their individual capacities by Goodwin Proctor in negotiations opposite Hudson Investment Group and Hudson's Counsel, Gadsby & Hannah.  Exh J (Woods Dep.) at 126-127. See also Exh K (Brandano Dep.) 74, 78-79.  As Attorney Stoler of Gadsby Hannah has explicitly stated, he did not represent BBCC or its management.[5]

  **b.**  **The lack of agreement is fatal to BPI's claim.**

Second, Defendant BPI has failed to demonstrate that the pre-closing communications between Hudson Investment and BBCC management quality for the "common interest" privilege.  BPI cannot establish that "they agreed to engage in a joint effort and to keep the shared information confidential from outsiders."  Ken's Foods, Inc.,

---

[4] Excerpts from the depositions of Mr. Wood and Mr. Brandano are attached mereto as Exhibit J and K, respectfully.

[5] Indeed, for the first half of Brantl's Rule 30(b)(6) deposition, there was no confusion over attorney-client relationships (Brantl Dep. at 25-27):

> Q. In your personal capacity, you were not part of the Hudson group, right?
> A. Right.
> Q. Nor was Mr. Wood, correct?
> A. As far as I know.
> Q. Nor was Mr. Brandano; is that correct?
> A. As far as I know.
> ….
> Q. I just want to make sure I got the alignment right, Mr. Brantl.  Gadsby & Hannah represented, as you said, the Hudson group, is that correct, the Hudson investor?
> A. Yes.  I don't know the exact name.
> Q. Gadsby did not represent Babcock GmbH Borsig Capital group or Corp., correct?
> A. Yes, that's right.

5

213 F.R.D. at 93-94, 2002 U.S. Dist. LEXIS at ** 12.  "While a written agreement is not a prerequisite for invoking the common interest doctrine, parties seeking to invoke the exception must establish <u>that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders</u>."  <u>Id</u>. (emphasis supplied); <u>see also</u> <u>United States v. Sawyer</u>, 878 F. Supp. 295, 297 (D. Mass. 1995)(despite similar interests between employer and employee, insufficient evidence that communications were made during the course of a joint defense effort; proponent could neither establish time frame of agreement nor acts creating and/or terminating the agreement).

     In this case, no oral or written agreement has been shown to exist between BBCC and Hudson Investment Group to participate in a "joint effort." <u>See</u> <u>Ken's Foods, Inc.</u>, 213 F.R.D. at 93, 2002 U.S. Dist. LEXIS at ** 12.  Indeed, BPI, through the testimony of Mr. Brantl at his 30(b)(6) deposition, has instead demonstrated that BPI and BBCC and/or its management group and Gadsby & Hannah did not "agree[] to engage in a joint effort [] to keep the shared information confidential from outsiders."[6]  <u>Ken's Foods, Inc.</u>, 2002 U.S. Dist. LEXIS 25892 at * *12; <u>see also</u> <u>United States v. Sawyer</u>, 878 F. Supp. 295, 297 (D. Mass. 1995)(citing, <u>Bays v. Theran</u>, 418 Mass. 685 (Mass. 1994)).

     Of course, BBCC management officials, as officers and directors of BBCC entities, owed fiduciary duties to BBCC's stockholder, Plaintiff Babcock GmbH, during the negotiation.  Had BBCC management officials actually agreed secretly with Hudson Investment to treat their information as confidential, or otherwise acted in contravention of their responsibilities, BBCC and its managers would have breached their fiduciary obligations to Babcock GmbH.

---

[6] <u>See Brantl Dep.</u>, 27, 129-130, 131, 132, 137, 139, 140; <u>see also</u> Exhibit H.

The law is clear: an actual agreement is needed. An unspoken hope that communications not be disclosed is insufficient, as a matter of law, to establish a "joint defense" or "common interest" exception. Sawyer, 878 F. Supp. at 297; Ken's Food, Inc., 213 F.R.D. at 93-94, 2002 U.S. Dist. LEXIS at ** 12; see also Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 349 (N.D. Ohio 1999)(stating burden is on proponent to "have taken effective steps to ensure that all participants were aware of the need to maintain confidentiality, and to show that mechanisms were in place to accomplish that objective before the information was shared"). Thus, due to the admitted absence of an agreement, BPI is not entitled to shield from discovery the communications in question.

