UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10825-RWZ

BABCOCK BORSIG POWER GmbH

v.

BABCOCK POWER, INC.

MEMORANDUM OF DECISION

March 23, 2006

ZOBEL, D.J.

    Plaintiff Babcock Borsig Power GmbH ("Babcock") is a subsidiary of the German conglomerate Babcock Borsig AG ("Babcock AG"). In November 2002, Babcock signed a Stock Purchase Agreement ("the Agreement") with defendant's predecessor, Hudson Investment Group, Inc. ("Hudson").[1] Under the Agreement, Hudson agreed to purchase all issued and outstanding shares of one of Babcock's subsidiaries, BBCC Holding Co. ("BBCC Holding"), which operated Babcock AG's North American power equipment and service businesses. In exchange for the shares, Hudson agreed to the assumption of debt, a cash payment, and two promissory notes, which are the primary focus of this litigation. A $5 million note was executed in connection with a Non-Competition Agreement, and a $1.9 million note was executed in connection with a Transition

---

[1] Although defendant is now known as Babcock Power, Inc., I refer to it as Hudson for simplicity.

Consulting Services Agreement. The parties hotly dispute the meaning of the Agreement and the two notes, which contain the following provisions.

First, both the $5 million note and the $1.9 million note contain "Event of Default" provisions. Both notes define the term as:

> failure to pay any amount of any installment of interest or principal hereunder which is not cured within five (5) days after Payee has given written notice to Maker of such failure <u>other than pursuant to a valid exercise of the Maker's right of set off set forth in Section 8.6 of the Stock Purchase Agreement</u>; or [several other conditions].

(Kraenzlin Aff., Ex. C, at 3; <u>id.</u>, Ex. D., at 3 (emphasis added)).

No Section 8.6 exists, as defendant points out. Instead, the notes apparently refer to Section 8.06 of the Agreement, which deals with the right of set off and is entitled "Special Indemnification and Set Off." Section 8.06 provides that—under certain specified circumstances—Hudson "has the right to withhold, set off, and deduct from amounts due under the Note issued pursuant to Section 2.04, any amounts finally determined to be owed to [Hudson] pursuant to the terms of Article VIII." Thus, Section 8.06 allows Hudson to exercise the right of set off only against the amounts due under the note associated with Section 2.04.

Under the terms of the Agreement, the "Note issued pursuant to Section 2.04" is the $5 million promissory note issued in connection with the Non-Competition Agreement. (Brantl Aff., Ex. 1, § 2.04; <u>id.</u>, Ex. 2, § 3 (amending § 2.04)). The $1.9 million promissory note issued in connection with the Transition Consulting Services Agreement, by contrast, is associated with Section 2.03. (<u>Id.</u>, Ex. 1, § 2.03; <u>id.</u>, Ex. 2, § 1 (amending § 2.03)). In other words, Section 8.06 provides that Hudson may exercise

the right of set off only against the $5 million note, not the $1.9 million note. And yet, confusingly, the $1.9 million note itself refers to the possibility that Hudson might avoid default under that note by validly exercising the "right of set off set forth in Section 8.[0]6."

The Agreement also contains Schedule 3.06, which details the current status of intercompany accounts, by showing amounts that Hudson would owe or would be owed by other Babcock AG businesses after completion of the transaction. The modified version of the list executed by the parties on November 29, 2002, includes certain amounts still owed, for which Hudson would become responsible upon completion of the purchase. Several of the amounts listed in Schedule 3.06 include the notation "[s]ubject to offset provision of 8.06," or "[s]ubject to the setoff provisions of 8.06." (Id., Ex. 7, Sch. 3.06, nn. (b), (d), and (e)).[2]

On July 8, 2003, Hudson sent a letter to Babcock notifying Babcock that Hudson had made certain payments to two of the companies listed on Schedule 3.06. According to Hudson, these were amounts that were owed by Babcock prior to the sale and for which Babcock had agreed to reimburse Hudson. Hudson informed Babcock that it should reimburse Hudson and that such amounts were also subject to set off "against the notes along with the other amounts referred [to] in Section 8.06." (Id., Ex. 8). Babcock refused to pay, and Hudson reduced its payments under the note in what it believed was a valid exercise of its set off rights.

---

[2]Babcock is thus incorrect when it asserts that Schedule 3.06 contains no "reference to setoff whatsoever." (Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. 8).