    **c**.    **BPI's unexpressed expectation of confidentiality does not shield these non-privileged communications from disclosure.**

BPI argues that Mr. Brantl and the BBCC management group can invoke the attorney-client privilege because "communications were made to an attorney with the expectation that they not be disclosed to potential adversaries" and the privilege applies "regardless whether the attorney, in fact, represented the person with who he or she had the confidential communication."[7] Contrary to BPI's claim, BBCC management's purported subjective belief at the time of the transaction that their communications with Hudson Investment representatives were "confidential" are wholly insufficient to establish a common interest privilege against disclosure. See Sawyer, 878 F. Supp. at 297 n.1. "[E]ven if [a party] believed that he and [another party] were advancing a joint defense, it would be unavailing because one party's belief about the existence of a joint defense does not, and cannot, give rise to a joint defense privilege." Id. (citing, In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986)).

---

[7] See Opposition to Plaintiff's Third Motion to Compel ("Defendant's Opposition") at 13.

Thus, because BPI can neither establish a joint agreement nor, more importantly, an attorney-client relationship between or among BBCC or its management group and Hudson Investments/Gadsby & Hannah, BPI should be ordered to testify as to all communications pre-dating November 29, 2002 among that group of individuals regarding the SPA and NCA and to produce all documents pertaining to such communications.

  **d.**  **The "common interest" privilege does not apply to business negotiations.**

BPI's claim that the communications between the BBCC management group and Gadsby & Hannah are privileged because "the management group and outside investors had a common interest in securing the deal," does not establish any privilege under the "common interest" doctrine. In fact, this admission also is fatal to BPI's claim.

The "common interest" doctrine applies only to litigation-related communications. Federal courts have repeatedly held that communications regarding business matters -- even where litigation is pending or imminent -- do not qualify for protection from discovery under the common interest rule. See Coffin v. Bowater, 2005 U.S. Dist. LEXIS 11784 (D. Me 2005); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989); Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 2003 U.S. Dist. LEXIS 8842 (S.D.N.Y. 2003); see also In re FTC, 2001 U.S. Dist. LEXIS 5059, ** 13 (S.D.N.Y. 2001)("courts have recognized that a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule"); Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996) ("the doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation"); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

8

In re Grand Jury Subpoena, 274 F. 3d 563, 575-6 (1st Cir. 2001), the First Circuit cautioned that a legitimate "joint defense" or "common interest" agreement privilege only may be formed with respect to actual or potential litigation:

> Lawyer's affidavit avers that his three clients entered into an oral joint defense agreement in 1990, at which time no particular litigation or investigation was in prospect. The agreement thereafter remained in effect, Lawyer says, attaching ex proprio vigore to all matters subsequently arising (including the current grand jury investigation). The law will not countenance a "rolling" joint defense agreement of this limitless breadth.
>
> The rationale for recognizing joint defense agreements is that they permit parties to share information pertinent to each others' defenses. See Hundyee v. United States, 355 F.2d 183, 185 (9th Cir. 1965). In an adversarial proceeding, a party's entitlement to this enhanced veil of confidentiality can be justified on policy grounds. But outside the context of actual or prospective litigation, there is more vice than virtue in such agreements. Indeed, were we to sanction the intervenor's view, we would create a judicially enforced code of silence, preventing attorneys from disclosing information obtained from other attorneys and other attorneys' clients. Common sense suggests that there can be no joint defense agreement when there is no joint defense to pursue. We so hold.

Accord Gulf Islands Leasing Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 2005 U.S. Dist. LEXIS 8842 (S.D. N.Y. 2003)("federal case law has repeatedly held that communications regarding business matters – even when litigation is pending on imminent – do not qualify for protection from discovery under the common interest rule").

In this case, the conversations in question, all of which occurred on or before the date the transaction closed, pertained to the terms of the SPA, the NCA, and the Promissory Notes. No litigation was involved; these were business-related discussions concerning the SPA and its related contracts. Accordingly, no "common interest privilege" applies here.

e.     **BPI's blanket assertions of privilege are overbroad.**

The blanket assertion -- that all communications by Hudson Investment with BBCC Attorney Brantl, and all communications of BBCC management with Hudson Investment's attorneys at Gadsby Hanna are privileged -- is facially improper. BPI's efforts to shield transactional communication's between Hudson Investment Group and BBCC Attorney Brantl, and between Hudson Investment Group's counsel (Gadsby & Hannah, LLP) and BBCC management, not only fail to satisfy any of the requirements of the "common interest" rule, but also are asserted without any particularized inquiry concerning whether specific communications are covered. As with its blanket declarations concerning confidentiality designations, BPI has broadly declared all communications covered by the common interest privilege. Further, it does so without any effort whatsoever to discern the particular content and context of specific communications. This tactic clearly is inappropriate.