3

In November 2003, Hudson filed suit against Babcock in Massachusetts Superior Court, claiming breach of the Non-Competition Agreement and various other duties and seeking reimbursement for the payments under Schedule 3.06. Five months later, Babcock filed this suit. Its complaint, as subsequently amended, seeks declaratory relief as to the scope of the Non-Competition Agreement, and payment under the two promissory notes. Specifically, Babcock denies that it owes Hudson for the payments and disputes Hudson's right to set off those amounts against the amounts owed under the notes. Hudson has counterclaimed. Currrently before me is Babcock's motion for partial summary judgment on the $1.9 million promissory note.

Summary judgment may be granted when "there is no genuine issue as to any material fact," Fed. R. Civ. P. 56(c), and when no reasonable jury could find in the nonmovant's favor. The evidence in the light most favorable to the nonmovant and all reasonable inferences are drawn in its favor. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). In cases involving contractual meaning, the argument is "typically . . . about a material fact." Boston Five Cents Sav. Bank v. Sec'y of the Dep't of Housing and Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985). If the words of a contract are "so clear themselves that reasonable people could not differ over their meaning," then summary judgment resolution is appropriate. Id. If, on the other hand, some ambiguity remains, and if reasonable people could differ over the contractual meaning, summary judgment should be denied. See id. Under Massachusetts law, which governs these agreements, a contractual term is deemed

ambiguous where it is susceptible to differing and inconsistent interpretations. See Lanier Prof'l Servs., Inc. v. Ricci, 192 F.3d 1, 4 (1st Cir. 1999).

According to Babcock, the terms of the Agreement and the notes "clearly establish the parties' intent that setoff not be allowed against the $1.9 Million Note for the indemnification claims raised by [Hudson]." It seeks summary judgment on the $1.9 million note because, according to Babcock, set off was unambiguously allowed only as to the $5 million note, and therefore insofar as Hudson has set off certain amounts against the $1.9 million note, it has acted without authorization. Therefore, Babcock maintains, Hudson's failure to pay constituted an "Event of Default" triggering the acceleration provision, which requires immediate payment of $1.9 million plus interest, costs, and fees.

Examination of the provisions of the Agreement reveals, however, that the matter is not so clear. The $1.9 million note undeniably provides that an "Event of Default" under the note occurs when Hudson fails to pay except when the failure to pay is "pursuant to a valid exercise of [Hudson's] right of set off set forth in Section 8.6 of the Stock Purchase Agreement." The note thus explicitly envisions a situation in which Hudson might not pay under the $1.9 million note due to a "valid" exercise of its setoff rights. The language implies that Hudson has set off rights that can be validly exercised under the $1.9 million note. Ambiguity arises because, as Babcock notes, the right of set off to which the note refers—i.e., "the right of set off set forth in Section 8.[0]6"—pertains only to the $5 million note. In other words, the Agreement indicates that set off rights may be exercised only against the $5 million note, and not against the

5

$1.9 million note. This inconsistency between the $1.9 million note and the terms of the Agreement creates sufficient ambiguity to preclude summary judgment.

Under Massachusetts law, courts avoid interpreting contracts in a manner that would render express terms superfluous. See Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501 (1939) ("[E]very phrase and clause [in a contract] must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable."). To accept Babcock's position—in light of the transparent inconsistency between the terms of the $1.9 million note and those of the Agreement, specifically, Section 8.06—would be to render superfluous the reference to a "valid" exercise of the right of set off under the $1.9 million note, a result that Massachusetts courts would avoid. See Merchants Nat'l Bank v. Stone, 296 Mass. 243, 250 (1936). As with most contractual disputes, this ambiguity could have been avoided through more careful drafting, a point emphasized by the fact that both notes refer to a section of the Agreement—"Section 8.6"—that does not exist.

Babcock's motion was filed before meaningful discovery had occurred. (Def.'s Opp. 8 n.6). Thus, the summary judgment record is relatively bare, and certainly does not contain sufficient extrinsic evidence to sustain Babcock's summary judgment burden. While an ambiguous contract might in some cases be susceptible to summary judgment disposition where extrinsic evidence reveals that no rational factfinder could support one party's interpretation, see Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 55 (1st Cir. 1996), such circumstances are not present here.

6

Accordingly, Babcock's motion for partial summary judgment (# 20 on the docket) is denied.

_____         /s/ Rya W. Zobel
          DATE                             RYA W. ZOBEL
                                           UNITED STATES DISTRICT JUDGE