For the common interest doctrine to apply, "the party asserting a privilege must show that (1) the communications were made in the course of a joint defense effort (2) the statements were designed to further the effort, and (3) the privilege has not been waived." Ken's Foods, Inc., 213 F.R.D. at 93-94, 2002 U.S. Dist. Lexis 25892 at * *12 (quoting, United States v. Bay State Ambulance and Hosp. Rental Serv. Inc., 874 F.2d, 28 (1st Cir. 1989)). BPI's position that every conversation between BBCC management and Hudson counsel at Gadsby & Hannah, and every conversation between Hudson representatives and BBCC Attorney Brantl, were designed to further their confidential "common interest" effort is facially specious. Not only does the "common interest privilege" not apply to

these business discussions, but it also has been improperly used in an overbroad manner to shield all communications, irrespective of content.

    **4.    BPI'S CLAIM THAT MR. BRANTL WAS PREPARD TO ANSWER, BUT WAS NOT ASKED, SUBSTANTIVE QUESTIONS LACKS MERIT.**

As noted previously, BPI's argument is transparently circular. Its Rule 30(b)(6) witness invoked the attorney-client privilege, preventing any meaningful inquiries into the facts pertaining to any of the listed topics, while at the same time asserting that he was prepared to testify fully on these same topics.

Clearly, Mr. Brantl had not conducted the kind of investigation required by Rule 30(b)(6). For example, he never asked anyone to provide documents in conjunction with his preparation (Brantl Dep., 23); he never looked at documents provided to BPI by Gadsby & Hannah (Brantl, Dep., 36-37); and he only briefly looked at documents from Mr. Hevrony (Brantl Dep., 17).

Similarly, on those topics about which he did have information, Mr. Brantl, over and over again, used claims of attorney-client privilege to conceal the factual basis for his testimony. When asked about his communications with Mr. Brandano about the $5M Note as part of his investigation to testify as a Rule 30(b)(6) witness, he was instructed "not to answer." (Brantl Dep., 66).

The following testimony concerning a crucial pre-transaction meeting about the NCA also is illustrative of BPI's improper Rule 30(b)(6) tactic (Brantl Dep.,119-120):

> Q. Now, other than the meeting that you've
> described, were you present at any meeting --
> present -- whether it was internal, that is, just
> among your -- either just the BBCC group or the BBCC
> group with Hudson group, regarding the terms of the
> Non-Competition Agreement at any time between

11

> September and November 29, 2002?
>
> ….
>
> A. I was involved with a telephone discussion in November regarding the Non-Competition Agreement.
>
> Q. Who was also involved in that discussion?
>
> A. Jim Wood, Tony Brandano, Dale Miller, Nathan Hevrony.
>
> Q. Anybody else?
>
> A. I believe Jeff Stoler may have been on the call?
>
> Q. Who is Mr. Stoler?
>
> A. He's with Gadsby & Hannah.
>
> Q. Anybody else that you can recall?
>
> A. No. That's all I can recall.
>
> Q. Tell me everything you can remember about that conversation.
>
> MR. COMEN: I object and direct him not to answer.

A similar failure to provide factual testimony also pertained to his testimony concerning pre-transaction communications with Hudson Investment's counsel (Brantl Dep., 142-143):

> Q. Do you have any memory -- I'm not asking the substance yet -- of any input given to the Gadsby & Hannah attorneys regarding the subject matter or the language of the Non-Compete Agreement?
>
> A. I have a memory about the terms of the market definitions. I don't know -- I can't remember who I gave that input to.
>
> Q. So you can't separate that, whether you gave that to Mr. Brandano, Wood or the Gadsby &

>Hannah lawyers; is that correct?
>
>A.  I'm trying to remember right now, and I think I gave that to one of the Gadsby & Hannah attorneys.
>
>Q.  Do you remember any of the substance –
>
>MR. COMEN:  I direct you not to answer.
>
>MR. BELLO:  All I'm asking is if he remembers.
>
>Q.  Yes or no, do you remember the substance of the input you gave to the Gadsby & Hannah attorneys?
>
>A.  I think I have probably several comments. I can remember one of them right now.
>
>MR. COMEN:  Don't disclose it.  I direct you not to answer.

A similar dodge resulted from inquiries about other communications concerning the negotiation of the Non-Competition Agreement (Brantl Dep., 145-146):

>A.  I've spoken to Jim Wood and Tony and Nathan and Dale Miller, when the complaint was filed, and had several other discussions with them about the negotiations leading up to the Non-Competition Agreement.
>
>Q.  And those discussions including as part of your preparation for this deposition as a corporate witness?
>
>A.  More as my role as general counsel.
>
>Q.  Have those conversations occurred -- well, I'm asking you specifically what you did to prepare for the deposition as corporate witness to investigate the negotiations or other communications that led to the execution of the Non-Competition Agreement.
>
>A.  I looked at the various correspondence

about six months ago, and I looked at it yesterday.

Q. I'm not going to ask you the substantive question. Let me try it a different way, sir. In connection at any time, did you discuss with Mr. Wood the negotiations and the communications that occurred that he had with anyone from BB AG regarding the Non-Competition Agreement?

THE WITNESS: Could you repeat the question.

(Question read)

A. Yes, I've had discussions with Mr. Wood.

MR. BELLO: Are you going to instruct him not to answer?

MR. COMEN: Yes.

Q. So in your role in preparing for this deposition and investigating, you talked -- Mr. Wood described to you conversations that he had either -- with BB AG regarding the back and forth on the Non-Compete Agreement, correct?

A. Yes.

Q. What were those conversations?

MR. COMEN: I direct you not to answer.[8]

Indeed, Mr. Brantl made clear that no probative information whatsoever would be adduced from his testimony as Rule 30(b)(6) witness concerning the negotiation of the NCA (Brantl Dep. at 147):

---

[8] Frustrated by the complete lack of candor and attempted improper insulation by use of the attorney-client privilege, counsel for Babcock GmbH put on the record the view that the conduct of BPI was a "complete subterfuge of the obligation of a corporate witness. You've presented Mr. Brantl as a corporate witness, but you are raising an attorney-client privilege on the very topics that he was obligated to investigate and present information on." Brantl Dep. at 146. After expressing again that BPI has not presented a "corporate witness," Mr. Comen said "*you know, knock yourself out*." Id.

14

> Q. Did you have any conversations with Mr. Wood regarding communications he had with others within the management group or the Hudson group regarding the Non-Competition Agreement?
>
> THE WITNESS: Could you repeat the question.
>
> (Question read)
>
> A. I just can't recall right now.

The same tactic thwarted all other efforts to obtain substantive testimony from Rule 30(b)(6) witness Brantl. For example, in November 2002, Hudson Investment principal Nathan Hevrony negotiated the terms of the Non-Competition Agreement with Babcock GmbH negotiators Dr. Kraenzlin and Mr. Kramer. BBCC's management acquired their knowledge about the negotiations from Mr. Hevrony. When asked about this information, the following Rule 30(b)(6) testimony occurred (Brantl Dep.149-154):

> Q. Did you have any conversation with Mr. Hevrony regarding his memory of the negotiations with respect to the Non-Compete Agreement?
>
> A. Yes. I believe that was one of the items that we discussed back in September.
>
> Q. September of this year?
>
> A. Yes.
>
> Q. Is that the only time you've had a conversation with Mr. Hevrony regarding the negotiations with respect to the Non-Competition Agreement?
>
> A. I think I've had previous conversations with him.
>
> ….
> Q. And what did Mr. Hevrony say to you and what did you say to him in connection with the

15

> Non-Competition Agreement?
>
> MR. COMEN: I object. I instruct him not to answer.
>
> Q. I assume the conversation with Mr. Hevrony -- he's going to instruct you -- let me try it a different way. Is it fair to say that Mr. Hevrony reflected to you his memory of the communications that occurred in connection with the negotiation of the Non-Competition Agreement? Is that correct?
>
> ….
> A. We discussed the noncompetition negotiations back in November of 2002.
>
> Q. Did he describe to you the discussions he had with Dr. Kraenzlin and Ludger Kramer in 2002?
>
> A. I believe we had some general discussions about that.
>
> Q. Did he discuss with you or did he -- let me try that again. Did the subject matter of the GE example come up in your communications with Mr. Hevrony, either in September or -- at the September meeting or in the conversation that occurred afterwards?
>
> MR. COMEN: You know, I'm not sure at what point we're getting past the privilege question, so I think I'll direct him not to answer at this point. You're getting into what was discussed.

Accordingly, when examined closely, BPI's claim that Mr. Brantl was prepared to testify fully concerning the topics specified in Babcock GmbH's Rule 30(b)(6) notice is seen for what it truly was – an improper shell game yielding no probative testimony of any value.

16

**CONCLUSION**

For the reasons stated above and in its Motion to Compel Testimony Rule 30(b)(6) Testimony, Plaintiff Babcock GmbH asks that its Motion to Compel be granted in its entirety.

> Respectfully submitted,
>
> BABCOCK BORSIG POWER GmbH
>
> By its Attorneys,
>
> /s/ John F. Welsh
> Kenneth M. Bello, BBO # 036630
> John F. Welsh,   BBO #522640
> Kevin R. Powers, BBO # 644635
> Bello Black & Welsh, LLP
> 535 Boylston Street, Suite 1102
> Boston, MA 02116
> (617) 247-4100

Dated: January 31, 2006